1  Rodger R. Cole (CSB NO. 178865)
   Jennifer L. Kelly (CSB NO. 193416)
2  Songmee L. Connolly (CSB NO. 228555)
   Marybeth Milionis (CSB NO. 238827)
3  FENWICK & WEST LLP
   Silicon Valley Center
4  801 California Street
   Mountain View, CA  94041
5  Telephone: (650) 988-8500
   Facsimile: (650) 938-5200
6  Email: rcole@fenwick.com
   Email: jkelly@fenwick.com
7  Email: sconnolly@fenwick.com
   Email: mmilionis@fenwick.com
8
   Attorneys for Defendant
9  INTUIT INC.

10 **[ADDITIONAL COUNSEL APPEAR ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CREATE-A-CARD, INC.; AGSJ, INC.; and PHILANTHROPIC FOCUS, LLC, on behalf of themselves and all those similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>INTUIT INC.,<br><br>            Defendant. | Case No.  3:07-CV-06452-WHA<br><br>**CLASS ACTION**<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER; RULE 26(f) REPORT** |

The parties to the above-entitled action jointly submit this Joint Case Management Statement and Proposed Order, and Rule 26(f) Report, and request the Court to adopt those portions on which the parties agree as its Case Management Order in this case. To the extent that the parties have not reached agreement, those portions are identified below.

1. **Jurisdiction and Service**: Plaintiffs assert that Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), 28 U.S.C. § 1367 and 28 U.S.C. §§ 2201 and 2202. Plaintiffs assert that the Northern District of California has personal jurisdiction over Intuit because Intuit has qualified with the California Secretary of State to do business and is doing business in California, and in this district, and because many of the acts complained of occurred in this State and this district and gave rise to claims alleged. According to Plaintiffs, California law applies to this nationwide class action under the "governmental interest" analysis, in part because Intuit is headquartered in California which has a paramount governmental interest in regulating the conduct of business emanating from this State. (*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985); *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 919 (2001).) Plaintiffs further assert that the Northern District of California is the proper venue under 28 U.S.C. § 1391(b).

Intuit does not dispute subject matter jurisdiction, personal jurisdiction or venue at this time. However, Intuit reserves the right to dispute subject matter jurisdiction as to the adequacy of the pleading—including the permissibility of a class action and the propriety of the named plaintiffs as representatives of the proposed class, which have not yet been decided. No parties remain to be served.

2. **Facts:**

**Plaintiffs' Statement of Facts:**

Plaintiffs Create-A-Card, Inc. and AGSJ, Inc. are corporations with their primary place of business located in New York and California, respectively. Plaintiff Philanthropic Focus, LLC is a limited liability company with its primary place of business located in the State of Florida. Intuit is a Delaware corporation doing business in the State of California and nationwide, with its primary place of business and headquarters in Mountain View, California.

Intuit markets and sells a version of its accounting software called QuickBooks Pro, which is used by businesses and individuals including Plaintiffs and the putative Class.  The 2006 version of QuickBooks has a built in automatic update mechanism that is activated when the program is launched.  When users start using the program, QuickBooks automatically contacts Intuit's server via the Internet to download any available updates to the program.  The 2006 version of QuickBooks Pro contains a defect which is triggered when it searches for updates to download but does not receive the anticipated response.  When this happens, the defective program overwrites and eliminates data on the user's desktop.

On Saturday, December 15, 2007, beginning at about 10:30 p.m. PST, Intuit's server sent out a defective software code to QuickBooks 2006 users, instead of sending a valid program updates.  The code triggered the defect in the program and led to the deletion of all files on the users' computer desktops.  Although many QuickBooks users immediately advised Intuit of the file deletion, Intuit did not stop sending the defective code until approximately 10:00 a.m. PST on Monday, December 17, 2007.  Intuit then sent out a "patch" to users' disabling the automatic update mechanism in the 2006 QuickBooks program.  On December 19, 2007, Intuit emailed QuickBooks users who had contacted it regarding data loss with an offer to reimburse users for a $99 data recovery program.  Intuit subsequently offered to reimburse any user for other costs of data recovery, but has not yet offered to reimburse any user for the time spent on attempting to recover lost data or for any lost income due to the time expended in recovering/reconstructing data or from the data loss itself.

In addition to the December 2007 incident, Plaintiffs learned of another incident of data loss that occurred in January 2008.  The January 2008 incident occurred due to the software flaw in the 2006 version of QuickBooks.  On that occasion, the data loss was triggered by a user opening QuickBooks via an Internet "wi-fi hotspot."  The program automatically searched the Internet for an update to download from Intuit's server.  However, due to the restricted access to the Internet at the hotspot, the user did not receive a proper update response.  Instead, the response triggered the defect and data was destroyed.  Plaintiffs are aware of a similar data loss incident that apparently occurred in the summer of 2007.

The putative Class Members who rely on QuickBooks to run their small businesses suffered immediate and significant damage when Intuit's defective software devastated their computer files. Intuit's customers lost accounting files that they use daily. They lost valuable client lists, budget projections and spreadsheets. Invoices and business presentations had to be recreated. Years of business-related work, as well as personal files like wills and photographs, were lost when class members' computer desktop data simply disappeared. Class Members expended significant time and money was expended to recover or recreate the lost files, data and documents, some of which appears to be irretrievable. In addition, as a result of business interruption and lost time, Class Members lost significant income.

**Intuit's Statement of Facts:**

Intuit is an industry leader in developing and marketing financial software and related services for individual consumers and small businesses. One of Intuit's leading products is QuickBooks, a software package featuring consolidated accounting and other capabilities for small businesses. In addition to developing and selling versions of QuickBooks for its PC users, Intuit also develops and sells versions of QuickBooks for its Macintosh users. The 2006 versions of QuickBooks for Mac (QuickBooks Pro 2006 for Mac and QuickBooks New User Edition 2006 for Mac) (collectively, the "Software" or "QuickBooks 2006 for Mac") is the software at issue in this case.

Before using the Software, customers (all of which are small businesses) must review and agree to the terms and conditions of a Software License Agreement. This Agreement is a standard "click-wrap" agreement which terms and conditions must be reviewed and scrolled through by a user before being accepted by the user's click of an "Agree" button. This Agreement is fully enforceable and governs the relationship between Intuit and each plaintiff. The Agreement disclaims all express and implied warranties and limits Intuit's liability to the price paid for the Software.

As a result of server maintenance by Intuit on the evening of Saturday, December 15, 2007, a pre-existing, unknown, and latent bug in the Software's automatic-update mechanism became exposed (contrary to Plaintiffs' allegations, Intuit did not send any defective code on this

date). This malfunction of the Software's automatic-update mechanism affected a small number (fewer than 1,000) of Intuit's QuickBooks 2006 for Mac customers by deleting their desktop data. Intuit learned of the issue, identified the source of the problem and fixed it the morning of Monday, December 17, 2007. Then on January 3, 2008, Intuit sent a patch to its entire QuickBooks 2006 for Mac user base to permanently disable the Software's automatic update mechanism to prevent any similar malfunction from occurring again.

Intuit has sought to do right by all its customers in connection with this matter. Since the issue occurred in December, Intuit has made significant efforts to identify its affected customers and help them recover deleted desktop data (including providing compensation for data-recovery efforts and a free product upgrade). In doing so, Intuit has gone above and beyond what is required by the Software License Agreement and applicable law.

3. **Legal Issues**: To date, the parties hereby identify the following disputed legal issues:

    **a.** **Regarding Class Action Certification.**

        i. Whether the action meets the prerequisites of and/or is maintainable as a class action under Federal Rule of Civil Procedure 23, including:

            1. whether sufficient common questions of fact and/or law exist between proposed class members;

            2. whether Plaintiffs' claims are typical of the claims of proposed class members as a whole; and/or

            3. whether Plaintiffs would adequately represent the class.

        ii. The adequacy of the proposed definition of the class as set forth in the complaint.

    **b.** **Regarding The Merits of the Claims.**

        i. Whether Plaintiffs' damages claims are barred by the economic loss doctrine, including:

            1. whether the loss of desktop data constitutes "physical" injury; and/or

            2. whether desktop data constitutes "other" property.

        ii. Whether the terms of Software License Agreement entered between Intuit and each plaintiff govern, including:

        1.     whether the Software License Agreement limited Defendant's liability and Plaintiffs' alleged damages to the amount paid for the Software and precludes claims for any indirect, special, incidental or consequential damages; and/or

        2.     whether the Software License Agreement disclaimed any alleged implied warranties.

        3.     whether Intuit's breach of contract was so significant that any provision limiting liability is expunged from the Software License Agreement.

        4.     whether Plaintiffs may pursue all remedies available for breach of contract because the any limitation on remedies in the Software License Agreement failed of its essential purpose.

        5.     whether any term of the Software License Agreement was breached by Intuit (if Plaintiffs are asserting a breach of contract claim).

    iii.     Whether Defendant acted negligently, including:

        1.     whether Defendant owed Plaintiffs any duty;

        2.     whether Defendant breached any alleged duty owed;

        3.     whether Defendant's alleged negligent conduct proximately caused any damages to Plaintiffs; and/or

        4.     whether Plaintiffs were contributorily negligent or assumed the risk of permanent data loss by failing to backup their desktop data.

    iv.     Whether Defendant should be held strictly liable for Plaintiffs' desktop data loss, including:

        1.     whether the loss of desktop data constitutes "physical" injury.

    v.     Whether Defendant committed trespass to chattels; including:

        1.     whether Defendant intentionally interfered with Plaintiffs' possession of personal property; and/or

        2.     whether Defendant's alleged intentional interference proximately caused any damages to Plaintiffs.

    vi.     Whether Defendant breached any implied warranty to Plaintiffs, including:

        1.     whether Defendant disclaimed any allegedly applicable warranties under the Commercial Code.

        vii.    Whether Defendant's alleged conduct constitutes unfair competition under California Business and Professions Code §§ 17200 *et seq.*

        viii.    Whether punitive damages are available, including:

            1.    Whether Defendant acted with malice, oppression or fraud.

        ix.    Whether any request for injunctive or equitable relief is warranted or moot.

4.    **Motions**: There are no prior or pending motions. If the case does not settle, Plaintiffs anticipate filing motions for leave to amend the complaint, for class certification and for partial summary judgment. Plaintiffs contend that any summary judgment motion should be filed after resolution of the class certification issue in order to prevent the problem of "one-way intervention." (*See, e.g., In re Diamond Multimedia Systems, Inc. Securities Litigation*, 1997 WL 773733 (ND Cal. 1997).)

If the case does not settle, Intuit anticipates filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and/or a motion for summary judgment pursuant to Fed. R. Civ. P. 56 with respect to the complaint, including without limitation, whether or not the economic loss doctrine and/or the Software License Agreement preclude Plaintiffs' claims. At this time, Intuit believes such motions may be decided without the need for class certification and proposes such motions be filed no later than July 15, 2008.

5.    **Amendment of Pleadings**: Plaintiffs anticipate seeking leave to amend the complaint to allege the facts described above, many of which Plaintiffs claim to have learned only after the complaint's filing, including the incidents of data destruction which allegedly occurred in the summer of 2007 and January 2008. Intuit believes any amendment of the complaint should be served at least thirty (30) days' prior to any deadline for its motion to dismiss and/or motion for summary judgment. For example, the amended complaint should be served by June 13, 2008, if Intuit's motion must be filed by July 15, 2008.

6.    **Evidence Preservation**: The parties have suspended any document destruction policies or procedures to the extent any exist, and have represented that they are in compliance with evidence preservation requirements.

Joint Case Management Statement and [Proposed] Order; Rule 26(f) Report       6      Case No. 3:07-CV-06452-WHA

1   7.   **Disclosures**:  Although the parties have exchanged information informally in connection with their ongoing settlement negotiations, the parties have not yet exchanged Initial Disclosures and propose that such disclosures shall be completed not later than twenty (20) days following the initial Case Management Conference.  The parties will discuss language for a stipulated protective order, pursuant to which confidential information can be produced, if necessary.

8.   **Discovery**:

Plaintiffs' Position:  Plaintiffs should be entitled to conduct discovery prior to any motions filed by Intuit, whether a motion for class certification, for dismissal or for summary judgment filed by Intuit.  Intuit has not and cannot meet its burden of showing sufficient "good cause" for a protective order to stay discovery, which will deny Plaintiffs the right to conduct necessary discovery authorized by the Federal Rules of Civil Procedure.  (*See, e.g., Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40-41 (ND Cal. 1990).  For example, Plaintiffs should be entitled to conduct discovery whether the defective software caused "physical damage to property (other than the defective product itself)," so the economic loss doctrine does not apply.  (*North American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 780.)

Furthermore, it is inefficient to bifurcate discovery into separate categories of class certification and merits because "bifurcation of discovery may well increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' verses 'class' discovery." (*In re Hamilton Bancorp, Inc. Sec. Litig.*, 2002 WL 463314, *1 (SD Fla. 2002); *Gonzalez v. Pepsico, Inc.*, 2007 WL 1100204, at *3 (D. Kan. 2007) ["Discovery relating to 'class issues' is not always distinguishable from other discovery."].)

Given that this is a complex nationwide class action, Plaintiffs respectfully request a doubling of the limits on discovery set forth in the Federal Rules of Civil Procedure.

Intuit's Position**:**  Intuit respectfully submits that the most cost-efficient and judicious management of this class action would be to stay discovery until the Court rules on Intuit's anticipated motion on whether the economic loss doctrine and/or terms of the Software License Agreement bar Plaintiffs' claims.  Such a motion by Intuit is potentially dispositive of the

Joint Case Management Statement and
[Proposed] Order; Rule 26(f) Report     7     Case No. 3:07-CV-06452-WHA

complaint, and fact discovery would not impact the Court's ruling on such a motion. However, if the Court is inclined to permit fact discovery, Intuit proposes that discovery be limited to class certification issues and that such class discovery, if any, be completed by September 1, 2008. Intuit requests bifurcation so the parties do not incur attorneys' fees and expenses conducting merits discovery that will, in all likelihood, be unnecessary if the class is not certified. Intuit also does not believe any increase on the limits on discovery set forth in the Federal Rules of Civil Procedure is warranted at this time. Intuit further respectfully requests that, if appropriate, the Court permit the parties to submit briefing related to the scope and timing of discovery before issuing an order on these matters.

The parties anticipate entering into a stipulated protective order, pursuant to which confidential information may be produced.

9. **Class Actions**: This matter is pled as a class action.

Plaintiffs' Position: Plaintiffs contend that judicial efficiency is best promoted if the deadline to file their motion for class certification is a date certain, rather than a date tied to completion of class-related discovery. Plaintiffs propose that they file their motion for class certification no later than September 15, 2008.

Intuit's Position: If the Court is inclined to permit class discovery, Intuit does not oppose having a date certain set for class certification. However, Intuit believes Plaintiffs' motion for class certification should be filed fourteen (14) days following close of class discovery. For example, if Plaintiffs are required to file their motion for class certification no later than September 15, 2008, the close of class discovery should be September 1, 2008.

10. **Related Cases**: *Ronald Smith & Asscos. Inc. v. Intuit Canada and Intuit Inc.*, Court File No.: 08-348111 CP; Ontario Superior Court of Justice (Toronto, Canada): On January 31, 2008, Plaintiff Ronald Smith & Associates, Inc. filed a class-action complaint in Ontario Superior Court of Justice in Toronto, Canada against Intuit Canada and Intuit Inc. based on the same set of facts alleged in the present case ("Canadian Action").

11. **Relief**: Plaintiffs seek class certification; compensatory damages for lost data, and time and money spent attempting to recover lost data; injunctive relief; prejudgment interest;

1  punitive damages; reasonable attorneys' fees and costs; and a declaration of financial
2  responsibility on the part of Intuit for the costs of class notification and for the costs of repair and
3  replacement of all affected files.  Defendant seeks a denial of all relief sought.
4      12.   **Settlement and ADR**:  The parties are engaged in ongoing settlement negotiations
5  and have exchanged informal discovery to facilitate the same.  They participated in an all-day
6  private mediation with The Honorable Edward A. Infante (Ret.) at JAMS on February 21, 2008.
7  Counsel for all parties in the related Canadian Action also participated at the February 21, 2008
8  mediation.  On March 4, 2008, the parties and Canadian counsel conducted a follow-up
9  telephonic mediation with Judge Infante.  Since then the parties have remained in continued
10 contact with each other and Judge Infante to continue their negotiations in an attempt to reach
11 settlement terms.
12     13.   **Consent to Magistrate Judge For All Purposes**:   The parties will consent to
13 have a magistrate judge conduct all further proceedings including trial and entry of judgment.
14     14.   **Other References**:   This case is not suitable for reference to binding arbitration,
15 special master, or the Judicial Panel on Multidistrict Litigation.
16     15.   **Narrowing of Issues**:  Intuit believes that the issues remaining for trial may be
17 narrowed by Intuit's motion to dismiss and/or motion for summary judgment.
18     16.   **Expedited Schedule**: The parties do not anticipate that the case can be handled on
19 an expedited basis with streamlined procedures.
20     17.   **Scheduling**:
21 Plaintiffs' Position:  Plaintiffs contend that it is premature to set a trial date, given the
22 unresolved issues regarding class certification and dispositive motions.  Plaintiffs do believe,
23 however, that certain deadlines should be set in order to maintain progress in resolution of this
24 action and propose the following deadlines:
25    Motion to Dismiss:                  Filed by July 15, 2008
26    Motion for Class Certification:      Filed by September 15, 2008
27 Intuit's Position:  Intuit similarly believes that it is premature to set a trial date given the
28 unresolved issues regarding class certification and dispositive motions.  Intuit does not oppose to

having its motion to dismiss and/or motion for summary judgment in the alternative be filed by July 15, 2008, so long as any amended complaint is filed and served no later than thirty (30) days' prior thereto.  Although Intuit is opposed to having commencement of fact discovery until its motion to dismiss and/or motion for summary judgment is heard, if the Court is inclined to grant discovery, Intuit proposes that it be limited to class discovery and that class certification be heard after close of class discovery.  Based on the foregoing, Intuit proposes the following deadlines:

| | |
|---|---|
| Amended Complaint: | Filed & Served by June 13, 2008 |
| Motion to Dismiss and/or Motion for Summary Adjudication: | Filed by July 15, 2008 |
| Close of Class Discovery: | September 1, 2008 |
| Motion for Class Certification | Filed September 15, 2008 |

18.  **Trial**: The case will be tried to a jury, except for the equitable claim brought under California Business & Professions Code §17200.  The parties expect the trial to last 7-10 court days.

19.  **Disclosure of Non-Party Interested Entities or Person**: Defendant filed its Civil Local Rule 3-16 certification indicating no interested entities to report.  Plaintiffs will file their certification promptly.

20.  **Additional Matters**: The parties believe that reaching an early class-wide settlement of this case, subject to the Court's approval, will facilitate the most just, speedy and inexpensive disposition of this matter.

Dated: March 18, 2008                                Respectfully submitted,

                                                     FENWICK & WEST LLP


                                                     By:      /s/ Rodger R. Cole
                                                              Rodger R. Cole
                                                     Attorneys for Defendant
                                                     INTUIT INC.

| | |
|---|---|
| Dated: March 18, 2008 | MOSCONE, EMBLIDGE & QUADRA, LLP |
| | By:      /s/ James A. Quadra |

James A. Quadra (SBN 131084)
Robert D. Sanford (SBN 129790)
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Ste. 2100
San Francisco, California 94104
Telephone: (415) 362-3599
Facsimile: (415) 362-2006
Email: quadra@meqlaw.com

Michael W. Sobol (SBN 194857)
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: msobol@lchb.com
Email: jsagafi@lchb.com

Jonathan D. Selbin (SBN 170222)
Rebecca Bedwell-Coll (SBN 184468)
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: jselbin@lchb.com
Email: rbcoll@lchb.com

Attorneys for Plaintiffs and proposed Class
CREATE-A-CARD, INC.; AGSJ, INC.; and
PHILANTHROPIC FOCUS, LLC

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

Pursuant to General Order No. 45, Section X.B., I hereby attest that I have obtained concurrence of the signatory, James A. Quadra, indicated by a "conformed" signature (/s/) within this efiled document.

| | |
|---|---|
| 1   Dated: March 18, 2008 | FENWICK & WEST LLP |
| 2 | |
| 3 | By:   /s/ Rodger R. Cole<br>        Rodger R. Cole |
| 4 | Attorneys for Defendant<br>INTUIT INC. |

**[PROPOSED] ORDER**

The foregoing joint statement is adopted by this court as the Case Management Order in this action in accordance with Civ. L.R. 16 and other applicable Local Rules, and shall govern all further proceedings in this action.

**IT IS SO ORDERED**.

Dated: March __, 2008         By:_____
                              The Honorable William H. Alsup
                              United States District Court Judge

16319/40031/LIT/1282241.2