1   RODGER R. COLE (CSB NO. 178865)
    rcole@fenwick.com
2   SONGMEE CONNOLLY (CSB NO. 228555)
    sconnolly@fenwick.com
3   FENWICK & WEST LLP
    Silicon Valley Center
4   801 California Street
    Mountain View, CA  94041
5   Telephone:     (650) 988-8500
    Facsimile:     (650) 938-5200
6
    JENNIFER L. KELLY (CSB NO. 193416)
7   jkelly@fenwick.com
    MARY E. MILIONIS (CSB NO. 238827)
8   mmilionis@fenwick.com
    FENWICK & WEST LLP
9   555 California Street, 12th Floor
    San Francisco, CA  94104
10  Telephone:     (415) 875-2300
    Facsimile:     (415) 281-1350
11

12  Attorneys for Defendant
    INTUIT INC.
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                SAN FRANCISCO DIVISION

17

18  CREATE-A-CARD, INC., AGSJ, INC.,          Case No.  CV 07-06452 WHA
    and PHILANTHROPIC FOCUS, LLC, on
19  behalf of themselves and all those similarly   **NOTICE OF MOTION AND MOTION TO**
    situated,                                 **DISMISS PLAINTIFFS' FIRST AMENDED**
20                                            **COMPLAINT BY DEFENDANT INTUIT**
                   Plaintiffs,                **INC. PURSUANT TO FED. R. CIV. P.**
21                                            **12(B)(6); MEMORANDUM OF POINTS**
    v.                                        **AND AUTHORITIES IN SUPPORT**
22                                            **THEREOF**
    INTUIT INC.,
23                                            Date:     June 26, 2008
                   Defendant.                 Time:     8:00 a.m.
24                                            Dept.:    Courtroom 9, 19th Floor
                                              Judge:    The Honorable William H. Alsup
25

26

27

28

INTUIT'S MOTION TO DISMISS                    Case No.  CV 07-06452 WHA

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF CONTENTS**

2

Page(s)

3    NOTICE OF MOTION AND MOTION TO DISMISS ........................................................1

4    MEMORANDUM OF POINTS AND AUTHORITIES .....................................................1

5    INTRODUCTION ..............................................................................................................1

     STATEMENT OF ISSUES TO BE DECIDED ..........................................................2, 3
6
     STATEMENT OF ALLEGED FACTS ..............................................................................3
7
     LEGAL STANDARD .........................................................................................................5

     ARGUMENT.......................................................................................................................5
8
         I.    PLAINTIFFS' CONTRACT CLAIMS FAIL BECAUSE THE
9              SOFTWARE LICENSE AGREEMENT GOVERNS THE
               RELATIONSHIP BETWEEN THE PARTIES AND BARS THE RELIEF
10             REQUESTED IN THE COMPLAINT ..............................................................6

11             A.    Plaintiffs' Fourth Claim For Breach of Contract Must Be Dismissed
                     Because Plaintiffs Fail to Identify Any Act of Breach By Intuit ...............6
12
               B.    Plaintiffs' Fifth Claim For Relief For Breach of Implied Warranty
                     Must Be Dismissed Because the Agreement Disclaimed All Implied
13                   Warranties .....................................................................................................7

14             C.    The Agreement Bars Recovery of All Damages Alleged By
                     Plaintiffs .......................................................................................................10
15
               D.    Plaintiffs Fail to Allege Any Facts Supporting Their Conclusory
                     Allegation that Any Contractual Provision Is Unconscionable ...............13
16
         II.   PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED..............................16
17
               A.    The Economic Loss Doctrine Bars Plaintiffs' Claims For
                     Negligence, Strict Products Liability, and Trespass To Chattels...............16
18
               B.    Plaintiffs' First Claim For Negligence Is Precluded By the
19                   Agreement.....................................................................................................20

20             C.    Plaintiffs' Second Cause of Action For Strict Products Liability
                     Fails Because Plaintiffs Do Not Allege Any Physical Injury to
                     Person or Property........................................................................................20
21
               D.    Plaintiffs' Third Claim For Relief For Trespass To Chattels Must
22                   Be Dismissed Because Plaintiffs Expressly Consented to Receive
                     Updates From Intuit and Voluntarily Installed the Software....................21
23
         III.  PLAINTIFFS' SIXTH CLAIM FOR RELIEF UNDER SECTION 17200
               OF CALIFORNIA'S UNFAIR COMPETITION LAW MUST BE
24             DISMISSED FOR FAILURE TO STATE A CLAIM .......................................23

25             A.    Plaintiffs Have Not Alleged Any "Unfair" Business Practices ...............23

               B.    Plaintiffs Do Not Allege Any "Unlawful" or "Fraudulent" Business
26                   Practices ........................................................................................................24

     CONCLUSION..................................................................................................................25
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AOL v. St. Paul Mercury Ins. Co.*,
207 F. Supp. 2d 459 (E.D. Va. 2002).........................................................................18, 19

*Baugh v. CBS, Inc.*,
828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007).....................................................................................................5

*Bentley v. Mountain*,
51 Cal. App. 2d 95 (1942)..............................................................................................6, 7

*Brothers v. Hewlett-Packard Co.*,
2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) ............................................23, 25

*Buller v. Sutter Health*,
160 Cal. App. 4th 981 (2008) .........................................................................................24

*Cairo, Inc. v. Crossmedia Servs.*,
2005 U.S. Dist. LEXIS 8450 (N.D. Cal. Apr. 1, 2005).....................................................6

*Carmack v. Chase Manhattan Bank (USA)*,
521 F. Supp. 2d 1017 (N.D. Cal. 2007)...........................................................................16

*Castle & Cooke Madera, Inc. v. Mackenzie Patterson Fuller, Inc.*,
2006 U.S. Dist. LEXIS 29960 (N.D. Cal. May 8, 2006)..................................................14

*Cel-Tech Comms. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999).................................................................................................23, 24

*Churchill Village, LLC v. General Electric Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000)...........................................................................24

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) .............................................................................................5

*County of Santa Clara v. Atlantic Richfield Co.*,
137 Cal. App. 4th 292 (2006) .................................................................................22, 26, 27

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002)...........................................................................23

*Dart Energy Corp. v. Vogel*,
1991 U.S. Dist. LEXIS 10079 (W.D. Mich. Jul. 18, 1991)...............................................9

*Datalex Ltd. v. PSA, Inc.*,
2003 U.S. Dist. LEXIS 27563 (C.D. Cal. Jan. 30, 2003) ....................................10, 12, 15

*Doe v. SexSearch.com*,
502 F. Supp. 2d 719 (N.D. Ohio 2007) ...........................................................................15

*East River Steamship Corp. v. Transamerica Delaval Inc.*,
476 U.S. 858 (1986) ........................................................................................................17

*Ebay, Inc. v. Bidder's Edge*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000)...........................................................................21

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

i

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)...................................................................6, 15

4

*Fibreboard Corp. v. Hartford Accident & Indemnity Co.*,
16 Cal. App. 4th 492 (1993) .........................................................................................22

5

6

*First Comm'l Mortgage Co. v. Reece*,
89 Cal. App. 4th 731 (2001) ...........................................................................................6

7

*Freeman v. Wal-Mart Stores, Inc.*,
111 Cal. App. 4th 660 (2003) ................................................................................13, 17

8

*Furniture Consultants, Inc. v. Datatel Minicomputer Co.*,
1986 U.S. Dist. LEXIS 22978 (S.D.N.Y. July 10, 1986) ..........................................9

9

*General Electric Capital Corp. v. Munson Marine, Inc.*,
1991 U.S. Dist. LEXIS 17227 (N.D. Ill., Nov. 20, 1991) ........................................9

10

*Giles v. v. GMAC*,
494 F.3d 865 (9th Cir. 2007) .........................................................................................17

11

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001) .......................................................................................23

12

*Graphic Arts Sys. v. Scitex Am. Corp.*,
1993 U.S. Dist. LEXIS 21052 (C.D. Cal. May 25, 1993) ........................................8

13

14

*Greenbriar Homes Communities, Inc. v. Superior Court*,
117 Cal. App. 4th 337 (2004) .......................................................................................14

15

*Greenman v. Yuba Power Prods., Inc.*,
59 Cal. 2d 57 (1963)........................................................................................................20

16

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) .........................................................................................5

17

18

*Hartless v. Clorox Co.*,
2007 U.S. Dist. LEXIS 81686 (S.D. Cal. Nov. 2, 2007)..........................................25

19

*Hauenstein v. Softwrap Ltd.*,
2007 U.S. Dist. LEXIS 60618 (W.D. Wash. Aug. 17, 2007)....................................6

20

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003).................................................................................................22

21

*Inter-Mark USA v. Intuit Inc.*,
2008 U.S. Dist. LEXIS 18834 (N.D. Cal. Feb. 27, 2008) .......................8, 9, 10, 14

22

*Itano v. Colonial Yacht Anchorage*,
267 Cal. App. 2d 84 (1968) ...........................................................................................21

23

24

*Jim Dan, Inc. v. O.M. Scott & Sons Co.*,
785 F. Supp. 1196 (W.D. Pa. 1992) .......................................................................12, 15

25

*Jones v. Wells Fargo Bank*,
112 Cal. App. 4th 1527 (2003) ...............................................................................13, 15

26

*Khoury v. Maly's of California, Inc.*,
14 Cal. App. 4th 612 (1993) ..........................................................................................23

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3
*Klein v. Earth Elements, Inc.*,
    59 Cal. App. 4th 965 (1997) ....................................................................................25

4
*Lozano v. AT&T Wireless Servs.*,
    504 F.3d 718 (2007) .................................................................................................24

5

6
*Marr Enters., Inc. v. Lewis Refrigeration Co.*,
    556 F.2d 951 (9th Cir. 1977) ...................................................................................20

7
*Metropolitan Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*,
    95 F. Supp. 2d 118 (E.D.N.Y. 2000) .......................................................................15

8
*Morris v. BMW of N. Am., LLC*,
    2007 U.S. Dist. LEXIS 85513 (N.D. Cal. Nov. 7, 2007) .........................................24

9
*N. Star Int'l v. Ariz. Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) .....................................................................................5

10

11
*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1040 (C.D. Cal. 2003) ..............................................................10, 11

12
*Nunes Turfgrass v. Vaughan-Jacklin Seed Co.*,
    200 Cal. App. 3d 1518 (1998) ............................................................................14, 20

13
*O'Neill v. United States*,
    50 F.3d 677 (9th Cir. 1995) .....................................................................................12

14
*Office Supply Co., Inc. v. Basic/Four Corp.*,
    538 F. Supp. 776 (E.D. Wisc. 1982) ...................................................................10, 11

15

16
*Parrish v. Nat'l Football League Players Assn.*,
    2007 U.S. Dist. LEXIS 68355 (N.D. Cal. Sept. 6, 2007) .......................................6, 7

17
*Patapsco Designs, Inc. v. Dominion Wireless, Inc*,
    276 F. Supp. 2d 472 (D. Md. 2003) ....................................................................13, 15

18
*Perdue v. Crocker Nat'l Bank*,
    38 Cal. 3d 913 (1985) .............................................................................................25

19

20
*Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*,
    53 F.3d 195 (8th Cir. 1995) .................................................................................18, 19

21
*RRX Indus. v. Lab-Con, Inc.*,
    772 F.2d 543 (9th Cir. 1985) ...................................................................................12

22
*S.M. Wilson & Co. v. Smith Int'l, Inc.*,
    587 F.2d 1363 (9th Cir. 1978) .................................................................8, 10, 12, 13, 18

23
*Sacramento Regional Transit Dist. v. Grumman Flxible*,
    158 Cal. App. 3d 289 (1984) ..........................................................................17, 18, 20

24
*Samura v. Kaiser Found. Health Plan, Inc.*,
    17 Cal. App. 4th 1284 (1993) ..................................................................................24

25
*San Chirico v. Merrill Lynch, Pierce, Fenner & Smith*,
    1999 U.S. Dist. LEXIS 20180 (N.D. Cal. Dec. 13, 1999) .........................................7

26

27
*Schuman v. Ikon Office Solutions, Inc.*,
    232 Fed. Appx. 659 (9th Cir. 2007) .........................................................................14

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Seagate Tech., Inc. v. St. Paul Fire & Marine Ins. Co.*,
   11 F. Supp. 2d 1150 (N.D. Cal. 1998)........................................................................18, 19

4

*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965)...............................................................................................17, 18, 20

5

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
   2007 U.S. Dist. LEXIS 56032 (N.D. Cal. July 23, 2007) ......................................24

6

*South Bay Chevrolet v. GMAC*,
   71 Cal. App. 4th (1999) ...........................................................................................24

7

*Standards Platforms v. Document Imaging Sys. Corp.*,
   1995 U.S. Dist. LEXIS 22238 (N.D. Cal. Nov. 15, 1995) ...................................18

8

*Thrifty-Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) ...........................................................................21, 22

9

10

*Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*,
   718 F.2d 936 (2nd Cir. 1980)..................................................................................12

11

*Transport Corp. of Am., Inc. v. IBM*,
   30 F.3d 953 (8th Cir. 1994) ..............................................................................18, 19

12

*Van Slyke v. Captial One Bank*,
   2007 U.S. Dist. LEXIS 64015 (N.D. Cal. Aug. 17, 2007) ....................................24

13

*Vance v. Villa Park Mobilehome Estates*,
   36 Cal. App. 4th 698 (1995) .........................................................................13, 14, 15

14

15

*Wang & Wang LLP v. Banco Do Brasil, S.A.*,
   2007 U.S. Dist. LEXIS 25813 (E.D. Cal. Mar. 26, 2007).....................................25

16

*Ward General Ins. Svs. v. The Employers Fire Ins. Co.*,
   114 Cal. App. 4th 548 (2003) ............................................................................18, 19

17

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ..................................................................................7

18

*Williams v. General Electric Credit Corp.*,
   159 Cal. App. 2d 527 (1958) ...................................................................................21

19

20

**STATUTES**

21

FEDERAL RULES OF CIVIL PROCEDURE

22

Rule 12(b)(6) .......................................................................................................................1

23

CALIFORNIA BUSINESS & PROFESSIONS CODE

24

§ 17200.............................................................................................................................23

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

iv

1

**TABLE OF AUTHORITIES**
**(continued)**

2
                                                                                              **Page(s)**

3    CALIFORNIA COMMERCIAL CODE

4    § 1201(b)(10)............................................................................................................8

5    § 2316.................................................................................................................7, 8, 9

     § 2719........................................................................................................10, 11, 15

6    Official Comment to § 2719(3) .............................................................................11, 15

7

**OTHER AUTHORITIES**

8

9    4 WITKIN, CAL. PROCEDURE § 495 (4th ed. 1997)........................................................7

10   RESTATEMENT (SECOND) TORTS §§ 217 and 252 (1965) ...........................................21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  |  **NOTICE OF MOTION AND MOTION TO DISMISS**

2  PLEASE TAKE NOTICE that on June 26, 2008, at 8:00 a.m., in the courtroom of The

3  Honorable William H. Alsup, United States Courthouse, Courtroom 9, 19th Floor, 450 Golden

4  Gate Avenue, San Francisco, California, defendant Intuit Inc. ("Defendant" or "Intuit") will move

5  to dismiss each and every claim for relief asserted in the amended complaint (the "Complaint")

6  filed in this action by plaintiffs Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC

7  ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for its failure to state a claim.

8  Intuit moves to dismiss the claims set forth in the Complaint on the following grounds:

9  (1)  the <u>First Claim for Relief for Negligence</u> must be dismissed because it is barred by
10      the economic loss doctrine and because the operative Software License Agreement
        precludes recovery of Plaintiffs' alleged consequential damages;

11  (2)  the <u>Second Claim for Relief for Strict Products Liability</u> must be dismissed
12      because it is barred by the economic loss doctrine and because no physical injury
        to person or property is alleged warranting the imposition of strict liability;

13  (3)  the <u>Third Claim for Relief for Trespass to Chattels</u> must be dismissed because
14      Plaintiffs consented to the alleged incursion and because the claim is barred by the
        economic loss doctrine;

15  (4)  the <u>Fourth Claim for Relief for Breach of Contract</u> must be dismissed because
16      Plaintiffs neither allege what provision in the Agreement was breached by Intuit
        nor how Intuit breached it and because the Agreement precludes recovery of
        Plaintiffs' alleged consequential damages;

17
18  (5)  the <u>Fifth Claim for Relief for Breach of Implied Warranty</u> must be dismissed
        because the Agreement expressly and conspicuously disclaims all implied
19      warranties and because the Agreement precludes recovery of Plaintiffs' alleged
        consequential damages; and

20  (6)  the <u>Sixth Claim for Relief for Violation of California Business & Professions Code
21      Section 17200</u>, *et seq.*, must be dismissed because Plaintiffs fail to allege any facts
        showing how those statutes have actually been violated.

22  This motion is based on this Notice of Motion and Motion, and Memorandum of Points

23  and Authorities filed concurrently herewith, all pleadings and papers filed in this matter, oral

24  argument by counsel and other matters that properly may be received by the Court.

25  |  **MEMORANDUM OF POINTS AND AUTHORITIES**

26  |  **INTRODUCTION**

27  This is a case where Plaintiffs—three commercial business entities—seek to avoid the

28  plain and unambiguous terms of a written Software License Agreement (the "Agreement") that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

INTUIT'S MOTION TO DISMISS          1          Case No. CV 07-06452 WHA

1   each freely entered into with Intuit.  The entirety of Plaintiffs' putative class action complaint

2   stems from an alleged defect in Intuit's QuickBooks Pro 2006 for Mac software program's

3   automatic update mechanism that manifested itself on December 15, 2007 (the "Software Bug").

4   Although this Software Bug led to the very unfortunate result of these businesses experiencing

5   economic damages from the loss of electronic data residing on their computer desktops, the

6   parties expressly allocated for this risk under the terms of the Agreement which governed their

7   use of the software.  The Agreement specifically provides the software is "AS-IS," and includes a

8   conspicuous warranty disclaimer and express provision limiting Intuit's liability—all of which are

9   valid and permissible under California's Commercial Code.  Plaintiffs allege no facts that enable

10  this Court to interfere with the arms-length contractual expectations and agreement of the parties.

11  Thus, Plaintiffs' contract claims must be dismissed as a matter of law.

12          Similarly, Plaintiffs' tort claims must be dismissed.  These companies allege no physical

13  injury to person or other property, but mere intangible data loss.  Because they seek purely non-

14  physical economic damages, and their claims arise from the risk specifically allocated by their

15  contractual relationship, their tort claims are barred by the economic loss doctrine.  Plaintiffs'

16  negligence claim is further barred because the parties expressly agreed that any consequential

17  damages for negligence would not be recoverable.  Plaintiffs' strict liability claim must also be

18  dismissed because no facts—especially no physical damage to person or property—are alleged

19  that would permit the application of strict products liability to this case.  The remaining claims for

20  trespass to chattels and unfair competition under Section 17200 of California's Business and

21  Professions Code must be dismissed because Plaintiffs fail to allege facts that state such claims.

22                        **STATEMENT OF ISSUES TO BE DECIDED**

23  1.      Whether Plaintiffs fail to allege a breach of contract claim because they neither identify
          any contractual obligation breached by Intuit nor how Intuit breached it.
24

25  2.      Whether the breach of implied warranty claim is barred because Intuit disclaimed all
          implied warranties pursuant to the California Commercial Code.

26  3.      Whether Intuit limited its liability pursuant to the Section 2719 of the California
          Commercial Code, thereby precluding Plaintiffs' recovery of consequential damages.
27

28  4.      Whether Plaintiffs' mere bare conclusory allegation that a contractual provision is
          "unconscionable" fails to plausibly suggest that the Agreement's limited remedy,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    consequential damages exclusion or disclaimer of warranties is unconscionable.

2    5.    Whether Plaintiffs' tort claims are barred by the economic loss doctrine (including
         whether data loss is intangible and thus cannot constitute physical damage to other
3        property).

4    6.    Whether the Agreement bars Plaintiffs' alleged damages for negligence.

5    7.    Whether the strict products liability claim fails because the software bug did not cause
         physical injury to property.
6
7    8.    Whether Plaintiffs' trespass to chattels claim fails because Plaintiffs consented to the
         alleged incursion.

8    9.    Whether the California Business and Professions Code Section 17200 claim fails to state a
         claim because no facts are alleged showing how the statute has actually been violated.
9
## STATEMENT OF ALLEGED FACTS[1]
10

11        Intuit markets and sells accounting software called QuickBooks Pro, a software program

12   marketed to and designed to be used by small and mid-sized businesses. ¶ 5.  Plaintiffs Create-A-

13   Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC—three commercial business entities[2]—

14   owned and used QuickBooks Pro 2006 for Macintosh or QuickBooks New User Edition 2006 for

15   Macintosh (collectively, "QuickBooks Pro 2006 for Mac" or the "Software").  ¶¶ 1-3, 5.  Their

16   use of the Software is governed by the Agreement which covers not only the "Intuit computer

17   program," but also "any updates or maintenance releases thereto."  ¶ 72, Agreement at 1.[3]

18        The Agreement—which Plaintiffs acknowledged they entered into when they purchased

19   the Software (¶ 72)—contains three key limitations on Intuit's liability.  First, the Agreement

20   contains a "**DISCLAIMER OF WARRANTIES**" that provides the "SOFTWARE AND ANY

21   RELATED SERVICES OR CONTENT ACCESSIBLE THROUGH THE SOFTWARE" are

22   provided "AS-IS" and that Intuit does not warrant that "THE SOFTWARE OR ANY RELATED

23   SERVICES OR CONTENT IS FREE FROM BUGS, VIRUSES, ERRORS, OR OTHER

24   PROGRAM LIMITATIONS."   Agreement at 2-3.  Second, the Agreement provides a

25
26   [1]   The following facts are all taken from the Amended Complaint ("Complaint") filed by Plaintiffs on
         March 31, 2008, and are assumed to be true for purposes of this motion only.  All paragraph citations
         herein are to the Complaint unless otherwise noted.
27   [2]   Create-A-Card, Inc., is a corporation in New York, AGSJ, Inc., is a corporation in California, and
         Philanthropic Focus, LLC is a limited liability company in Florida. ¶¶ 1-3.
28   [3]   Plaintiffs attach a copy of the Agreement as Exhibit A to the Complaint.

FENWICK & WEST LLP
ATTORNEYS  AT LAW
MOUNTAIN  VIEW

"**LIMITATION OF LIABILITY AND DAMAGE**" provision which sets forth that Intuit's liability is limited to the price paid for the Software, and that Intuit would not be liable for any "INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES," "WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRRANTY" or "TORT (INCLUDING NEGLIGENCE)." *Id*. at 3. <u>Third</u>, the Agreement contains an exclusive limited remedy provision that provides Plaintiffs a 60-day return period for a full refund for the Software, no questions asked. *Id*. at 2.

QuickBooks Pro 2006 for Mac has a built-in automatic update mechanism that is activated when the program is opened by the user. ¶ 6. Upon launch, the Software automatically contacts Intuit's server through the Internet to download any updates that may be available. ¶ 6. On Saturday, December 15, 2007, a defect in the Software's auto-update mechanism (the "Software Bug") was triggered when Intuit's server failed to send the Software a proper signal. ¶ 7. This Software Bug resulted in the deletion of the files on the Mac desktops of users who opened the program. ¶ 7. Beginning on Sunday, December 16, 2007 at 1:40 a.m., postings were made to Intuit's online message board about the problem. ¶ 11. Less than 34 hours later, at approximately 10:00 a.m. PST on Monday, December 17, 2007, Intuit resolved the issue, stopping the data deletion. ¶ 7. In January 2008, the Software Bug was again triggered in the case of one user who had launched the Software at an Internet "wi-fi hotspot" when the Software did not receive a proper update response as a result of the hotspot's restricted access to the Internet. ¶¶ 8, 9. Intuit has sent a "patch" to its users to completely disable the Software's auto-update mechanism, and thus disabling the Software Bug therein. ¶ 7.

Plaintiffs, on behalf of the putative class, claim consequential and economic damages as a result of the deletion of their Mac desktop data, including the value of the lost data, data recovery costs, data replacement costs and lost time, resulting from the temporary or permanent loss of data. ¶¶ 16, 21, 23, 28, 37, 38, 39, 41, 60, and Prayer for Relief at ¶ 2. According to Plaintiffs, this lost data includes accounting and billing records, invoices, sales reports, customer files, working files, catalogs, forms, photographs, contracts and presentations. ¶¶ 10, 11, 19, 27, 34. Plaintiffs offer no explanation as to why the data could not be recovered or why the data was not

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    backed up.  Nor do Plaintiffs allege that any physical damage occurred to their computers or any

2    other tangible property, or that any person was physically harmed.  *See generally* Complaint.

3                                    **LEGAL STANDARD**

4           "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of

5    the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A

6    complaint must "contain either direct or inferential allegations respecting all the material

7    elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

8    *Twombly*, 127 S. Ct. 1955, 1969 (2007) (citation omitted).  "While a complaint attacked by a Rule

9    12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

10   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

11   and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations

12   must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65 (citations

13   omitted).  The factual allegations must include enough facts to state a claim that is "plausible on

14   its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 1966,

15   1975.  In ruling on Intuit's motion to dismiss, the court need not accept as true any allegations

16   that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.

17   *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Because Plaintiffs

18   have attached a copy of the Agreement as Exhibit A to the Complaint and incorporated it by

19   reference, the Court may properly consider it on this motion.  *See Hal Roach Studios, Inc. v.*

20   *Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

21                                        **ARGUMENT**

22          This case turns on the straightforward legal principle that Plaintiffs cannot seek relief that

23   they expressly waived by contract.  Plaintiffs allege that their use of the Software led to desktop

24   data deletion as a result of the Software Bug.  Yet Plaintiffs have conceded that their use of the

25   Software, including any updates or maintenance releases thereto, is governed by an express

26   written contract that they freely entered into with Intuit.  ¶ 72 & Ex. A.  This binding Agreement

27   outlines the terms and conditions of Plaintiffs' use of the Software and the parties' expectations of

28   the product, and expressly allocates the risks of the Software's use in order to establish the market

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  price for which the Software was paid.[4]

2      Because this case turns on the enforceability of the Agreement, Intuit first addresses the

3  sufficiency of Plaintiffs' contract and warranty claims and the impact of the Agreement's

4  consequential damages exclusion, and then turns to whether Plaintiffs can employ tort claims to

5  circumvent the Agreement's express terms.

6  **I.      PLAINTIFFS' CONTRACT CLAIMS FAIL BECAUSE THE SOFTWARE
         LICENSE AGREEMENT GOVERNS THE RELATIONSHIP BETWEEN THE**
7  **PARTIES AND BARS THE RELIEF REQUESTED IN THE COMPLAINT.**

8      Plaintiffs' Fourth Claim for Relief must fail because Plaintiffs fail to state a claim for

9  breach of contract.  Plaintiffs' Fifth Claim for Relief must fail because the valid and enforceable

10  Agreement precludes the breach of implied warranty claim.  As shown below, Plaintiffs' attempt

11  to invalidate three key provisions (the consequential damages exclusion, the warranty disclaimer

12  and the limited remedy) to escape their effect fails as a matter of law.

13      **A.      Plaintiffs' Fourth Claim For Breach of Contract Must Be Dismissed Because
             Plaintiffs Fail to Identify Any Act of Breach By Intuit.**
14

15      Plaintiffs' breach of contract claim fails at the outset for the simple reason that they never

16  allege what term(s) of the Agreement Intuit allegedly breached or how such breach purportedly

17  occurred.  To state a claim for breach of contract, a plaintiff must plead the existence of a valid

18  contract, performance of that contract by the plaintiff, defendant's breach, and damages.  *See*

19  *First Comm'l Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001); *Parrish v. Nat'l Football*

20  *League Players Assn.*, 2007 U.S. Dist. LEXIS 68355, at *27 (N.D. Cal. Sept. 6, 2007) (J. Alsup)

21  (granting motion to dismiss because plaintiffs "failed to plead what provisions defendants

22  breached").  When setting forth the particular obligations at issue, a bare allegation that defendant

23  "breached" or "violated" its contract is conclusory and cannot support a cause of action in the

24  absence of allegations of fact showing such violations.  *See, e.g.*, *Bentley v. Mountain*, 51 Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

[4]  Plaintiffs concede their assent to and the enforceability of the Agreement; they have submitted a copy of the Agreement and necessarily rely on it for their breach of contract claim.  Indeed, Plaintiffs could not challenge the Agreement's enforceability as it is a standard clickwrap agreement that is routinely enforced and upheld.  *See, e.g.*, *Cairo, Inc. v. Crossmedia Servs.*, 2005 U.S. Dist. LEXIS 8450, at *12-13 (N.D. Cal. Apr. 1, 2005); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007); *Hauenstein v. Softwraf Ltd.*, 2007 U.S. Dist. LEXIS 60618 (W.D. Wash. Aug. 17, 2007).

App. 2d 95, 98 (1942); 4 WITKIN, CAL. PROCEDURE § 495 (4th ed. 1997) ("The facts constituting the defendant's breach should be stated with certainty."); *see also San Chirico v. Merrill Lynch, Pierce, Fenner & Smith*, 1999 U.S. Dist. LEXIS 20180, at *3-4 (N.D. Cal. Dec. 13, 1999) (granting motion to dismiss for failure to identify provision allegedly breached).

Here, while Plaintiffs plead the existence of and attach a copy of the undisputed written Agreement, they allege only in the most conclusory fashion that "Intuit breached" it. ¶ 74. Plaintiffs fail to identify <u>which</u> express obligations are at issue or <u>how</u> Intuit breached them. Indeed, Plaintiff's sole allegation in support of this claim is that Intuit "breached" the Agreement by "providing defective software to Plaintiffs." ¶ 74. But the express terms of the written Agreement forbid such a finding. The Agreement states the Software is provided "AS-IS" and that Intuit "DOES NOT WARRANT THAT THE SOFTWARE OR ANY RELATED SERVICES OR CONTENT IS FREE FROM BUGS, VIRUSES, ERRORS, OR OTHER PROGRAM LIMITATIONS." Agreement at 2-3. Thus, by the Agreement's own unambiguous terms, <u>Intuit had no contractual obligation to provide Plaintiffs defect-free software</u>. To hold otherwise would invalidate the contract's express terms. *See, e.g.*, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (court need not accept as true allegations that contradict documents referred to in the complaint) (citation omitted). Because Plaintiffs never identify any contractual obligation that Intuit breached, much less how Intuit breached it, dismissal of the breach of contract claim is warranted. *See Bentley*, 51 Cal. App. 2d at 98; *Parrish*, 2007 U.S. LEXIS 68355, at *32-35.

    **B.**    **Plaintiffs' Fifth Claim For Relief For Breach of Implied Warranty Must Be Dismissed Because the Agreement Disclaimed All Implied Warranties.**

Plaintiffs' breach of implied warranty claim fails because the Agreement includes a conspicuous and valid warranty disclaimer that satisfies the requirements of California Commercial Code Section 2316. Indeed, in litigation pending against Intuit in this Court relating to another QuickBooks product, Judge Spero recently held, on a Rule 12(b)(6) motion to dismiss, that a virtually identical warranty disclaimer contained in the product's clickwrap agreement was both valid and conspicuous within the meaning of Section 2316 <u>as a matter of law</u>. *See Inter-*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  *Mark USA v. Intuit Inc.*, 2008 U.S. Dist. LEXIS 18834, at *23 (N.D. Cal. Feb. 27, 2008)

2  (granting motion to dismiss implied breach of warranty claim <u>without</u> leave to amend); *see also*

3  *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1372-1373 (9th Cir. 1978); *Graphic Arts*

4  *Sys. v. Scitex Am. Corp.*, 1993 U.S. Dist. LEXIS 21052, at *15-16 (C.D. Cal. May 25, 1993).

5          In California, the implied warranty of merchantability is effectively excluded where the

6  language of the disclaimer mentions merchantability and is conspicuous.  Cal. Comm. Code §

7  2316(2).  Additionally, all implied warranties of fitness are excluded when done by a conspicuous

8  writing.  *Id.*  A disclaimer is "conspicuous" if it is "so written, displayed, or presented that a

9  reasonable person against whom it is to operate ought to have noticed it."  *Id.* § 1201(b)(10). The

10 question of conspicuousness is a question for the court.  *Id.*  In making this determination, the

11 court must "review the conspicuousness of the disclaimer in the context of the entire contract, and

12 in light of the sophistication of the parties."[5]  *Inter-Mark USA*, 2008 U.S. Dist. LEXIS 18834, at

13 *22-23 (citations omitted) (observing that nothing in the allegations of the complaint suggested

14 that Inter-Mark, a business customer, was so unsophisticated that it would not have noticed the

15 disclaimer or appreciated its significance).

16         Intuit's disclaimer is a paradigm example of a "conspicuous" disclaimer under the

17 Commercial Code.  The Agreement states, in relevant part:

18         **DISCLAIMER OF WARRANTIES**. EXCEPT AS PROVIDED ABOVE, THIS
           SOFTWARE AND ANY RELATED SERVICES OR CONTENT ACCESSIBLE
19         THROUGH THE SOFTWARE ARE PROVIDED "AS-IS," AND TO THE MAXIMUM
           EXTENT PERMITTED BY APPLICABLE LAW, INTUIT DISCLAIMS ALL OTHER
20         REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, REGARDING
           THIS SOFTWARE, DISKS, RELATED MATERIALS AND ANY SUCH SERVICES
21         OR CONTENT, INCLUDING THEIR FITNESS FOR A PARTICULAR PURPOSE,
           THEIR MERCHANTABILITY, OR THEIR NONINFRINGEMENT. INTUIT DOES
22         NOT WARRANT THAT THE SOFTWARE OR ANY RELATED SERVICES OR
           CONTENT IS FREE FROM BUGS, VIRUSES, ERRORS, OR OTHER PROGRAM
23         LIMITATIONS…

24 Agreement at 2-3.  The disclaimer both mentions merchantability and is conspicuous, satisfying

25 the requirements of Section 2316.  The relevant portion of the Agreement has a bolded heading

26 ──────────────────
27 [5]    Plaintiffs Create-A-Card, Inc. and AGSJ, Inc. are corporations and Philanthropic Focus, LLC is a
         limited liability company, all of whom purchased and used accounting software specifically marketed
         to and designed to be used by small and mid-sized businesses.  ¶¶ 1-3, 5, 17, 25, 32.  Plaintiffs are not
28       naïve or unsophisticated individual consumers.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  (**DISCLAIMER OF WARRANTIES**) which is in all capitals, and the entire disclaimer is in all

2  capitals.  The preceding text is not in all capitals, and only one other provision is in all capitals,

3  serving to distinguish the disclaimer and calling special attention to it.  The disclaimer also

4  specifically excludes warranties of fitness for a particular purpose and merchantability, contains

5  "AS-IS" language which Section 2316(3)(a) states is <u>itself</u> sufficient to act as a disclaimer of all

6  implied warranties, and uses language which calls the buyer's attention to the exclusion of

7  warranties and makes plain that there is no implied warranty.  Cal. Comm. Code §§ 2316(2);

8  2316(3)(a).

9          Courts routinely enforce warranty disclaimers like this one on motions to dismiss.  *See,*

10  *e.g.*, *Inter-Mark USA*, 2008 U.S. Dist. LEXIS 18834, at *22-23; *Dart Energy Corp. v. Vogel*,

11  1991 U.S. Dist. LEXIS 10079, at *16-18 (W.D. Mich. Jul. 18, 1991) (applying identical Illinois

12  law, and dismissing breach of implied warranty claims where disclaimer satisfied statutory

13  requirements); *General Electric Capital Corp. v. Munson Marine*, *Inc.*, 1991 U.S. Dist. LEXIS

14  17227, at *8-10 (N.D. Ill., Nov. 20, 1991) (granting motion to dismiss under identical Illinois

15  law); *Furniture Consultants, Inc. v. Datatel Minicomputer Co.*, 1986 U.S. Dist. LEXIS 22978, at

16  *15 (S.D.N.Y. July 10, 1986) (software company's contract sufficiently set out its exclusion of all

17  implied warranties; implied warranty claims dismissed).

18          Here, Plaintiffs do not allege the warranty was inconspicuous.  Instead, they purport to

19  "invalidate" it with two bald legal conclusions.  First, Plaintiffs allege that the warranty

20  disclaimer (along with other contractual provisions they no longer wish to be bound by) is

21  "unconscionable" (¶ 77)—the same argument made by Inter-Mark, and rejected by Judge Spero.

22  *See Inter-Mark USA*, 2008 U.S. Dist. LEXIS 18834, at *7, 23.  However, as discussed in Part I.D,

23  *infra*, this conclusion contains no factual support and Plaintiffs plead nothing else to make this or

24  any other provision plausibly unconscionable in light of the written Agreement itself.  Second,

25  Plaintiffs conclusorily allege—with what appears to be incorrect boilerplate language—that the

26  provision "disclaiming warranties" failed of its essential purpose.  ¶ 74.  Intuit, however, is aware

27  of no California statute or case law that permits a Court to expunge a valid warranty <u>disclaimer</u>

28  because it fails of its essential purpose.  Regardless, to the extent that Plaintiffs are attempting to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   allege there was a failure of essential purpose of the <u>limited remedy</u> (which, as seen *infra*, Part

2   I.C., is not adequately pled) that allows them to invalidate the warranty disclaimer, this is not

3   permitted under the law. *See, e.g.*, *S.M. Wilson & Co.*, 587 F. 2d at 1374 (rejecting claim that

4   failure of limited remedy's essential purpose "sweep[s] away" the warranty disclaimer).

5           Here, the existence of the Agreement is undisputed, the precise disclaimer language is

6   before the Court, and Plaintiffs have not alleged a single fact to overcome the enforceability of

7   the disclaimer language at issue.  Thus, to the extent Plaintiffs seek recovery on any breach of

8   implied warranty theory, the Agreement precludes it, and thus the Fifth Claim for Relief should

9   be dismissed with prejudice. *See Inter-Mark USA*, 2008 U.S. Dist. LEXIS 18834, at *21-26.

10          **C.    The Agreement Bars Recovery of All Damages Alleged By Plaintiffs.**

11          Plaintiffs' damages claims should be dismissed on the independent ground that the

12  Agreement plainly and expressly bars the very type of damages Plaintiffs seek.  Section 2719 of

13  California's Commercial Code permits parties to agree on contractual limitations on damages.

14  *See* Cal. Comm. Code § 2719(1)(a) (allowing agreement to "limit or alter the measure of damages

15  recoverable…as by limiting the buyer's remedies to return of the goods and repayment of the

16  price or to repair and replacement of nonconforming goods or parts"); *id.* § 2719(3)

17  ("Consequential damages may be limited or excluded…"); *see also Nat'l Rural Telcoms.  Coop.*

18  *v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1048 (C.D. Cal. 2003 (noting limitation of liability

19  provisions "have long been recognized as valid in California.") (citations omitted).  Where losses

20  are commercial in nature and do not cause "injury to the person"—as is the case here[6]—

21  consequential damages limitations are <u>presumptively valid,</u> unless proven unconscionable.[7] *See*

22  Cal. Comm. Code § 2719(3); *Datalex Ltd. v. PSA, Inc.*, 2003 U.S. Dist. LEXIS 27563, at *8

23  (C.D. Cal. Jan. 30, 2003); *Office Supply Co., Inc. v. Basic/Four Corp.*, 538 F. Supp. 776, 788

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

[6]   Plaintiffs only seek consequential damages caused by the Software Bug. *See* ¶ 60 (asserting damages from loss of "business data and files," costs "to recover" lost data, and lost time to recover data); ¶ 75 (asserting entitlement to "all remedies available under the Commercial Code, including recovery of all consequential damages"); ¶ 79 (alleging "economic damages"); and Prayer for Relief at ¶ 2 (seeking "[c]ompensatory damages in an amount sufficient to compensate all Class members for lost data, and time and money spent attempting to recover lost data").
[7]   Although Plaintiffs also conclusorily allege the Agreement's limitation of liability provision is unconscionable, as discussed in Part I.D, *infra*, this legal conclusion is insufficient.

1   (E.D. Wisc. 1982) (holding exclusion of incidental and consequential damages presumptively

2   valid in commercial setting under California Commercial Code Section 2719(3)); *see also*

3   Official Comment to Section 2719(3) (allowing such contractual limitations for the "allocation of

4   <u>unknown or undeterminable</u> risks") (emphasis added).

5          Here, the Agreement includes such a permissible limitation on damages.  The provision,

6   entitled "**LIMITATION OF LIABILITY AND DAMAGE**," unambiguously states,

7          **LIMITATION OF LIABILITY AND DAMAGE**. THE ENTIRE LIABILITY OF
        INTUIT…FOR ANY REASON SHALL BE LIMITED TO THE AMOUNT PAID BY
8       THE CUSTOMER FOR THE SOFTWARE UNLESS OTHERWISE SEPARATELY
        AGREED. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW,
9       INTUIT…[IS] NOT LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR
        CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO: DAMAGES
10      FOR LOSS OF BUSINESS, LOSS OF PROFITS OR INVESTMENT, OR THE LIKE),
        WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY,
11      TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE,
        EVEN IF INTUIT OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE
12      POSSIBILITY OF SUCH DAMAGES, AND EVEN IF A REMEDY SET FORTH
        HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE…
13  Agreement at 3.  The Agreement goes even further to inform Plaintiffs that:

14      THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL
15      ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN INTUIT AND YOU.
        INTUIT WOULD NOT BE ABLE TO HAVE PROVIDED THIS SOFTWARE OR
16      SERVICES WITHOUT SUCH LIMITATIONS.

17  Agreement at 3.  The Agreement also includes a valid exclusive limited remedy provision that

18  provides that "Intuit's entire liability" and Plaintiffs' "exclusive remedy" would be the

19  replacement or return of the product for a full refund within 60 days of purchase.  Agreement at 2;

20  Cal. Comm. Code §§ 2719(1)(a),(b).  Commercial Code Section 2719(2) permits parties to

21  establish an exclusive remedy provided that remedy does not "fail of its essential purpose"—*i.e.*,

22  leave a party with no available remedy.  *Nat'l Rural Telcoms. Coop.*, 319 F. Supp. 2d at 1055

23  (question is whether party is deprived of its contractual remedy; an aggrieved party "must provide

24  [the other] a reasonable opportunity to carry out the exclusive or limited remedy before…

25  successfully [arguing] failure of essential purpose").  Under this rule, this remedy would "fail of

26  its essential purpose" if, for example, Intuit refused to or did not provide a timely refund.

27          Here, Plaintiffs seek to unilaterally throw out and invalidate the foregoing express

28  contractual terms by the sole assertion that "any provisions limiting remedies…have failed of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    their essential purpose" under Section 2719. ¶ 74. This vague, uncertain and utterly unsupported

2    allegation fails for at least four reasons. First, Plaintiffs do not even attempt to allege the

3    necessary facts to establish that the limited remedy provision failed its essential purpose—*e.g.*,

4    that Plaintiffs attempted to exercise the limited remedy or that Intuit refused to honor it. *See, e.g.*,

5    *Datalex Ltd.*, 2003 U.S. Dist. LEXIS 27563, at *9-10; *O'Neill v. United States*, 50 F.3d 677, 687

6    (9th Cir. 1995); *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 718 F.2d 936, 941

7    (2nd Cir. 1980) (applying California law); *Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F. Supp.

8    1196 (W.D. Pa. 1992).

9         Second, as pled by Plaintiffs, the allegation that the limited liability provision failed of its

10    essential purpose necessarily depends upon the sufficiency of their claim that Intuit breached the

11    Agreement. *See* ¶ 74 (alleging failure of essential purpose a <u>result</u> of Intuit's "breach" being

12    "total and fundamental"); *see also RRX Indus. v. Lab-Con, Inc.*, 772 F.2d 543, 547 n.4 (9th Cir.

13    1985) (holding that Section 2719(2) concerns the enforcement of a valid limited damages

14    provision <u>after breach</u>). However, as described in Part I.A., *supra*, Plaintiffs have not adequately

15    pled a breach of contract or any other default by Intuit. Thus, to the extent the breach of contract

16    claim fails, so must their assertion that the limited remedy provision failed its essential purpose as

17    a result of any such breach.

18         Third, Plaintiffs appear to bootstrap the invalidation of the consequential damages

19    exclusion to the purported failure of the limited remedy provision. *See* ¶ 75. This is contrary to

20    the law. *See S. M. Wilson & Co.*, 587 F.2d at 1375 (holding failure of limited warranty's essential

21    purpose under Section 2719(2) does not eliminate contractual bar to recovery of consequential

22    damages). Thus, the consequential damages exclusion remains enforceable irrespective of

23    whether the exclusive remedy is determined to have failed of its essential purpose. *See, e.g.*, *id.*

24    (holding buyer would only be entitled to recover the difference between value of what he should

25    have received and value of what he actually received);[8] *Patapsco Designs, Inc. v. Dominion*

---

[8]    Although the Ninth Circuit in *S.M. Wilson* held that a consequential damages bar would not "always"
survive when a limited remedy failed its essential purpose, such circumstances are rare and appear to
have arisen only when a <u>breach</u> by a party is "total" and "fundamental." *See* 587 F.2d at 1375; *RRX
Indus.*, 772 F.2d at 547. This is not the situation here—no breach has even been alleged, let alone any
that is "total" or "fundamental." *See generally* Complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   *Wireless, Inc*, 276 F. Supp. 2d 472 (D. Md. 2003) (granting motion to dismiss).[9]  The Agreement

2   itself specifically calls out this distinction.  *See* Agreement at 3 (limiting Intuit's liability to price

3   of software, even if remedy is found to have failed its essential purpose).

4          Finally, Plaintiffs allege that the extent of their damages is "so great" that it entitles them

5   to "all remedies available under the Commercial Code, including recovery of consequential

6   damages."  ¶ 75.  As emotionally compelling as this may be, this claim has no legal basis.  The

7   Ninth Circuit in *S.M. Wilson & Co.* expressly refused to weigh the magnitude of consequential

8   damages to determine whether or not the limited remedy failed of its essential purpose because of

9   the presence of a contractual exclusion of any liability for consequential damages.  587 F.2d at

10  1374-75.  Similarly here, because the Agreement contains a contractual exclusion of

11  consequential damages, Plaintiffs' asserted damages should not influence the Court's

12  determination of whether the limited remedy provision failed of its essential purpose.  For the

13  foregoing reasons, the Court should enforce the consequential damages provision and bar

14  Plaintiffs' damages claims.

15         **D.    Plaintiffs Fail to Allege Any Facts Supporting Their Conclusory Allegation
               that Any Contractual Provision Is Unconscionable.**

16

17         As noted above, Plaintiffs attempt to invalidate the express terms of the Agreement—

18  specifically the disclaimer of warranties, the consequential damages exclusion and the limited

19  remedy provision—by arguing each is "unconscionable."  ¶¶ 74, 77.  Yet Plaintiffs plead no <u>facts</u>

20  that could justify expunging any of these terms from the Agreement.  *See Jones v. Wells Fargo*

21  *Bank*, 112 Cal. App. 4th 1527, 1539-1540 (2003) (sustaining demurrer); *see also Freeman v. Wal-*

22  *Mart Stores, Inc.*, 111 Cal. App. 4th 660, 669-670 (2003) (same).

23         In order to establish unconscionability, Plaintiffs have the burden to demonstrate <u>both</u> a

24  procedural and substantive element.  *See Vance v. Villa Park Mobilehome Estates*, 36 Cal. App.

25  4th 698 (1995); *see also Castle & Cooke Madera, Inc. v. Mackenzie Patterson Fuller, Inc.*, 2006

26

27  [9]   In this case, Plaintiffs even allege that Intuit actually <u>cured</u> the defect when it subsequently sent the
         patch to its customers to disable the automatic update mechanism that contained the Software Bug.

28       ¶ 7.  Thus the Complaint does not even allege <u>any</u> benefit of the bargain—as reflected in the
         Agreement—that was lost by Plaintiffs.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   U.S. Dist. LEXIS 29960, at *16 (N.D. Cal. May 8, 2006) (J. Alsup).  Procedural

2   unconscionability focuses on oppression (inequality of bargaining power and absence of real

3   negotiation or meaningful choice on weaker party) and surprise (extent to which the terms are

4   hidden in a prolix printed form drafted by the party seeking to enforce them).  *See, e.g.*, *Vance*, 36

5   Cal. App. 4th at 709; *Nunes Turfgrass v. Vaughan-Jacklin Seed Co.*, 200 Cal. App. 3d 1518,

6   1534-35 (1998).  Substantive unconscionability has no precise definition but has generally been

7   characterized by California courts as when the disputed term is overly harsh or one-sided, shocks

8   the conscience, or has no justification at the time of the agreement.  *See id*.  Whether a contract

9   provision is unconscionable is a question of law to be decided by the court.  *See, e.g.*, *Vance*, 36

10  Cal. App. 4th at 709 n.6; *Schuman v. Ikon Office Solutions, Inc.*, 232 Fed. Appx. 659, 663 (9th

11  Cir. 2007).  Plaintiffs' allegations fail on both fronts.

12      First, Plaintiffs allege no facts to show <u>procedural</u> unconscionability.  Plaintiffs—all of

13  whom are commercial businesses that would routinely review contracts such as these—were

14  presented with the terms of use before using Intuit's software.  They certainly had a choice to use

15  the Software in accordance with the Agreement's terms or instead to use another software

16  program (or none at all) for their financial accounting needs.  There is no coercion alleged and in

17  fact, the Agreement expressly tells Plaintiffs that if they did not want to agree to its terms, they

18  could reject them and return the product for a full refund (or simply not use it).  Agreement at 1.

19  There is also no element of surprise present as the warranty disclaimer and provision limiting

20  Intuit's liability were clear, unambiguous, and conspicuous.  Their headings were presented in

21  bold all capitals, with the entire text in all capital letters.  The surrounding text is not in all

22  capitals, serving to distinguish the limitation of liability and calling special attention to it.[10]  *See*

23  *Greenbriar Homes Communities, Inc. v. Superior Court*, 117 Cal. App. 4th 337, 345 (2004) (no

24  element of surprise where provision clear, easily understood, and located where purchaser would

25  read it); *see also Inter-Mark USA*, 2008 U.S. Dist. LEXIS 18834, at *7, *24-25 (despite

26  unconscionability allegation, granting motion to dismiss breach of implied warranty claim

27

28  ─────────────
    [10]   Indeed, there is no requirement under California's Commercial Code that the limitation of liability
           provision be "conspicuous" as is required for the disclaimer of warranties.

1    without leave to amend where warranty disclaimer found valid and conspicuous and plaintiff

2    conceded existence of contract); *Doe v. SexSearch.com,* 502 F. Supp. 2d 719, 734-36 (N.D. Ohio

3    2007) (granting motion to dismiss upon finding no procedural unconscionability to invalidate

4    limitation of liability and warranty disclaimer in clickwrap agreement where terms were

5    sufficiently conspicuous); *Feldman*, 513 F. Supp. 2d at 240 (enforceable clickwrap agreement not

6    procedurally unconscionable).  Plaintiffs concede they accepted the Agreement and thus its terms.

7    The Agreement is enforceable and no facts indicate any procedural unconscionability here.

8            Second, Plaintiffs allege no facts to show <u>substantive</u> unconscionability.  There is nothing

9    inherently oppressive, overly harsh or one-sided about the limited remedy provision,

10   consequential damages exclusion or warranty disclaimer.  Indeed, such provisions are expressly

11   provided for under California's Commercial Code and have been routinely enforced.  *See supra*,

12   Parts I.B and I.C.  The California Legislature specifically contemplated that a consequential

13   damages exclusion allocates "unknown or undeterminable risks."  Official Comment to Section

14   2719(3).  As with any software vendor, Intuit relies on such terms—<u>which it specifically states is</u>

15   <u>a fundamental basis of the bargain struck with its customers</u>—so that it may provide the Software

16   and related services.  *See* Agreement at 3.  These provisions, particularly in the software industry,

17   represent a sensible mutual allocation of risk that has been upheld as not unconscionable by

18   courts.  *See Datalex Ltd.*, 2003 U.S. Dist. LEXIS 27563, at *8-9, *11-12 (upholding damages

19   limitation clause involving sale of software as not unconscionable and citing state authority in

20   accord); *cf. Jim Dan, Inc.*, 785 F. Supp. at 1200; *Metropolitan Prop. & Cas. Ins. Co. v. Budd*

21   *Morgan Cent. Station Alarm Co.*, 95 F. Supp. 2d 118, 121 (E.D.N.Y. 2000); *Jones*, 112 Cal. App.

22   4th at 1540.  Plaintiffs have not alleged a single fact that suggests any provision in the Agreement

23   is unconscionable.  Thus, any argument relying on the allegation that the Agreement's terms are

24   unconscionable should be disregarded.  *See Vance*, 36 Cal. App. 4th at 709-10 (sustaining

25   demurrer where plaintiff failed to allege procedural or substantive unconscionability in light of

26   written contract); *Jones*, 112 Cal. App. 4th at 1540 (same); *Patapsco Designs*, 276 F. Supp. 2d at

27   472 (finding no procedural or substantive unconscionability and granting motion to dismiss);

28   *SexSearch.com*, 502 F. Supp. 2d at 736 (finding on motion to dismiss limitation of liability clause

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys At Law
Mountain View

1  in clickwrap agreement commercially reasonable and not substantively unconscionable); *cf.*

2  *Carmack v. Chase Manhattan Bank (USA)*, 521 F. Supp. 2d 1017, 1024-25 (N.D. Cal. 2007)

3  (dismissing breach of contract claim where contract term not unconscionable) (J. Alsup).

4  Because Plaintiffs have not alleged any facts plausibly suggesting that the warranty disclaimer,

5  consequential damages exclusion or limited remedy is unconscionable, the Court should enforce

6  these provisions and dismiss Plaintiffs' claims.

7  **II.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED.**

8          Plaintiffs' tort claims also fail.  A contractual relationship exists between each Plaintiff

9  and Intuit as set forth in the Agreement.  Thus, under the economic loss doctrine, Plaintiffs cannot

10  recover in tort for damages resulting from an imperfect product because the damages alleged are

11  mere economic losses that did not result in physical injury to person or other property.  Moreover,

12  the negligence claim independently fails because the Agreement expressly precludes recovery for

13  damages in negligence.  The strict products liability claim also independently fails because there

14  is no allegation of any physical injury to person or property permitting the Court's imposition of

15  the doctrine.  Finally, the trespass to chattels claim fails because Plaintiffs consented to the

16  alleged incursion of which they complain.

17  **A.    The Economic Loss Doctrine Bars Plaintiffs' Claims For Negligence, Strict
         Products Liability, and Trespass To Chattels.**
18

19          Plaintiffs' negligence, strict products liability and trespass to chattels[11] claims are barred

20  because the only damages alleged in the Complaint are economic losses; no physical damage to

21  person or other property is alleged.  Under the economic loss doctrine, these tort claims must be

22  dismissed as a matter of law.  The economic loss doctrine limits Plaintiffs to contract claims:

23          If a plaintiff is in a contractual relationship with the manufacturer of a product, the
         plaintiff can sue in contract for the normal panoply of contract damages, including
24          foreseeable lost profits and other economic losses.  Whether or not the plaintiff is in a
         contractual relationship with the manufacturer, the plaintiff can sue the manufacturer in
25          tort only for damages <u>resulting from physical injury to persons or to property other than
         the product itself.</u>
26

27  [11]   To the extent that the trespass to chattels claim is solely based on the allegation that the Software was
       defective, it is essentially a products liability claim and should similarly be dismissed pursuant to the
28       economic loss doctrine.

1    *Giles v. v. GMAC*, 494 F.3d 865, 874 (9th Cir. 2007) (emphasis added).  "[T]he line between

2    physical injury to property and economic loss reflects the line of demarcation between tort theory

3    and contract theory."  *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d

4    289, 294 (1984).  Courts have drawn this line to prevent contract law and the U.C.C. from being

5    subsumed by tort law.  *Id*. at 298.  As Chief Justice Traynor of California Supreme Court

6    explained in the seminal case of *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965):

7
     The distinction that the law has drawn between tort recovery for physical injuries and
8    warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one
     plaintiff in having an accident causing physical injury.  The distinction rests, rather, on an
9    understanding of the nature of the responsibility a manufacturer must undertake in
     distributing his products.  He can appropriately be held liable for <u>physical injuries</u> caused
10   by defects by requiring his goods to match a standard of safety defined in terms of
     conditions that create unreasonable risks of harm.  He cannot be held for the level of
11   performance of his products in the consumer's business unless he agrees that the product
     was designed to meet the consumer's demands…[A consumer] can … be fairly charged
12   with the risk that the product will not match his economic expectations unless the
     manufacturer agrees that it will.  Even in actions for negligence, a manufacturer's liability
13   <u>is limited to damages for physical injuries and there is no recovery for economic loss
     alone</u>.

14   *Id*. (emphasis added).  In *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S.

15   858, 871 (1986), the United States Supreme Court recognized California's *Seely* decision as

16   embodying the leading American rule and rejected a negligence cause of action for damages

17   resulting from an improperly functioning product.  The Court held that "the injury suffered – the

18   failure of the product to function properly – is the essence of a warranty action, through which a

19   contracting party can seek to recoup the benefit of its bargain."  *Id*. at 868; *see also Sacramento*,

20   158 Cal. App. 3d at 298 (economic loss doctrine "is necessary so that the Uniform Commercial

21   Code, governing commercial transactions, is not completely subsumed by the law of tort").  Thus,

22   the economic loss doctrine polices the distinction between the different objectives that underlie

23   tort and contract:  contract remedies are intended to enforce the intentions of the parties and to

24   compensate the injured party, whereas tort remedies are intended to punish and deter the injuring

25   party and to vindicate social policy.  *Giles*, 494 F.3d at 872-877; *Freeman & Mills, Inc. v. Belcher*

26   *Oil Co.*, 11 Cal. 4th 85, 94 (1995) (contract/tort distinction necessary for commercial affairs).

27          Here, the Agreement—which expressly allocated the risk of any bugs in the Software—

28   governs the relationship between the parties.  No product (and certainly no software) is perfect.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    But, so long as it does not cause bodily injury or physical damage to other property, tort law does

2    not impose any obligation on the manufacturer.  Here, Plaintiffs allege only the following types of

3    damages as a result of the Software Bug:  (1) deletion and damage of files and data on Plaintiffs'

4    computer desktop (¶¶ 6-13, 19, 27, 34, 45, 59, 60, 74, 81, Prayer for Relief at ¶ 2); (2) costs to

5    recover lost data (¶¶ 16, 23, 28, 37, 38, 39, 60, Prayer for Relief at ¶ 2); (3) costs to replace lost

6    data (¶¶ 16, 21, 60); and (4) lost time (¶ 60).  There is no allegation that a single computer—much

7    less one of the Plaintiffs—suffered any physical damage whatsoever.  Because there is no

8    "physical" damage to any "other" property alleged, let alone any bodily injury, these simply are

9    damages not recoverable in tort because they are purely economic losses.

10    Economic injuries have been construed broadly as "damages for inadequate value, costs of

11    repair and replacement of the defective product or consequent loss of profits—without any claim

12    of personal injury or damages to other property." *Sacramento*, 158 Cal. App. 3d at 294; *see also*

13    *S.M. Wilson & Co.*, 587 F.2d at 1376 (costs of repair, lost profits, and damages to goods

14    themselves are all economic losses; buyer's remedy lies in U.C.C.); *Seely*, 63 Cal. 2d at 18-19

15    (only contract and warranty law govern the relationship between the buyer and seller of goods

16    where no bodily injury or damage to other property has occurred); *Standards Platforms v.*

17    *Document Imaging Sys. Corp.*, 1995 U.S. Dist. LEXIS 22238 at *7-8 (N.D. Cal. Nov. 15, 1995)

18    (following *Seely* and refusing to extend tort liability into realm of the U.C.C. while noting this

19    "preserves the sound policy reasons behind limiting recovery in commercial settings to the rights

20    and obligations negotiated by the parties").  The few published opinions addressing the economic

21    loss doctrine in the computer software context and deciding whether data loss constitutes physical

22    loss have uniformly held that data loss constitutes mere economic losses and not physical damage

23    to other property.  *See AOL v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459 (E.D. Va. 2002);

24    *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995); *Transport*

25    *Corp. of Am., Inc. v. IBM*, 30 F.3d 953 (8th Cir. 1994); *cf. Ward General Ins. Svs. v. The*

26    *Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2003); *Seagate Tech., Inc. v. St. Paul Fire*

27    *& Marine Ins. Co.*, 11 F. Supp. 2d 1150 (N.D. Cal. 1998).

28    In *AOL*, consumers sued AOL in a class action, claiming that the AOL 5.0 software

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    caused, *inter alia*, "the addition or alteration of hundreds of files on the users' systems." *Id.* at

2    463. The plaintiff class alleged that as a result of these effects, "their computers have suffered

3    damage and <u>an impairment to the integrity or availability of data</u>, software programs, operating

4    systems, and information contained in their computers." *Id.* at 464 (emphasis added). They

5    brought causes of action that included negligence, violation of various state consumer protection

6    acts, and unfair and deceptive acts and practices. *Id.* The court found the consumers had not

7    described any other property being physically damaged by AOL's software:

8         [C]omputer data, software and systems are not 'tangible' property….[they] are incapable
          of perception by any of the senses and are therefore intangible.

9              …

10        Finally, the allegations of harm to consumers' computers run squarely into the common
          law economic loss rule. At bottom, the underlying complaint alleges that AOL 5.0 is a
          defective component incorporated into a larger product, the consumers' computers. <u>Any</u>

11        <u>damages stemming from the loss of computer use are purely economic, do not constitute</u>
          <u>harm to property other than the integrated product, and are thus not recoverable under any</u>

12        <u>tort theory.</u>

13   *Id.* at 462 (emphases added). At least one California appellate court similarly held that data loss is

14   "intangible" and therefore cannot constitute "physical" loss:

15        We fail to see how *information, qua* information can be said to have a material existence,
          be formed out of tangible matter, or be perceptible to the sense of touch. To be sure,

16        information is stored in a physical medium, such as a magnetic disc or tape, or even as
          papers in three-ring binders or a file cabinet, but the information itself remains intangible.

17        Here, the loss suffered by plaintiff was a loss of information, i.e., the sequence of ones
          and zeroes stored by aligning small domains of magnetic material on the computer's hard

18        drive in a machine readable manner. Plaintiff did not lose the tangible material of the
          storage medium. Rather, plaintiff lost the stored *information*. The sequence of ones and

19        zeros can be altered, rearranged, or erased, without losing or damaging the tangible
          material of the storage medium.

20

21   *Ward General Ins. Svs.*, 114 Cal. App. 4th at 556 (2003) (concluding loss of data and consequent

22   economic loss no loss of or damage to tangible property) (emphases in original); *see also*

23   *Rockport Pharmacy, Inc.*, 53 F.3d at 198 ("We conclude…that such [data loss] represent nothing

24   more than 'commercial loss for inadequate value and consequent loss of profits.'"); *cf. Seagate*

25   *Tech.*, 11 F. Supp. 2d at 1155 (loss of customer information not physical injury).

26        Furthermore, the computer systems on which the software was installed and/or data

27   resides have been treated as a single integrated product in the application of the economic loss

28   doctrine. *See AOL*, 207 F. Supp. 2d at 462; *Transport Corp. of Am., Inc.*, 30 F.3d at 957

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

("damage to other components integrated into a single unit are not considered damage to <u>other</u> property for purposes of the economic loss doctrine") (emphasis added).  Because Plaintiffs have not established any physical harm to other property, and allege mere economic losses, the economic loss doctrine applies.  Their tort claims should be dismissed as a matter of law.

**B.    Plaintiffs' First Claim For Negligence Is Precluded By the Agreement.**

Plaintiffs' negligence claim fails for the independent reason that the Agreement explicitly disclaims damages arising out of negligence.  Agreement at 3; *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 956 (9th Cir. 1977) (enforcing contractual limitation on negligence where provision clearly expresses the intent to exclude such liability) (citations omitted); *Nunes Turfgrass v. Vaughan-Jacklin Seed Co., Inc.*, 200 Cal. App. 3d 1518, 1534 (1998) ("[A] contract exempting from liability for ordinary negligence is valid where no public interest is involved and where no statute expressly prohibits it") (citation omitted).  Because the Agreement unambiguously and clearly disclaims any damages arising out of negligence, Plaintiffs' First Cause of Action should be dismissed.

**C.    Plaintiffs' Second Cause of Action For Strict Products Liability Fails Because Plaintiffs Do Not Allege Any Physical Injury to Person or Property.**

Plaintiffs' strict products liability claim also fails because they do not plead any physical injury to person or property—an essential element of such a claim.  *See infra*, Part II.A.  In California, strict liability is imposed by courts when a product is in a defective condition that is unreasonably dangerous to the consumer or their property.  Here, there is no legal basis to impose strict liability because there has been no physical damage to person or property alleged; only purely economic losses.  *Id.*; *see also Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963); *Sacramento*, 158 Cal. App. 3d at 293 (imposing strict liability only where defect causes personal injury or physical damage to property); *Seely*, 63 Cal. 2d at 15 (history of strict liability in tort designed to govern "distinct problem of physical injuries").  Accordingly, the Second Cause of Action for strict products liability should be dismissed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**D.    Plaintiffs' Third Claim For Relief For Trespass To Chattels Must Be Dismissed Because Plaintiffs Expressly Consented to Receive Updates From Intuit and Voluntarily Installed the Software.**

Trespass to chattels, or the intentional and unauthorized interference with another's personal property, evolved from common law trespass claims.  *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 n.6 (1996); *see also* RESTATEMENT (SECOND) TORTS §§ 217 and 252 (1965).  To prevail, Plaintiffs must prove that Intuit, without consent or justification, intentionally interfered with the possession or physical condition of their personal property resulting in damage.  *See Itano v. Colonial Yacht Anchorage*, 267 Cal. App. 2d 84, 90 (1968).  Moreover, to prevail on a claim for trespass based on accessing a computer system, Plaintiffs must establish: (1) Intuit intentionally and <u>without authorization</u> interfered with their possessory interest in the system; and (2) Intuit's unauthorized use proximately resulted in damage to Plaintiffs.  *Ebay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1069-1070 (N.D. Cal. 2000).

Plaintiffs appear to allege two theories for its nebulous trespass claim:  (1) that Intuit's faulty update or signal committed the trespass; and/or that (2) Intuit's defective Software committed the trespass.[12]  Under either theory, Plaintiffs' claim fails as a matter of law.

Under the first theory, Plaintiffs' trespass claim fails because when Plaintiffs purchased and installed the Software, they consented to receive <u>any</u> software updates from Intuit—including the alleged incursion (the faulty update or signal).  *See* ¶ 72 (conceding purchase of "any 'updates or maintenance releases,' from Intuit"); Agreement at 1 (defining Software to include "any updates or maintenance releases thereto"); ¶ 69 (alleging defective Software allowed "faulty signal" to enter Plaintiffs' computers[13]).  Even if the update had the detrimental effect as alleged, there can be no trespass as it is axiomatic that "one who has…permission…is not a trespasser."  *Williams v. General Electric Credit Corp*., 159 Cal. App. 2d 527, 532 (1958); *see also Baugh v.*

---

[12]  Plaintiffs allege that Intuit "intentionally created computer codes that had the ability and purpose of entering users' computers." ¶ 68.  However, it is unclear from the Complaint whether trespass liability is premised on either the "faulty signal" that Intuit allegedly sent and/or the allegedly defective Software itself.  Indeed the trespass claim appears to be premised on the latter as Plaintiffs have alleged that the same "trespass"—*i.e.* desktop data deletion—occurred when the Software automatically searched for an update but did not receive a proper response at an Internet Wi-Fi hotspot (and thus wholly independent of any purported faulty signal sent by Intuit).  ¶ 8.

[13]  Although Plaintiffs conclusorily allege the signal entered "without permission," there are no facts supporting such an allegation and this claim contradicts the Agreement itself.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  *CBS, Inc.*, 828 F. Supp. 745, 757 (N.D. Cal. 1993) (even "[i]n a case where consent was

2  fraudulently induced, but consent was nonetheless given, plaintiff has no claim for trespass").

3  This also clearly distinguishes the instant case from other computer-related trespass claims where,

4  for example, the plaintiff was the recipient of unwanted mass emails, see *Intel Corp. v. Hamidi*,

5  30 Cal. 4th 1342 (2003), or the defendant hacked phone systems computers to gain access codes,

6  see *Thrifty-Tel*, 46 Cal. App. 4th at 1566-1567.

7          Plaintiffs' second theory similarly fails because no trespass can occur when the product

8  causing the harm—in this case, the defective Software—was purchased and installed by the

9  Plaintiffs.  *See* ¶ 72 (alleging purchase of Software); ¶ 6 (alleging Software "contain[ed] a defect

10  which is triggered when it searches for updates to download but does not receive the anticipated

11  response").  When a plaintiff owns the property causing the harm, there can be no trespass

12  because there is "no third party interference sufficient to sustain trespass liability."  *Fibreboard*

13  *Corp. v. Hartford Accident & Indemnity Co*., 16 Cal. App. 4th 492, 512 (1993) (rejecting trespass

14  claim premised on the "intrusion" into plaintiff's buildings by asbestos fibers contained in

15  defendant's products because title had already transferred to plaintiffs).  Similarly, in *County of*

16  *Santa Clara v. Atlantic Richfield Co*., the court, relying on *Fibreboard*, denied plaintiffs leave to

17  file an amended pleading alleging that the manufacturer defendant trespassed by selling or

18  encouraging the sale of lead paint that, over time, caused significant damage to property.  137

19  Cal. App. 4th 292, 314-315 (2006) (finding "[t]he flaw in the proposed trespass cause of action is

20  that plaintiffs' pleadings indisputably establish that the lead was placed on plaintiffs' property by

21  plaintiffs or with their consent").  That Plaintiffs did not "consent" to the resulting deletion of the

22  files is irrelevant.  *See Baugh*, 828 F. Supp. at 756-57 (dismissing trespass claim where plaintiff

23  consented to video crew's entry into her home but not their subsequent use of the footage shot).

24          Plaintiffs' rote recitation of their trespass to chattels claim cannot stand in light of their

25  admission that they purchased Software pursuant to the Agreement, and that their purchase

26  included their consent to receive all updates thereto (including the one that purportedly resulted in

27  the deletion of their desktop files).  *Id*. at 72; ¶¶ 69 and 70.  Accordingly, the trespass to chattels

28  claim should be dismissed.  *See Atlantic Richfield*, 137 Cal. App. 4th at 315.

1

2

**III.    PLAINTIFFS' SIXTH CLAIM FOR RELIEF UNDER SECTION 17200 OF CALIFORNIA'S UNFAIR COMPETITION LAW MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

3

The scope of Section 17200 is not unlimited; it only prohibits business practices that rise

4

to the level of "unlawful, unfair, or fraudulent" acts. Cal. Bus. & Prof. Code § 17200. Claims

5

must be pled "with reasonable particularity" or be dismissed. *Khoury v. Maly's of California,*

6

*Inc.*, 14 Cal. App. 4th 612, 619 (1993) (affirming demurrer for lack of reasonable particularity in

7

allegations of "unlawful, unfair or fraudulent business acts or practices"); *Brothers v. Hewlett-*

8

*Packard Co.*, 2006 U.S. Dist. LEXIS 82027, at *23-24 (N.D. Cal. Oct. 31, 2006) (granting

9

motion to dismiss for failure to allege the "particular statutory scheme that was violated").

10

Plaintiffs have failed to plead <u>any</u> violation of <u>any</u> statutory scheme. The Complaint

11

conclusorily states that "Intuit engaged in unfair business practices" without identifying which of

12

the three species of unfair competition are at issue. ¶ 81. Instead, Plaintiffs baldly repeat the

13

allegations underlying their other claims as the sole basis for the alleged violation of Section

14

17200. *See id.* However, Section 17200 "does not give a plaintiff license to 'plead around' the

15

absolute bars to relief contained in other possible causes of action by recasting those causes of

16

action as ones for unfair competition." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th

17

Cir. 2001) (following *Cel-Tech Comms. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163 (1999) and

18

affirming, in relevant part, summary judgment where plaintiff used Section 17200 to avoid

19

pleading and evidentiary problems with contract and tort claim); *see also Daly v. Viacom, Inc.*,

20

238 F. Supp. 2d 1118, 1126 (N.D. Cal. 2002) (granting motion to dismiss). None of Plaintiffs'

21

allegations give rise to any actionable business practices under Section 17200.

22

**A.    Plaintiffs Have Not Alleged Any "Unfair" Business Practices.**

23

Though Plaintiffs' sparse pleading renders it impossible to determine the nature of their

24

Section 17200 claim, it appears to be grounded in the unfairness prong. Even assuming for the

25

purpose of this motion that the facts alleged by Plaintiffs are true, Intuit's marketing, distribution,

26

and customer support for its QuickBooks products are not the type of "'unfair' business

27

practice[s] [that] offend[] an established public policy or…[are] immoral, unethical, oppressive,

28

unscrupulous, or substantially injurious to consumers." *South Bay Chevrolet v. GMAC*, 71 Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

App. 4th 861, 886-87 (1999).  California law on the requirements for establishing a business

practice as unfair in the consumer context is currently in flux.  *Lozano v. AT&T Wireless Servs.*,

504 F.3d 718, 736-37 (2007).[14]  However, courts in the Northern District routinely require that

unfairness in product liability cases must be "tethered to some legislatively declared policy."

*Churchill Village*, 169 F. Supp. 2d at 1130, *quoting Cel-Tech Comms.*, 20 Cal. 4th at 186.  As this

Court noted, in consumer actions, unless a plaintiff indicates a legislative policy is at issue, "the

courts will roam across the landscape of consumer transactions picking and choosing which they

like and which they dislike."  *Morris v. BMW of N. Am., LLC*, 2007 U.S. Dist. LEXIS 85513, at

*22 (N.D. Cal. Nov. 7, 2007) (J. Alsup); *Van Slyke*, 2007 U.S. Dist. LEXIS 82690, at *34.

Plaintiffs do not allege, nor can they, that Intuit's marketing, sales, updating, and customer

service of the Software interfere with any legislative policy.  Having failed to link the allegations

made in ¶ 81 of the Complaint to a statutory scheme, the Section 17200 claim premised on

unfairness fails to state a claim.  *See Buller*, 160 Cal. App. 4th at 991 (sustaining demurrer).

**B.      Plaintiffs Do Not Allege Any "Unlawful" or "Fraudulent" Business Practices.**

Plaintiffs make no attempt to claim that Intuit's business practices are unlawful.  Under

Section 17200 "[a]n unlawful business activity includes anything that can properly be called a

business practice and that at the same time is forbidden by law."  *Samura v. Kaiser Found. Health*

*Plan, Inc.*, 17 Cal. App. 4th 1284, 1292 (1993) (citations omitted).  To survive a motion to

dismiss, Plaintiffs "must identify the particular section of the statute that was allegedly violated,

and must describe with reasonable particularity the facts supporting the violation."  *Sonoma*

*Foods, Inc. v. Sonoma Cheese Factory, LLC*, 2007 U.S. Dist. LEXIS 56032, at *29 (N.D. Cal.

July 23, 2007) (dismissing unfair competition counter-claim insufficiently pleading unlawful

---

[14]   In 1999, the California Supreme Court rejected an older "balancing" test that weighed the "utility of the defendant's conduct…against the gravity of the harm to the alleged victim" in favor of one requiring that "the public policy triggering the violation must be tethered to a constitutional or statutory provision or a regulation carrying out statutory policy."  *Cel-Tech Comms.*, 20 Cal. 4th at 184-85.  Though *Cel-Tech*'s holding was limited to competition-based claims, the legislative policy approach has been adopted by many courts in consumer actions.  *See, e.g.*, *Van Slyke v. Captial One Bank*, 2007 U.S. Dist. LEXIS 64015, at *33-34 (N.D. Cal. Aug. 17, 2007) (J. Alsup) (consumer action); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008) (consumer action); *Churchill Village, LLC v. General Electric Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000) (applying standard in product defect case).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   conduct) (emphasis added).  Plaintiffs fail to do so here as they do not plead or identify any such

2   particular facts, let alone any statute Intuit purportedly violated.  Thus, to the extent the Section

3   17200 claim is premised on any purported "unlawful" business practice, it should be dismissed.[15]

4          Similarly, even the most liberal reading of Plaintiffs' unfair competition cause of action

5   cannot discern any allegation that Intuit acted in a fraudulent or deceptive manner.  *Perdue v.*

6   *Crocker Nat'l Bank*, 38 Cal. 3d 913, 930 (1985) (sustaining demurrer to Section 17200 claim

7   where plaintiff had not adequately alleged deceptive nature of conduct); *see also Brothers*, 2006

8   U.S. Dist. LEXIS 82027, at *23-24.  Even presuming that there is a nexus between this cause of

9   action and any purported deceitful act on the part of Intuit, as with all other unfair competition

10  claims, those predicated by "fraudulent" acts must be pled with particularity.  *See id.* at *20-22

11  (dismissing unfair competition claim premised in part on computer manufacturer's purported

12  fraudulent course of conduct for failing to meet Rule 9(b)'s heightened pleading standards).

13  Plaintiffs do not allege a single specific, or even conclusory, allegation that Intuit engaged in any

14  fraudulent or deceptive acts in their Complaint.  Thus, to the extent the Section 17200 claim is

15  premised on any purported "fraudulent" business practice, it should be dismissed.

16                                    **CONCLUSION**

17         For the foregoing reasons, Intuit respectfully requests the Complaint be dismissed in its

18  entirety.

19  Dated: April 17, 2008                      FENWICK & WEST LLP

20                                             By:        /s/ Rodger R. Cole
                                               _____
21                                                        Rodger R. Cole

22                                             Attorneys for Defendant INTUIT INC.

23  16319/40031/LIT/1283102.12

24  _____

25  [15]  The warranty and common law claims do not fill the gap because—even if assumed true—they are not
     "forbidden by law."  *See Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997) (rejecting
26   claim of "unlawful" conduct on ground that these torts do not, by themselves, describe acts or
     practices that are illegal or otherwise forbidden by law); *see also Hartless v. Clorox Co.*, 2007 U.S.
27   Dist. LEXIS 81686, at *17-18 (S.D. Cal. Nov. 2, 2007) (dismissing unfair competition "claim based
     on a common law products liability claim as a predicate act under the unlawful prong"); *Wang &*
28   *Wang LLP v. Banco Do Brasil, S.A.*, 2007 U.S. Dist. LEXIS 25813, at *12-13 (E.D. Cal. Mar. 26,
     2007) (dismissing Section 17200 claim).