RODGER R. COLE (CSB NO. 178865)
rcole@fenwick.com
SONGMEE CONNOLLY (CSB NO. 228555)
sconnolly@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:     (650) 988-8500
Facsimile:     (650) 938-5200

JENNIFER L. KELLY (CSB NO. 193416)
jkelly@fenwick.com
MARY E. MILIONIS (CSB NO. 238827)
mmilionis@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     (415) 875-2300
Facsimile:     (415) 281-1350

Attorneys for Defendant
INTUIT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CREATE-A-CARD, INC.; AGSJ, INC.; and PHILANTHROPIC FOCUS, LLC, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTUIT INC.,<br><br>    Defendant. | Case No. CV 07-06452 WHA<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT INTUIT INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date: August 7, 2008<br>Time: 8:00 a.m.<br>Dept.: Courtroom 9, 19th Floor<br>Judge: The Honorable William H. Alsup |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

Page #

INTRODUCTION ................................................................................................................ 1

I. THE CONTRACT CLAIMS MUST BE DISMISSED ..................................................... 1

    A. Plaintiffs Cannot State A Claim for Breach of Contract.............................…...1

        1. Intuit's Delivery of Allegedly Defective Software Is Not a Breach..........1

        2. Disablement of the Automatic Update Mechanism Is Not A Breach.........2

    B. The Breach of Implied Warranty Claim Should Be Dismissed
       With Prejudice.............................................................................…...3

        1. No Allegations Support Plaintiffs' Argument That the Warranty
           Disclaimer Is Unenforceable or Unconscionable.............................…......3

           a. Enforceability of This Standard Click Wrap Is Conceded...............4

           b. Plaintiffs Cannot Establish Procedural Unconscionability............4

           c. Plaintiffs Cannot Establish Substantive Unconscionability...........6

        2. The Court Can Enforce the Disclaimer On This Motion......….........…....7

    C. The Limited Remedy Did Not Fail of Its Essential Purpose......…...............…7

    D. The Consequential Damages Limitation is Enforceable. .........................9

II. THE TORT CLAIMS MUST BE DISMISSED..................... ................................10

    A. The Economic Loss Doctrine Bars Plaintiffs' Tort Claims. ....................10

    B. Plaintiffs Consented To the Alleged Trespass. ......................................13

III. THE UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED. ............. ....... .....13

CONCLUSION...................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

Page #

## CASES

*Adobe Sys. v. Stargate Software, Inc.*,
  216 F. Supp.2d 1051 (N.D. Cal. 2002) ................................................................. 5

*Airlift Int'l, Inc. v. McDonnell Douglas*,
  685 F.2d 267 (9th Cir. 1982)................................................................................. 8

*AOL v. LCGM*,
  46 F. Supp. 2d at 444 ........................................................................... 10, 11, 13

*AOL v. St. Paul Mercury Ins.*,
  207 F. Supp. 2d 459 (E.D. Va. 2002) ............................................................. 11, 12

*Appalachian Ins. v. McDonnell Douglas*,
  214 Cal. App. 3d 1, 26 (1989)...................................................................... 3, 6, 7

*Arkwright-Boston Mfrs. Mut. Ins. v. Westinghouse Elec.*,
  844 F.2d 1174 (5th Cir. 1988) ............................................................................. 8

*Armendariz v. Found. Health Psychcare Servs.*,
  24 Cal. 4th 83 (2000) .......................................................................................... 6

*Bardin v. DaimlerChrysler*,
  136 Cal. App. 4th 1255 (2006)........................................................................... 14

*Boston Helicopter Charter v. Augusta Aviation*,
  767 F. Supp. 363 (D. Mass. 1991) ........................................................................ 8

*Buller v. Sutter Health*,
  160 Cal. App. 4th 981 (2008).............................................................................. 14

*Cal. Grocers Ass'n v. Bank of Am.*,
  22 Cal. App. 4th 205, 214 (1994) ......................................................................... 6

*Coast Plaza Drs. Hosp. v. Blue Cross*,
  83 Cal. App. 4th 677 (2000)................................................................................. 6

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
  35 Cal. 3d 197 (1983) ........................................................................................ 15

*CompuServe v. Cyber Promotions*,
  962 F. Supp. 1015 (S.D. Ohio 1997).......................................................... 10, 11, 13

*County of Santa Clara v. Atlantic Richfield Co.*,
  137 Cal. App. 4th 292 (2006) ............................................................................. 13

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
  479 F. 3d 1099 (9th Cir. 2007).......................................................................... 15

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ............................................................... 14

*Dean Witter Reynolds v. Superior Court*,
  211 Cal. App. 3d 758 (1989)................................................................................. 6

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) ........................................................................................ 6

*Doe v. SexSearch.com*,
  502 F. Supp. 2d 719 (N.D. Ohio 2007)................................................................ 6, 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Dorman v. Int'l Harvester Co.,*
   46 Cal. App. 3d 11 (1975)................................................................................5

*Feldman v. Google,*
   513 F. Supp. 2d 229 (E.D. Pa. 2007)..........................................................4, 6

*Fibreboard Corp. v. Hartford Accident & Indem. Co.,*
   16 Cal. App. 4th 492 (1993)..........................................................................13

*Giles v. GMAC,*
   494 F.3d 865 (9th Cir. 2007).........................................................................10

*Glenn K. Jackson, Inc. v. Roe,*
   273 F.3d 1192 (9th Cir. 2001)........................................................................14

*Hart Eng'g Co. v. FMC,*
   593 F. Supp. 1471 (D. R.I. 1984).....................................................................8

*Hartless v. Clorox Co.,*
   2007 U.S. Dist. LEXIS 8168 (S.D. Cal. Nov. 2, 2007) ................................15

*Hull v. D & J Sports, Inc.,*
   2004 U.S. Dist. LEXIS 15798 (N.D. Cal. 2004)...........................................15

*Info. Handling Servs. v. LRP Publs., Inc.,*
   2000 U.S. Dist. LEXIS 14531 (E.D. Pa. Sept. 20, 2000) ...............................5

*Intel v. Hamidi,*
   30 Cal. 4th 1342 (2003) ...........................................................................10, 11

*Inter-Mark USA v. Intuit Inc.,*
   2008 U.S. Dist. LEXIS 18834 (N.D. Cal. Feb. 27, 2008)...........................3, 4

*Jimenez v. Superior Court,*
   29 Cal. 4th 473 (2002) ...................................................................................12

*Johnson v. Mammoth Recreations,*
   975 F.2d 604 (9th Cir. 1992)..........................................................................15

*KB Home v. Superior Court,*
   112 Cal. App. 4th 1076 (2002)........................................................................12

*Klein v. Earth Elements, Inc.,*
   59 Cal. App. 4th 965 (1997)...........................................................................14

*Korea Supply Co. v. Lockheed Martin,*
   29 Cal. 4th 1134 (2003) .................................................................................15

*Lee v. Gen. Nutrition Cos.,*
   2001 U.S. Dist. LEXIS 24739 (C.D. Cal. Nov. 21, 2001) ............................14

*M.A. Mortenson v. Timberline Software,*
   140 Wn.2d 568 (2000) ...................................................................................10

*Meridian Project Sys. v. Hardin Constr. Co.,*
   426 F. Supp. 2d 1101 (E.D. Cal. 2006)...........................................................5

*Nagrampa v. MailCoups, Inc.,*
   469 F.3d 1257 (9th Cir. 2006).........................................................................6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   319 F. Supp. 2d 1059 (C.D. Cal. 2003)..........................................................14

*O'Neill v. United States,*
   50 F.3d 677 (9th Cir. 1995)..........................................................................6, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Omstead v. Dell,*
   533 F. Supp. 2d 1012 (N.D. Cal. 2008) ...................................................6

*Parrish v. NFL Players Ass'n.,*
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ...................................................2

*Rockport Pharmacy v. Digital Simplistics,*
   53 F.3d 195, 198 (8th Cir. 1995)............................................................11

*S.M. Wilson & Co. v. Smith Int'l.,*
   587 F.2d 1363 (9th Cir. 1978)............................................................8, 9

*Salyards v. Metso Minerals Tampere OY,*
   2005 U.S. Dist. LEXIS 29360 (E.D. Cal. Nov. 10, 2005) ...................3

*Samura v. Kaiser Health Plan, Inc.,*
   17 Cal. App. 4th 1284 (1993) ................................................................14

*San Chirico v. Merrill Lynch,*
   1999 U.S. Dist. LEXIS 20180 (N.D. Cal. Dec. 13, 1999). ...................2

*Seagate Tech. v. St. Paul Fire & Marine Ins.,*
   11 F. Supp. 2d 1150 (N.D. Cal. 1998) ...............................................11

*Shroyer v. New Cingular Wireless Servs.,*
   498 F.3d 976 (9th Cir. 2007)...................................................................6

*Silicon Knights Inc. v. Crystal Dynamics, Inc.,*
   983 F. Supp. 1303 (N.D. Cal. 1997) .....................................................15

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,*
   2007 U.S. Dist. LEXIS 56032 (N.D. Cal. July 23, 2007) .................14

*Teknekron Cust. Info. Solutions v. Watkins Motor Lines, Inc.,*
   1994 U.S. Dist. LEXIS 21462 (N.D. Cal. Jan. 5, 1994) .....................7

*Tokio Marine & Fire Ins. v. McDonnell Douglas,*
   617 F.2d 936 (2d Cir. 1980) ...................................................................8

*Transport v. IBM,*
   30 F.3d 953 (8th Cir. 1994)...................................................................12

*United States v. Imperial Irrigation Dist.,*
   799 F. Supp. 1052 (S.D. Cal. 1992) .....................................................13

*Van Slyke v. Capital One Bank,*
   2007 U.S. Dist. LEXIS 82690 (N.D. Cal. Nov. 7, 2007) ..............14, 15

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ..............................................................15

*W. Emulsions, Inc. v. BASF Corp.,*
   2006 U.S. Dist. LEXIS 96439 (C.D. Cal. Apr. 27, 2006)................5, 7

*Wang & Wang v. Banco Do Brasil, S.A.,*
   2007 U.S. Dist. LEXIS 25813 (E.D. Cal. March 26, 2007).................14

*Ward General Ins. Servs. v. Employers Fire Ins.,*
   114 Cal. App. 4th 548 (2003) ...............................................................11

*Warren v. Fox Family Worldwide, Inc.,*
   328 F. 3d 1136 (9th Cir. 2003)................................................................2

*Williams v. General Electric Credit Corp.,*
   159 Cal. App. 2d 527 (1958) ................................................................13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

*Wisc. Power & Light Co. v. Westinghouse Elec.*,
    830 F.2d 1405 (7th Cir. 1987)..............................................................................8

2

3

## STATUTES

Cal. Civil Code § 1670.5(a) .....................................................................................6

Cal. Civil Code § 1761(d) .......................................................................................14

Cal. Comm. Code § 1201(b)(10)..............................................................................3

Cal. Comm. Code § 2301 ........................................................................................14

Cal. Comm. Code §§ 2314 ........................................................................................2

Cal. Comm. Code § 2316 ..........................................................................................3

CLRA § 1770(a)(7) ................................................................................................14

4

5

6

7

8

9

10

## OTHER AUTHORITIES

Jonathan Eddy, *On the "Essential" Purposes of Limited Remedies: The
    Metaphysics of the UCC Section 2-719(2)*,
    65 CAL. L. REV. 28 (1977) ....................................................................................8

11

12

## RULES

Federal Rules of Civil Procedure, Rule 9(b) ...........................................................15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**INTRODUCTION**

Plaintiffs concede an enforceable contract exists.  In fact, they sued Intuit on it and submitted it to the Court with their Amended Complaint ("AC").  Now realizing that both this contract and the governing law bar the recovery they seek, Plaintiffs seek to save their contract claims from dismissal by expunging certain provisions of the Agreement through *post hoc* "unconscionability" fiction.  However, the AC has no allegations warranting the Court's reversal of the risk allocation already established by the Agreement.  Indeed, ***not a single allegation*** supports counsel's argument that the warranty disclaimer, return or replacement remedy, or consequential damages limitation in this standard enforceable click wrap agreement are unconscionable or unenforceable.  Because Plaintiffs have not even identified a single fact they ***could*** allege in support of these arguments, dismissal of these claims with prejudice is appropriate.

Nor can Plaintiffs do anything to save their tort claims.  The damages they seek are purely economic losses that are not recoverable in tort, no matter how "unfair" that may seem.  Nor have Plaintiffs—or could Plaintiffs—alleged the basic facts necessary to state claims for trespass to chattels and violation of section 17200.  These claims should be dismissed with prejudice as well.

## I.    THE CONTRACT CLAIMS MUST BE DISMISSED.

### A.    Plaintiffs Cannot State A Claim for Breach of Contract.

What contractual obligation did Intuit breach?  Plaintiffs cannot answer this threshold question.  Instead, they dodge it with two arguments:  (1) Intuit delivered a program with a "defect" (Opp. at 7:3-5; 7:10; 8:4-5); and (2) Intuit disabled the Software's automatic update mechanism (Opp. 7:5-9).  Neither argument shows Intuit breached any contractual obligation.

#### 1.    Intuit's Delivery of Allegedly Defective Software Is Not a Breach.

Mere recitation that Intuit "breached" by providing defective software is insufficient.[1]  This

---

[1]  Plaintiffs' claim that the AC need only put Intuit on notice of their claims misstates the law.  *See* Opp. 6:22-27; 6:4-6 (improperly relying on "no set of facts" language of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected the then prevailing formulation of the "no set of facts" standard articulated in *Conley*.  *Id.* at 1968-69.  Rule 8 requires "enough facts to state a claim to relief that is plausible on its face" and Plaintiffs' obligation to provide the grounds of entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted).  Plaintiffs do not meet this standard here because they do not allege any contractual provision Intuit allegedly breached.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    is because Plaintiffs have not identified any contractual provision from which the alleged

2    obligation (here, to provide defect-free software) arose, as they are required to do. *See Parrish v.*

3    *NFL Players Ass'n.*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) (J. Alsup); *San Chirico v.*

4    *Merrill Lynch*, 1999 U.S. Dist. LEXIS 20180, at *3-4 (N.D. Cal. Dec. 13, 1999).[2] This failure is

5    not surprising, since the Agreement actually states the opposite: that ***Intuit had no obligation to***

6    ***provide Plaintiffs defect-free software***. Agreement at 2; MTD 7:9-17 (Software provided "AS-

7    IS"). The Agreement contradicts and trumps Plaintiffs' conclusory allegation of breach. *See*

8    *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003).[3]

9              **2.    Disablement of the Automatic Update Mechanism Is Not A Breach.**

10             In a futile attempt to save the claim, Plaintiffs advance an entirely new theory of breach:

11   that Intuit disabled the Software's "ability to receive updates" in violation of a purported "express

12   promise to provide the software and 'any updates thereto.'" Opp. 7:8-10 (citing Agreement at 1).

13   As an initial matter, this is not pled in the AC and cannot be considered on this motion. *See*

14   *Parrish*, 2007 U.S. Dist. LEXIS 68355, at *9. Even if it could, this theory cannot withstand

15   scrutiny. First, Plaintiffs once again fail to identify any provision in the contract obligating—as

16   opposed to allowing—Intuit to send updates or provide a program capable of receiving them. The

17   referenced clause merely defines "Software" as including "any updates or maintenance releases

18   thereto" (and Plaintiffs thereby concede the Agreement governs the alleged bug at issue). There is

19   no promise to deliver updates; rather, an express Sunset Policy reserves Intuit's right "to

20   ***discontinue*** all support for the Software, and/or for ***any features, services or content accessible***

21   ***through the Software***." *Id.* at 2 (emphases added). Reading the term suggested by Plaintiffs into

22   [2] Plaintiffs' attempt to distinguish *Parrish* and *San Chirico* fails. Opp. 7:11-8:1 (arguing both cases
     inapplicable as they only address threshold issue of contract's existence). In both cases, the courts did find

23   the complaints failed to establish the existence of a contract—one necessary element for the claim. *See*
     *Parrish*, 534 F. Supp. 2d at 1094; *San Chirico*, 1999 U.S. Dist. LEXIS 20180, at *4-5. But both courts also

24   noted ***another*** element—breach—had not been adequately pled because of the failure to specify the
     contractual provision at issue—an independent reason to dismiss the claim. *See Parrish*, 534 F. Supp. 2d at

25   1096; *San Chirico*, 1999 U.S. Dist. LEXIS 20180, at *4-5.
     [3] Plaintiffs' inability to identify any specific obligation breached highlights that their contract claim is just

26   duplicative of their warranty claim. *Compare* Opp. 7:9-10 (complaining of Intuit's failure to deliver
     "merchantable" or "fit" software) *with* Cal. Comm. Code §§ 2314(1) (2)(d)(c) (establishing "Implied

27   Warranty of Merchantability" and defining "merchantability" as meaning goods must "run" and be "fit for
     the ordinary purposes" for which they are used"). This claim should therefore be dismissed for the same

28   reasons the warranty claim should be dismissed, as seen in Part I.B.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    the contract would thus contradict its express terms.  Second, Plaintiffs plead no resulting

2    damages.  The only damages alleged in the AC (deletion of desktop data) stem from the alleged

3    defect.  None are associated with the disablement of the auto-update mechanism.  AC ¶¶ 71-75.

4         Plaintiffs' failure to identify any contractual obligation Intuit allegedly breached mandates

5    dismissal of their breach of contract claim.

6    **B.    The Breach of Implied Warranty Claim Should Be Dismissed With Prejudice.**

7         Plaintiffs concede by their silence that the warranty disclaimer satisfies the "conspicuous"

8    requirement of Cal. Comm. Code Section 2316.  *See* MTD 8:5-9:17.  This Court should thus find

9    Intuit's disclaimer of warranties "conspicuous" as a matter of law, and any implied warranties

10   properly disclaimed.  *See id.*; Cal. Comm. Code § 1201(b)(10); *Inter-Mark USA v. Intuit Inc.*, 2008

11   U.S. Dist. LEXIS 18834, at *23-25 (N.D. Cal. Feb. 27, 2008).  Plaintiffs instead challenge the

12   disclaimer on the grounds that: (1) they could allege facts demonstrating unconscionability (Opp.

13   9:1-11:6); and (2) enforceability cannot be decided on this motion (Opp. 8:13-28).[4]  Neither

14   provides a basis for the Court to deny Intuit's motion.

15        **1.    No Allegations Support Plaintiffs' Argument That the Warranty
            Disclaimer Is Unenforceable or Unconscionable.**

16

17        Not a single fact alleged in the AC supports Plaintiffs' bald contention that the disclaimer

18   is unconscionable or unenforceable.  Not one.  Instead, they simply argue that it is, based on facts

19   they have not alleged (or even represented that they could allege).  But even if these "allegations"

20   could be considered, they would not invalidate the disclaimer that is fatal to their warranty claim.

21

22   [4] Plaintiffs also argue enforcement would undermine legislative intent (Opp. 12:7-23), but this has no legal
     support. A later occurrence of the allocated risk is not the "surprise" Section 2316 seeks to prevent.  Opp.

23   15:22.  Rather, Section 2316 seeks to prevent surprise in the context of the transaction itself (hence, the
     conspicuousness requirement). The only case cited by Plaintiffs, *Salyards v. Metso Minerals Tampere OY*,

24   2005 U.S. Dist. LEXIS 29360 (E.D. Cal. Nov. 10, 2005) is in accord—it required a disclaimer in a contract
     with the end user (not merely the distributor) to prevent surprise. Because the disclaimer here is conceded

25   as conspicuous, Plaintiffs have not and cannot allege they experienced surprise.  Moreover, enforcing the
     disclaimer would be consistent with legislative intent because such conspicuous disclaimers are expressly

26   authorized.  *See Appalachian Ins. v. McDonnell Douglas*, 214 Cal. App. 3d 1, 26 (1989) (rejecting
     unconscionability argument and enforcing disclaimer where $105 million loss at issue; "Warranty

27   disclaimers…are specifically authorized by the [Code]…and the Supreme Court has held 'no public policy
     opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk

28   which the law would otherwise have placed upon the other party.'").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### a.    Enforceability of This Standard Click Wrap Is Conceded.

At the most basic level, Plaintiffs' theory that the Agreement as a whole is procedurally unconscionable cannot be reconciled with their position that there is an enforceable Agreement between the parties. *See* Ex. A to AC; Opp. 7:1; 8:2 (contract "undisputed"). Plaintiffs cannot have it both ways—either there is an enforceable contract, or there is not. If Plaintiffs want to affirm the contract and sue on it, as they clearly did, they cannot simultaneously complain it is unenforceable because it is unconscionable—especially when no facts are pled in support of such theory. *Inter-Mark*, 2008 U.S. Dist. LEXIS 18834, at *23-25 (near identical click wrap enforceable where no allegations suggesting otherwise and plaintiff conceded valid agreement).

Plaintiffs also cannot dispute that before use the Software requires all users to review the Agreement and click on a button manifesting assent to its terms—a standard "click wrap" agreement. *See* MTD 6 n.4 (citing cases); *cf.* Agreement at 1 ("using the Software indicates that you have read and understand this Agreement and accept its terms and conditions"). Here, Plaintiffs undisputedly used the Software and thus necessarily agreed to accept the Agreement's terms as a condition of such use.[5] They are bound by them. *See Feldman*, 513 F. Supp. 2d at 236 ("[F]ailure to read an enforceable click wrap agreement, as with any binding contract, will not excuse compliance with its terms.") This is significant as ***none*** of the cases cited by Plaintiffs for their unconscionability arguments arise in the context of enforceable click wrap agreements.

### b.    Plaintiffs Cannot Establish Procedural Unconscionability.

Plaintiffs' argument that "surprise" is present because they received the Agreement after purchase (a fact not alleged in the AC) misses the mark as a matter of law. Opp. 10:7-25 n.3; 16:22-17:1. "Surprise" concerns the extent to which terms are hidden in a lengthy printed form. *See* MTD 14:3-6 (citing cases). Plaintiffs do not complain ***how*** the terms were actually presented to them,[6] only ***when*** they received them. But this argument relates to whether a contract was

---

[5]  Plaintiffs concede click wraps—like the one at issue here—are enforceable. *See, e.g., Feldman v. Google*, 513 F. Supp. 2d 229, 237-38 (E.D. Pa. 2007) (click wraps enforceable where reasonable notice provided and manifestation of assent prior to use required); *Inter-Mark*, 2008 U.S. Dist. LEXIS 18834, at *23-25 (enforceable click wrap where no evidence online version different than written version submitted to court).
[6]  There is no complaint about font size, style or how the contract was presented online, or where terms appeared; this is because all terms were presented clearly and conspicuously. MTD 3:16-4:7; 14:12-15:6.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  formed in the first instance (a conceded issue), not the type of "surprise" to establish procedural

2  unconscionability. *See ProCD v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (acceptance of terms

3  after purchase constitutes enforceable agreement).[7]  Plaintiffs' reliance on *Dorman v. Int'l*

4  *Harvester Co.*, 46 Cal. App. 3d 11 (1975), and *W. Emulsions, Inc. v. BASF Corp.*, 2006 U.S. Dist.

5  LEXIS 96439 (C.D. Cal. Apr. 27, 2006), is unavailing.  The *Dorman* court declined to consider

6  unconscionability, and held the limitation of warranties and damages (provided on the reverse side

7  of a purchase order separate and after the contract was executed) not ***conspicuous***, and thus not

8  binding.  *W. Emulsions* (relying solely on *Dorman*) found a disclaimer not ***conspicuous*** because it

9  did not mention "merchantability" and materials with the disclaimer were provided separately after

10  agreement and purchase.  Neither addresses unconscionability.  Neither concern a click wrap or

11  shrink wrap license.  Here, an enforceable click wrap and a conspicuous disclaimer are conceded.

12  Plaintiffs do not dispute that the Agreement was presented to, and accepted by, the user as it

13  appears before the Court.  There is thus no basis to find any "surprise" here.

14      Plaintiffs' argument that the Agreement is "adhesive" likewise fails.  Opp. 9:22-10:6;

15  11:16-18; 14:20-25; 16:22-23.  Indeed, it flies in the face of the Agreement, which specifically

16  provides that users could negotiate different terms if unsatisfied with the proposed terms:

17      This Agreement shall govern any services or content related to the Software, ***unless such
        services or content are subject to a separate written agreement between you and Intuit or***
18      ***its Representatives***.  However, the limitations of liability and disclaimer of warranties in
        this Agreement shall apply to Intuit and its Representatives with respect to such content or
19      services ***except to the extent provided otherwise in a separate written agreement approved
        by Intuit between you and Intuit or the applicable Representatives***.
20
21  Agreement at 4 (emphases added).  Plaintiffs paid a certain price for the Software subject to

22  Intuit's proposed terms of use.  If they did not want to accept them, they could have returned the

23  Software, negotiated more favorable terms, or paid a higher price for another product that came

24  with an express warranty.  There is nothing oppressive about this standard click wrap license.

---

[7]  The rationale in *ProCD* has been followed by a majority of courts, including those within this circuit.  *See
Meridian Project Sys. v. Hardin Constr. Co.*, 426 F. Supp. 2d 1101, 1107 (E.D. Cal. 2006) (finding *ProCD*
rationale and policy considerations for software industry "compelling" and holding software EULA
received after purchase not "unconscionable…or a contract of adhesion"); *Adobe Sys. v. Stargate Software,
Inc.*, 216 F. Supp. 2d 1051, 1060 (N.D. Cal. 2002) (upholding EULA where end user could return package
if not in agreement with proposed terms); *Info. Handling Servs. v. LRP Publs., Inc.*, 2000 U.S. Dist. LEXIS
14531, at *5-6 (E.D. Pa. Sept. 20, 2007) (finding on motion to dismiss shrink wrap enforceable and not
unconscionable because buyer free to reject it and return CD-Rom).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Even if the Court were to permit Plaintiffs to amend to conclusorily allege "contract of

2   adhesion," this, with nothing more, does not establish procedural unconscionability. *See Cal.*

3   *Grocers Ass'n v. Bank of Am.*, 22 Cal.App.4th 205, 214 (1994) (adhesive contracts not "per se"

4   oppressive); *Dean Witter Reynolds v. Superior Court*, 211 Cal. App. 3d 758, 769 (1989); *cf.*

5   *Appalachian Ins.*, 214 Cal. App. 3d at 22-23 (superior bargaining position does not authorize court

6   to not enforce contract); *O'Neill v. U.S.A.*, 50 F.3d 677, 687 (9th Cir. 1995) (mere fact provision is

7   standard does not render it unconscionable).[8] To hold otherwise would render *every* standard click

8   wrap procedurally unconscionable irrespective of any other circumstances. This is not the law.[9]

9           c.     **Plaintiffs Cannot Establish Substantive Unconscionability.**

10   Plaintiffs cite no case that holds a conspicuous warranty disclaimer is substantively

11   unconscionable. Indeed, the Commercial Code expressly authorizes warranty disclaimers.

12   Plaintiffs instead argue its enforcement would be overly harsh or one-sided because it would

13   eliminate Intuit's liability for a latent defect. But this cannot establish substantive

14   unconscionability. First, unconscionability is determined ***at the time of contract formation*** and not

15   in light of subsequent events. *Coast Plaza Drs. Hosp. v. Blue Cross*, 83 Cal. App. 4th 677, 688

16   (2000); Cal. Civil Code § 1670.5(a) (requiring court to determine whether contract unconscionable

17   "at the time it was made"). Plaintiffs' argument is flawed because it is based on a ***subsequent***

18   event—the later manifestation of an unknown defect. Second, all contracts entail risk allocation

19   between parties; a term is only substantively suspect if it "reallocates the risks…in an objectively

20   [8] The cases cited by Plaintiffs, *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 982 (9th Cir. 2007),
     *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005), *Nagrampa v. MailCoups, Inc.*, 469 F.3d

21   1257 (9th Cir. 2006), and *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000), are
     factually inapposite as they analyzed the specific circumstances to find class action waivers unconscionable.

22   Yet courts have enforced even these in adhesive contracts, recognizing *Discover Bank*'s holding limited to
     class action waivers where claims involve small damages and a scheme to cheat consumers of small sums

23   of money. *See Omstead v. Dell*, 533 F. Supp. 2d 1012, 1023 (N.D. Cal. 2008). No class action waiver nor
     wrongful scheme is at issue here and Plaintiffs cite no case that says an enforceable click wrap (or its terms)

24   is unconscionable (procedurally or otherwise) as adhesive, because it is not. *See Feldman*, 513 F. Supp. 2d
     at 240; *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 734-46 (N.D. Ohio 2007).

25   [9] The futility of Plaintiffs' claim is apparent as they offer no allegation other than that this is a "contract of
     adhesion." This is insufficient. *See, e.g., Feldman*, 513 F. Supp. 2d at 240 (noting "opportunity to

26   negotiate by itself does not end the inquiry into procedural unconscionability"). The *Feldman* court noted
     other factors (*e.g.,* buyer's sophistication, use of tactics or pressure to induce acceptance and availability of

27   alternative sources) and found the click wrap there procedurally ***conscionable***. The Court should also find
     so here as Plaintiffs concede they are not unsophisticated buyers (MTD 8, n.5; Opp.10:4-5) and do not

28   complain about the circumstances of acceptance or availability of alternative software programs.

1    unreasonable or unexpected manner." *Appalachian Ins.*, 214 Cal. App. 3d at 23. Plaintiffs do not

2    offer any reason why this standard disclaimer is objectively unreasonable or unexpected at the time

3    of contracting. Even then, "not all unreasonable risk reallocations are unconscionable" because its

4    enforceability is tied to procedural unconscionability (which, as seen above, cannot be shown

5    here). *Id.* Because Plaintiffs have the burden to establish **both** procedural and substantive

6    unconscionability and can do neither, the disclaimer should be enforced and the breach of warranty

7    claim dismissed with prejudice. *See* MTD 13:23-14:11.

8          **2.**      **The Court Can Enforce the Disclaimer On This Motion.**

9          Courts can and have found warranty disclaimers enforceable (and conscionable) on a

10    motion to dismiss. *See, e.g.*, MTD 9:9-17 (citing cases); Part I.B.1.b n.7.[10] Plaintiffs' reliance on

11    *Teknekron Cust. Info. Solutions v. Watkins Motor Lines*, 1994 U.S. Dist. LEXIS 21462 (N.D. Cal.

12    Jan. 5, 1994) and *W. Emulsions* is misplaced. Both pre-date *Bell Atlantic*, are not binding, do not

13    involve enforceable click wraps, and create no *per se* rule. *Teknekron* also involved a near $4

14    million negotiated software development agreement—there indeed were factual issues, for

15    example, as to whether there was surprise by an ambiguous disclaimer particularly in light of an

16    express warranty. *Id.* at *14-55, n.7. The court in *W. Emulsions* denied dismissal of the warranty

17    claim where the disclaimer did not mention "merchantability" and appeared "in the middle of a

18    long paragraph of small text at the bottom corner of the document." *W. Emulsions*, 2006 U.S.

19    Dist. LEXIS 96439, at *7. Here, the precise language is before the Court and **no** new relevant

20    factual issues are raised—Plaintiffs do not dispute what the terms were, what they meant, how they

21    were presented or otherwise appeared to the user. Nor do they dispute their acceptance of the

22    terms as they presently appear before the Court. This issue is ripe for determination.

23          **C.**      **The Limited Remedy Did Not Fail of Its Essential Purpose.**

24          As an initial matter, Plaintiffs make the following significant concessions: a warranty

25    disclaimer cannot "fail its essential purpose" (MTD 9:26-27); that whether or not the remedy failed

26    has **no** bearing on a warranty disclaimer's enforceability (MTD 9:28-10:4); and the remedy is not

27    ———
[10] Similarly, courts can, and have decided whether a consequential damages limitation is enforceable (and
28    conscionable) on a motion to dismiss. *See, e.g.*, *SexSearch.com*, 502 F. Supp. 2d at 734-36; Part II.B n.7 (citing cases); *cf.* MTD 15:8-16:6 (citing cases).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   unconscionable (MTD 13:15-16:6; *see* Opp. (no assertion limited remedy is unconscionable)).

2   Moreover, Plaintiffs concede that to show the remedy failed, they must *first* establish Intuit

3   was given a chance to fulfill the remedy, but was unable or unwilling to do so. MTD 12:2-8; Opp.

4   13:4-6.[11]  Plaintiffs do not and could not meet this burden. Rather, they allege that shortly after the

5   defect manifested, Intuit fixed the problem and offered to reimburse users for their data recovery

6   costs. AC ¶¶ 7, 16. They thus have no basis to invoke Section 2719. *See* MTD 12:4-8; *O'Neill*, 50

7   F.3d at 687 (cited by Plaintiffs) (no failure where plaintiff not deprived of contractual remedy)).

8   Even if Plaintiffs *could* allege Intuit refused to honor the remedy, there simply is no

9   support—factual *or* legal—for their argument that it failed. Plaintiffs rely on no cases, but on a

10  cursory reading of Professor Eddy's article.[12]  Opp. 13:7-14:15. This reliance is misplaced. First,

11  they mischaracterize Intuit's obligation to "cure the defects" as requiring it to restore lost data. But

12  "curing the defect" is what Intuit *already* did—it fixed the Software. Second, the analysis is

13  distinguishable on the basis that this case involves a *return or replace* remedy, not a *repair*

14  remedy—Intuit had no obligation to repair the Software (even though it nevertheless did). Third,

15  the type of consequential damages alleged here does not logically flow from whether the remedy

16  failed, and thus has no relevance to the inquiry. *See* Jonathan Eddy, *On the "Essential" Purposes*

17  *of Limited Remedies: The Metaphysics of the UCC Section 2-719(2)*, 65 CAL. L. REV. 28, 88-89

18  (1977) (concluding in such a case, when measured against warranty made, remedy does *not* fail).

19  Finally, and most importantly, Plaintiffs misconstrue the Ninth Circuit's reliance on Eddy.

20  In *S. M. Wilson*, the Ninth Circuit found the same two assumptions as asserted by Plaintiffs not

---

21  [11]  Indeed, in *S. M. Wilson & Co. v. Smith Int'l*, 587 F.2d 1363 (9th Cir. 1978), the court's conclusion
22  depended on its finding that the seller was given the opportunity to exercise the limited remedy of repair,
    but *was unable to actually repair the product*. *Id.* at 1375.
    [12]  Plaintiffs also suggest (without legal support) the remedy failed because the defect occurred within the
23  Software's useful life, but after the 60 day warranty period (and seek to amend on this basis). Opp. 13 n.5.
24  Yet a remedy does not fail when the problem arises *after* the warranty period expires. "Failure of essential
    purpose" cases involve defects that develop *during* the warranty period; Section 2719(2) is not operative
25  where a defect develops thereafter because there would be no question whether the warranty failed—it
    clearly did not. *See, e.g.*, *Airlift Int'l, Inc. v. McDonnell Douglas*, 685 F.2d 267 (9th Cir. 1982) (where
26  remedies held open during warranty period, remedy does not fail); *Boston Helicopter Charter v. Agusta*
    *Aviation*, 767 F. Supp. 363, 374 (D. Mass. 1991) (same); *Tokio Marine & Fire Ins. v. McDonnell Douglas*,
27  617 F.2d 936, 941 (2d Cir. 1980) (no failure where repair-or-replace remedy available during warranty
    period and defect discovered after warranty expired); *Arkwright-Boston Mfrs. Mut. Ins. v. Westinghouse*
28  *Elec.*, 844 F.2d 1174, 1179-80 (5th Cir. 1988); *Wisc. Power & Light Co. v. Westinghouse Elec.*, 830 F.2d
    1405, 1412-13 (7th Cir. 1987); *Hart Eng'g Co., v. FMC.*, 593 F. Supp. 1471, 1479-80 (D.R.I. 1984).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   true. 587 F.2d at 1375. ***Regardless,*** because the contract precluded recovery of consequential

2   damages, the court expressly ***refused*** to consider the magnitude of those damages to determine

3   whether the limited repair remedy failed. *Id*. Additionally and consistent with California law, it

4   ***refused*** to rely on the inability to cure as a basis to find the remedy failed. *Id*. Though it did

5   ultimately find the remedy failed, this was because the warrantor's repair attempts pursuant to an

6   ***express*** repair warranty failed, and thus plaintiff lost the benefit of the bargain ***that included the***

7   ***express warranty***. *Id*. Here, there is no express repair warranty, only a return/replace remedy, and

8   the damages limitation was expressed as a fundamental element of the bargain reached between

9   the parties. Agreement at 3. There is no failure of the remedy here because no benefit of the

10  bargain was lost, and the consequential damages alleged should not bear on this analysis.

### D.    The Consequential Damages Limitation is Enforceable.

12  Plaintiffs concede by their silence that ***this*** consequential damages limitation is

13  presumptively valid. MTD 10:19-11:4. Their only arguments that attempt to overcome this

14  presumption and re-allocate the risk established by contract are unavailing.

15  First, the argument that this provision should be invalidated because the remedy failed is

16  unavailable because, as seen above, ***there is no failure of the remedy***. Even if the remedy did fail,

17  the Ninth Circuit expressly enforced the damages limitation in *S. M. Wilson*. 587 F.2d at 1375-76

18  ("Risk shifting is socially expensive and should not be undertaken in the absence of a good

19  reason."). Though whether the damages limitation fails is indeed specific to each case's facts, no

20  "facts" are alleged in ***this*** case that demonstrate "good reason" why this provision should be

21  expunged, ***especially in the absence of any breach by Intuit***.[13] MTD 12:9-17; Opp. 15-16

22  (providing no supporting law or analysis to expunge provision absent total breach).

23  Second, that ***this*** damages limitation is unconscionable has no support in the law (and

24  Plaintiffs cite none). Courts confronted with this precise issue have upheld such limitations as

25  valid and conscionable. *See, e.g., M.A. Mortenson v. Timberline Software*, 140 Wn.2d 568, 587

---

[13] Indeed, to hold otherwise would be detrimental to all consumers. *See ProCD*, 86 F.3d at 1453
("Competition among vendors, not judicial revision of a package's contents, is how consumers are
protected in a market economy….[A]djusting terms in buyers' favor might help [Plaintiffs] today…but
would lead to a response, such as a higher price, that might make consumers as a whole worse off.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   (2000) ("In a purely commercial transaction, especially involving an innovative product such as

2   software, the fact an unfortunate result occurs *after* the contracting process does not render an

3   otherwise standard limitation of remedies clause substantively unconscionable.") (emphasis in

4   original); MTD 15:18-22; Part II.B.1, *supra* (no unconscionability in this case). Plaintiffs provide

5   no compelling reason why this Court should not enforce the damages limitation.

6   **II.      THE TORT CLAIMS MUST BE DISMISSED.**

7       **A.      The Economic Loss Doctrine Bars Plaintiffs' Tort Claims.**

8         The economic loss doctrine limits a manufacturer's liability in tort to ***physical damage*** to

9   persons or to property ***other than the allegedly defective product itself***. *Giles v. GMAC*, 494 F.3d

10  865, 874 (9th Cir. 2007). This kills the tort claims for two independent reasons: the type of

11  damages alleged[14] is purely economic, not physical; and the data allegedly affected was integrated

12  with the computer systems on which the Software was installed, and do not constitute "other"

13  property. Plaintiffs' arguments to the contrary are dispensed with quickly.

14        First, Plaintiffs argue computer files are, indeed, "property," citing two copyright cases for

15  this unremarkable proposition. Opp. 17:12-26. This is a red herring. Intuit has not contended

16  computer files cannot be considered property in this or any other context; indeed, that is not the

17  issue. The issue is whether their loss constitutes "physical" damage to property as opposed to

18  purely economic loss, and then, if so, whether such damage is to property "other than" the

19  allegedly defective product. The copyright cases Plaintiffs cite do not address these questions.

20        Second, Plaintiffs argue a tort claim lies where the transmission of electronic signals

21  "cause[s] impairment to the functioning of computers, technical problems, and lost revenue,"

22  citing three cases involving trespass to chattels based on transmission of massive quantities of

23  "unwelcome" emails to plaintiffs' employees or subscribers. Opp. 17-18 (citing *Intel v. Hamidi*,

24  30 Cal. 4th 1342, 1353-55 (2003); *CompuServe v. Cyber Promotions*, 962 F. Supp. 1015, 1020-21

25  (S.D. Ohio 1997); *AOL v. LCGM*, 46 F. Supp. 2d 444, 449 (E.D. Va. 1998)). These cases likewise

26  fail to support Plaintiffs' position. None involved claims against a manufacturer for an allegedly

27  defective product, and thus, the economic loss doctrine did not even come into play. More

28  ───────────────
[14] *See* MTD 18:2-9. Plaintiffs concede their computers themselves were not damaged in any way.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    fundamentally, none actually held that an "unwelcome" electronic transmission causes **physical**

2    damage to computer systems or files.  Rather, *Intel* rejected the argument that the transmissions

3    caused **any** damage to the computer system, observing the type of harm (lost productivity) was

4    purely economic and could not support a trespass claim.  *Intel*, 30 Cal. 4th at 1347.  Similarly,

5    *CompuServe* found that while transmissions may have diminished the value of plaintiffs' computer

6    systems, it did **not** physically damage them.  *CompuServe*, 962 F. Supp. at 1022.  Finally, *LCGM*

7    merely held that massive email transmissions constitute the type of physical **contact** necessary to

8    state a claim for trespass, not that they caused physical damage.  *LCGM*, 46 F. Supp. 2d at 452.

9    Plaintiffs thus fail to cite a single case supporting their argument that their alleged desktop data

10    loss constitutes anything other than economic damages for which tort recovery is unavailable.

11         Intuit, on the other hand, cites cases holding data loss is a purely economic, not physical,

12    loss, about which Plaintiffs—tellingly—have absolutely nothing to say.  *See AOL v. St. Paul*

13    *Mercury Ins.*, 207 F. Supp. 2d 459, 469 (E.D. Va. 2002) (damage to computers allegedly caused by

14    software, **which included loss of data and other software stored on those computers**, not physical

15    damage and thus "r[a]n squarely into the common law economic loss rule"); *Rockport Pharmacy v.*

16    *Digital Simplistics*, 53 F.3d 195, 198 (8th Cir. 1995) (loss of data installed on computer systems

17    allegedly caused by defects in computer system "nothing more than 'commercial loss for

18    inadequate value and consequent loss of profits'"); *Ward General Ins. Servs. v. Employers Fire*

19    *Ins.*, 114 Cal. App. 4th 548, 556 (2003) (loss of database and information stored therein an

20    economic, not physical, loss); *Seagate Tech. v. St. Paul Fire & Marine Ins.*, 11 F. Supp. 2d 1150

21    (N.D. Cal. 1998) (data loss caused by defective disk drives not "physical damage").  This Court

22    therefore can and should conclude the only losses alleged are purely economic—a conclusion that

23    alone knocks out Plaintiffs' tort claims.

24         Plaintiffs' final argument is that the data they allegedly lost constitutes property separate

25    from the computer on which it was stored, and therefore is "other property" within the meaning of

26    the economic loss doctrine.  Plaintiffs, however, not only cite no support for this novel

27    proposition—from California or elsewhere—but virtually ignore the cases Intuit cited which have

28    held **exactly the opposite**.  *See AOL*, 207 F. Supp. 2d at 462 (concluding that, once incorporated

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   into plaintiffs' computer systems, the allegedly defective software became a part of those systems,

2   such that any harm the software caused, ***including loss of data, loss of work and resulting loss of***

3   ***use, time and money,*** did not constitute losses to other property); *Transport v. IBM*, 30 F.3d 953,

4   957 (8th Cir. 1994) (data on a disk drive which was integrated into computer system, and which

5   data was lost when disk failed, not "other property" for purposes of economic loss doctrine).[15]

6          Left with nothing else, Plaintiffs point to California cases recognizing manufacturers of

7   "component parts"—*i.e.*, parts incorporated into a larger product sold to consumers—may face tort

8   liability if that component part damages other portions of the larger product. Opp. at 18-19. These

9   cases are inapposite. Plaintiffs do not (and cannot) allege that the Software is a "component part"

10  of a larger product they purchased. Even if they had, the primary case on which Plaintiffs rely,

11  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483-84 (2002), expressly limited its holding to a

12  homeowner's recovery in tort for damage a defective window causes to other parts of the home in

13  which it has been installed, emphasizing it had "no occasion here to consider…whether there may

14  be situations in which the economic loss rule would bar recovery for damages that a defective

15  component part causes to other portions of the finished product of which it is a part."[16] These

16  cases thus do not preclude this Court from joining the other courts that have already confronted the

17  precise issue here. Nor should they. The policy underlying the imposition of strict products

18  liability on a manufacturer—its better ability to reduce risk of injury—is not furthered here. *See*

19  *Jimenez*, 29 Cal. 4th at 477-78. Plaintiffs, not Intuit, were in a better position to prevent harm:

20  these companies could (and should have had the sense to) regularly back up their data to avoid risk

21  of data loss. Plaintiffs' tort claims should be dismissed.[17]

22  [15] Plaintiffs' only response is *AOL* was "in the insurance context," without explanation. Yet *AOL* also
    involved an underlying class action alleging defendant's software caused, *inter alia*, the loss of data stored

23  on their computers. 207 F. Supp. 2d at 459. It was the ***type*** of damage, not any insurance policy, that
    informed the court's opinion whether the lost data constituted "other property" within the meaning of the

24  economic loss rule. *Id.* at 471. Plaintiffs' attempt to distinguish the other cases cited by Intuit in the
    context of its "other property" argument (Opp. 20) fails as Intuit did not cite them for this proposition. Also,

25  even under Plaintiffs' theory, any lost data related to the Software is subject to the economic loss doctrine.
    [16] Similar to the claims in *Jimenez*, *KB Home v. Superior Court*, 112 Cal. App. 4th 1076 (2003)—the only

26  other case cited by Plaintiff discussing this "component parts" rule—involved claims that a furnace's
    defective emissions control device damaged different components of the furnace.

27  [17] Plaintiffs' related tort arguments at Opp. 20:24-21:23 are also without merit. The negligence claim fails
    because the damages limitation is valid and conscionable. *See* Part I.B., *supra*. The strict products liability

28  claim fails because the damages alleged is not physical harm to property. *See* Part II.A., *supra*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    **B.    Plaintiffs Consented To the Alleged Trespass.**

2    Plaintiffs cannot state a claim for trespass to chattels because *they consented to receive the*

3    *update that allegedly activated the latent bug.* AC ¶ 72; Agreement at 1. Intuit's actions were thus

4    authorized and cannot support a trespass claim. *See United States v. Imperial Irrigation Dist.*, 799

5    F. Supp. 1052, 1059-1060 (S.D. Cal. 1992) ("Consent by the owner is an absolute and valid

6    defense to an action for trespass."); *Williams v. General Electric Credit Corp.*, 159 Cal. App. 2d

7    527, 532 (1958) (one with permission not a trespasser); *Fibreboard Corp. v. Hartford Accident &*

8    *Indem. Co.*, 16 Cal. App. 4th 492, 512 (1993) (finding consent to alleged trespass with purchase of

9    defective product). Importantly, neither the Agreement nor the AC qualify the purpose or effect of

10    the licensed updates. Agreement 1; AC ¶ 72. This distinction renders inapposite the spamming

11    cases relied upon by Plaintiffs. Both *LCGM* and *CompuServe*, discussed above, address the

12    unsolicited mass spamming of computer networks *in direct contravention of policies prohibiting*

13    *such use.* Here, the Agreement expressly allows Intuit to send updates.

14    Plaintiffs' argument that Intuit's actions exceeded the scope of their consent confuses an

15    ***unauthorized*** entry (which is actionable) with an ***authorized*** entry that has an ***unintended effect***

16    (which is not). *County of Santa Clara v. Atlantic Richfield Co.,* 137 Cal. App. 4th 292, 314-15

17    (2006) addressed this distinction. There a demurrer to a trespass action based on contamination

18    caused by lead paint was sustained. The court reasoned that plaintiffs themselves purchased the

19    good and used it on their property, constituting a non-actionable, authorized entry. That plaintiffs

20    did not anticipate the subsequent contamination was irrelevant. The same reasoning applies here.

21    Plaintiffs' consent to receive updates renders non-actionable (at least as to trespass) their

22    unintended consequences. The trespass claim should be dismissed with prejudice. *Id.*; *Fibreboard*

23    *Corp.*, 16 Cal. App. 4th at 492 (denying leave to amend).

24    **III.    THE UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.**

25    Plaintiffs have not shown they have pled (or could plead) a viable Section 17200 claim:

26    ***Unfair***: Unless the Court accepts Plaintiffs' invitation to "roam across the landscape of

27    consumer transactions picking and choosing which [it] likes and which [it] dislikes," Plaintiffs

28    must tether their unfairness prong claim to a legislative policy. *Van Slyke v. Capital One Bank*,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    2007 U.S. Dist. LEXIS 82690, at *34 (N.D. Cal. Nov. 7, 2007) (J. Alsup); *Buller v. Sutter Health*,

2    160 Cal. App. 4th 981, 991 (2008) (sustaining demurrer).  Plaintiffs' grasping at CLRA Section

3    1770(a)(7) fails because it only extends to actions brought by consumers or "individual[s] who

4    seeks or acquires, by purchase or lease, any goods or services for personal, family, or household

5    purposes." Civil Code § 1761(d).  Plaintiffs concede they are small businesses and the Software is

6    used for business purposes. AC ¶ 5; Opp. at 10:3-4.  Thus, even if Plaintiffs had pled a violation

7    of the CLRA in the AC, it would require dismissal. *Lee v. Gen. Nutrition Cos.*, 2001 U.S. Dist.

8    LEXIS 24739, at *31-32 (C.D. Cal. Nov. 21, 2001) (dismissing CLRA claim as plaintiffs failed to

9    allege they "are consumers under the meaning of the statute").[18]  Nor can Plaintiffs' strained

10   efforts to leverage Commercial Code Sections 2301 (contract obligations) and 2314 (implied

11   warranties) bridge their pleading gap, as their violation cannot function as a predicate unless

12   independently wrongful.  *See Wang & Wang v. Banco Do Brasil, S.A.*, 2007 U.S. Dist. LEXIS

13   25813, at *12-13 (E.D. Cal. March 26, 2007) (rejecting breach of contract as unfairness predicate);

14   *Bardin v. DaimlerChrysler*, 136 Cal. App. 4th 1255, 1273 (2006) (affirming demurrer challenging

15   unfairness allegations "based on a contract such as a warranty, not on a legislatively declared

16   policy"); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997).

17          ***Unlawful***:  Nowhere does the AC allege an Intuit business practice that is "forbidden by

18   law." *Samura v. Kaiser Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1292 (1993). Unless a complaint

19   "identif[ies] the particular section of the statute that was allegedly violated…with reasonable

20   particularity" unlawful 17200 claims should be dismissed.  *Sonoma Foods, Inc. v. Sonoma Cheese*

21   *Factory, LLC*, 2007 U.S. Dist. LEXIS 56032, at *29 (N.D. Cal. July 23, 2007).  Only in the

22   Opposition do Plaintiffs even attempt to allege that common law violations amount to unlawful

23   practices. But, as a matter of law, unless those violations are ***independently wrongful*** they cannot

24   maintain a 17200 claim.  *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp.

25   2d 1059, 1074 (C.D. Cal. 2003) (rejecting breach of contract as unlawful predicate); *Hartless v.*

26

27   [18] Section 17200 "does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition." *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001); *see also Daly v. Viacom, Inc.*, 238 F. Supp. 2d

28   1118, 1126 (N.D. Cal. 2002) (granting motion to dismiss).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   *Clorox Co.*, 2007 U.S. Dist. LEXIS 81686, at *17-18 (S.D. Cal. Nov. 2, 2007) (dismissing claim

2   based on "common law products liability"). In any event, if the common law claims are

3   dismissed, so too should the 17200 claim. *Silicon Knights Inc. v. Crystal Dynamics, In*c., 983 F.

4   Supp. 1303, 1316 (N.D. Cal. 1997).[19]

5        ***Fraudulent***: The AC is devoid of any allegation that "'members of the public [were] likely

6   to be deceived'" by Intuit's actions. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35

7   Cal. 3d 197, 211 (1983); AC ¶¶ 80-82. This failure alone provides grounds to dismiss the fraud-

8   based claims. *See, e.g., Hull v. D & J Sports, Inc.*, 2004 U.S. Dist. LEXIS 15798, at *5-7 (N.D.

9   Cal. Aug. 6, 2004) (J. Alsup) (dismissing fraudulent business practice claim for failure to allege

10  "members of the public are likely to be deceived"); *cf. Van Slyke*, 2007 U.S. Dist. LEXIS 82690, at

11  *46-47 (new allegations raised in opposition disregarded). In any event, to the extent unfair

12  competition claims rest in fraud, Rule 9(b) requires they be pled with particularity, a standard

13  Plaintiffs do not meet. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-1105 (9th Cir. 2003);

14  *Hartless*, 2007 U.S. Dist. LEXIS 81686, at *19-20 (dismissing for lack of particularity 17200

15  fraud claims premised on alleged knowledge of defective product). Having failed to allege that

16  Intuit acted in an unfair, unlawful or fraudulent way, the Section 17200 claim should be dismissed.

17  **IV.    CONCLUSION**

18       Not only do Plaintiffs fail to allege necessary facts to support their claims, they have not

19  shown what facts they ***could*** allege to save them.[20] Because Plaintiffs fail to state a claim, and

20  because any amendment would be futile for the reasons discussed above, Intuit respectfully

21  requests the Court dismiss the AC in its entirety with prejudice.

22  Dated: July 24, 2008                            FENWICK & WEST LLP
                                                     By:   /s/ Rodger R. Cole
23                                                                    Rodger R. Cole
                                                     Attorneys for Defendant
24                                                   INTUIT INC.

25  [19] Plaintiffs' cases are inapposite. In both *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1143
    (2003) and *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F. 3d 1099, 1107 (9th Cir. 2007),
26  defendants had intentionally interfered with plaintiffs' business relations. This tort was independent from
    the underlying contract claim, thus the 17200 claim was actionable. No such intentional tort is alleged here.
27  [20] Nor have they demonstrated "good cause" for their delay. *Johnson v. Mammoth Recreations*, 975 F.2d
    604, 609 (9th Cir. 1992). There are no newly discovered "facts"; the deadline to amend was March 31;
28  they have had Intuit's motion since April 17; and motion for class certification is due shortly on August 7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW