1   James A. Quadra (SBN 131084)
Rebecca Bedwell-Coll (SBN 184468)
2   MOSCONE, EMBLIDGE & QUADRA, LLP
Mills Tower
3   220 Montgomery Street, Ste. 2100
San Francisco, California 94104
4   Telephone:  (415) 362-3599
Facsimile:  (415) 362-2006
5   Email:  quadra@meqlaw.com

6   Michael W. Sobol (SBN 194857)
Kristen E. Law (SBN 222249)
7   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
8   275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
9   Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
10  Email:  msobol@lchb.com

11  Jonathan D. Selbin (SBN 170222)
LIEFF, CABRASER, HEIMANN &
12      BERNSTEIN, LLP
780 Third Avenue, 48th Floor
13  New York, NY  10017-2024
Telephone:   (212) 355-9500
14  Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com
15  Email:  rbcoll@lchb.com

16  *Attorneys for Plaintiffs and proposed Class*
*Additional Counsel Listed on Signature Page*

17              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
18           SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| 19 CREATE-A-CARD, INC.; AGSJ, INC.; and PHILANTHROPIC FOCUS, LLC, on 20 behalf of themselves and all those similarly situated, | Case No.  CV-07-6452 WHA **CLASS ACTION** |
| 21                         Plaintiffs, 22        v. 23 INTUIT, Inc., 24                         Defendant. 25 26 | **DECLARATION OF JAMES A. QUADRA IN SUPPORT OF MOTION FOR ORDER (1) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT; (2) CONDITIONALLY CERTIFYING SETTLEMENT CLASS (3) APPROVING CLASS NOTICE; (4) APPOINTING CLASS COUNSEL; AND (5) SETTING FINAL APPROVAL HEARING DATE AND RELATED DATES** |

27

28

1    I, James A. Quadra, declare as follows:

2         1.    I am a partner at Moscone Emblidge & Quadra, LLP ("MEQ"), counsel of

3    record for Plaintiffs in this matter.  I am a member in good standing of the bar of the State of

4    California and admitted to practice before this Court.  I have personal knowledge of the facts set

5    forth in this declaration, and could testify competently to them if called upon to do so.

6         2.    I founded MEQ in 1998 and since that time have devoted a large

7    percentage of time to litigating plaintiffs' class actions.

8         3.    I graduated from U.C. Berkeley's Boalt Hall School of Law in 1987.  Prior

9    to forming MEQ, I was the Chief of General Litigation at the San Francisco City Attorney's

10    Office, and oversaw approximately 30 deputy city attorneys involved in a range of litigation on

11    behalf of San Francisco, including class actions.

12         4.    I have extensive litigation experience and have successfully tried cases in

13    state and federal courts, including two class action trials resulting in liability findings.

14         5.    I am an AV® rated by Martindale Hubell.  At the requests of the Consumer

15    Attorneys of California, the San Francisco City Attorney's Office, the San Mateo County Bar

16    Association, and CEB, I have made presentations on various topics including topics related to

17    class actions in California.

18         6.    I serve as a mediator for the San Francisco Bar Association Early

19    Settlement Program and the San Francisco Superior Court Pre-Arbitration Settlement Program. I

20    am also a member of the At Large Board of Directors for the Consumer Attorneys of California, a

21    member of the Board of Directors of the San Francisco Legal Aid Society-Employment Law

22    Center and the Chairperson of the San Francisco Unified School District's Citizens' Bond

23    Oversight Committee.

24         7.    My firm and/or I have served as class counsel or lead class counsel in

25    multiple matters, including the following:

26            **a.**    *Vienna Hall, et al., v. Cinema 7, Inc., et al.* MEQ is class counsel
representing a class of approximately 400 current and former
27    performers who allege that their employer violated provisions of the
California Labor and Business & Professions Codes.  The liability
28    phase of the trial proceeded to trial in 2007.  MEQ obtained a

- 1 -

777583.4

DECLARATION OF JAMES A. QUADRA
CV-07-6452 WHA

1   judgment in favor of the class regarding liability. The parties have entered into a settlement that is subject to court approval.  The proposed settlement totals $3,740,000.  I was appointed lead counsel.

2

3

    **b.**   *Old Republic Title Company Cases, J.C.C.P. No. 4111; Wisper v. Old Republic Title Company, et al.*  MEQ, along with two other firms, represented a class comprised of customers of escrow services throughout California who were charged reconveyance fees for services not provided and who did not receive interest on escrow funds. The class settled a portion of the case for more than $3 million. The trial regarding the remaining claims resulted in judgment for customers of escrow services throughout California of $14 million.

4

5

6

7

8

    **c.**   *ADT SECURITY SERVICES COMMISSION CASES,* J.C.C.P. 4404 (*Kelly v. ADT Security Services, Inc.*)  MEQ was co-class counsel for a class of about 900 employees who filed suit for an alleged improper policy of recouping commissions previously paid to class members violated the California Labor Code.  The case settled in 2006 for $965,000.

9

10

11

    **d.**   *Doe vs. Darkside Productions, Inc*. MEQ was sole class counsel for a class of approximately 2000 advertisers that were charged more for web advertising based on gender.  The case is proceeding in San Francisco.  The Court approved a claims made settlement with a value of approximately $1 million.

12

13

14

    **e.**   *MCC CASES I, II and III,* J.C.C.P. Nos. 4173, 4178 and 4181 (*Vignolles v. FMC Corporation*).  MEQ was class co-counsel representing a class of indirect purchasers of microcrystalline cellulose, which is a binding agent used in the manufacture of pharmaceutical tablets.  The class alleged violations of the Cartwright and Unfair Competition Acts by manufacturers of microcrystalline cellulose.  The San Francisco Superior Court granted final approval of the settlement of the action in the amount of $2,500,000.

15

16

17

18

19

    **f.**   *In Re International Air Transportation Surcharge Antitrust Litigation; Holley v. British Airways, et al*.  Action proceeded in the United States District Court, the Northern District of California. MEQ was class counsel along with other firms representing a class of purchasers of international air transportation services who alleged antitrust injuries and violations of the Sherman Act by sellers of the international air transportation services.  Matter settled for $203 million.

20

21

22

23

24

    **g.**   *Behr Wood Sealant Cases, J.C.C.P. Nos. 4132 and 4138; Connolly v. Behr Process Corporation, et al.* Action proceeded in Eastern District of Washington State. MEQ along with numerous firms represented a nationwide class of consumers who purchased and used defective sealant products; class members secured $108 million settlement.

25

26

27

    **h.**   *California Indirect Purchaser Microsoft I-V Cases, J.C.C.P. 4106;*

28

- 2 -

1

2

3

*AO/NET v. Microsoft.* Action proceeded in SF.   MEQ along with numerous law firms represented indirect purchasers of Microsoft software who allege violations of the Cartwright Act and unfair competition laws; class obtained settlement worth over $1 billion for California purchasers.

4

5

6

i.    *California Methionine II Litigation, J.C.C.P. Nos. 4096 and 4090; Hunt & Behrens v. Degussa-Huls AG, et al.* Action proceeded in Modesto. MEQ along with numerous other firms represented indirect purchasers of animal feed supplements who allege violations of the Cartwright and Unfair Competition Acts; class obtained a $3,600,000 settlement.

7

8

9

10

j.    *California 3M Transparent Tape Cases, J.C.C.P.; Waldeck's Office Supplies, Inc. v. Minnesota Mining and Manufacturing, et al.* Action proceeded in SF.  MEQ was class counsel representing a class of indirect purchasers of adhesive tape products who allege violations of the Cartwright and Unfair Competition Acts by manufacturers of adhesive tape products.  The matter settled for $30 million.

11

12

13

14

k.    *California Vitamin Cases, J.C.C.P. 4076; Vignoles v. Lonza A.G, et al.* Action proceeded in Los Angeles. MEQ represents a class of California indirect vitamin purchasers in every level of the chain of distribution alleging violations of Cartwright Act and unfair competition laws by manufacturers of vitamins; class members have secured a nationwide settlement of close to $1 billion.

15

16

17

l.    *Doe v. Gold Club.*  MEQ is sole class counsel representing a class of approximately 300 performers who allege that their employer violated provisions of the California Labor and Business & Professions Codes.  The San Francisco Superior Court granted final approval of a settlement in the amount of $3,260,000 and the case is currently in the claims process

18

19

20

21

22

m.    *City and County of San Francisco v. Morganite, Inc., et al.* MEQ, along with other firms, is counsel for a putative class of individuals and entities throughout California that purchased electrical carbon products allegedly at artificially inflated prices. A related federal matter has settled for $24 million. The state court matter is in litigation and is proceeding in San Francisco.  Settlements that are subject to Court approval have been tentatively reached with all defendants.  The proposed settlements total $1,935,000.

23

24

25

26

27

28

n.    *Jefferson v. Chase Home Finance Group*, No. C 06 06510 TEH. MEQ represents a putative class of borrowers throughout California who have made prepayments on notes to Chase that Chase wrongfully failed to apply promptly to mortgage accounts within the time period of August 24, 2002, through the present.  Plaintiff alleges violations of the Consumer Legal Remedies Act, False Advertising Law, Unfair Competition Law, and Conversion.  The action is currently in litigation before the United States District Court for the Northern District of California.  The parties have reached a settlement subject to the Court's approval but preliminary approval papers have not yet been filed.

**o.** *Degelmann v. Advanced Medical Optics, Inc.*, No. C 07 3107 PJH. MEQ represents a putative class of consumers throughout the nation who purchased AMO's Complete Moisture Plus contact lens solution, alleging violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq.) and False Advertising Act (Cal. Bus. & Prof. Code section 17500 et seq.). The action is currently in litigation before the United States District Court for the Northern District of California.

**p.** *In re Flash Memory Antitrust Litigation* is pending in the U.S. District Court for the Northern District of California, Oakland Division. MEQ is co-counsel for the nationwide class of direct and indirect purchasers in an antitrust action against the manufacturers, sellers and distributors of NAND flash memory products in the United States. (Flash memory is a type of integrated circuit that can be electronically erased and reprogrammed.) The case was filed in January, 2007 and is currently undergoing a second round of preliminary motions.

8. I was first contacted about this matter in December 2007, shortly after multiple users experienced a sudden loss of their data and files. Throughout the investigation and litigation of this matter, my firm and our co-counsel have been in contact with more than fifty putative Class members, who have shared information with us regarding the nature and scope of the harm suffered as a result of the Software malfunction.

9. In addition, in response to discovery requests, Intuit has described the mechanism of the malfunction causing damage to the Class, Intuit's efforts to identify affected users, and its methodology of calculating the number of users affected (and thus the size of the Class). Intuit has disclosed in discovery responses, *inter alia*, that (a) there is a "forced registration" process ensuring that virtually all users of the software are "registered" users, (b) there are 30,010 registered users, and (c) of those registered users, 1,038 appear to have been affected by the malfunction, and therefore would fall within the scope of the Class.

10. Attached hereto as Exhibit A is a true and correct copy of Intuit's Responses to Plaintiffs' Interrogatories to Defendant, Set One.

11. Attached hereto Exhibit B is a true and correct copy of Intuit's Responses and Objections to Plaintiffs' Request for Production of Documents, Set One. Intuit also produced information that Intuit has represented to be its "QuickBase database," wherein Intuit has stored, information regarding all users affected by the alleged Software Bug known to Intuit.

1      12.    Attached hereto as Exhibit C is a true and correct copy of Intuit's

2   Responses and Objections to Plaintiffs' Requests for Admission, Set One.

3      13.    Settlement negotiations in this case began shortly after the Complaint was

4   filed in December 2007 and continued in the months that followed while the litigation proceeded

5   apace.  The negotiations culminated in an all-day arms-length mediation before Judge Edward A.

6   Infante (Ret.) at JAMS on February 21, 2008.  With the continued assistance of Judge Infante, the

7   Parties on July 30, 2008 reached an agreement-in-principle, subject to client approval, on all

8   substantive terms of the global settlement, including resolution of all claims presented in the

9   actions pending in this Court and in Canada.  After July 30, the parties continued to negotiate the

10  details of the Settlement Agreement itself, heeding closely the admonitions provided by this

11  Court on August 7, 2008.  The final Settlement Agreement was executed on August 21-22, 2008.

12  Plaintiffs' Counsel supports the resulting Settlement as fair, and as providing reasonable relief to

13  the members of the class.

14      14.    The proposed settlement is this matter is the product of hard fought and

15  arms-length settlement negotiations.  The proposed settlement provides substantial and certain

16  relief for the Class and avoids protracted litigation.  The relief is fair, adequate and reasonable.

17      I declare under penalty of perjury under the laws of the State of California that the

18  foregoing is true and correct to the best of my knowledge.

19

20  Dated:  August 22, 2008                          /s/
                                              James A. Quadra

21

22

23

24

25

26

27

28