# EXHIBIT 1
# (Part 1)

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into, subject to Court approval, as of August 22, 2008, on behalf of Create-A-Card, Inc., AGSJ, Inc. and Philanthropic Focus, LLC in the action *Create-A-Card, Inc., et al. v. Intuit Inc.*, Case No. CV 07-06452 WHA, pending in the United States District Court for the Northern District of California before the Honorable William H. Alsup ("the U.S. Action"), and Ronald Smith & Associates, Inc., in the action, *Ronald Smith & Assocs. Inc. v. Intuit Canada and Intuit Inc.*, Court File No. 08-CV-348111 CP, pending in the Ontario Superior Court of Justice (the "Canadian Action"), on behalf of themselves and each of the proposed Class Members defined below, on one hand, and Defendants Intuit Inc. and Intuit Canada Ltd. on the other hand (collectively, "Defendants" or "Intuit"). This Settlement Agreement and Release is made for full and complete settlement of both the U.S. Action and the Canadian Action and will be subject to the Courts' final approval.

1. **Recitals.**

1.1 WHEREAS, Plaintiffs in the U.S. Action have asserted claims in their First Amended Complaint for negligence, strict products liability, trespass to chattels, breach of contract, breach of implied warranty, and violations of California Business & Professions Code Section 17200, *et seq.*, against Intuit based upon an alleged defect in the auto-update mechanism of Intuit's QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac (the "Software");

1.2 WHEREAS, Plaintiffs in the U.S. Action have alleged that as a result of a malfunctioning of the Software's auto-update mechanism ("Malfunction") caused by, among other reasons, this alleged defect in the Software's auto-update mechanism code (the "Software Bug"), the data or files residing on their Macintosh desktops became inaccessible or were damaged, corrupted, or lost, either temporarily or permanently, and as a result, they suffered damages;

1.3 WHEREAS, Plaintiff in the Canadian Action has asserted claims in its Statement of Claim for negligence and trespass to personal property, arising out of the same purported Malfunction and Software Bug as that alleged in the U.S. Action, and seeks to be included as part of this global settlement and release;

1.4 WHEREAS, Intuit has disclosed information to Plaintiffs concerning the Malfunction and Software Bug, including how the Malfunction occurred, the circumstances causing the Software Bug to manifest, the steps Intuit has taken to prevent any recurrence of the Malfunction (including permanent disablement of the auto-update mechanism in the Software, and thus the Software Bug), and the remedial and outreach efforts taken by Intuit to date to identify, assist and compensate its affected customers—all of which is set forth in greater detail and specificity in Paragraph 5.1 below;

1.5 WHEREAS, Intuit contends it is not liable for the claims asserted in the Actions, that it has valid defenses to those claims, and that Plaintiffs have not suffered any recoverable damages and, accordingly, on April 17, 2008, filed its motion to dismiss the First Amended

**EXECUTION COPY**

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in the U.S. Action ("Motion to Dismiss"), asserting that Plaintiffs fail to state a claim upon which relief may be granted because, *inter alia*, the Software License Agreement is valid and enforceable, includes a valid warranty disclaimer, exclusive limited remedy and limitation of liability provisions therein, and the economic loss doctrine precludes recovery of the alleged damages asserted by Plaintiffs;

**1.6**    WHEREAS, on July 3, 2008, Plaintiffs filed their opposition to Intuit's Motion to Dismiss ("Opposition"), asserting, *inter alia*, the disclaimers of liability in the Software License Agreement are procedurally and substantively unconscionable, the limited remedy fails its essential purpose, and the economic loss doctrine does not allow Intuit to avoid tort liability for the destruction of "other property" unrelated to the Software;

**1.7**    WHEREAS, Intuit has concluded that it will enter into this Settlement Agreement in order to, *inter alia*, avoid the further time, expense, inconvenience, burden, uncertainty and risk of continuing litigation in the U.S. Action and Canadian Action (the "Actions"), so that it may resolve these Actions on certain terms and to put to rest the controversies engendered by the Actions and, though it believes it is not otherwise legally obligated, to provide compensation to its affected customers;

**1.8**    WHEREAS, after conducting investigation into the facts and law, and engaging in extensive settlement discussions with Intuit, the Class Representatives and Class Counsel have concluded that a settlement according to the terms set forth below represents a fair, adequate and reasonable settlement of the Actions and is in the best interest of the Class in light of the risks, costs and uncertainty of further litigating the Actions (including the outcome on Intuit's Motion to Dismiss), and the substantial benefits to be received by the Class; and

**1.9**    WHEREAS, the Settlement Agreement was reached after approximately eight (8) months of ongoing arms-length negotiations between the Parties with the ongoing assistance of Edward A. Infante, retired Magistrate Judge of the United States District Court for the Northern District of California.

**1.10**    NOW THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, and subject to the approval of the Court in the U.S. Action and the Court in the Canadian Action, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to Intuit (and in the case of the Canadian Action, Intuit Canada Ltd. and Intuit) on the following terms and conditions:

**2.    Definitions.**

**2.1**    "Canadian Action" shall refer to the putative class action, *Ronald Smith & Assocs., Inc. v. Intuit Canada and Intuit Inc.*, Court File No. 08-CV-348111 CP, filed January 31, 2008 and pending in the Ontario Superior Court of Justice ("Canadian Court").

**2.2**    "Canadian Settlement Approval Hearing" shall have the meaning set forth in Paragraph 10.3.1.

2

**2.3**    "Canadian Class Members" shall refer to any Class Member whom Intuit can identify as having a Canadian address.

**2.4**    "Canadian Notice" shall be the first notice sent to registered users of the Software whom Intuit can identify as having a Canadian address, the contents of which is described in Paragraph 10.3.2 below, and a copy of which is attached hereto as Exhibit A.

**2.5**    "Canadian Approval Notice" shall refer to the final Canadian approval notice that shall be referenced in the Class Notice and available on the ICA website as described in Paragraph 2.15, below, and a copy of which is attached hereto as Exhibit B.

**2.6**    "Canadian Exclusion Deadline" shall have the meaning set forth in Paragraph 10.7.2.2.

**2.7**    "Canadian Notice Date" shall have the meaning set forth in Paragraph 10.3.2 below.

**2.8**    "Claim Form" means the sworn statement that a Class Member must submit under penalty of perjury in order to receive a Settlement Award, the substance and form of which is attached hereto as Exhibit C.

**2.9**    "Claims Period" means the time period commencing on the Class Notice Date and ending ninety (90) days thereafter.

**2.10**    "Class" shall refer the proposed settlement class defined as:  All registered users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism.

**2.11**    "Class Counsel" collectively refers to Class Counsel in the U.S. Action and Class Counsel in the Canadian Action.

**2.12**    "Class Counsel in the Canadian Action" collectively refers to Jonathan J. Foreman and David B. Williams of Harrison Pensa LLP.

**2.13**    "Class Counsel in the U.S. Action" collectively refers to James A. Quadra, Rebecca Bedwell-Coll and Robert D. Sanford of Moscone, Embridge & Quadra LLP; and Michael W. Sobol, Kristen E. Law and Jonathan D. Selbin of Lieff, Cabraser, Heimann & Bernstein, LLP.

**2.14**    "Class Members" shall refer to all Persons falling within the definition of the Class who do not properly exclude themselves from the terms of this Settlement Agreement in accordance with the terms herein.

**2.15**    "Class Notice" as set forth in Paragraph 10.6.3 herein, shall refer to the proposed summary notice that shall be sent by the ICA to all registered users of the Software, subject to preliminary approval by the Court in the U.S. Action and the Court in the Canadian Action.  The Class Notice shall contain links to the Full U.S. Notice, Canadian Approval Notice, and Claim

**EXECUTION COPY**

Form. The form of the Class Notice of which the Parties shall seek preliminary approval is attached hereto as Exhibit D.

**2.16** "Class Notice Date" shall have the meaning set forth in Paragraph 10.6.3 and shall occur no earlier than December 1, 2008 and no later than January 31, 2009.

**2.17** "Class Representatives" collectively refers to Class Representatives in the U.S. Action and the Class Representative in the Canadian Action.

**2.18** "Class Representative in the Canadian Action" shall refer to Ronald Smith & Associates, Inc., in the Canadian Action.

**2.19** "Class Representatives in the U.S. Action" shall collectively refer to Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC, in the U.S. Action.

**2.20** "Effective Date" shall have the meaning set forth in Paragraph 13 below.

**2.21** "Exclusion Deadline" shall have the meaning set forth in Paragraph 10.7.1.2.

**2.22** "Fairness Hearing" shall be the final approval hearing in the U.S. Action as referenced in Paragraphs 10.2.2, 10.7.1 and 10.11.1 below.

**2.23** "Full U.S. Notice" shall refer to the full notice referenced in the Class Notice and made available on the ICA website that shall have detailed information regarding the proposed Settlement Agreement of the U.S. Action, the form of which is attached hereto as Exhibit E.

**2.24** "ICA" shall refer to the Independent Claims Administrator as described in Paragraph 10.5 below.

**2.25** "Implementation Schedule" means the dates agreed by the Parties and subject to approval by the Courts for implementing the Settlement Agreement (as set forth in greater detail in Paragraphs 8.1 and 10 below), and a copy of which is attached as Exhibit F to this Settlement Agreement.

**2.26** "Intuit" shall mean Intuit Inc. together with its officers, directors, employees, stockholders, investors, attorneys, insurers, subsidiaries (including Intuit Canada Ltd.), representatives, contractors and agents.

**2.27** "Malfunction" shall refer to the alleged malfunctioning of the Software's auto-update mechanism that led to the temporary or permanent inaccessibility, damage, corruption or loss of data or files.

**2.28** "Non-Canadian Class Members" shall refer to all Class Members other than Canadian Class Members.

**2.29** "Plaintiffs" shall refer collectively to Plaintiffs in the U.S. Action and Plaintiffs in the Canadian Action.

4

**EXECUTION COPY**

**2.30**    "Plaintiffs in the U.S. Action" shall refer to Class Representatives in the U.S. Action and the class of Persons they purport to represent.

**2.31**    "Plaintiffs in the Canadian Action" shall refer to the Class Representative in the Canadian Action and the class of Persons it purports to represent.

**2.32**    "Parties" shall mean Plaintiffs and Intuit.

**2.33**    "Person" shall mean any natural person or any entity including, but not limited to, corporations, partnerships, limited liability companies, limited liability partnerships, or other entities in which a natural person may have a legal or equitable interest.

**2.34**    "Released Claims" shall have the meaning set forth in Paragraph 14.

**2.35**    "Second Exclusion Deadline" shall have the meaning set forth in Paragraph 10.9.1.

**2.36**    "Settlement Award" shall mean the compensation (whether monetary and/or in the form of a software upgrade) to which a Settlement Class Member is entitled as is finally determined by the ICA.

**2.37**    "Settlement Class Members" consists of all Class Members who submit a Claim Form that is approved for payment under the terms of this Settlement Agreement. For clarification, each registered user shall be entitled to submit only one Claim Form.

**2.38**    "Software" shall refer to Intuit's QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac.

**2.39**    "Software Bug" shall refer to the alleged defect in the Software's auto-update mechanism code that is alleged to have led to the Malfunction.

**2.40**    "U.S. Action" means the putative class action, *Create-a-Card, Inc., et al. v. Intuit Inc.*, Case No. CV 07-06452 WHA filed on December 21, 2007 and pending in the United States District Court for the Northern District of California before the Honorable William H. Alsup ("U.S. Court").

## 3.    Certification.

**3.1**    The Parties stipulate and agree to the certification of these Actions as class actions for purposes of this Settlement Agreement only. Should, for whatever reason, the Settlement Agreement not become final, the fact that the Parties were willing to stipulate to the definition of the Class and class certification as part of the Settlement Agreement shall have no bearing on, and shall not be admissible in connection with the issue of whether a class should be certified in a non-settlement context in these Actions or any other action. Intuit expressly reserves the right to oppose class certification should this Settlement Agreement not become final.

5

**4.      Procedural History.**

**4.1**     The U.S. Action.

**4.1.1**   The Complaint and First Amended Complaint.

On December 21, 2007, Plaintiffs in the U.S. Action filed a putative class action complaint against Intuit, alleging claims for negligence, strict products liability, trespass to chattels, breach of implied warranty and violations of California Business & Professions Code Section 17200, *et seq*.  On March 31, 2008, Plaintiffs in the U.S. Action filed their First Amended Complaint, adding a breach of contract claim against Intuit.  The First Amended Complaint alleges that the Software has a built-in auto-update mechanism that is activated when the Software is opened by the user.  Upon launch, the Software automatically contacts Intuit's server through the Internet to download any updates to the Software that may be available.  The First Amended Complaint also asserts that on Saturday, December 15, 2007, a Malfunction occurred when the Software Bug was triggered when Intuit's server failed to send the Software a proper signal and that this Malfunction resulted in the loss of the data on the Mac desktops of users who launched the Software.  The First Amended Complaint alleges that beginning on Sunday, December 16, 2007 at 1:40 a.m., postings were made to Intuit's online message board about the problem.  Less than 34 hours later, at approximately 10:00 a.m. PST on Monday, December 17, 2007, Intuit resolved the issue, stopping any further desktop data deletion.  Plaintiffs allege that in January 2008, the Software Bug was again triggered in the case of one user who had launched the Software at a restricted Internet "wi-fi hotspot" when the Software did not receive a proper update response as a result of the hotspot's restricted access to the Internet.  Intuit subsequently sent a "patch" to its users to completely disable the Software's auto-update mechanism, thereby disabling the Software Bug.

**4.1.2**   Intuit's Motion to Dismiss.

On April 17, 2008, Intuit filed its Motion to Dismiss in the U.S. Action, seeking dismissal of each and every claim for relief.  Intuit claims that the Software License Agreement ("Agreement") between Intuit and each Plaintiff is binding and enforceable and contains a valid disclaimer of warranties, limitation of liability and exclusive limited remedy, thereby precluding any claim for breach of implied warranty, or recovery of consequential damages (including those arising from any claim of negligence).  Intuit also asserts that the breach of contract claim is subject to dismissal because Plaintiffs could not allege any provision in the Agreement breached by Intuit nor how Intuit breached it.  Intuit further claims that the Agreement precludes any tort recovery—specifically negligence, strict products liability and trespass to chattels—under the economic loss doctrine.  Moreover, because Plaintiffs cannot allege physical loss to property, but only intangible data loss, Plaintiffs could not recover under a theory of strict products liability.  Intuit also asserts the trespass to chattels is subject to dismissal because Plaintiffs consented to the alleged incursion.  Finally, Intuit asserts that Plaintiffs' claim for violation of California Business & Professions Code Sections 17200, et seq., fails to state a claim upon which relief may be granted.  Intuit believes the Motion to Dismiss may be dispositive of the U.S. Action as the terms of the Agreement, together with the facts as alleged, permit the Court to determine whether or not the damages asserted by Plaintiffs are recoverable as a matter of law.

**EXECUTION COPY**

Plaintiffs in the U.S. Action filed their opposition to the Motion to Dismiss on July 3, 2008 (the "Opposition"). In their Opposition, Plaintiffs assert that the disclaimer of warranties in the Software License Agreement is unconscionable, the limited remedy failed its essential purpose and the bar on consequential damages is unenforceable and unconscionable. Plaintiffs further argue that the economic loss doctrine does not bar their negligence, strict products liability and trespass to chattels claims because the loss of computer files constitute damage not only to physical property, but also to "other" property. Plaintiffs also further claim that they have stated a claim for relief for negligence, strict products liability, trespass to chattels and a violation of California Business & Professions Code Sections 17200, et seq. Intuit filed its reply in support of its Motion to Dismiss in response to Plaintiffs' Opposition on July 24, 2008.

As of July 25, 2008, the Parties executed a Class Action Settlement Stipulation subject to court approval and the execution of this full formal Settlement Agreement. On August 1, 2008 the Parties requested the Court continue the hearing on Intuit's Motion to Dismiss in light of the Settlement Stipulation entered by the Parties. The Court continued the hearing date on the Motion to Dismiss to September 25, 2008.

**4.1.3**   Discovery.

On June 6, 2008, Plaintiffs served their first set of interrogatories, requests for admissions and requests for production of documents on Intuit. On July 28, 2008 Intuit served its objections and responses to Plaintiffs' discovery requests, including verified interrogatory responses and the production of content from its "QuickBooks Mac Update Escalations" QuickBase database, wherein Intuit has stored, *inter alia*, information regarding all users affected by the alleged Software Bug known to Intuit. In its verified interrogatory responses, Intuit provided detailed information regarding the registration process for the Software, the number of registered users of the Software, all users affected by the Software Bug known to Intuit, the reimbursements it has provided to affected customers, and the steps Intuit took to identify and assist affected customers, collect relevant information, and communicate with affected customers to ensure they received proper guidelines and assistance to recover any lost data.

On June 18, 2008, Intuit served its first set of interrogatories and requests for production on each Plaintiff. On or about August 4, 2008, Plaintiffs in the U.S. Action served their respective responses and objections to Intuit's discovery requests.

**4.2**   The Canadian Action.

**4.2.1**   On January 31, 2008, Plaintiff in the Canadian Action filed a statement of claim against Intuit Canada and Intuit Inc., asserting claims for negligence and trespass to personal property, arising out of the same purported Malfunction and Software Bug as that alleged in the U.S. Action.

**4.2.2**   On February 28, 2008, Intuit Canada and Intuit Inc. delivered a Notice of Intent to Defend. The appointment of Case Management Judge was requested on May 15, 2008. A reply was received from the Regional Senior Justice in Toronto on May 23, 2008.

7

**EXECUTION COPY**

**4.3**    History of Settlement Negotiations.

**4.3.1**    Since the filing of the U.S. Action in December 2007, Plaintiffs in the U.S. Action and Intuit have been engaged in arms-length settlement discussions and negotiations, recognizing that the mutually optimal result in this case would be not to expend significant costs, time, and energy in protracted litigation, but to reach a certain fair, adequate and reasonable settlement whereby compensation may be provided to Intuit's affected customers. Upon learning of the filing of the Canadian Action, Plaintiff of the Canadian Action joined and participated in the continuing arms-length settlement negotiations, so that the Parties could reach a global settlement for the entire Class.

**4.3.2**    On February 21, 2008, Plaintiffs, through Class Counsel, participated in an all-day mediation with Intuit and Intuit's counsel before Judge Edward A. Infante (Ret.) at JAMS, prior to and during which Intuit disclosed information concerning the cause of the Malfunction, the Software Bug and how it was disabled, other steps Intuit has taken to prevent any recurrence of any similar problem, and efforts Intuit has taken to reach out and identify its affected customers, assist them with data recovery, and in many cases, to reimburse them for related expenses. The information Intuit disclosed before and during the mediation was provided in lieu of formal discovery requests. The Parties reached the settlement terms herein, as a result of approximately eight (8) months' of ongoing arms-length negotiations.

**5.**    **Investigation and Discovery.**

**5.1**    Factual Investigation.

**5.1.1**    The Parties have conducted significant investigation of the facts and law during the prosecution of these Actions. Such discovery and investigations have included, *inter alia*, the informal exchange of information between the Parties through the mediation process and formal discovery, and numerous conference calls and other correspondence between representatives of the Parties.

**5.1.2**    The Parties recognize and acknowledge that Intuit has already notified the entire registered user base of the Software regarding the Malfunction and Software Bug, including how users could ensure prevention of any recurrence of the issue, and the data recovery resources available to affected users. The Parties further recognize and acknowledge that Intuit has taken remedial measures not only by restoring its server files on December 17, 2007, and implementing a redundant server architecture, but also by pushing a patch to its entire registered Software user base (and informing users of the patch's availability for manual download) to permanently disable the Software Bug.

**5.1.3**    The Parties recognize that Intuit, without any admission of liability, already has taken significant steps to identify and contact its affected customers and provide them compensation to date, including:

**5.1.3.1**    on December 17, 2007, creating and implementing a dedicated support team, including a dedicated email address (machelp@intuit.com), to provide free technical support to affected customers;

8

**5.1.3.2**    since December 17, 2007, identifying affected customers and affirmatively contacting them to provide technical assistance and support;

**5.1.3.3**    since December 17, 2007, working with third party data recovery vendors (including ProSoft Engineering, DriveSavers and Apple Genius Bars) to provide free and/or reimbursable data recovery software and assistance to affected customers;

**5.1.3.4**    on December 19, 2007, emailing all known affected users of the Software about the issue, how to best proceed with data recovery and to contact Intuit for assistance;

**5.1.3.5**    since December 19, 2007, providing reimbursement for certain reasonable hardware and/or software expenses incurred in their data recovery efforts;

**5.1.3.6**    since December 2007, providing most affected customers a free upgrade to QuickBooks® Pro 2007 for Mac; and

**5.1.3.7**    on January 14, 2008, emailing all registered users of the Software to inform them of the issue, how to prevent a recurrence, and to provide them means to obtain assistance from Intuit or other data recovery resources;

**5.1.4**    As of the February 21, 2008 mediation, Intuit had provided over $300,000 USD in compensation to its customers.

**5.2**    Legal Investigation.

**5.2.1**    As set forth in Paragraphs 4.1.1 and 4.1.2 above, counsel for the Parties have researched and investigated the relevant law as applied to the facts discovered regarding the alleged claims of the Class and potential defenses thereto, and the damages that could be claimed by the Class.  Most of the substantive negotiations between the parties have centered on the strength and weaknesses of existing case law vis-à-vis these facts and the legal issues and claims raised in this case.

## 6.    Fairness of the Settlement.

**6.1**    The Class Representatives recognize the expense and length of continued proceedings that would be necessary to continue the litigation against Intuit through trial and through any possible appeals in both Actions.  Class Representatives have also taken into account the uncertainty and risk of the outcome of further litigation (including the U.S. Court's decision on the Motion to Dismiss), and the difficulties and delays inherent in such litigation. The Class Representatives are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, Intuit's defenses thereto, and the difficulties in proving damages for the Class. The Class Representatives have also taken into account the extensive settlement negotiations conducted.  Based on the foregoing, the Class Representatives have determined that the Settlement set forth in this Agreement provides significant monetary compensation to the Class Members in light of the foregoing and is thus a fair, adequate and reasonable settlement and in the best interests of all Class Members.

EXECUTION COPY

**6.2**     As also set forth in Paragraph 4.1.2 above, Intuit contends that the Software License Agreement that each customer entered into when it used the Software is valid and enforceable and governs the claims and damages asserted by the Class Representatives in the Actions.  Specifically, Intuit contends that the Software License Agreement properly disclaimed any and all implied warranties, limited the Class Members' damages to the price paid for the Software, and had a valid exclusive remedy provision.  Moreover, Intuit contends that because Plaintiffs did not suffer any tangible or physical loss or damage to other property, the economic loss doctrine applies, and no strict product liability would be imposed in this case.  Intuit further believes that no damages, let alone punitive damages, are recoverable in the Actions.  Intuit has denied and continues to deny each of the claims alleged by Plaintiffs in these Actions and denies any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Actions, and believes it has valid defenses to Plaintiffs' claims.  Neither this Settlement Agreement, any document referred to or contemplated herein, nor any action taken to carry out the terms of this Settlement Agreement is, or may be construed as or used as an admission, concession or indication by or against Intuit of any fault, wrongdoing or liability whatsoever, including that any terms of the Software License Agreement is invalid or unenforceable, or that certification of any class would be appropriate in this or in any other case.  Intuit enters into this Settlement Agreement because it seeks prompt closure of these Actions and believes that providing compensation to its customers would be preferred to the cost, expense, burden, and inconvenience of litigating the Actions, if needed, through summary judgment, trial and/or possible appeals.

## 7.     Inadmissibility of the Settlement Agreement.

**7.1**     Whether or not the Court ultimately approves this Settlement Agreement, neither this Settlement Agreement, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be an admission for any purpose adverse to Plaintiffs or Intuit (including, but not limited to, as evidence of a presumption, concession, indication or admission by Intuit of any liability, fault, wrongdoing, omission, concession or damage) in the Actions or in any other action or proceeding.  The sole purposes of this Settlement Agreement, and any document, statement, proceeding or conduct related to this Settlement Agreement, are for the settling the Actions pursuant to this Settlement Agreement, effectuating the terms of this Settlement Agreement, and enforcing the releases in this Settlement Agreement.

## 8.     Scope of Settlement.

**8.1**     As reflected in the Implementation Schedule (Exhibit F), it is the Parties' intention to simultaneously seek preliminary approval of this Settlement Agreement in the U.S. Action and the Canadian Action.  The Parties hereby agree that in accordance with the Implementation Schedule set forth in Paragraph 10 below and in Exhibit F, there shall be only a single Class Notice, Claim Form, claims process and administration of this Settlement Agreement, subject to the Courts' approval.  The Class Notice shall be sent to all registered users of the Software.  The Parties further acknowledge that because Canadian law normally requires two class notices (in contrast to U.S. law), the Parties agree that a separate earlier Canadian Notice shall be sent only to registered users of the Software with a Canadian address, as set forth

10

**EXECUTION COPY**

in further detail in Paragraph 10.3.2 below. The Parties agree that they will work, to the extent possible and consistent with Rule 23 and the Ontario Class *Proceedings Act*, 1992 requirements, to adhere to the anticipated Implementation Schedule.

## 9.    Consideration.

**9.1**    Claims Process. Those Class Members who have suffered damages as a result of any Malfunction resulting from the Software Bug will be entitled to make claims through the ICA, as described in Paragraph 10.5 below, for compensation of documented and verifiable damages as specified in Paragraph 9.2 below. The Claims Period shall be ninety (90) days.[1]

**9.2**    Compensation to Class Members. Under the terms of this Settlement Agreement, Intuit shall make the following compensation available on a claims-made basis to the Class.

**9.2.1**    Reimbursements for Certain Data-Recovery Efforts (No Cap). Intuit shall provide 100% reimbursement for the following properly documented and verifiable expenses incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), directly related to the following efforts to recover inaccessible, damaged, corrupted, or lost data or files:

**9.2.1.1**    Data recovery software (*e.g.*, ProSoft Engineering's Data Rescue II software) including shipping, handling, and sales tax.

**9.2.1.2**    Third-party data-recovery expenses (*e.g.*, for the services of the Apple Genius Bar, DriveSavers, or other third-party data-recovery vendors); and

**9.2.1.3**    Hardware reasonably necessary for data recovery efforts (*e.g.*, external hard drives purchased for use with data recovery software) including shipping, handling, and sales tax.

**9.2.2**    Reimbursements for Data-Reconstruction and Other Data-Recovery Efforts (Soft Cap). Intuit will reimburse Class Members for the following documented costs directly related to efforts to reconstruct or recover inaccessible, damaged, corrupted, or lost data or files, subject to an aggregate soft cap of five hundred thousand dollars ($500,000 USD) ("Soft-Cap Expenses"):

**9.2.2.1**    If incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), third-party data-reconstruction expenses (*e.g.*, data re-entry) capped at 20 hours at $75 USD per hour per Class Member; and

**9.2.2.2**    If incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), in-house data reconstruction and data recovery expenses (*e.g.*, reimbursement for time Class Members' employees spent recovering and reconstructing lost data) capped at 20 hours at $75 USD per hour per Class Member.

---

[1]    All references to days in this Settlement Agreement are to calendar days, unless otherwise noted. Should the last day of any time period fall upon a weekend day or legal holiday, the period shall be extended to the following business day.

11

**9.2.2.3**    If the total amount of Soft-Cap Expenses from all Class Members exceeds $500,000 USD, Intuit will have two options to exercise in its sole discretion within fifteen (15) business days of its receipt of the ICA's Final Report of Settlement Claims as provided by Paragraph 10.8.4 below:

**9.2.2.3.1**    Increase the amount of the Soft Cap to equal the amount of all claimed Soft-Cap Expenses; or

**9.2.2.3.2**    Instruct the ICA to calculate payments to all Settlement Class Members with any Soft-Cap Expenses on a pro-rata basis such that the $500,000 USD Soft Cap amount is not exceeded and then, in accordance with the procedure set forth in Paragraph 10.6.5 below, offer each Settlement Class Member with any Soft-Cap Expenses a second opportunity to opt out of the Class within thirty (30) days of being notified of the amount of their claim that would be paid under this pro-rata distribution.

**9.2.3**    Free Upgrade.  Intuit will provide a free upgrade to QuickBooks® Pro 2007 for Mac (retailing at approximately $199.95 USD) to all Class Members who have any damages claims under Paragraphs 9.2.1 or 9.2.2 above that are approved by the ICA.

**9.3**    Termination Provision.  If an aggregate of one hundred (100) or more Class Members opt out of the settlement at any time, this Settlement Agreement, at the option of Intuit, may be terminated.  In the event Intuit exercises its option to terminate this Settlement Agreement, this Settlement Agreement shall be null and void, and shall have no further force or effect and shall be without prejudice to the rights and contentions as between the Parties.  Intuit will exercise this option within 15 business days of its receipt from the ICA of a binding final ruling on all disputed claims and a final report reflecting the total amount of all claims, and specifically the total amount of Soft-Cap Expenses.

**9.4**    No Other Reimbursement.  Other than as expressly set forth in Paragraph 9.2, above, Intuit will not reimburse any Class Member for any other claimed expenses, losses or damages.

**9.5**    Crediting of Compensation Already Provided to Class Members.  Intuit shall be credited with all compensation already transferred to Class Members to date.  Within fourteen (14) days of the Parties' selection of the ICA, or as soon as practicable thereafter but no later than seven (7) days before the commencement of the Claims Period, Intuit shall provide the ICA with information regarding all compensation provided to Class Members to date.  This offset is not a global offset.  Each individual claimant's claim is to be offset against that particular claimant's claim only.

**9.6**    Incentive Awards to Class Representatives.  Intuit agrees to pay up to five thousand dollars ($5,000 USD) to the Canadian Class Representative.  The parties acknowledge that Judge Alsup in the U.S. Action has indicated he may not approve incentive payments to U.S. Class Representatives.  At any time prior to the Fairness Hearing, Counsel for Plaintiffs may file a motion to request that the Court award incentive pay up to five thousand dollars ($5,000 USD) per U.S. Class Representative, and if such amount is approved, Intuit will pay that amount in addition to the amounts set forth herein.  Intuit will not oppose any such motion.  Denial of such

12

motion does not invalidate this settlement agreement. Any incentive award payments shall not come out of any funds made available by Intuit to the Class Members and shall be subject to review and approval by the Court in the U.S. Action upon motion by Class Counsel in the U.S. Action and by the Court in the Canadian Action upon motion by Class Counsel in the Canadian Action. Any incentive awards approved by the Court in the U.S. Action shall be paid by Intuit within fourteen (14) days after the Effective Date and shall be sent by one check to Class Counsel in the U.S. Action, payable to "James A. Quadra, Esq., of Moscone, Emblidge and Quadra, LLP," who shall distribute the award between the Class Representatives in the U.S. Action. Any incentive award approved by the Court in the Canadian Action shall be paid by Intuit within fourteen (14) days after the Effective Date and shall be sent by a second check to Class Counsel in the Canadian Action, payable to "Jonathan J. Foreman of Harrison Pensa," who shall distribute the award to the Class Representative in the Canadian Action.

**9.7** Final Judgment and Dismissal With Prejudice. Plaintiffs agree to seek entry of final judgment and dismissal with prejudice in the U.S. Action and Canadian Action in connection with the final approval of the Settlement Agreement in the U.S. Action and the Canadian Action.

**9.8** Attorneys' Fees and Costs. Any agreement with respect to attorneys' fees and costs shall be discussed at a later time and shall not be considered with regard to the terms of settlement of this class. Any payment of attorneys' fees/costs will be additional to any amounts paid pursuant to the terms herein and shall be sought by Plaintiffs pursuant to a separately noticed motion that will be subject to review and approval by the respective courts in the U.S. Action and Canadian Action. Intuit acknowledges that Class Counsel is entitled to some payment of attorneys' fees/costs, but reserves the right to challenge the amount claimed. The Parties recognize that any payment of attorneys' fees/costs will be subject to court approval.

**9.9** Currency Conversion. For purposes of this Settlement Agreement, any foreign currency amounts shall be converted to U.S. dollars at the applicable exchange rate existing as of the close of business on the date that this Settlement Agreement is fully executed by the Parties for purposes of, *inter alia*, calculating reimbursements to Settlement Class Members and the total aggregate Soft Cap Expenses.

## 10. Preliminary Approval, Class Notice, and Implementation Schedule.

**10.1** As part of this Settlement Agreement, the Parties agree to the following procedures for obtaining preliminary approval of the Settlement Agreement from the courts in the U.S. Action and Canadian Action, certifying the proposed Class, notifying Class Members of the Settlement Agreement, obtaining final court approval of the Settlement Agreement in both the U.S. Action and Canadian Action, and processing the claims made for the Settlement Awards to Settlement Class Members.

**10.2** <u>U.S. Action</u>: Preliminary Approval and Certification.

**10.2.1** Preliminary Approval. Plaintiffs in the U.S. Action and Intuit shall jointly move for preliminary approval of this Settlement Agreement for hearing no later than September 11, 2008, or as soon as thereafter as the Court may order, in the U.S. Action. In conjunction with

**EXECUTION COPY**

this hearing, Class Counsel in the U.S. Action and/or Intuit will submit this Settlement Agreement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

**10.2.2** Certification of Class; Appointment of Class Counsel and Class Representatives. Simultaneous with the filing of the Motion for Preliminary Approval, and solely for purposes of this Settlement Agreement, Class Counsel in the U.S. Action will request the court to enter a Preliminary Approval Order substantially in the form of Exhibit G hereto, preliminarily approving the proposed Settlement Agreement, certifying the Class for settlement purposes only, appointing Class Counsel and the Class Representatives in the U.S. Action and setting a date for a final approval hearing ("Fairness Hearing") at which time the Court may finally approve the Settlement Agreement. The Preliminary Approval Order shall provide for Class Notice of the Settlement Agreement and related matters to be sent to the Class as specified herein.

**10.3**    <u>Canadian Action</u>: Case Management Meeting, Canadian Notice, Approval Hearing and Certification.

**10.3.1** No later than seven (7) days after the motion for preliminary approval has been filed in the U.S. Action, Plaintiff in the Canadian Action and Intuit shall jointly request a case management meeting in the Canadian Action ("Canadian Case Management Meeting") to submit the proposed Settlement Agreement, seek approval of the form of the Canadian Notice, and set the date for the Canadian settlement approval hearing ("Canadian Settlement Approval Hearing").

**10.3.2** The Canadian Notice shall be sent after the Court in the Canadian Action's Order approving the Canadian Notice and and three (3) days following preliminary approval of the proposed Settlement Agreement in the U.S. Action ("Canadian Notice Date"). The Canadian Notice, which shall be in English and in French, shall inform Canadian Class Members of the Canadian Settlement Approval Hearing, and provide a fifty (50) day notice of settlement approval period ("Canadian Notice Period"). A copy of the form of Canadian Notice is attached hereto as Exhibit A. The Canadian Notice shall be sent by the ICA via email to any registered user of the Software whom Intuit can identify as having a Canadian address. Any Canadian Notice sent by email that is returned to the ICA as non-deliverable before the conclusion of the Canadian Notice Period, shall be immediately sent by first class mail, if such an address is available.

**10.3.3** The Canadian Settlement Approval Hearing shall take place fifty (50) days after the Canadian Notice Date, or as soon as thereafter as may be ordered by the Canadian Court. At the Canadian Settlement Approval Hearing, the Canadian Court shall consider certification of the proposed Class, fairness of the settlement terms and procedure (including the Class Notice, Canadian Approval Notice, Claim Form, and Opt Out Form), and hear any objections from Canadian Class Members of the public, and determine any Canadian Class Counsel fee. In conjunction with this hearing, Class Counsel in the Canadian Action and/or Intuit will submit this Settlement Agreement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

EXECUTION COPY

**10.4**    Coordination of U.S. Action and Canadian Action.  The Parties agree that they will cooperate and use best efforts to coordinate the preliminary and final approval of the U.S. Action and the Canadian Action as permitted by under applicable U.S. and Canadian law and adhere to the Implementation Schedule (Exhibit E).

**10.5**    Independent Claims Administrator.

**10.5.1**  No later than fourteen (14) business days following execution of this Settlement Agreement, the Parties shall jointly select and engage the services of a third party Independent Claims Administrator (ICA).  Intuit shall pay the costs of the ICA.  The ICA shall be responsible for:

**10.5.1.1**    preparing and sending the Canadian Notice and Class Notice, attached hereto as Exhibits A and D and providing access to the Canadian Approval Notice, Claim Form and Full U.S. Notice, attached hereto as Exhibits B, C and E, as well as a copy of the Settlement Agreement and related court filings, to the Class Members;

**10.5.1.2**    receiving, and reviewing the Claim Form and accompanying documentation submitted by Class Members to determine eligibility for payment as a Settlement Class Member and the amount of any such payment (including crediting Intuit with compensation already provided to the Settlement Class Member, if any);

**10.5.1.3**    keeping records of the total amounts in claims received by Class Members, including the total amounts claimed against the Soft Cap of Paragraph 9.2.2, and making submitted records and documentation available to Intuit for inspection and review;

**10.5.1.4**    keeping records of Class Members who opt out of the Settlement Agreement;

**10.5.1.5**    carrying out its obligations set forth in Paragraph 10.8 below;

**10.5.1.6**    preparing and communicating the Second Exclusion Notice (if any) as set forth in Paragraphs 10.6.5 and 10.9.1 to Settlement Class Members in the event that Intuit chooses to exercise its rights under Paragraph 9.2.2.3.2;

**10.5.1.7**    communicating with Settlement Class Members their respective Settlement Awards and distributing the same;

**10.5.1.8**    maintaining and providing support for a toll-free number and QuickBooks® 2006 for Mac settlement website for Class Members consistent with the terms of this Settlement Agreement; and

**10.5.1.9**    such other tasks as the Parties mutually agree that the ICA should perform.

**10.5.2**  Any claim or demand by Class Members against the ICA arising out of, or in connection with, its performance of these responsibilities shall be limited to seeking, as the sole and exclusive remedy, the specific performance of these responsibilities.

**EXECUTION COPY**

**10.6**    Notices.

      **10.6.1**    Intuit's Delivery of Information to ICA.  Within fourteen (14) days of the Parties' selection of the ICA, or as soon as practicable thereafter but no later than fourteen (14) days before the Canadian Notice Date, Intuit shall provide the ICA the contact information of all registered users of the Software, including identifying which of those registered users of the Software have a Canadian address.

      **10.6.2**    Canadian Notice.  In accordance with the terms set forth in Paragraph 10.3.2 above, the ICA shall send a copy of the Canadian Notice attached hereto as Exhibit A to all registered users of the Software who can be identified as having a Canadian address.

      **10.6.3**    Class Notice.

      **10.6.3.1**    Within seven (7) days following the entry of orders in both the U.S. Action and Canadian Action granting preliminary approval of the Settlement Agreement, the ICA shall distribute via email the Class Notice attached hereto as Exhibit D to all registered users of the Software (including those in Canada).  For any registered user whose email address is unavailable in the first instance, Class Notice shall be sent on the same day by first class mail by the ICA.  The Class Notice shall include information in English and French for Canadian registered users regarding the Canadian Action, and information in English for all registered users other than Canadian registered users regarding the U.S. Action.  The date on which the Class Notice is sent as described herein shall be referred to as the "Class Notice Date."

      **10.6.3.2**    Any Class Notice sent by email that is returned to the ICA as non-deliverable before the Exclusion Deadline, shall be immediately sent by first class mail, if such an address is available.  In the event the email and the mailed notice are both returned as non-deliverable, or if the email is returned as non-deliverable and there is no mailing address available, the intended recipient shall be deemed to have opted out of the settlement.

      **10.6.3.3**    Any Class Notice returned by mail to the ICA as non-deliverable before the Exclusion Deadline shall be sent to the forwarding address described therein, if any.  If there is no forwarding address or if the Class Notice is again returned as non-deliverable, the intended recipient shall be deemed to have opted out of the settlement.

      **10.6.4**    The Parties hereby recognize and acknowledge that Canadian Notice and Class Notice are being broadly disseminated to all registered users of the Software, although it is anticipated that only a small percentage of the recipients of the Class Notice would actually constitute Class Members (*i.e.*, that small percentage of registered users who were affected by the Malfunction and Software Bug).

      **10.6.5**    Second Exclusion Notice. In the event that Intuit elects to exercise its rights under Paragraph 9.2.2.3.2, Settlement Class Members with any Soft-Cap Expenses shall receive a second notice from the ICA that will inform them of their respective pro rata reduction of any approved Soft-Cap Expenses and provide them another opportunity to exclude themselves from the Class ("Second Exclusion Notice") as set forth in Paragraph 10.9 below.

**EXECUTION COPY**

10.7    Procedure for Objection or Exclusion.

10.7.1 U.S. Action:

10.7.1.1    Procedure for Objecting to the Settlement Agreement.  Only Non-Canadian Class Members may object to the Settlement Agreement in the U.S. Action.  Non-Canadian Class Members who wish to object to the Settlement Agreement must file in the U.S. Action and serve counsel for the Parties in the U.S. Action a written statement objecting to the Settlement Agreement.  Such written statement must be filed with the Court in the U.S. Action and be served on counsel for the Parties in the U.S. Action at the addresses specified in the Full U.S. Notice (Exhibit E) no later than seventy (70) days after the Class Notice Date (the "Objection Deadline").  No Non-Canadian Class Member shall be entitled to be heard at the Fairness Hearing (whether individually or through separate counsel) or to object to the Settlement Agreement, and no written objections or briefs submitted by any Non-Canadian Class Member shall be received or considered by the Court at the Fairness Hearing, unless written notice of the Non-Canadian Class Member's intention to appear at the Fairness Hearing, and copies of any written objections or briefs, are filed with the Court in the U.S. Action and served on counsel for the Parties in the U.S. Action on or before the Objection Deadline.  The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event that the postmark is illegible, the objection and/or intention to appear shall be deemed untimely unless it is received within five (5) calendar days of the Objection Deadline.  Non-Canadian Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

10.7.1.2    Procedure for Requesting Exclusion from the Class.  Non-Canadian Class Members who wish to exclude themselves from the Class must submit a written statement requesting exclusion from the Class.  Such written request for exclusion must contain the name, address, telephone number and email address of the Non-Canadian Class Member requesting exclusion, the date of data loss, and must be returned by certified mail to the address specified in the Full U.S. Notice (Exhibit E), and must be postmarked no later than sixty (60) days after the Class Notice Date (the "Exclusion Deadline").  The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  In the event that the postmark is illegible, the request for exclusion shall be deemed untimely unless it is received within five (5) calendar days of the Exclusion Deadline.  Any Non-Canadian Class Member who properly opts out of the Settlement Class using this procedure will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon.  Non-Canadian Class Members who fail to submit a valid and timely request for exclusion on or before the Exclusion Deadline shall be bound by all terms of the Settlement Agreement and any Final Judgment entered in the Actions.

10.7.2  Canadian Action:

10.7.2.1    Procedure to Objecting to the Terms of Settlement.  Only Canadian Class Members may object to the Settlement Agreement in the Canadian Action.

17

Canadian Class Members who wish to object to the terms of settlement must deliver to Class Counsel in the Canadian Action a written statement objecting to the terms of settlement within 45 days after the sending of the Canadian Notice. The objection shall contain the full name, current address, telephone number and e-mail address of the objector. Class Counsel in the Canadian Action shall file all such objections with the Court and provide copies of all such objections to Intuit and Intuit Canada's counsel. Canadian Class Members may appear and make submissions at the settlement approval hearing provided they have timely filed a notice of objection to Class Counsel in the Canadian Action. The date of the post mark on the mailing envelope shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted. In the event that the post mark is illegible, the objection and/or intention to appear shall be deemed untimely unless it is received within five (5) calendar days of the objection deadline. Canadian Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

   **10.7.2.2** Procedure for Requesting Exclusion from the Class. Canadian Class Members who wish to exclude themselves from the Class and the Settlement Agreement must submit a written statement to Class Counsel in the Canadian action requesting exclusion from the class. Such written request for exclusion must contain the name, address, telephone number and e-mail address of the Canadian Class Member requesting exclusion, the date of data loss, and must be returned by certified mail to the address specified in Exhibit _____ and must be post marked no later than 60 days after the Class Notice Date (the "Canadian Exclusion Deadline"). The date of the post mark on the mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. In the event that the post mark is illegible, the request for exclusion shall be deemed untimely unless it is received within five (5) calendar days of the Exclusion Deadline. Any Canadian Class Member who properly opts out of the Class and Settlement Agreement using this procedure will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Canadian Class Members who fail to submit a valid and timely request for exclusion on or before the Exclusion Deadline shall be bound by all terms of the Settlement Agreement and any final judgment entered into action.

  **10.8** ICA Report of Claims and Dispute Resolution Process.

   **10.8.1** Within seven (7) days after the end of the Claims Period, the ICA shall provide a report of submitted claims to the Parties, including the total amount of Soft Cap Expenses (the "Initial Report of Settlement Claims").

   **10.8.2** Within seven (7) days after receipt of the ICA's Initial Report of Settlement Claims, Intuit shall send the ICA and Class Counsel any written objections to any claims it believes are improperly classified or documented ("Disputed Settlement Claims"). The Parties shall promptly thereafter meet and confer in good faith to attempt to resolve these Disputed Settlement Claims.

EXECUTION COPY

**10.8.3** If the Parties are unable to resolve the Disputed Settlement Claims through the meet and confer process, within seven (7) days after receipt of any Intuit's written objections, the Parties shall submit brief written statements to the ICA regarding the Disputed Settlement Claims.

**10.8.4** Within seven (7) days thereafter, the ICA shall make a final binding determination on any Disputed Settlement Claims and issue a final report to the Parties reflecting the total amount of all claims, including the total amount of Soft Cap Expenses ("Final Report of Settlement Claims").

**10.8.5** If applicable, Intuit shall have fifteen (15) business days to choose whether to exercise its available options under Paragraph 9.2.2.3.

**10.9**    Pro Rata Reduction of Soft Cap Expenses.

**10.9.1** If the Soft Cap Expenses exceed $500,000 USD and Intuit chooses to exercise its rights under Paragraph 9.2.2.3.2 to offer Settlement Class Members a pro rata payment, the ICA shall send the Second Exclusion Notice to Settlement Class Members with Soft Cap Expenses that expressly includes the amount the Settlement Class Member will receive under the pro rata calculation. This Second Exclusion Notice shall be sent to these Settlement Class Members (including any in Canada) by email (or first class mail where email is unavailable) within seven (7) days of Intuit's written notice that it is exercising its rights under Paragraph 9.2.2.3.2. The date on which the Second Exclusion Notice is sent shall be the "Second Exclusion Notice Date." Those Settlement Class Members with Soft Cap Expenses who wish to exclude themselves from the Class pursuant to this Second Exclusion Notice must submit a written statement requesting exclusion from the Class. Such written request for exclusion must contain the name, address, telephone number, of the Settlement Class Member requesting exclusion, and must be returned by certified mail to the address specified in the Second Exclusion Notice (Exhibit H) and must be postmarked no later than thirty (30) days after the Second Exclusion Notice Date (the "Second Exclusion Deadline"). The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. In the event that the postmark is illegible, the request for exclusion shall be deemed untimely unless it is received within five (5) calendar days of the Second Exclusion Deadline. Any Settlement Class Member who properly opts out of the Settlement Class using this procedure will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Settlement Class Members who fail to submit a valid and timely request for exclusion on or before the Second Exclusion Deadline shall be bound by all terms of the Settlement Agreement and Final Judgment entered in the Actions.

**10.10** No Solicitation of Settlement Objections or Exclusions. The Parties agree to use their best efforts to carry out the terms of this Settlement Agreement. At no time shall any of the Parties or their respective counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or Class Members to request exclusion from the Settlement Class, or encourage Class Members to appeal from the Court's Final Judgment.

**EXECUTION COPY**

**10.11**   Fairness Hearing and Entry of Final Judgments.

**10.11.1**   <u>U.S. Action</u>.

**10.11.1.1**   Upon expiration of the Objection and Exclusion Deadline, with the U.S. Court's approval, a Fairness Hearing shall be conducted in the U.S. Action to determine final approval of the Settlement Agreement in accordance with the Implementation Schedule attached hereto as Exhibit F.

**10.11.1.2**   Within fourteen (14) days of the entry of an order finally approving the Settlement Agreement by the Court in the U.S. Action, Plaintiffs shall submit a Final Judgment and Order of Dismissal with Prejudice ("Final Judgment in the U.S. Action") to the Court for its approval and entry in the form attached hereto as Exhibit I.

**10.11.2**   <u>Canadian Action</u>.

**10.11.2.1**   A Settlement Approval Hearing shall occur within 60 days after the Canadian Notice is sent or as soon thereafter as can be arranged.  The deadline for objections to the settlement will be 45 days after the Canadian Notice is sent.  The Settlement Approval Hearing shall be conducted in the Canadian Action to determine final approval of the Settlement Agreement in accordance with the implementation schedule attached hereto as Exhibit F.

Within fourteen (14) days of the entry of an order finally approving the Settlement Agreement by the Court in the Canadian Action, the Plaintiff in the Canadian Action shall submit a final judgment and order of dismissal with prejudice ("Final Judgment in the Canadian Action") to the Court for its approval and entry in the form attached hereto as Exhibit I.

**10.12**   Procedure for Payment of Settlement Awards.

**10.12.1**   All Class Members who have submitted a valid and timely Claim Form demonstrating their right to a Settlement Award will receive a Settlement Award from Intuit. Class Members must submit the Claim Form and all accompanying documentation by first class mail or the Canadian equivalent thereof, or other method permitted by the ICA, according to the instructions set forth in the notices and Claim Form.

**10.12.2**   The Class Member must complete the Claim Form and submit all requested documentation in accordance with the instructions set forth in the notices and Claim Form within the ninety (90) day period commencing with the Class Notice Date (the "Claim Period") for a Class Member to be eligible to receive any Settlement Award.  The date post-marked on the mailing envelope shall be the exclusive means used to determine whether a Class Member has timely submitted his/her Claim Form during the Claim Period.  Claim Forms that are not timely shall be disregarded.

**10.12.3**   Claim Forms must also be valid for a Class Member to receive a Settlement Award.  For purposes of this Agreement, a Claim Form shall be deemed valid only if the Class Member has filled out the required portions of the Claim Form in their entirety, dated

20

the Claim Form, submitted supporting documentation (if applicable), and executed the Claim Form under the penalty of perjury.

**10.12.4**  In determining whether the desktop data deletion was caused by the Malfunction, the ICA shall follow the following guidelines:  The cause of the desktop data deletion shall be presumed to be from the Malfunction if the Class Member submits a valid Claim Form asserting desktop data deletion one of two ways:  from (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  The claimant shall bear the burden of proof to show the Malfunction caused the desktop data deletion in any other manner.  If the Claims Administrator determines that the Malfunction did not cause the damage to the claimant under the definition of the Class, the claimant shall be excluded from the Class and the release shall not bind that claimant.

**10.12.5**  If any claim is rejected as invalid or incomplete, the ICA shall mail or e-mail the originals or copies of Claim Forms rejected as invalid or incomplete, or a written notice of additional information required for the Claim Form to be valid ("Cure Notice"), directly to the Class Member who submitted the Claim Form, and send a copy to Class Counsel.  Class Members shall have a 30-day period to cure defective or incomplete claims, which shall run from the date of mailing or e-mailing of the original or copy of the Claim Form or Cure Notice to the Class Member.  The 30-day cure period may extend after the end of the Claims Period so long as the original Claim Form was timely submitted.  Class Members shall have one opportunity to cure.  If Class Counsel believe that additional cure opportunities are appropriate in any particular instance, counsel for the Parties shall meet and confer; if counsel are unable to agree as to the appropriateness of the additional cure right, the issue shall be resolved by the ICA.  Claims of Class Members who fail to cure shall be rejected.

**10.12.6**  As set forth in greater detail in Paragraph 10.8 above, Intuit shall have an opportunity to review all Claim Forms submitted and provide written objections to any claims it believes are improperly classified or documented.  Intuit and Class Counsel will then meet and confer in good faith to attempt to resolve the dispute.  If they cannot informally and promptly resolve the dispute, the ICA will make a final, binding determination after reviewing brief written statements from each side.  If any portion of the Claim Form is denied, the ICA will send a Notice of Denied Claim to any Class Member who submits a Claim Form that was not timely, not valid, and/or did not demonstrate entitlement to a Settlement Award, stating the reason(s) the claim (or what portion thereof) was denied.  This determination shall be binding and final on the Class Member.  Although Class Members who do not submit a valid and timely Claim Form shall not receive a Settlement Award, such persons shall nonetheless be Class Members and will be bound by all terms of the Settlement Agreement and any Final Judgments entered.

**10.12.7**  Transfer of Funds/Settlement Awards for Settlement Class Members.  Within thirty (30) days of the Effective Date, Intuit shall transfer funds and software to the ICA sufficient to cover the Settlement Awards.  Any checks made payable to Settlement Class Members shall remain valid from one-hundred twenty (120) days of their issuance and may thereafter be void if not deposited or otherwise cashed by a Settlement Class Member within that

21

**EXECUTION COPY**

time. The ICA shall send a Notice of Accepted Claim form to Settlement Class Members, stating the amount of their Settlement Award and the conditions for the Settlement Award.

**11.**     Administration Costs.

    **11.1**     The Parties agree to cooperate in the administration process for this Settlement Agreement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement Agreement. Intuit shall pay the costs of the ICA.

**12.**     Nullification of Settlement Agreement.

    **12.1**     In the event: (a) the U.S. Court does not enter the Preliminary Approval Order attached hereto as Exhibit I, or one that is materially the same; (b) the Canadian Court does not enter order preliminarily approving the Settlement Agreement; (c) the U.S. or the Canadian Court does not finally approve the Settlement Agreement as provided herein; (d) the U.S. Court and Canadian Court do not both enter Final Judgment as provided herein; or (e) Intuit chooses to exercise its right under Paragraph 9.3 and gives written notice to Class Counsel and the U.S. and Canadian Court that it is terminating this Settlement Agreement for that reason, this Settlement Agreement shall be null and void and any order or judgment entered by either Court in furtherance of this Settlement Agreement shall be treated as withdrawn by stipulation of the Parties. In such a case, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed. In the event an appeal is filed from either Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement Agreement shall be stayed pending final resolution of the appeal or other appellate review. No person shall have or assert any claim against Intuit, Intuit's counsel, Class Representatives, or Class Counsel in connection with the performance of this Settlement Agreement except to seek the specific performance of this Settlement Agreement.

**13.**     Effective Date.

    **13.1**     The Effective Date shall refer to the date by which this Settlement Agreement is finally approved by the U.S. and Canadian Courts as provided herein and both the U.S. and Canadian Courts' Final Judgments become final. For purposes of this paragraph, a Court's Final Judgment "becomes final" the first business day on which (a) the Final Judgment and order thereon has been entered and is in effect, having been neither withdrawn, rescinded, vacated, reversed, nor substantially modified on appeal, and is no longer subject to any appellate review, including rehearing or reargument or review *en banc* or on *certiorari*; and (b) Intuit is not entitled to terminate the Settlement Agreement pursuant to 9.3.

**14.**     Release of Claims.

    **14.1**     Upon final approval of the terms of this Settlement Agreement by both the United States District Court for the Northern District of California and the Ontario Superior Court of Justice, the Class Members, on behalf of themselves, their descendants, ancestors, dependents, heirs, executors, and administrators, and on behalf of all of their predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, past and present employees, officers, directors, attorneys, and all of their insurers and sureties, jointly and severally, fully and forever

**EXECUTION COPY**

release Intuit (including Intuit Canada Ltd.), and its predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, and each of their respective current and former officers, directors, agents, employees, shareholders, partners, joint venturers, insurers, and attorneys, of and from any claim, duty, obligation, or cause of action, whether presently known or unknown, suspected or unsuspected, whether raised by claim, counterclaim, setoff or otherwise, that any of them may possess, relating to any and all claims that were alleged in the U.S. Action or the Canadian Action, or otherwise relating to the Malfunction ("Released Claims").

      **14.2**    This release does not extend to any rights or obligations incurred under the Settlement Agreement.

      **14.3**    This release does not extend to any claim arising solely from Intuit's disablement of the Software's auto-update mechanism.

      **14.4**    Waiver of California Civil Code Section 1542.  Upon final approval of the terms of this Settlement Agreement by both the United States District Court for the Northern District of California and the Ontario Superior Court of Justice, Class Members shall be deemed to each expressly assume the risk that, by entering into this Settlement Agreement and the releases contained herein, each will forever waive claims for damages relating to the Released Claims that he or she or it does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the party's decision to enter into this Settlement Agreement.  In that regard, the Class Members expressly waive the protections and provisions of California Civil Code Section 1542, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

      **14.5**    The Parties recognize, acknowledge, understand, and assume the risk and possibility that any and all facts or rules of law that have or might have induced the Parties to enter into and execute this Settlement Agreement may in fact and/or in law be different from the Parties' present, past or future understanding and interpretation of the facts and/or law. The Parties nonetheless agree that this Settlement Agreement and the releases contained in it shall remain firm, valid, binding and in full force and effect as a release notwithstanding any misunderstanding or misinterpretation of fact and/or law.

      **14.6**    Nothing in this Settlement Agreement shall impact the Software License Agreement (or any other agreement) between Intuit and any Software user, which shall remain in full force and effect.

## 15.    Interim Stay of Proceedings.

      **15.1**    Subject to the approval of the respective Courts, all proceedings in the U.S. Action and Canadian Action shall be stayed, except as to those matters necessary to consummate

EXECUTION COPY

this Settlement Agreement, until the Effective Date of the Settlement or unless the Settlement Agreement is terminated pursuant to its terms.

**16.     Cooperation in Obtaining Court Approvals.**

     **16.1**    The Parties shall cooperate and present to the U.S Court and Canadian Court, for their consideration in connection with the approval of this Settlement Agreement, any and all evidence as may be requested by either Court under the appropriate standards for approving the settlement of the Class claims.

     **17.     No Prior Assignment.**

     **17.1**    The Parties represent that they have not previously assigned or conveyed to any third person (including by operation of law) any right, claim or cause of action that is the subject of this Settlement Agreement (including Plaintiffs' releases contained herein), and that they have the full and complete authority to enter into this Settlement Agreement.  To the extent that any third person's consent is necessary for any of the Parties hereto to enter into this Settlement Agreement and to make it binding on all Parties hereto, each Party represents that it has acquired such third person's consent to the same.

**18.     No Admission of Liability.**

     **18.1**    The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims relating to the Actions. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

**19.     Amendment.**

     **19.1**    This Settlement Agreement may be amended only by an instrument in writing signed by all Parties which refers to this Settlement Agreement and specifically states that it is intended to amend this Settlement Agreement.  Amendments and modifications may be made without additional notice to the Class Members or Settlement Class Members unless notice is required by the Court.

**20.     Construction.**

     **20.1**    This Settlement Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any party.  Neither the entire Settlement Agreement nor any provision in it shall be deemed to have been proposed or drafted by any party, or construed against any party.

     **20.2**    Captions are used for reference purposes only and should be ignored in the interpretation of the Settlement Agreement.

24

**20.3**   All Parties agree that this Settlement Agreement was drafted by counsel for the Parties at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

## 21.   The Canadian Action – Language.

**21.1**   The Parties acknowledge that they have required and consented that this Settlement Agreement and all related documents be prepared in English, except for Schedules "C" and "E" which are prepared in French.  Les Parties reconnaissent avoir exigé que la présente convention et tous les documents connexes soient rédigés en anglais sauf en ce qui a trait aux annexes "C" et "E" qui ont été rédigées en français.

## 22.   Integrated Agreement.

**22.1**   This Settlement Agreement, including all exhibits hereto, contains the entire understanding and agreement of the Parties with respect to the subject matter of this Settlement Agreement and supersedes and completely extinguishes all prior and contemporaneous agreements, understandings, representations, communications, negotiations, and discussions of the parties, whether oral or written, express or implied, relating to its contents. There are no agreements, understandings, restrictions, representations or warranties other than those set forth in this Settlement Agreement.

## 23.   Execution.

**23.1**   This Settlement Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the parties hereto, with the full intent of releasing all claims as defined in Paragraph 14 herein.

**23.2**   The Parties represent that they have had the benefit of independent legal advice of counsel of their own choice in the negotiating, drafting, and execution of this Settlement Agreement.

**23.3**   The Parties acknowledge that they have read the Settlement Agreement, that they have been represented by attorneys who have explained each of the provisions of the Settlement Agreement and its legal effect, that they have read and understand the Settlement Agreement and are fully aware of its legal and binding effect, that the Agreement contains all of the promises which they have made, and that they are entering into this Settlement Agreement freely and not on the basis of promises which are not stated in this Settlement Agreement.

**23.4**   This Settlement Agreement shall be deemed to have been executed upon the last date of execution by all the Parties.

**23.5**   This Settlement Agreement may be executed in any number of actual or copied counterparts and by counsel for the Parties in separate counterparts, each of which when so executed and delivered shall be an original.  The executed signature pages from each actual or copied counterpart may be joined together and attached to one such original, which shall constitute one and the same instrument.

**EXECUTION COPY**

24.    **Additional Documents.**

24.1    The Parties to this Settlement Agreement agree that they will execute and provide, at the request of any other party, any and all such other documents or other written instruments as may be reasonably necessary to effectuate the purposes of this Settlement Agreement.

25.    **Governing Law.**

25.1    This Settlement Agreement shall be subject to, governed by, construed and enforced in accordance with the law of the State of California in respect of the U.S. action without giving effect to the conflict of law principles thereof and in accordance with the laws of the Province of Ontario in respect of the Canadian Action.

26.    **Successors.**

26.1    This Settlement Agreement shall be binding on, and inure to the benefit of, the successors and assigns of the parties hereto.

27.    **Enforcement.**

27.1    U.S. Action.

27.1.1    Judge William H. Alsup in the U.S. Action shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement, and all orders and judgments entered in connection therewith, with respect to all Non-Canadian Class Members. The Parties in the U.S. Action and their respective counsel hereto submit to the jurisdiction of the United States District Court for the Northern District of California for purposes of interpreting, implementing and enforcing this Settlement Agreement, the settlement embodied in this Settlement Agreement, and all orders and judgments entered in connection therewith.

27.2    Canadian Action.

27.2.1    The class action judge designated in the province of Ontario in the Canadian Action shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement, and all orders and judgments entered in connection therewith, with respect to all Canadian Class Members. The Parties in the Canadian Action and their respective counsel hereto submit to the jurisdiction of the Ontario Superior Court of Justice for purposes of interpreting, implementing and enforcing this Settlement Agreement, the settlement embodied in this Settlement Agreement, and all orders and judgments entered in connection therewith.

28.    **No Press Comunication.**

28.1    Intuit, the Class Representative and their counsel agree that they will not issue any press releases or initiate any contact with the press about this case and/or the fact, amount or term of the Settlement, provided, however, this shall not limit Defendants with respect to any financial or SEC disclosures which in its judgment are necessary. Any communication about the

settlement to Class Members prior to Class Notice will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved notice.

## 29.    Miscellaneous Provisions.

29.1    Each of the Class Representatives represents and certifies (a) that he or she has agreed to serve as a representative of the Class proposed to be certified herein; (b) that he or she is willing, able and ready to perform all of the duties and obligations of a representative of the Class; (c) that he or she has either read the complaints in the Actions and this Settlement Agreement, including the Exhibits annexed thereto, or has received a description of them from Class Counsel, and that he or she has agreed to the terms of the Settlement Agreement; (d) that he or she has consulted with Class Counsel about the Actions, this Settlement Agreement, and the obligations of a representative of the Class; (e) that he or she has authorized Class Counsel to execute this Settlement Agreement on his or her behalf; and (f) that he or she will remain and serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or either Court at any time determines that said Plaintiff cannot represent the Class.

29.2    Each of the undersigned counsel represents that he or she is fully authorized to enter into and to execute this Settlement Agreement, for and on behalf of the client or clients that he or she represents, as reflected on the signatures pages attached hereto.

29.3    The Parties may agree, subject to approval of either Court where required, to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

[remainder left blank

27

EXECUTION COPY

BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: August ___, 2008        By: _____
                               Arthur Messina
                               President
                               Create-A-Card, Inc.

Dated: August ___, 2008        By: _____
                               Juan Loredo
                               President
                               AGSJ, Inc.

Dated: August ___, 2008        By: _____
                               Philip Flynn
                               Founder
                               Philanthropic Focus LLC

Dated: August ___, 2008        By: _____
                               Ron Smith
                               President
                               Ronald Smith & Associates Inc.

Dated: August 21, 2008         By: _____
                               Jean-Paul Guilbault
                               Vice President, Small Business Group,
                               Technical Support & Service
                               Intuit Inc.

Dated: August ___, 2008        By: _____
                               Yves Millette
                               President & CEO
                               Intuit Canada Ltd.

EXECUTION COPY                              28

BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND
ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE
OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE
OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF
THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING
SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING
INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date
written below through their duly authorized representatives as set forth below.

Dated: August __, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: August __, 2008

By: _____
Juan Loredo
President
AGSJ, Inc.

Dated: August __, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: August __, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: August __, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: August __, 2008

By: _____
Yves Millette
President & CEO
Intuit Canada Ltd.

BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: August ___, 2008

By:_____
Arthur Messina
President
Create-A-Card, Inc.

Dated: August ___, 2008

By:_____
Juan Loredo
President
AGSJ, Inc.

Dated: August 2/, 2008

By:_____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: August ___, 2008

By:_____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: August ___, 2008

By:_____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: August ___, 2008

By:_____
Yves Millette
President & CEO
Intuit Canada Ltd.

EXECUTION COPY                    28

7722995223   08/10/2008 09:10 Philanthropic Focus, LLC

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: August ___, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: August ___, 2008

By: _____
Juan Loredo
President
AGSJ, Inc.

Dated: August ___, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: August 22, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: August ___, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: August ___, 2008

By: _____
Yves Millette
President & CEO
Intuit Canada Ltd.

28

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: August __, 2008

By: _____
    Arthur Messina
    President
    Create-A-Card, Inc.

Dated: August __, 2008

By: _____
    Juan Loredo
    President
    AGSJ, Inc.

Dated: August __, 2008

By: _____
    Philip Flynn
    Founder
    Philanthropic Focus LLC

Dated: August __, 2008

By: _____
    Ron Smith
    President
    Ronald Smith & Associates Inc.

Dated: August 21, 2008

By: _____
    Jean-Paul Guilbault
    Vice President, Small Business Group,
    Technical Support & Service
    Intuit Inc.

Dated: August __, 2008

By: _____
    Yves Millette
    President & CEO
    Intuit Canada Ltd.

28

**EXECUTION COPY**

BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: August ___, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: August ___, 2008

By: _____
Juan Loredo
President
AGSJ, Inc.

Dated: August ___, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: August ___, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: August ___, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: August 21, 2008

By: _____
Yves Millette
President & CEO
Intuit Canada Ltd.

28

EXECUTION COPY

APPROVED BY COUNSEL.

Dated: August __, 2008

MOSCONE, EMBLIDGE & QUADRA, LLP

By:_____
          James A. Quadra


Dated: August __, 2008

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By:_____
          Jonathan D. Selbin


Dated: August __, 2008

HARRISON PENSA

By:_____
          Jonathan J. Foreman


Dated: August __, 2008

FENWICK & WEST LLP

By:_____
          Rodger R. Cole


Dated: August __, 2008

FASKEN MARTINEAU DUMOULIN LLP

By:_____
          Annie M.K. Finn


EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Implementation Schedule
Exhibit G:    Preliminary Approval Order – U.S. Action
Exhibit H:    Second Exclusion Notice
Exhibit I:    Final Judgment and Dismissal With Prejudice – U.S. Action
Exhibit J:    Canadian Opt Out Form


EXECUTION COPY

29

APPROVED BY COUNSEL.

Dated: August __, 2008                MOSCONE, EMBLIDGE & QUADRA, LLP

                                      By:_____
                                              James A. Quadra


Dated: August ℤ, 2008                 LIEFF, CABRASER, HEIMANN &
                                      BERNSTEIN, LLP

                                      By:_____  FOR
                                              Jonathan D. Selbin


Dated: August __, 2008                HARRISON PENSA

                                      By:_____
                                              Jonathan J. Foreman



Dated: August __, 2008                FENWICK & WEST LLP

                                      By:_____
                                              Rodger R. Cole


Dated: August __, 2008                FASKEN MARTINEAU DUMOULIN LLP

                                      By:_____
                                              Annie M.K. Finn



EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Implementation Schedule
Exhibit G:    Preliminary Approval Order – U.S. Action
Exhibit H:    Second Exclusion Notice
Exhibit I:    Final Judgment and Dismissal With Prejudice – U.S. Action
Exhibit J:    Canadian Opt Out Form

29

EXECUTION COPY

APPROVED BY COUNSEL.

Dated: August __, 2008                MOSCONE, EMBLIDGE & QUADRA, LLP

                                      By:_____
                                                James A. Quadra

Dated: August __, 2008                LIEFF, CABRASER, HEIMANN &
                                      BERNSTEIN, LLP

                                      By:_____
                                                Jonathan D. Selbin

Dated: August 22, 2008                HARRISON PENSA

                                      By:_____
                                                Jonathan J. Foreman

Dated: August __, 2008                FENWICK & WEST LLP

                                      By:_____
                                                Rodger R. Cole

Dated: August __, 2008                FASKEN MARTINEAU DUMOULIN LLP

                                      By:_____
                                                Annie M.K. Finn

EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Implementation Schedule
Exhibit G:    Preliminary Approval Order – U.S. Action
Exhibit H:    Second Exclusion Notice
Exhibit I:    Final Judgment and Dismissal With Prejudice – U.S. Action
Exhibit J:    Canadian Opt Out Form

29

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: August __, 2008                          MOSCONE, EMBLIDGE & QUADRA, LLP

                                                By:_____
                                                            James A. Quadra

Dated: August __, 2008                          LIEFF, CABRASER, HEIMANN &
                                                BERNSTEIN, LLP

                                                By:_____
                                                            Jonathan D. Selbin

Dated: August __, 2008                          HARRISON PENSA

                                                By:_____
                                                            Jonathan J. Foreman

Dated: August 22, 2008                          FENWICK & WEST LLP

                                                By:_____
                                                            Rodger R. Cole

Dated: August __, 2008                          FASKEN MARTINEAU DUMOULIN LLP

                                                By:_____
                                                            Annie M.K. Finn

EXHIBITS

Exhibit A:      Canadian Notice
Exhibit B:      Canadian Approval Notice
Exhibit C:      Claim Form
Exhibit D:      Class Notice
Exhibit E:      Full U.S. Notice
Exhibit F:      Implementation Schedule
Exhibit G:      Preliminary Approval Order – U.S. Action
Exhibit H:      Second Exclusion Notice
Exhibit I:      Final Judgment and Dismissal With Prejudice – U.S. Action
Exhibit J:      Canadian Opt Out Form

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: August __, 2008                    MOSCONE, EMBLIDGE & QUADRA, LLP

                                          By:_____
                                                    James A. Quadra

Dated: August __, 2008                    LIEFF, CABRASER, HEIMANN &
                                          BERNSTEIN, LLP

                                          By:_____
                                                    Jonathan D. Selbin

Dated: August __, 2008                    HARRISON PENSA

                                          By:_____
                                                    Jonathan J. Foreman

Dated: August __, 2008                    FENWICK & WEST LLP

                                          By:_____
                                                    Rodger R. Cole

Dated: August 22, 2008                    FASKEN MARTINEAU DUMOULIN LLP

                                          By:_____
                                                    Annie M.K. Finn

EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Implementation Schedule
Exhibit G:    Preliminary Approval Order – U.S. Action
Exhibit H:    Second Exclusion Notice
Exhibit I:    Final Judgment and Dismissal With Prejudice – U.S. Action
Exhibit J:    Canadian Opt Out Form

29

**EXECUTION COPY**