# EXHIBIT A

# *LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP*

*Embarcadero Center West*
*275 Battery Street, 30th Floor*
*San Francisco, CA  94111-3339*
*Telephone:  (415) 956-1000*
*Facsimile:  (415) 956-1008*

*780 Third Avenue*
*48th Floor*
*New York, NY  10017-2024*
*Telephone:  (212) 355-9500*
*Facsimile:  (212) 355-9592*

*One Nashville Place*
*150 Fourth Avenue North, Suite 1650*
*Nashville, TN  37219-2415*
*Telephone:  (615) 313-9000*
*Facsimile:  (615) 313-9965*

*E-mail:  mail@lchb.com*
*Website:  www.lieffcabraser.com*

**FIRM PROFILE:**

Lieff Cabraser Heimann & Bernstein, LLP, is a fifty-plus attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York and Nashville.  Lieff Cabraser has a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and investment fraud, employment discrimination and unlawful employment practices, product defect, antitrust, consumer protection, aviation, environmental and toxic exposure, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. We have litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the last fifteen years.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

In the 2007 edition of its annual list of the plaintiffs' law firms "doing the most to shape the law," *The National Law Journal* selected Lieff Cabraser as one of the nation's top plaintiffs' firms. Lieff Cabraser was also a member of *The National Law Journal*'s Plaintiffs' "Hot List" from 2003 through 2006.  We are one of only two plaintiffs' law firms in the nation to receive this award the last five years.

80577.1

*CASE PROFILES:*

### A.     Personal Injury and Products Liability Litigation

Lieff Cabraser has obtained over $400 million in verdicts, judgments and settlements for our clients in individual personal injury and wrongful death lawsuits. Since 1995, and working with co-counsel, we have achieved verdicts, judgments and settlements in excess of $10 billion in product liability class action lawsuits.

We only represent plaintiffs. In many of these cases, we assisted our clients in persuading the corporate defendants to issue recalls or improve their safety procedures for the protection of all consumers and patients. For their outstanding service to their clients and advancing the rights of all persons injured by defective products in *Mraz v. DaimlerChrysler* (described below), Lieff Cabraser partners Robert J. Nelson and Scott P. Nealey received the 2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and were also selected as finalists for attorney of the year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

Currently, we are prosecuting scores of lawsuits involving injuries and deaths from all types of negligent conduct, manufacturing errors and design defects. Our cases range from vehicle and aviation accidents to faulty medical devices. We also represent patients prescribed drugs with dangerous, undisclosed side effects and consumers sickened by contaminated food products.

Our successful personal injury and products liability cases, with the exception of aviation cases which are profiled separately, include:

1.     ***Individual Vehicle Injury Lawsuits.*** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by the wrongful conduct of other drivers or due to unsafe and defective vehicles, tires and other automotive equipment. We are representing clients in actions involving fatalities and serious injuries due to rollover accidents of fifteen passenger vans and sports utility vehicles. Plaintiffs allege that the vans and SUVs were defectively designed because they pose an unreasonable risk of rollover during foreseeable driving conditions.

We also represent clients in many other vehicle cases including ones where defective cruise control switches resulted in fires and transmission defects that caused the vehicle to shifted suddenly from park into reverse. In March 2007, in *Mraz v. DaimlerChrysler*, No. BC 332487 (Cal. Supr. Ct.), we obtained a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father. Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park. The jury

found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3 year old daughter Madison.  The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as co-counsel in the trial.

In litigation against Yamaha Motor Company, our clients suffered serious injuries due to an alleged design defect in the Yamaha Rhino.  The complaints charge that the Rhino is dangerously unstable.  Even during turns on flat surfaces at slow speeds, the Rhino has rolled over because it is top heavy, narrow, and the tires are too small.

2.      ***Multi-State Tobacco Litigation***.  Lieff Cabraser represented the Attorneys' General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general.  The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking.  In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid over the next 25 years.

3.      ***Fen-Phen ("Diet Drugs") Litigation.***  Lieff Cabraser represents individuals pursuing personal injury claims due to injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux).  We served as counsel for the plaintiff that filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of risks associated with the drugs.  Since the recall was announced in 1997, Lieff Cabraser has represented over 400 persons in individual actions who have suffered heart and/or lung damage, most often consisting of cardiac valve damage and/or Primary Pulmonary Hypertension, after ingesting Pondimin or Redux.  In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D.  Pa.), the Court appointed Elizabeth J. Cabraser to the

Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts.  In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage.  Lieff Cabraser also served on the Plaintiffs' Executive Committee in the California Coordinated Proceedings in California state court, and as class counsel in the State of Washington certified medical monitoring action.

4.     ***In re ConAgra Peanut Butter Products Liability Litigation***, MDL No. 1845 (N.D. Ga.).  In September 2007, the federal court appointed Elizabeth Cabraser as Plaintiffs' Lead Counsel in the litigation arising out of the recall of Peter Pan and Great Value peanut butter.  Tens of thousands of consumers nationwide contracted *Salmonella* poisoning from eating contaminated peanut butter produced at a single ConAgra plant in Sylvester, Georgia.  In February 2007, the FDA confirmed the presence of *Salmonella* in opened jars of Peter Pan and Great Value peanut butter obtained from inflected persons.

5.     ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.).  Lieff Cabraser represents patients that suffered heart attacks or strokes, and the families of loved ones who died, after having being prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects.  In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck.  In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, tried in the federal Court in New Orleans.  Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages.  In November 2007, Merck announced that it has entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings. Merck will pay a fixed amount of $4.85 billion into a settlement fund for qualifying claims already filed against Merck.

6.     ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.).  Lieff Cabraser partner Wendy R. Fleishman serves on Plaintiffs' Executive Committee in litigation in federal court arising out of Bausch & Lomb's recall in 2006 of its product ReNu with MoistureLoc. Consumers nationwide allege that the contact lens solution caused *Fusarium keratitis*, a rare and dangerous fungal eye

infection , as well as other serious eye infections because the solution failed to disinfect and cleanse contact lenses, contrary to its claims.  Many contact lens wearers were forced to undergo painful corneal transplant surgery to save their vision; others have lost all or part of their vision permanently.

7.    ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708.  Lieff Cabraser serves on the Plaintiffs' Lead Counsel Committee in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices.  At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported, since implantable cardio-defibrillators are not routinely evaluated after death.  In January 2008, the parties reached a global settlement of the action.  Guidant's settlements of defibrillator-related claims will total $240 million.

8.    ***Fallquist et al. v. Advanced Medical Optics and Allergan,*** No. SC 096041 (Los Angeles Super. Ct.); ***Martin et al v. Advanced Medical Optics and Allergan,*** No. KC 051267H (Los Angeles Super. Ct.).  Lieff Cabraser represents 20 consumers nationwide in two separate consolidated personal injury lawsuits filed against Advanced Medical Optics in August and November of 2007.  AMO's Complete MoisturePlus Multi Purpose Contact Lens Solution was recalled in May 2007 due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis*, caused by a parasite and use of AMO's contact lens solution.  Plaintiffs charge that though AMO aggressively promoted Complete MoisturePlus Multi Purpose as "effective against the introduction of common ocular microorganisms," the lens solution was ineffective and vastly inferior to other multipurpose solutions on the market.  Plaintiffs were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently.

9.    ***Luisi et al. v. Medtronic Inc.***, No. 07 CV 4250 (D. Minn.).  Lieff Cabraser currently represents over a hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc.  Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.

10.   ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL 1699.  Lieff Cabraser serves as Plaintiffs' Liaison Counsel to oversee and direct all personal injury and consumer litigation now pending in Federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra, Celebrex, and Parecoxib

manufactured by Pfizer, Inc and its predecessor companies Pharmacia
Corporation and G.D. Searle, Inc.  In this ongoing litigation, over 2,500
individuals have brought personal injury claims, and hundreds more
individuals and institutions allege that Bextra, Celebrex, and
Percoxib were marketed deceptively.  In addition to serving as Liaison
Counsel, Lieff Cabraser is also directly representing patients injured by
Bextra, Celebrex, and Parecoxib.

11.     ***Blood Factor VIII And Factor IX Litigation.***  Working with counsel in
Asia, Europe, Central and South America and the Middle East, Lieff
Cabraser represents hundreds of hemophiliacs worldwide, or their
survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and
Americans with hemophilia who contracted HCV, from contaminated and
defective blood factor products produced by American pharmaceutical
companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead
Counsel of the "second generation" Blood Factor MDL litigation presided
over by Judge Grady in the Northern District of Illinois.  This
groundbreaking litigation follows upon a two-month trial directed by
Richard M. Heimann in 2003 in California state court on behalf of a
person with hemophilia who is HIV-positive.

12.     ***Sulzer Hip and Knee Implants Litigation.***  In December 2000, Sulzer
Orthopedics, Inc., announced the recall of approximately 30,000 units of
its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a
notification of failures of its Natural Knee II Tibial Baseplate Knee
Implant.  In coordinated litigation in California state court, *In re Hip
Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed
Plaintiffs' Liaison Counsel and Co-Lead Counsel.  In the federal litigation,
*In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL
1410, Lieff Cabraser played a significant role in negotiating a revised
settlement with Sulzer valued at more than $1 billion.  In May 2002, the
Court granted final approval to the revised settlement.  Lieff Cabraser
serves as Class Counsel for Subclass V of the settlement (class members
with unrevised reprocessed Inter-Op shells).

13.     ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.).  Baycol was
one of a group of drugs called statins, intended to reduce cholesterol.  In
August 2001, Bayer A.G.  and Bayer  Corporation, the manufacturers of
Baycol, withdrew the drug from the worldwide market based upon reports
that Baycol was associated with serious side effects and linked to the
deaths of over 100 patients worldwide.  In the federal multi-district
litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering
Committee (PSC) and the Executive Committee of the PSC.  In addition,
Lieff Cabraser represented approximately 200 Baycol patients who have
suffered injuries or family members of patients who died allegedly as a
result of ingesting Baycol.  In these cases, our clients reached confidential
favorable settlements with Bayer.

14.     ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL
No. 926 (N.D. Ala.).  Lieff Cabraser serves on the Plaintiffs' Steering
Committee and was one of five members of the negotiating committee
which achieved a $4.25 billion global settlement with certain defendants
of the action.  This was renegotiated in 1995, and is referred to as the
Revised Settlement Program ("RSP").  Over 100,000 recipients have
received initial payments, reimbursement for the explantation expenses
and/or long term benefits.

15.     ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads
Products Liability Litigation***, MDL No. 1057 (S.D. Ohio).  Lieff Cabraser
served on the court-appointed Plaintiffs' Steering Committee in a
nationwide products liability action alleging that defendants placed into
the stream of commerce defective pacemaker leads.  In April 1997, the
district court re-certified a nationwide class of "J" Lead implantees with
subclasses for the claims of medical monitoring, negligence and strict
product liability.  A summary jury trial utilizing jury instructions and
interrogatories designed by Lieff Cabraser occurred in February 1998.  A
partial settlement was approved thereafter by the district court, but
reversed by the Court of Appeals.  In March 2001, the district court
approved a renewed settlement that included a $58 million fund to satisfy
all past, present and future claims by patients for their medical care,
injuries, or damages arising from the lead.

16.     ***In re Felbatol Products Liability Litigation,*** MDL No. 1048 (N.D. Cal.).
Lieff Cabraser served as Co-Lead Class Counsel and Plaintiffs' Liaison
Counsel in this nationwide litigation asserting medical monitoring,
compensatory and punitive damages claims on behalf of 100,000 users of
the anti-epilepsy drug Felbatol, who alleged present and potential injuries
from its serious adverse effects, including liver failure and aplastic
anemia.  The nationwide Plaintiff class was certified in 1995; certification
was vacated for further findings by the Ninth Circuit in *Valentino v.
Carter-Wallace*, 97 F.3d 1277 (9th Cir. 1996), which affirmed the viability
of nationwide mass tort class actions.  In 1997, the litigation was settled
favorably on behalf of all major injury claimants.

17.     ***In re Cordis Pacemaker Product Liability Litigation***, MDL No. 850 (S.D.
Ohio).  Lieff Cabraser represented a certified nationwide class of Cordis
pacemaker recipients on personal injury, emotional distress, fraud,
equitable relief, and pacemaker explant compensation claims. In 1995,
shortly before trial, Lieff Cabraser negotiated and obtained Court approval
of a $21 million settlement of the action.

18.     ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability
Litigation***, MDL  No. 1013 (D. Wyo.).  Lieff Cabraser served on the
Plaintiffs' Steering Committee in a class action lawsuit against Copley
Pharmaceutical, which manufactured Albuterol, a bronchodilator

prescription pharmaceutical. Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death. In October 1994, the district court certified a nationwide class on liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995). In November 1995, the district court approved a $150 million settlement of the litigation.

**B.      Securities and Investment Fraud**

1.      ***In re Scorpion Technologies, Inc. Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales. In *Scorpion I*, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in a securities fraud suit in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict. On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class… [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

2.   ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund, Inc., v. McKesson HBOC, Inc., et al.,*** No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch mutual funds in a private lawsuit filed alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson").  The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $150 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S.  Attorney and SEC.  *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004).  In October 2005, the parties entered into a settlement on favorable terms to Merrill Lynch Funds.

3.   ***Alaska State Department of Revenue, et al. v. America Online, Inc., et al.,*** No. 1JU-04-503 (Alaska Supr. Ct.).  In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc.  When the action was filed, the Alaska Attorney General estimated the losses at $70 million.  The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, all of which was intended to, and did, artificially inflate the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction.  "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

4.   ***In re Qwest Communications International, Inc. Securities and "ERISA" Litigation (No. II),*** No. 06-cv-17880-REB-PAC (MDL No.1788) (D. Colo.).  We represent the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty separate mutual funds in individual securities fraud actions filed in federal court against Qwest Communications International, Inc., Philip F. Anschutz, former co-

chairman of the Qwest board of directors and other senior executives at Qwest as well as Arthur Andersen LLP. In each action, defendants are charged with significantly overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. Defendants' unlawful conduct served to maintain Qwest's common share price at artificially high levels and enabled the individual defendants to sell Qwest common shares at inflated values.

5.     *In re Broadcom Corporation*, No. CV 06-3252-R (C.D. Cal.). Lieff Cabraser serves as court-appointed Lead Counsel in a stockholders' derivative action against the board of directors of Broadcom Corporation. The suit alleges defendants intentionally manipulated their stock option grant dates between 1997 and at least the end of 2002 in order to enrich themselves at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, Broadcom executives were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted. Plaintiffs have defeated defendants' motions to dismiss and the case is in discovery.

6.     *In re Brooks Automation, Inc. Securities Litigation*, No. 06 CA 11068 (D. Mass.). Lieff Cabraser serves as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of all persons who purchased securities of Brooks Automation between July 25, 2001 and August 1, 2006. Plaintiff charges that Brooks Automation ("Brooks" or the "Company") and its senior corporate officers and directors violated federal securities laws by participating in a scheme to backdate Company stock options over a six year period for the purpose of increasing the value of the stock options to recipients, without disclosing the corresponding compensation charge in the Company's publicly filed financial statements. Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices. In June 2008, the Court granted preliminarily approval to a $7.75 million settlement of the class action.

7.     *In re Cablevision Systems Corp. Shareholder Derivative Litig.*, No. 06-cv-4130-DGT-AKT (E.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision. The suit alleges that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision

shareholders. According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants. In June 2008, the Court granted preliminarily approval to a $34.4 million settlement. Over $24 million of the proposed settlement will be contributed directly by individual defendants who are alleged either to have received backdated options themselves or to have otherwise participated in or approved of the backdating activity. A final approval hearing will take place in September 2008.

8.      ***BlackRock Global Allocation Fund, Inc., et al. v. Tyco International Ltd., et al.***, Case No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and Stock Fund, et al. v. Tyco International Ltd., et al.***, Case No. 2:08-cv-518 (D. N.J.). Lieff Cabraser represents multiple funds of the investment firms BlackRock Inc. and Nuveen Asset Management in separate, direct securities fraud actions against Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz, and Frank E. Walsh, Jr. Plaintiffs allege that defendants engaged in a massive criminal enterprise that combined the theft of corporate assets with fraudulent accounting entries that concealed Tyco's financial condition from investors. As a result, Plaintiffs purchased Tyco common stock and other Tyco securities at artificially inflated prices and suffered losses upon disclosures revealing Tyco's true financial condition and defendants' misconduct.

9.      ***Albert, et al. v. Alex. Brown Management Services, Inc., et al.; Baker , et al. v. Alex. Brown Management Services, Inc., et al.*** (Del. Ch. Ct.). In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars. The suits named as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals. Among the plaintiff-investors were 70 high net worth individuals. In the fall of 2006, the cases settled by confidential agreement.

10.     ***Kofuku Bank Ltd. and Namihaya Bank Ltd. v. Republic New York Securities Corp., et al.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., et al.***, No. 00 CIV 4114 (S.D.N.Y.). Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws. Through

a group of interconnected companies owned and controlled by Armstrong – the Princeton Companies – Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan.  Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies.  In December 2001, the claims of our clients and those of the other Princeton Note investors were settled.  As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

11.     ***Lehman Brothers/First Alliance Mortgage Litigation***,  No. SA CV 01-971 (C.D. Cal.).  On June 16, 2003, a federal jury in California held Lehman Brothers, Inc., liable for knowingly assisting First Alliance Mortgage Corporation in committing fraud.  First Alliance was accused of misrepresenting the true cost of home loans and of charging borrowers as much as 24% in loan origination and other fees.  The jury found that First Alliance systematically defrauded borrowers, and that Lehman Brothers aided and abetted the fraudulent scheme.  The verdict showed that the community will hold Wall Street responsible for knowingly serving as a financial backer to abusive lenders.  The Ninth Circuit Court of Appeals affirmed class wide liability against Lehman Brothers.

12.     ***Allocco, et al. v. Gardner, et al.***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants.  Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

13.     ***In re National Century Financial Enterprises, Inc.  Investment Litigation***, MDL 1565 (S.D. Ohio).  Lieff Cabraser serves as Lead

Counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in a securities fraud and breach of fiduciary duties lawsuit against Bank One, JPMorgan Chase Bank, Credit Suisse First Boston LLC, and additional defendants. The complaint charges that plaintiffs suffered $89 million in losses as a result of a massive Ponzi scheme orchestrated and implemented by National Century Financial Enterprises and defendants. Lieff Cabraser reached settlements with several of the defendants for the benefit of the Funds and continues to prosecute the case against the non-settling defendants.

14.     ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the most foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases and their experience and views . . ."

15.     ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

16.    ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.).  Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme.  The Court approved $15 million in partial pretrial settlements. At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud.  Richard M. Heimann served as Lead Trial Counsel in the class action trial.  On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages.  In 1994, the Court approved a $17 million class settlement with Ernst & Young.

17.    ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H.  Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra.  Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company.  The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition.  In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud.  Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

18.    ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D. Cal.).  Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits.  By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million.  The settlement proceeds have been distributed to eligible class members.  The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer.  The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them.  In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial.  In October, 2003, the Court granted

Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

19. ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

20. ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

## C. <u>Employment Discrimination and Unfair Employment Practices</u>

1. ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel… Even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female

employees.

In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

2.     ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,*** MDL No. 1439 (D. Or.).  Lieff Cabraser and co-counsel represent personal lines claims representatives of Farmers' Insurance Exchange seeking unpaid overtime.  In November 2003, after a three-week liability phase trial, the court held that Farmers' claims adjusters who handle auto and low level property claims are entitled to overtime. 300 F. Supp. 2d 1020 (2003).  The court further found that Farmers' actions were willful and were not taken in good faith, entitling the workers to liquidated damages.  In January and May 2005, the court entered judgments totaling $52.5 million against Farmers, the largest judgments ever entered in as the result of the trial of a Fair Labor Standards Act ("FLSA") trial.  In October 2006, the Ninth Circuit Court of Appeals reversed the judgment for plaintiffs under the FLSA and certain state laws, and remanded the case for further proceedings under the laws of Minnesota, Oregon, and Colorado.

3.     ***Rosenburg, et al. v. IBM,*** No. C06-0430 JDC (N.D. Cal.).  In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime.  The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry.  Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

4.     ***Satchell, et al. v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.).  In 2007, the court approved a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express.  The settlement requires FedEx to reform its promotion, discipline, and pay practices.  Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination.  The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

5.    ***Amochaev et al. v. Citigroup Global Markets, Inc., d/b/a Smith Barney***, No. C05-1298 PJH (N.D. Cal.).  On August 13, 2008, the Court granted final approval to a settlement of the gender discrimination case against Smith Barney.  Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment.  The Court approved a four-year settlement agreement that provides for comprehensive injunctive relief and significant monetary relief of $33 million for the 2,411 members of the Settlement Class.  The comprehensive injunctive relief provided under the settlement is designed to increase business opportunities and promote equality in compensation for female brokers.

6.    ***Gonzalez et al. v. Abercrombie & Fitch Stores, Inc. et al.***, No. C03-2817 SI (N.D. Cal.).  In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination.  The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender.  Lieff Cabraser serves as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.  Implementation of the consent decree continues into 2011.

7.    ***Frank v. United Airlines, Inc.***, No. C-92-0692 MJJ (N.D. Cal.).  Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.

Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved.  They are dedicated, hardworking and able counsel who have represented their clients very effectively."  U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

8.    ***Winnett, et al. v. Caterpillar, Inc.***, No. 3:06-cv-00235 (M.D. Tenn.).  Lieff Cabraser serves as co-counsel representing retirees in a nationwide class action lawsuit against Caterpillar, Inc.  In October 2004 Caterpillar

began charging monthly premiums despite longstanding contracts that promise free healthcare to certain participants and their spouses. The lawsuit seeks to end these charges and restore the plaintiffs and similarly situated retirees to the position they would have been but for Caterpillar's contractual violations. In July 2007, the Court granted the plaintiffs' class certification motion.

9.   ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.); ***Gamble v. Wal-Mart***, No. 7121-01 (N.Y.). Lieff Cabraser and co-counsel represent proposed classes of hourly wage earners at Wal-Mart in Washington and New York who allegedly have been forced to work "off-the-clock" (without pay). Plaintiffs, current and former Wal Mart employees, allege that, in violation of state wage and hour laws, Wal-Mart forces employees to work through breaks and to work without pay after they have clocked out. In October 2004, in the Washington Wal-Mart action, the Court certified a class of approximately 40,000 current and former Wal-Mart employees.

10.  ***Holloway, et al. v. Best Buy,*** No. C05-5036 PJH (N.D. Cal.). Lieff Cabraser, with co-counsel, represents a proposed class of current and former employees of Best Buy in a federal class action civil rights lawsuit. Plaintiffs allege that Best Buy stores nationwide discriminate against women and minorities, specifically African Americans and Latinos. These employees charge that they are paid less than white males, denied promotions, and assigned to less desirable positions. The suit also alleges that Best Buy discriminates against women and minorities in hiring decisions.

11.  ***Giannetto v. Computer Sciences Corporation***, 03-CV-8201 (C.D. Cal.). In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court in July 2005 granted final approval to a $24 million settlement with Computer Sciences Corporation. Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

12.  ***Foster v. The Great Atlantic & Pacific Tea Company, Inc.*** ***("A&P")***, No. 99 Civ. 3860 (CM) (S.D.N.Y.). Lieff Cabraser, along with co-counsel, represented approximately 870 current and former employees of New York area supermarkets suing under the Fair Labor Standards Act. The Opt-In Plaintiffs in the certified collective action sought unpaid overtime compensation resulting from Defendants' alleged failure to compensate employees for work performed "off-the-clock." In May 2004, the Court approved a settlement providing $3.11 million to the Opt-In Plaintiffs. In June 2004, current and former full-time hourly employees of

The Great Atlantic & Pacific Tea Company filed a new lawsuit against defendants in New York state court. The plaintiffs allege that defendants systematically failed to pay overtime wages and deleted hours worked from time records in violation of New York labor law. In July 2007, the Court certified the class of thousands of cashiers, clerks, bakers, deli and other hourly-paid workers.

13. ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No. RG04141291 (Cal. Supr. Ct.). Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

14. ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

15. ***Trotter v. Perdue Farms, Inc.***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

16. ***Sandoval v. Mountain Center, Inc., et al.*** No. 03CC00280 (Cal. Supr. Ct.). Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court

approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

17.  ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.).  With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans.  After acquiring  PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated.  Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act.  In 2002, the Court granted final approval to a $10 million settlement.

18.  ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.).  With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA").  Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked.  In May 2002, the Court approved an $8 million settlement of the case.

19.  ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.).  Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989.  On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act.  The case settled in 1993 for $13.5 million.

20.  ***Buttram v. UPS, Inc.***, No. C-97-01590 MJJ (N.D. Cal.).  Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement.  In 1999, the Court approved a $12.14 million settlement of the action.  Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

21.  ***Lyon v. TMP Worldwide, Inc.***, No. 993096 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm.  The settlement, approved in 2000,

provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

22.   *Kahn v. Denny's*, No. BC177254 (Cal. Supr. Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

23.   *Giles v. Allstate*, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

24.   *Bogan v. Fleetwood Enterprises, Inc.*, No. CIV 00-0440-S-BLW (D. Idaho). Lieff Cabraser, along with co-counsel, represents a nationwide class of women production associates who allegedly have been discriminated against on the basis of sex with respect to promotions and compensation, and who allegedly have been subjected to rampant sexual harassment. In 2002, the Court approved a settlement that included comprehensive injunctive relief.

25.   *Vedachalam v. Tata America Int'l Corp.*, C 06-0963 VRW (N.D. Cal.) Lieff Cabraser and co-counsel represent a proposed class of non-U.S.-citizen employees in a nationwide class action lawsuit against Tata. Plaintiffs allege that Tata unjustly enriched itself by requiring all of its non-U.S.-citizen employees to endorse and sign over their federal and state tax refund checks to Tata. The suit also alleges other violations of California and federal law, including that Tata did not pay its non-U.S.-citizen employees the amount promised to those employees before they came to the United States. In 2007 and again in 2008, the Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India. The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims. Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law. Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies.

In 2004, Kelly M. Dermody, who oversees the firm's employment law practice, was included by *The Recorder* in a list of the best employment lawyers in the San Francisco Bay Area, and has also been selected as a *Northern California Super Lawyer*. In 2007, the Daily Journal recognized Ms. Dermody as one of the "Top Women Litigators in California," and she also received a California Lawyer Attorney of the Year (CLAY) Award from *California Lawyer* magazine.

D.    **Consumer Protection**

1.    ***Sutter Health Uninsured Pricing Cases***, J.C.C.P. No. 4388.  Plaintiffs
alleged that they and a Class of uninsured patients treated at Sutter
hospitals were charged substantially more than patients with private or
public insurance, and many times above the cost of providing their
treatment.  In December 2006, the Court granted final approval to a
comprehensive and groundbreaking settlement of the action.  As part of
the settlement, Class members will be entitled to make a claim for refunds
or deductions of between 25% to 45% from their prior hospital bills, at an
estimated total value of $276 million.  For the next three years, Sutter will
maintain discounted pricing policies for uninsureds that will make Sutter's
pricing for uninsureds comparable to or better than the pricing for patients
with private insurance.  In addition, Sutter agreed to maintain more
compassionate collections policies that will protect uninsureds who fall
behind in their payments.  Lieff Cabraser served as Lead Counsel in the
coordinated action.

2.    ***Catholic Healthcare West Cases***, J.C.C.P. No. 4453.  Plaintiff alleged that
Catholic Healthcare West ("CHW") charged uninsured patients excessive
fees for treatment and services, at rates far higher than the rates charged to
patients with private insurance or on Medicare.  In January 2007, the
Court approved a settlement that provides discounts, refunds and other
benefits for CHW patients valued at $423 million.  The settlement requires
that CHW lower its charges and end price discrimination against all
uninsured patients, maintain generous charity case policies allowing low-
income uninsureds to receive free or heavily discounted care, and protect
uninsured patients from unfair collections practices.  Lieff Cabraser served
as Lead Counsel in the coordinated action.

3.    ***Ricci v. Ameriquest Mortgage Company***, No. 27-CV-05-2546 (Minn.
District Court).  Lieff Cabraser serves as Plaintiffs' Lead Counsel for a
certified class of Minnesota property owners who obtained mortgage loans
from Ameriquest Mortgage Company.  Plaintiffs charge that Ameriquest
has engaged in a deceptive and unlawful business practices in violation of
Minnesota law.   Plaintiffs allege that Ameriquest trains its sales force to
target economically vulnerable persons in a predatory lending scheme
based on the sale of loans with illegal and undisclosed fees and terms.

4.    ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, Case No. IC
859468 (San Diego Supr. Ct.).  Lieff Cabraser serves as Lead Class
Counsel in a certified class action lawsuit on behalf of 60,750 uninsured
patients who alleged that the Scripps Health hospital system imposed
excessive fees and charges for medical treatment.  The class action
originated in July 2006, when uninsured patient Phillip Franklin filed a
class action cross-complaint against Scripps Health after Scripps sued Mr.
Franklin through a collection agency.  Mr. Franklin alleged that he, like all

other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment.  In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also requires Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under  other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitor ing outside collection agents.  The prospective future discounts are worth many millions more in savings to uninsureds over the next four years.

5.  ***Berger v. Property I.D. Corporation***, No.  CV  05-5373-GHK (C.D. Cal.). In August 2008, Lieff Cabraser attorney Barry R. Himmelstein negotiated a <u>$39.4 million</u> settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring  their California clients ' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California).  Under the settlement, hundreds of thousands of California home sellers are eligible to receive a full refund  of the cost of their report, typically about $100.

6.  ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.).  Lieff Cabraser serves as counsel for consumers that charge Dell has engaged in a scheme to deliberately cheat large numbers of consumers.  The complaint charges that Dell advertises "limited time" specific-dollar discounts from expressly referenced former prices, but that the discounts are false because the reference prices are inflated beyond Dell's true regular prices.  On August 3, 2007, U.S. District Court Judge Ronald M. Whyte denied Dell's motions to enforce a class action waiver clause and to compel arbitration. The Court found that the provisions in Dell's purchase agreement requiring disputes to be resolved through individual arbitration proceedings and prohibiting class actions are unconscionable under California law.

7.  ***Schaffer v. Litton Loan Servicing, LP***, No. CV 05-07673 (C.D. Cal.). Plaintiffs, all homeowners with a mortgage loan serviced by Litton Loan Servicing, charge that Litton has engaged in a scheme by which it fails to accurately service its borrowers' loans, including misapplying or failing to

apply payments made. In July 2007, the Court certified a nationwide class of borrowers who have claims against Litton for violation of 12 U.S.C. § 2605(d), a provision of the Real Estate Settlement Procedures Act. This provision creates a 60-day grace period following the transfer of servicing of a mortgage loan, and prohibits loan servicers from imposing late fees or otherwise treating as late any payment that was "received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment." 12 U.S.C. § 2605(d).

8.    ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.). In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

9.    ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.). Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end of billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the court agreed, declining to approve it. Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

10.     ***Estate of Holman, et al. v. Noble Energy, Inc.***, No. 03 CV 9 (Dist. Ct.,
        Weld County, Colorado).  Lieff Cabraser served as Co-Lead Counsel for a
        class of royalty owners with mineral interests in Colorado.  Plaintiffs
        alleged that Noble Energy and Patina, its predecessor company, underpaid
        Class members for natural gas production royalties in violation of state
        law.  In June 2007, the Court granted preliminary approval to a $53
        million settlement of the action.  The settlement also provided for a
        significant improvement in the calculation of future royalty payments,
        which were estimated to benefit the Class an additional $50 million.

11.     ***Strugano v. Nextel Communications, Inc.,*** No. BC 288359 (Los Angeles
        Supr. Crt).  In May 2006, the Los Angeles Superior Court granted final
        approval to a class action settlement on behalf of all California customers
        of Nextel from January 1, 1999 through December 31, 2002, for
        compensation for the harm caused by Nextel's alleged unilateral (1)
        addition of a $1.15 monthly service fee and/or (2) change from second-by-
        second billing to minute-by-minute billing, which caused "overage"
        charges (*i.e.*, for exceeding their allotted cellular plan minutes).  The total
        benefit conferred by the Settlement directly to Class Members was
        between approximately $13.5 million and $55.5 million, depending on
        which benefit Class Members selected.  Class Counsel secured these
        benefits for a Class of approximately 308,000 customers with 1.1 million
        cell phone plans.

12.     ***Thompson, et al. v. WFS Financial, Inc.***, No. 3-02-0570 (M.D. Tenn.);
        ***Pakeman, et al. v. American Honda Finance Corporation***, No. 3-02-
        0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC
        03-419 230 (San Francisco Supr. Ct.).  For the past five years, Lieff
        Cabraser with co-counsel litigated against several of the largest
        automobile finance companies in the country to compensate victims of –
        and stop future instances of – racial discrimination in the setting of interest
        rates in automobile finance contracts.  The litigation led to substantial
        changes in the way Toyota Motor Credit Corporation ("TMCC"),
        American Honda Finance Corporation ("American Honda") and WFS
        Financial, Inc., sell automobile finance contracts, limiting the
        discrimination that can occur.

        TMCC, American Honda and WFS Financial allow independent
        automobile dealers to add a discretionary markup (often several
        percentage points) to the objective, credit-based interest rates determined
        by the finance company.  Plaintiffs charged that African-American and
        Latino customers paid more in finance charges than similarly situated non-
        minority customers due to the practice by TMCC, American Honda and
        WFS Financial of allowing dealers to increase, or "mark up," a customer's
        Annual Percentage Rate ("APR") on contracts.  The discretionary markup
        amounts were not based on objective credit-worthiness information, but
        were wholly subjective.  Statistical analyses showed that the discretionary

markups had a disparate impact on African American and Latino customers.

In the nationwide class action litigation against TMCC, American Honda and WFS Financial, the respective parties entered into landmark settlements for African American and Latino consumers which collectively provided:

- Cash or credit payments of up to $400 per class member.

- Broad refinancing programs reducing rates charged to existing African-American and Latino customers whose markups were 1% or more. These benefits were valued at $1 billion in the WFS Financial case alone.

- New pre-approved offers of credit (that cannot be marked up) to 1.5 million African American and Latino consumers.

- Limits on discretionary markups on new loans of 1.75% to 2.50% (depending on the length of the loan). This compression of the discretionary range substantially reduced the likelihood that any markups in the future will occur as the result of racial discrimination.

- New disclosures on all contracts explaining that the interest rate may be negotiable.

- Donations of $1.9 million to non-profit organizations involved in consumer education and assistance.

In approving the settlement in *Thompson v. WFS Financial,* the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class. In 2006 in *Herra v. Toyota Motor Credit Corporation,* the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006. The monetary benefit to the class was estimated to be between $159 and $174 million.

13. ***Providian Credit Card Cases***, No. JCCP 4085 (San Francisco Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement

substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

14. ***California Title Insurance Industry Litigation.*** Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

15. ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

16. ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary insurance products and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

17. ***In re Ocwen Federal Bank FSB Mortgage Servicing Litigation***, MDL No. 1604 (Northern District of Illinois). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen"). This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.

18.    ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

19.    ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F. 3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.

20.    ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

21.    ***In re American Family Enterprises***, MDL No. 1235 (D.N.J.). Lieff Cabraser served as co-lead counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

22.    *In re Sears Automotive Center Consumer Litigation*, Civ. No. C-92-2227 RHS (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for a certified nationwide class of Sears auto center customers for purposes of approval of a combined injunctive relief/refund settlement. As part of the  settlement, Sears distributed to class members merchandise coupons valued at $25 million.

23.    *Roberts v. Bausch & Lomb*, Civ. No. 94-C-1144-W (N.D. Ala.).  Lieff Cabraser was designated as one of several Class Counsel in November 1994 in this nationwide consumer fraud class action involving deceptive marketing of contact lenses.  In 1996, the Court approved a settlement valued at $68 million ($34 million cash and $34 million in eye care products).

24.    *In re Miracle Ear Consumer Litigation*, Civ. No. 94-1696 (4th Jud. Dist. Minn.).  Lieff Cabraser served as Co-Lead Class Counsel in a nationwide class action certified in late 1994 involving claims arising from misrepresentations regarding performance of a hearing aid device.  State courts in Minnesota and Alabama granted final approval to the nationwide settlement.

E.    **Antitrust/Trade Regulation/Intellectual Property**

1.    *Microsoft Private Antitrust Litigation.*  Representing businesses and consumers, Lieff Cabraser prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee.  Plaintiffs alleged that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software.  In August 2006, the New York Supreme Court granted final approval to a settlement that made available up to $350 million in benefits for New York businesses and consumers.  In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.  In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement.  In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history.  Lieff Cabraser served as Co-Lead Counsel in the New York, North Carolina and Tennessee cases, and held leadership roles in the Florida case.

2.    *Natural Gas Antitrust Cases*, J.C.C.P. Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading

and Marketing LLC, CMS Energy Resources Management Company, and
Aquila Merchant Services, Inc.

Plaintiffs charged defendants with manipulating the price of natural gas in
California during the California energy crisis of 2000-2001 by a variety of
means, including falsely reporting the prices and quantities of natural gas
transactions to trade publications, which compiled daily and monthly
natural gas price indices; prearranged wash trading; and, in the case of
Reliant, "churning" on the Enron Online electronic trading platform,
which was facilitated by a secret netting agreement between Reliant and
Enron.

The 2007 settlement followed a settlement reach in 2006 for $92 million
partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and
affiliates; EnCana Corporation; WD Energy Services, Inc.; and The
Williams Companies, Inc. and affiliates.

Earlier, in 2003, the Court approved a landmark of $1.1 billion settlement
in class action litigation against El Paso Natural Gas Co. for manipulating
the market for natural gas pipeline transmission capacity into California.
Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in the *Natural Gas
Antitrust Cases I-IV*.

3.    ***Wholesale Electricity Antitrust Cases I & II***, J.C.C.P. Nos. 4204 & 4205
(Cal. Supr. Ct.).  Lieff Cabraser served as co-lead counsel in the private
class action litigation against Duke Energy Trading & Marketing Reliant
Energy, and The Williams Companies for claims that the companies
manipulated California's wholesale electricity markets during the
California energy crisis of 2000-2001.  Extending the landmark victories
for California residential and business consumers of electricity, in
September 2004, plaintiffs reached  a $206 million settlement with Duke
Energy Trading & Marketing, and in August 2005, plaintiffs reached a
$460 million settlement with Reliant Energy, settling claims that the
companies manipulated California's wholesale electricity markets during
the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into
a settlement for over $400 million with The Williams Companies.

4.    ***In re TFT-LCD (Flat Panel) Antitrust Litigation,*** MDL No. 1827 (N.D.
Cal.).  Representing direct purchasers of flat-panel TV screens and other
products incorporating liquid crystal displays, Lieff Cabraser serves as
one of two Interim Lead Counsel in nationwide class action litigation
against the world's leading manufacturers of Thin Film Transistor Liquid
Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as
computer monitors, laptop computers, mobile phones, personal digital
assistants and other devices.  The plaintiffs allege that from at least
January 1, 1998 through December 31, 2005 defendants conspired to raise,
fix and stabilize the prices of TFT-LCDs.

5.      *Azizian v. Federated Department Stores,* 3:03 CV 03359 SBA (N.D.
        Cal.).  In March 2005, the Court granted final approval to a settlement that
        Lieff Cabraser and co-counsel reached with numerous department store
        cosmetics manufacturers and retailers.  The settlement is valued at $175
        million and includes significant injunctive relief, for the benefit of a
        nationwide class of consumers of department store cosmetics.  The
        complaint alleged the manufacturers and retailers violated antitrust law by
        engaging in anticompetitive practices to prevent discounting of department
        store cosmetics.

6.      *Sullivan v. DB Investments*, No. 04-02819 (D. N.J.).  Lieff Cabraser
        served as class counsel for consumers who purchased diamonds from 1994
        through March 31, 2006, in a class action lawsuit against the De Beers
        group of companies.  Plaintiffs charged that De Beers conspired to
        monopolize the sale of rough diamonds.  In May 2008, the Court granted
        final approval of a settlement that provides $295 million to purchasers of
        diamonds and diamond jewelry, including $130 million to consumers.
        The settlement also prevents De Beers from continuing its illegal business
        practices and requires De Beers to submit to the jurisdiction of the Court
        to enforce the settlement.

7.      *In re ATM Antitrust Litigation*, No. C-04-2676 (N.D. Cal.).  Lieff
        Cabraser represents a putative class of ATM users against a number of
        banks comprising the Star ATM Network, alleging that those banks
        conspired to fix the price of ATM interchange fees, thereby unlawfully
        inflating fees paid by ATM users in the network.

8.      *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL
        No. 1819 (N.D. Cal.).  Lieff Cabraser serves as one of four members of
        the Steering Committee for indirect purchasers of SRAM, which is used
        for a variety of applications, including on the motherboards of computers,
        as well as in cellular telephones, other handheld devices, and game
        consoles.  In the nationwide class action, plaintiffs allege that beginning in
        the mid-1990's and continuing until 2006, the defendant manufacturers
        conspired to fix and maintain artificially high prices for SRAM. In
        February 2008, U.S. District Judge Claudia Wilken denied most aspects of
        defendants' motions to dismiss plaintiffs' complaints. The Court held that
        the complaints contained sufficient facts to support the allegations that
        defendants engaged in a price-fixing conspiracy.

9.      *In re Flash Memory Antitrust Litigation,* MDL No. 1852.  Lieff Cabraser
        is class counsel for purchasers of flash memory, which is commonly used
        in a variety of applications, including circuit boards, memory cards, digital
        cameras, USB storage devices, portable music players, mobile wireless
        technology, game consoles and personal computers.  Plaintiffs allege that
        they have been deprived of free and open competition, and that prices for

flash memory sold by defendants have been fixed, raised, maintained and stabilized at artificially high levels throughout the United States.

10.   *In re Publication Paper Antitrust Litigation*, MDL No. 1631 (D. Conn.). Lieff Cabraser serves as class counsel in this nationwide antitrust class action on behalf of printing companies. Plaintiffs allege that the defendants, who are among the world's largest paper manufacturers, conspired illegally to fix the price of publication paper that is used to print magazines.

11.   *Spectrum Stores, Inc., et al.  v. Citgo Petroleum Corp.,* H-06-3569 (S.D. Tex.). Lieff Cabraser serves as class counsel on behalf of direct purchasers of gasoline and other oil-based products from Citgo. The plaintiffs allege antitrust damages for Citgo's participation in OPEC's oil cartel.

12.   *In re High Pressure Laminates Antitrust Litigation*, MDL No. 1368 (S.D.N.Y.). Lieff Cabraser served as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates. The case in 2006 was tried to a jury verdict. The case settled for over $40 million.

13.   *In re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.). In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payors that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

14.   *In re Lupron Marketing and Sales Practices Litigation,* MDL No. 1430 (D. Mass.). In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty. The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid. Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

15.   *California Vitamin Cases*, J.C.C.P.  No. 4076 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs'

Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution. In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins. In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

16.    ***Ciprofloxacin Federal and State Antitrust Litigation***, MDL No. 1383 (E.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel for consumers who purchased Cipro, the top selling antibiotic in the world. Plaintiffs allege that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to keep a generic version of the drug off the market that allowed Bayer to sell Cipro at inflated prices. Lieff Cabraser also represents purchasers of Cipro in a class action lawsuit filed in California state court. In July 2004, the California Court of Appeal upheld the trial court's grant of class certification of an antitrust and unfair competition action against defendants.

17.    ***Pharmaceutical Cases I, II, and III***, J.C.C.P. Nos. 2969, 2971 & 2972 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act. The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses. In April 1999, the Court approved a settlement providing $148 million in free, brand-name prescription drugs to health agencies that serve California's poor and uninsured. In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

18.    ***Coalition for Elders' Independence, Inc. v. Biovail Corporation,*** No. CV023320 (Cal. Supr. Ct.). Lieff Cabraser serves as Co-Lead Counsel for class of consumers who purchased the drug Adalat, also known as Nifedipine. Plaintiffs allege that two generic manufacturers of Adalat entered into an agreement to allocate the dosages markets for generic Adalat, thereby substantially reducing competition and unlawfully inflating prices on both generic and brand-name Adalat, in violation of state antitrust laws.

19.    ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.). Lieff Cabraser represents the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on

claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

20.     ***Electrical Carbon Products Cases***, J.C.C.P. No. 4294 (San Francisco Supr. Court). Lieff Cabraser represents the City and County of San Francisco and a class of indirect purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Cartwright Act and the Unfair Competition Law. Lieff Cabraser also represents the People of the State of California in claims arising from the Unfair Competition Law.

21.     ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

22.     ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.). Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

23.     ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.). Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery. In December 2001, the Court approved a $12.5 million settlement of the litigation.

24.     ***In re Toys 'R' Us Antitrust Litigation***, MDL No. 1211 (E.D.N.Y.). Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to restrict competition and inflate toy prices. In February 2000, the Court approved a settlement of cash and product of over $56 million.

25.     ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.). Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions

paid to travel agents.  In 1997, the Court approved an $82 million settlement.

26.    ***Sanitary Paper Cases I & II***, J.C.C.P. Nos. 4019 & 4027 (Cal. Supr. Ct.). Lieff Cabraser served as Liaison Counsel on behalf of indirect purchasers of commercial paper products.  Plaintiffs alleged that from 1993 to 2000 Defendants fixed the price of commercial tissue, toilet paper, toilet seat covers, and other commercial paper products in violation of the Cartwright Act and Unfair Competition Act.  In February 2001, the Court approved a $3 million settlement of the case.

27.    ***Schwartz v. National Football League***, No. 97-CV-5184 (E.D. Pa.).  Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package.  In August 2001, the Court approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

28.    ***In re Commercial Explosives Antitrust Litigation***, MDL No. 1093 (D. Utah).  Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations.  In 1998, the Court approved a $77 million settlement of the litigation.

29.    ***In re California Indirect-Purchaser X-Ray Antitrust Litigation***, No. 960886 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of indirect purchasers (consumers) of medical x-ray film who alleged violations of the Cartwright and Unfair Competition Acts.  In 1998, the Court approved a $3.75 million settlement of the litigation.

30.    ***In re Brand Name Prescription Drugs***, MDL No. 997 (N.D. Ill.).  Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws.  Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes.  In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

31.     *In re K-Dur Prescription Drug Antitrust Litigation*, MDL No. 1419.
        Lieff Cabraser serves as Class Counsel on behalf of indirect purchasers of
        K-Dur, a potassium supplement often prescribed in conjunction with high
        blood pressure medication.  K-Dur is the fourth most frequently prescribed
        drug to seniors.  The complaint alleges the defendants, The lawsuits allege
        that Schering-Plough, privately held Upsher-Smith Laboratories and
        American Home Products Corporation (now Wyeth) entered into illegal
        agreements aimed at blocking the introduction of low-cost generic forms
        of K-Dur to the market.  Plaintiffs' motion for class certification is
        pending.

32.     *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.).  Lieff
        Cabraser served as Class Counsel on behalf of a class of direct purchasers
        of flat glass.

33.     *In re Linerboard Antitrust Litigation*, MDL 1261 (E.D. Pa.).  Lieff
        Cabraser served as Class Counsel on behalf of a class of direct purchasers
        of linerboard.  The court recently approved a settlement totaling $202
        million.

34.     *Carbon Fiber Cases I, II, III*, J.C.C.P. Nos. 4212, 4216 & 4222 (Cal.
        Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel on behalf of
        indirect purchasers of carbon fiber.  Plaintiffs alleged that defendants
        illegally conspired to raise prices of carbon fiber.  Settlements have been
        reached with all of the defendants.

35.     *Methionine Cases I and II*, J.C.C.P. Nos. 4090 & 4096 (Cal. Supr. Ct.).
        Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers
        of methionine, an amino acid used primarily as a poultry and swine feed
        additive to enhance growth and production.  Plaintiffs alleged that the
        companies illegally conspired to raise methionine prices to super-
        competitive levels.  The case settled.

36.     *McIntosh v. Monsanto*, No. 4:01CV65RSW (E.D. Mo.).  Lieff Cabraser
        served as Co-Lead Counsel in a class action lawsuit against Monsanto
        Company and others alleging that a conspiracy to fix prices on genetically
        modified Roundup Ready soybean seeds and Yieldgard corn seeds.  The
        case settled.

37.     *Tortola Restaurants, L.P. v. Minnesota Mining and Manufacturing*, No.
        314281 (Cal. Supr. Ct).  Lieff Cabraser served as Co-Lead Counsel on
        behalf of indirect purchasers of Scotch-brand invisible and transparent
        tape.  Plaintiffs alleged that defendant 3M conspired with certain retailers
        to monopolize the sale of Scotch-brand tape in California.  This case has
        been resolved as part of a nationwide settlement that Lieff Cabraser
        negotiated, along with co-counsel.

F.    **Non-Personal Injury Defective Products**

1.    ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.  The claims period runs through 2015.

2.    ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeal and Supreme Court of California.  In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding.  The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.  The claims program is underway and paying claims.

3.    ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.).  In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails.  Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S.  as part of fire suppression systems for use in residential and commercial buildings.  After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok.  The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product.  Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

4.    ***Toshiba Laptop Screen Flicker Settlement.***  Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component.  Under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS

or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers.  TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

5.    ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product.  Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

6.    ***McManus, et al. v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.).  Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes.  In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes.  The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer.  The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

7.    ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines.  In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants.  The settlement claims program will continue past 2010, under the continuing supervision of the trial court.

80577.1

8.      *Naef v. Masonite*, No. CV-94-4033 (Mobile County Circuit Ct., Ala.).
Lieff Cabraser Heimann & Bernstein served as Class Counsel on behalf of
a nationwide Class of an estimated 4 million homeowners with allegedly
defective hardboard siding manufactured and sold by Masonite
Corporation, a subsidiary of International Paper, on their homes.  The
Class was certified in November 1995, and the Alabama Supreme Court
twice denied extraordinary writs seeking to decertify the Class, including
in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996).  A month-long jury
trial in 1996 established the factual predicate that Masonite hardboard
siding was defective under the laws of most states.  The case settled on the
eve of a second Class-wide trial, and in January 1998, the Court approved
a Class Settlement.  Under the Settlement, Class members with failing
Masonite hardboard siding installed and incorporated in their property
between January 1, 1980 and January 15, 1998 can make claims through
2008 and have their homes evaluated by independent inspectors.  Class
members with qualifying damage to their siding recover damages
associated with the siding.  To date, the Settlement has paid out over $750
million to homeowners across the country, and claims continue to be made
and paid.

9.      *Lundell v. Dell*, No. C05-03970 (N.D. Cal.).  Lieff Cabraser served as
Lead Class Counsel for consumers who experienced power problems with
the Dell Inspiron 5150 notebook.  In December 2006, the Court granted
final approval to a settlement of the class action which extended the one-
year limited warranty on the notebook for a set of repairs related to the
power system.  In addition, class members that paid Dell or a third party
for repair of the power system of their notebook were entitled to a 100%
cash refund from Dell.

10.     *Kan v. Toshiba American Information Systems*, No. BC327273 (Los
Angeles Super. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a class
of all end-user persons or entities who purchased or otherwise acquired in
the United States, for their own use and not for resale, a new Toshiba
Satellite Pro 6100 Series notebook.  Consumers alleged a series of defects
were present in the notebook.  In 2006, the Court approved a settlement
that extended the warranty for all Satellite Pro 6100 notebooks, provided
cash compensation for certain repairs, and reimbursed class members for
certain out-of-warranty repair expenses.

11.     *In re Louisiana-Pacific Inner-Seal Siding Litigation*, No. C-95-879-JO
(D. Or.).  Lieff Cabraser served as Co-Lead Class Counsel on behalf of a
nationwide class of homeowners with defective exterior siding on their
homes.  Plaintiffs asserted claims for breach of warranty, fraud,
negligence, and violation of consumer protection statutes.  On April 26,
1996, U.S. District Judge Robert E. Jones entered an Order, Final
Judgment and Decree granting final approval to a nationwide settlement
requiring Louisiana-Pacific to provide funding up to $475 million to pay

for inspection of homes and repair and replacement of failing siding over the next seven years.

12.    ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.).  Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.  The chip replacement program has been implemented, and is ongoing.

13.    ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

14.    ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961 (E.D. PA).  Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks.  The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law.  In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings.  In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects.  Final approval was granted in November 1996.

15.    ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

G.    **Environmental and Toxic Exposures**

1.    *In re Unocal Refinery Litigation*, No. C 94-04141 (Cal. Supr. Ct.).  Lieff
Cabraser served as one of two Co-Lead Class Counsel and on the
Plaintiffs' Steering Committee in this action against Union Oil Company
of California ("Unocal") arising from a series of toxic releases from
Unocal's San Francisco refinery in Rodeo, California.  The action was
settled in 1997 on behalf of approximately 10,000 individuals for
$80 million.

2.    *Kentucky Coal Sludge Litigation.*  On October 11, 2000, near Inez,
Kentucky, a coal waste storage facility ruptured, spilling 300 million
gallons of coal sludge (a wet mixture produced by the treatment and
cleaning of coal) into waterways in the region and contaminating hundreds
of properties.  This was one of the worst environmental disasters in the
Southeastern United States.  With co-counsel, Lieff Cabraser represented
over 400 clients in property damage claims, including claims for
diminution in the value of their homes and properties.  In April 2003, the
parties reached a confidential settlement agreement on favorable terms to
the plaintiffs.

3.    *Toms River Childhood Cancer Incidents*.  With co-counsel, Lieff
Cabraser represented 69 families in Toms River, New Jersey, each with a
child having cancer, that claimed the cancers were caused by
environmental contamination in the Toms River area.  Commencing in
1998, the parties – the 69 families, Ciba Specialty Chemicals, Union
Carbide and United Water Resources, Inc., a water distributor in the area –
participated in an unique alternative dispute resolution process, which lead
to a fair and efficient consideration of the factual and scientific issues in
the matter.  In December 2001, under the supervision of a mediator, a
confidential settlement favorable to the families was reached.

4.    *In re Exxon Valdez Oil Spill Litigation* (District of Alaska/Alaska Supr.
Ct.).  The Exxon Valdez ran aground in March of 1989, spilling 11 million
gallons of oil into Prince William Sound.  Lieff Cabraser served as one of
the court-appointed Plaintiffs' Class Counsel.  The class consisted of
32,000 fisherman, Alaska natives, landowners and others whose
livelihoods were gravely affected by the disaster.  In addition, Lieff served
on the Class Trial Team in 1994.  A class action jury trial was held in
federal court in 1994.  That jury awarded $5 billion in punitive damages to
the plaintiff class.  The punitive damages award has been on repeated
appeal by the Exxon Corporation ever since.  In 2001, the Ninth Circuit
Court of Appeals ruled that the original $5 billion punitive damages
verdict was excessive.  In 2002, U.S. District Court Judge H. Russell
Holland reinstated the award at $4 billion.  Judge Holland stated that,
"Exxon officials knew that carrying huge volumes of crude oil through
Prince William sound was a dangerous business, yet they knowingly

permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis. In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion. The case remains on appeal.

5.    ***West v. G&H Seed Co., Aventis CropSciences USA, LLP, et al.***, No. 99-C-4984-A (La. State Ct). With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers. The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin. In 2004, the Court granted approved a $45 million settlement. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

6.    ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940's. The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7.    ***In re GCC Richmond Works Cases***, J.C.C.P. No. 2906. Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California on July 26, 1993. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

8.    ***In re Sacramento River Spill Cases I and II***, J.C.C.P. Nos. 2617 & 2620 (Cal. Supr. Ct.). Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in an action arising out of a July 14, 1991 Southern Pacific train derailment and toxic spill near Dunsmuir, California. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

H.     **Aviation Law**

1.     ***In re Air Crash near Athens, Greece on August 14, 2005,*** MDL No.
1773.  On August 14, 2005, a Boeing 737 operating as Helios Airways
flight 522 crashed north of Athens, Greece, resulting in the deaths of all
passengers and crew.  The aircraft was heading from Larnaca, Cyprus to
Athens International Airport when ground controllers lost contact with the
pilots, who had radioed in to report problems with the air conditioning
system.  Press reports about the official investigation indicate that a single
switch for the pressurization system on the plane was not properly set by
the pilots, and eventually both were rendered unconscious, along with
most of the passengers and cabin crew.  Lieff Cabraser represents the
families of several victims, and filed complaints alleging that a series of
design defects in the Boeing 737-300 contributed to the pilots' failure to
understand the nature of the problems they were facing.  Foremost among
those defects was a confusing pressurization warning "horn" which uses
the same sound that alerts pilots to improper takeoff and landing
configurations.  The Judicial Panel on Multidistrict Litigation granted
Lieff Cabraser's motion to consolidate all Helios cases before the U.S.
District Court for the Northern District of Illinois in Chicago, where the
headquarters of The Boeing Company are located and where Lieff
Cabraser filed its clients' cases.

2.     ***Barbosa Garcia et al. v. Excelaire Service, Inc., and Honeywell
International, Inc.***, No. CV 06-5964 (E.D. N.Y.).  Lieff Cabraser, with
co-counsel, represents over twenty families whose loved ones died in the
Gol Airlines Flight 1907 crash.  On September 29, 2006, a brand-new
Boeing 737-800 operated by Brazilian air carrier Gol plunged into the
Amazon jungle after colliding with a smaller plane owned by the
American company Excelaire Service, Inc.  None of the 149 passengers
and six crew members on board the Gol flight survived the accident.  The
complaint charges that the pilots of the ExcelAire jet were flying at an
incorrect altitude at the time of the collision, failed to operate the jet's
transponder and radio equipment properly, and failed to maintain
communication with Brazilian air traffic control in violation of
international civil aviation standards. If the pilots of the ExcelAire aircraft
had followed these standards, plaintiffs charge that the collision would not
have occurred.  At the time of the collision, the ExcelAire aircraft's
transponder manufactured by Honeywell was not functioning. A
transponder transmits a plane's altitude and operates its automatic anti-
collision system.  The complaint charges that Honeywell shares
responsibility for the tragedy because it defectively designed the
transponder on the ExcelAire jet, and failed to warn of dangers resulting
from foreseeable uses of the transponder.

3.     ***In re Air Crash at Lexington, Kentucky, August 27, 2006***, No. 07 CV
006 (E.D. Ky.).  A Bombardier CRJ-100 commuter plane operated by

Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. Lieff Cabraser and co-counsel represent families of passengers who died on the flight.

4.  ***Crash of West Caribbean Airways Flight 708.*** On August 16, 2005, a McDonnell Douglas MD-82 operated by West Caribbean Airways lost engine power and crashed near La Cucharita, Venezuela, during a flight from Panama City to Fort de France, Martinique. Martinique is a province of France. A large number of the victims' families retained French attorneys to represent them. In light of Lieff Cabraser's work on the Flash Air case (see below), those French attorneys asked Lieff Cabraser to advise them on the substance of U.S. laws which may be applicable to a claim against The Boeing Company (successor to McDonnell Douglas) or Pratty & Whitney, the manufacturer of the aircraft's engines. Lieff Cabraser now serves in that advisory capacity.

5.  ***Crash of Manhattan Tourist Helicopter.*** On June 14, 2005 a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represents a passenger on the helicopter.

6.  ***Crash of "Legend" Aircraft in Tucson, AZ.*** On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Lieff Cabraser represents the widow of the passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed. Lieff Cabraser is investigating the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration.

7.  ***Crash of Air Algerie Boeing 737.*** Together with French co-counsel, Lieff Cabraser represents the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members.

8.  ***Crash of Flash Air Boeing 737***. On January 3, 2004, all 148 passengers and crew were killed when a Flash Airlines Boeing 737 plunged into the Red Sea off the coast of Egypt, after the pilots encountered a malfunction

in the flight control system.  Most of the passengers were from France and were vacationing at the seaside resort of Sharm el Sheikh.  After the families retained French attorneys to represent them, those French attorneys conducted several rounds of interviews of U.S. law firms with the intention of engaging one of those firms to file an action in the United States against Boeing, which manufactured the aircraft in the United States.  Lieff Cabraser was selected to be that firm, and filed complaints in federal court in Los Angeles on behalf of the families of more than 120 victims. Although the U.S. District Court ruled that the case could be more conveniently tried in France, the plaintiffs have contested the jurisdiction of the French court over the case against Boeing.  If the French courts rule against jurisdiction, the case in the United States will be reactivated.  Otherwise, Lieff Cabraser will act as consultants to the French attorneys on technical issues and questions of U.S.  law.

9.  ***Tower Collision of U.S. Army Blackhawk Helicopter.***  Lieff Cabraser represents the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter.  The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service.  The tower warning lights required by FCC regulations were inoperative, and the aviation and weather experts retained by Lieff Cabraser will testify that had the lights been operating as they should have, the helicopter's pilots would have been warned away from the tower before they hit the cable.  LCHB will be filing an action shortly.

10.  ***Crash of China Eastern Airlines Bombardier CRJ200.***  Lieff Cabraser represents families of over 30 passengers who died in the November 21, 2004, crash of China Yunnan Airlines Flight 5210.  The plane, a Bombardier CRJ-200 built in Canada with engines from a General Electric plant in Massachusetts, was headed for Shanghai with 47 passengers and six crew members when it crashed into a lake, seconds after taking off from Baotou, Inner Mongolia.  The lawsuit filed by Lieff Cabraser in the Los Angeles Superior Court alleges that the crash was the result of a combination of pilot error and defects in the aircraft and its engines.  The defendants' attempt to transfer the case to the federal court failed when Lieff Cabraser's motion to remand was granted by that court.  The case is now pending in the Los Angeles Superior Court.

11.  ***Crash of Macedonian Presidential Aircraft.***  Lieff Cabraser represents the families of 8 victims of the February 26, 2004 crash of a Beech King Air 200 in Bosnia-Herzegovina.  The crash killed the President of Macedonia, Boris Trajkovski, and a number of his advisors and cabinet members.

12.     ***Crash of Mandala Airlines Flight 91***.  On September 5, 2005, a Boeing 737 operating as Mandala Flight 091 crashed immediately after takeoff form the airport in Medan, Indonesia, killing 101 of the 117 people on board, as well as 44 people on the ground.  Lieff Cabraser represents a number of injured persons and families of deceased victims.

13.     ***Aeroflot-Russian International Airlines Airbus Disaster***.  Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994.  The plane was in route from Moscow to Hong Kong.  All passengers on board died.  According to a transcript of the cockpit voice recorder, the pilot's two children entered the cockpit during the flight and took turns flying the plane.  The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive.  Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered.  All the families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

14.     ***United Airlines Boeing 747 Disaster***, MDL No. 807 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989.  Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.  Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

15.     ***German Air Force Lockheed F-104 Star Fighter Litigation:***  In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California.  Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.  Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed.  Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.  Robert Lieff continued to prosecute the cases after the formation of our firm.  In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs.  This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts, and obtain substantial recoveries, against an

American manufacturer based upon airplane accidents or crashes occurring outside of the United States.

## I.    International and Human Rights Litigation

1.    ***Holocaust Cases***.  Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.  Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears.  You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . .  What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . I want to thank counsel for the assistance in bringing us to where we are today.  Cases don't get settled just by litigants.  It can only be settled by competent, patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  In April 2001, Lieff Cabraser filed a class action on behalf of contract workers (known as "Braceros") who came

from Mexico to the United States pursuant to bilateral agreements from 1942 through 1949 to aid American farms and industries hurt by employee shortages. The agreements provided that ten percent of the Braceros' wages would be withheld from them and transferred via United States and Mexican banks to savings accounts for each Bracero. Plaintiffs claim they were never reimbursed for the portion of their wages placed in the forced savings accounts. In June 2005, U.S. District Court Judge Charles Breyer denied motions to dismiss filed by Mexico and the Mexican banks charged with illegally withholding the savings funds from the Braceros in an extensive opinion, permitting the case to go forward against the Mexican defendants. The case is pending on appeal in the Ninth Circuit Court.

3.  ***The Presbyterian Church of Sudan v. Talisman Energy and Republic of Sudan***, No. 01 CV 9882 (S.D. N.Y.). With co-counsel, Lieff Cabraser represents the Presbyterian Church of Sudan and current and former residents of southern Sudan who allege that that they were victims of genocide, crimes against humanity and other violations of international law by Talisman Energy, Inc. ("Talisman"), the largest independent Canadian oil producer, and the Sudanese government. Plaintiffs charge that in the late 1990s through 2003, Talisman and Sudan participated in a joint military strategy of ethnic cleansing against non-Muslim in order to create a buffer zone for the exploitation of oil reserves in the Western Upper Nile region of the nation. In meetings with government officials, plaintiffs charge that Talisman mapped out areas it intended to explore, and the parties would then discuss how to "dispose of" the civilians living in those areas. Talisman allegedly was aware that the result of these decisions was to cause genocide and war crimes as government military forces destroyed villages and killed, maimed, raped and tortured civilians of ethnic and religious minority backgrounds. The case is presently on appeal.

4.  ***Ali, et al. v. Rumsfeld,*** No. 05-C-1201 (N.D. Ill.) On March 1, 2005, Lieff Cabraser joined the ACLU and Human Rights First in representing seven individuals who claim that they were tortured by American military forces when they were held in U.S. Army detention facilities in Iraq and Afghanistan. Numerous Defense Department reports have found that torture was "widespread." The suit alleges that Defense Secretary Donald Rumsfeld and high-ranking military commanders were responsible for authorizing torture or failing to stop torture after they learned of it. A former Rear Admiral and former Brigadier General also serve as co-counsel. The consolidated case is pending in the U.S. District Court in Washington, D.C.

**FIRM BIOGRAPHY:**

   **PARTNERS**

   ***ELIZABETH J. CABRASER***, born Oakland, California, June 23, 1952.  Admitted to
practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California
Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; Eastern District
of California, 1979; Central District of California and Southern District of California, 1992; U.S.
Court of Appeals, Second Circuit, 2000; Third Circuit, 1994; Fifth Circuit, 1992; Sixth Circuit,
1992; Seventh Circuit, 2001; Ninth Circuit, 1979; Tenth Circuit, 1992; Eleventh Circuit, 1992;
U.S. District Court, District of Hawaii, 1986.  *Education*:  Boalt Hall School of Law, University
of California (J.D., 1978); University of California at Berkeley (A.B., 1975).  *Awards and
Honors*:  "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, December 2007; "Award
For Public Interest Excellence," University of San Francisco School of Law Public Interest Law
Foundation, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, February 2007;
"Top Women Litigators in California," *The San Francisco* and *Los Angeles Daily Journal,* 2007;
*Distinguished Leadership Award*, Legal Community Against Violence, 2006; "One Hundred
Most Influential Lawyers in America," *The National Law Journal*, 2006, 2000 and 1997; "Top
75 Women Litigators," *California Daily Journal*, 2005-2006; Women of Achievement, Legal
Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Best Lawyer," *Best
Lawyers in America*, 2006; "Top 100 Lawyers," *California Daily Journal*, 2002-2007; "Top 30
Securities Litigator," *California Daily Journal*, 2005; "Top 100 and Top 50 Female Northern
California Super Lawyer," *Law & Politics*, 2005-2008; "Northern California Super Lawyer,"
*Law & Politics*, 2004-2008; "Top 50 Women Litigators," *California Daily Journal*, 2004;
*Citation Award*, University of California, Berkeley Boalt Hall, 2003; "Top 30 Women
Litigators," *California Daily Journal*, 2002; *Distinguished Jurisprudence Award*, Anti-
Defamation League, 2002; "Top Ten Women Litigators," *The National Law Journal,* 2001;
"California Law Business Top 100 Lawyers," *California Daily Journal*, 2000-1998; *Matthew O.
Tobriner Public Service Award*, Legal Aid Society, 2000; *Presidential Award of Merit*,
Consumer Attorneys of California, 1998; "Fifty Most Influential Women Lawyers," *The
National Law Journal,* 1998; "Lawyers of the Year," *California Lawyer*, 1998; *Public Justice
Achievement Award*, Trial Lawyers for Public Justice, 1997.  *Publications & Presentations*:  Co-
Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver:  Recent Developments in the Ninth
Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and
June 2005); "The Manageable Nationwide Class: A Choice-of-Law Legacy of *Phillips
Petroleum Co. v. Shutts*," *University of Missouri- Kansas City Law Review,* Volume 74, Number
3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005,"
*California Litigation,* Vol. 18, No. 3 (2005); Editor in Chief, *California Class Actions Practice
and Procedures* (2003);  Co-Author, "Decisions Interpreting California's Rules of Class Action
Procedure," *Survey of State Class Action Law*, updated and re-published in 5 *Newberg on Class
Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging
Aggregation Alternatives Under the Federal Rules," ABA 8th Annual National Institute on Class
Actions, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA
Toxicology Monograph-California State Law," (January 2004); "Current Issues Involving Rule
12(b)(6) and Rule 9(b)," in *Civil Practice and Litigation Techniques in Federal and State Courts*
(ALI-ABA Course of Study 2004); "New Developments in Mass Torts and Class Actions:
'Issues' Certification The Mass Torts Top Ten of 2003; Rule 23's New Provision and Action

Trial Plans; And the FJC 'New Plain Language' Class Notice," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study, February 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review* 1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz*," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); "Life After *Amchem*: The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An *Oracle* of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Co-author with Alexandra L. Foote and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002). *Member*: State Bar of California; American Bar Association (Past Co-Chair, Committee on Mass Torts; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Past Vice-Chair, Rules & Procedures Committee, Contributor, Civil Procedure & Evidence News Letter; Business Law Section, Corporate & Litigation Group; Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); ABA National Institute on Class Actions (Organizer/ Participant, 1997-2000); American Law Institute, (Council; Advisor, American Law Institute International Jurisdiction and Judgments and Aggregate Litigation Projects); Public Justice; National Center for State Courts Mass Tort Conference Planning Committee; Federal Bar Association, Northern District of California

Chapter; Fight for Justice Campaign; (California State Liaison, Women Trial Lawyers Caucus); California Constitution Revision Commission, 1993-1996; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Consumer Attorneys of California (CAOC); California Women Lawyers; Association of Business Trial Lawyers; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995; Bar Association of the Fifth Federal Circuit; Bay Area Lawyers for Individual Freedom; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Past Member, Judiciary Committee); Lawyers Club of San Francisco; Queen's Bench.

**RICHARD M. HEIMANN**, born Miami, Florida, August 23, 1948.  Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986. *Education*:  Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969).  *Employment*:  Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74.  As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials.  In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages.  *Awards & Honors*: "Northern California Super Lawyers," *Law & Politics*, 2004 – 2008.  *Member*:  State Bar of California; Bar Association of San Francisco.

**WILLIAM BERNSTEIN**, born York, Pennsylvania, July 5, 1950.  Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1975; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992.  *Education*:  University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972).  *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law (2006-Present); Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990.  *Awards & Honors*: *Who's Who Legal*, 2007; Northern California Super Lawyers, *Law & Politics*, *2004* – 2008; Princeton Premier Registry, Business Leaders and Professionals, 2008-09; *Unsung Hero* Award, Appleseed, 2006.  *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform" (American Bar Association Antitrust Law Section, Annual Spring Meeting, 2005); Co-author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation", 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996).  *Member*:  State Bar of California; State Bar of New York; Marin County Bar Association (Admin. of Justice Committee, 1988); Bar Association of San Francisco.

**JOSEPH R. SAVERI**, born San Francisco, California, August 18, 1962.  Admitted to practice in California, 1987; U.S. District Court, Northern, Central, Southern and Eastern Districts of California; U.S. Court of Appeals, First Circuit; U.S. Court of  Appeals, Second

Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Eighth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. Court of Appeals, Federal Circuit; U.S. Supreme Court. *Education*:  University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984).  *Awards and Honors*: "Northern California Super Lawyers," *Law & Politics*, 2006 - 2008; AV® Peer Review Rated, *Martindale-Hubbell*.  *Publications & Presentations*: "Dagher: An Admirable Exercise in Restraint," Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 15, No. 2 (Fall/Winter 2006); Panelist, *Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?*, University of San Francisco Law Review (November 13, 2004); *California Antitrust & Unfair Competition Law 3d* (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *California Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989). *Member*: State Bar of California; American Bar Association; Faculty Member, Sedona Conference on Antitrust Law and Litigation, 2006; Northern District of California's Civil Rules and Practice Committee; Bar Association of San Francisco; Italian Lawyers Club of San Francisco.

**DONALD C. ARBITBLIT**, born Jersey City, New Jersey, May 5, 1951.  Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*:  Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974).  *Awards and Honors*: "Northern California Super Lawyers," *Law & Politics*, 2004-08.  *Publications & Presentations*:  Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on *Joiner*:  Decision on the *Daubert* Test of Admissibility of Expert Testimony," 6 *Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," 8 *Ecology Law Quarterly*, No. 2 (1979). *Appointments*:  Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, In re Vioxx Products Liability Litigation, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.).  *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** born Los Angeles, California, February 13, 1963.  Managing Partner.  Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; District of Columbia, 1997.  *Education*:  University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84).  *Honors/Appointments*:  "New York Super Lawyers," *Law & Politics*, 2006-2008; "The New York Area's Best Lawyers," *Best Lawyers in America*

(published by *American Lawyer Media*), 2005-2008; "40 under 40", *The National Law Journal*, 2002, selected as one of the country's most successful litigators under the age of 40; Editorial Board, "Bill of Particulars, A Review of Developments in New York State Trial Law," New York State Trial Lawyers Institute, Quarterly (June 2005-present); Trial Lawyers for Public Justice, Executive Committee Member (July 2006-present), Board of Directors (July 2002-present); Board of Trustees, Civil Justice Foundation (January 2004-present), Executive Committee (July 2006-present), Co-Chair & Class Action Preservation Project (July 2005-present); Board of Directors, New York State Trial Lawyers Association (July 2001-July 2004); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Publications & Presentations*:  Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, conference on The Globalization of Class Actions, Panel Member, *Resolution of Class and Mass Actions* (December 13 and 14, 2007, Oxford, England); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Courts* (April 17, 2007, Stanford, California); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, *Finding the Balance: Federal Preemption of State Law* (June 16, 2006, Washington, D.C.); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Panel Member on securities litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Court* (April 25, 2006, Stanford, California); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Speaker and Papers, *The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S.  Practice and Basic Principles of Securities Actions for Institutional Investors* (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, *In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality* (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, *Practical Considerations for Investors' Counsel - Getting the Case* (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H.  Beisner, "Magnet Courts: If You Build Them, Claims Will Come" (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation ("Selecting The Forum For a Complex Case -- Strategic Choices Between Federal And State Jurisdictions") and Alternative Dispute Resolution ("ADR In Mass Tort Litigation") (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of

Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, *Debates Over Group Litigation in Comparative Perspective*, Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, *Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme* (November 23, 1998); Leader Publications, *Litigation Strategist*, "Fen-Phen" Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation* and *Daubert Developments: Something for Plaintiffs, Defense Counsel* (June 1998, New York, New York); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, *A Plaintiffs' Counsels' Perspective: What's the Next Horizon?* (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, *The Expanding Litigation* (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, *Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles* (May 23, 1997, New York, New York). *Member*: State Bar of New York; State Bar of California; Bar of the District of Columbia; American Bar Association; Public Justice Foundation, Board of Directors (July 2002-present); Executive Committee (July 2006-present); Co-Chair, Class Action Preservation Project ( July 2005-present); Secretary (July 2007-present); American Association for Justice; Fight for Justice Campaign; Human Rights First; American Constitution Society for Law and Policy; New York State Trial Lawyers Association; Association of the Bar of the City of New York; Supreme Court Historical Society.

  **ROBERT J. NELSON**, born New York, New York, October 20, 1960; admitted practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001. *Education*: New York University School of Law (J.D., 1987); Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden Scholarship Program; Cornell University (A.B., *cum laude* 1982); Member, Phi Beta Kappa, College Scholar Honors Program; London School of Economics (General Course, 1980-81): Graded First. *Employment:* Law Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: Consumer Attorney of the Year Finalist, 2007; San Francisco Trial Lawyer of the Year Finalist, 2007; California Lawyer Attorney of the Year (CLAY) Award, 2008; "Northern California Super Lawyers," *Law & Politics*, 2004 - 2008. *Publications & Presentations:* "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 *Charleston Law Review* 2 (Spring 2008) (with Elizabeth Cabraser); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," *The Practical Litigator*, Vol. II, No. 2 (March 2000)(ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 *New York University Law Review* 334 (1986). *Member*: State Bar of California; District of Columbia Bar Association; New York Bar Association; American Bar Association; Fight for Justice Campaign; Bar Association of San Francisco.

**KELLY M. DERMODY**, born Ithaca, New York, June 16, 1967.  Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. District Court of Colorado (2007).  *Education*:  Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award.  *Employment*:  Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001).  *Awards & Honors*:  "Community Justice Award," Centro Legal de la Raza, 2008; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Award of Merit," Bar Association of San Francisco, 2007; Consumer Attorney of the Year Finalist, Consumer Attorneys of California, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Women Litigators in California," San Francisco and Los Angeles *Daily Journal*, 2007; California's "Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Northern California Super Lawyer," *Law & Politics*, 2004-2008; "Top 100 Super Lawyers," *Law & Politics*, 2007; "Top 50 Female Super Lawyers," *Law & Politics*, 2007-2008; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, February 2007.  *Publications & Presentations*:  "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" (American Bar Association Labor and Employment Section Equal Opportunity Committee, Mid-Year Meeting, 2001); Co-Author with James M. Finberg, "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions" (Glasser Legal Works Seminar, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp*." (American Bar Association Litigation Section Annual Meeting, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.* and Fed. R. Civ. P. 23(f)" (Federal Bar Association Convention, 1999); Co-Author with James M. Finberg, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998).  *Member*:  State Bar of California; American Bar Association, Labor and Employment Law Section Annual Conference (Vice-Chair, 2007-present), Committee on Equal Opportunity in the Legal Profession (Co-Chair, 2006-2007); American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee (Co-Chair, 2003-present; Midwinter Meeting Planning Committee, 2000-2006); ABA Labor and Employment Law Section Katrina Task Force (Member, 2005-2007); National Association of Women Judges (Resource Board, 2005-present); National Center for Lesbian Rights (Board of Directors, 2002-2008; Board Co-Chair, 2005-2006); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); National Employment Lawyers' Association; Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-present); Equal Rights Advocates (Litigation Committee, 2000-2002); Consumer Attorneys of California; Bar Association of San Francisco (Board of Directors, 2005-present; Litigation Section, Executive Committee, 2002-2005);

Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); Bay Area Lawyers for Individual Freedom.

**JONATHAN D. SELBIN**, born Baton Rouge, Louisiana, May 11, 1967.  Admitted to practice in California, 1994; New York, 2001; District of Columbia, 1999; U.S. Court of Appeals, Fifth Circuit, 1994; U.S. District Court, Northern District of California, 1995; U.S. District Court, Central District of California, 1997; U.S. District Court, Southern & Eastern Districts of New York, (2001, 2008).  *Education*:  Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989).  *Employment*:  Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95.  *Awards & Honors*: "New York Super Lawyers," *Law & Politics*, 2006-2008.  *Publications & Presentations*:  Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993).  *Member*: State Bar of California; New York State Bar Association; District of Columbia Bar Association; American Bar Association; New York State Trial Lawyers Association.

**BARRY R. HIMMELSTEIN**, born Philadelphia, Pennsylvania, March 14, 1958.  Admitted to bar, 1992, California; U.S. District Court, Northern District of California, 1992.  *Education*:  Hastings College of the Law (J.D., *magna cum laude*, 1991); Note and Articles Editor, *Hastings Law Journal* (1990-91); University of Michigan at Ann Arbor (B.G.S., with distinction, 1982).  *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1991-92.  *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003).  *Member*: California State Bar State Bar of California; Bar Association of San Francisco.

**MICHELE C. JACKSON**, born Redwood City, California, January 17, 1954.  Admitted to bar, 1979, California; U.S. District Court, Northern District of California, 1979; United States Supreme Court, 1988; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985; U.S. Court of Appeals, Fifth Circuit, 1989.  *Education*:  University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors, 1976).  *Employment*:  Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977.  *Awards & Honors*: Northern California Super Lawyer, *Law & Politics*, 2007-2008; Recipient of State Bar Board of Governors Award.  *Publications & Presentations*: Panelist, "Antitrust Dispute Resolution in Complex Business Torts and Antitrust Cases:  Is There Really a Class Arbitration?" (April 2007), American Bar Association Antitrust Law Spring Meeting; Panelist, "Settlement and Mediation of Unfair Competition Disputes" (May, 2006) and other panels, State Bar of California Antitrust and Unfair Competition Section; Author, *Recent Judicial Opinions On Class And Multi-Party Arbitration In Antitrust And Consumer Cases, And Principles Underlying Those Opinions* (February 2007), American Bar Association; Chapter Co-Author with Marc Seltzer*, "*State Antitrust Law and Intellectual Property" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust*;* Author, *Asserted Defenses to a §17200 Class Action Based on Korea Supply -- The Interplay With Indirect Purchaser Litigation* (2005) American Bar Association;  Contributing Author, *California Class Actions Practice and Procedure (*2003).  *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (terms September, 2001-2007).  *Member*:

American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society.

*MICHAEL W. SOBOL*, born Mt. Kisco, New York, October 5, 1961.  Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001.  *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983).  *Employment*:  Lecturer in Law, Boston University School of Law, 1995-1997.  *Member*:  State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California (Board of Governors, 2008); National Association of Consume Advocates.

*FABRICE N. VINCENT*, born Paris, France, June 15, 1966.  Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992.  *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors:* Northern California Super Lawyer, *Law & Politics*, 2006 – 2008. *Publications & Presentations*: Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-06), updated and re-published in 5 *Newberg on Class Actions* (2001-06); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct.  1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000).  *Member*:  State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers.

*DAVID S. STELLINGS*, born New Jersey, April 23, 1968.  Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990).  *Member*:  State Bar of New York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** born San Francisco, California.  Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Ninth Circuit and the Federal Circuit, 2007; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia.  *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990).  *Employment*:  Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996.  *Publications & Presentations*: Co-Editor, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2003-2007); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-07); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004);  Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments:  A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Editorial Board Member, *Journal of Generic Medicines*, 2003-present.

**WENDY FLEISHMAN**, born Philadelphia, Pennsylvania, 1954.  Admitted to practice in Pennsylvania, 1977; New York, 1992.  *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974).  *Employment*:  Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment- and construction-related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases).  *Awards and Honors*: "New York Super Lawyers," *Law & Politics*, 2006-2008.  *Publications & Presentations*: Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide," (2007); Co-Author with Donald C. Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," in *Scientific Evidence*, Chapter 6, (Aspen Law Pub, 1999); American Bar Association, Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, 1995-96; and 1993-94.  *Appointments:*  Mealey's Drug & Medical Device Litigation Conference, Co-Chair (2007); Executive Committee *In re ReNu MoistureLoc Product Liability Litigation, MDL*; *In re Guidant Product Liability Litigation*, *Discovery*; *In re Baycol MDL Litigation* – Co Chair Science Committee; *In re Vioxx MDL Litigation* – Pricing Committee.  *Member*: New York State Trial Lawyers Association (Board of Directors, 2004-Present); Association of the Bar of the City of New York (Judiciary Committee, 2004-Present); American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices; 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New

York Women's Bar Association; Association of the Bar of the City of New York (Product Liability Committee, 2007-present); New York County Lawyers; Fight for Justice Campaign; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

*PAULINA DO AMARAL*, born New York, New York, February 1966. Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

*KATHRYN E. BARNETT*, born Chapel Hill, North Carolina, October 23, 1967. Admitted to practice in Tennessee, 1992; U.S. District Court, Middle District of Tennessee, 1997; U.S. 6th Circuit, 2000; U.S. District Court, Western District of Tennessee, 2001; U.S. 11th Circuit, 2003; U.S. District Court, Eastern District of Tennessee, 2005. *Education*: Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies. *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to medical malpractice. In March, 2004 and in August, 2004 Ms. Barnett served as co-lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, Multi-District Litigation Docket No. 1467. The case was settled during the second week of trial. The settlements in the Tri-State litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1991-Dec. 1995. *Awards & Honors*: "Best of the Bar," *Nashville Business Journal* (2003, 2005-2007); Mid-South Super Lawyer, *Law & Politics*, 2006-2008; "Best Lawyers in Tennessee," *Business Tennessee,* (2006-2007). *Publications & Presentations*: "Civil Procedure and Evidence Update," Tennessee Trial Lawyers (Oct. and Nov. 2006); "Pre-Trial Skills: Thinking on Your Feet," National Business Institute (Nov. 2006), "Trial Practice Institute," Nashville Bar Association (Sept. 2005); "State Law Class Actions," American Bar Association, Business Law Section (April 2005); "Power Windows Can Kill," *Trial* (April 2005); "Auto Defect Cases," Tennessee Trial Lawyers (Feb. 2005); "Limiting the Harmful Testimony of Experts on the Law," *Trial* (Jan. 2001); "Letting Focus Groups Work for You," *Trial* (April 1999); "Knocking Out Opposing Experts," Tennessee Trial Lawyers (October and November, 2004), Nashville Bar Association (July, 2004); "Trial Practice Tips: Powerful Trial Strategies for the Absolute Litigator," Nashville Bar Association (April, 2004); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National

Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999). *Member*: Tennessee Association for Justice (Secretary, 2007-08, Chair Continuing Education Committee, 2004-2006, Board of Governors, 2002-2008, Executive Committee, 2008-2009); Nashville Bar Association (Board, 2005-2008); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-2005; President-elect, 2003-2004; Director, 2002-03; Treasurer, 2000-02; Board, 1998-present); Harry Phillips American Inn of Courts, Executive Committee, 2004-05, Member, 2004-2008, 1997-99; Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Tennessee Bar Association; American Association of Trial Lawyers.

**JOY A. KRUSE**, born Buffalo, New York, February 24, 1955. Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the District of Columbia, Ninth, and Federal Circuits; U.S. District Courts for the Northern, Eastern, Central & Southern Districts of California, 1989. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Presentations & Publications*: Co-Author with Elizabeth J. Cabraser, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and June 2005). *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

**STEPHEN H. CASSIDY**, born Pittsburgh, Pennsylvania, May 14, 1964. Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-89; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Publications & Presentations*: "Internet Marketing for Plaintiffs' Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Trial Lawyers for Public Justice; Fight for Justice Campaign; Consumer Attorneys of California.

**RACHEL GEMAN**, born Northampton, Massachusetts, August 7, 1971. Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007. *Education*:

Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards & Honors*: *Distinguished Honor Award*, United States Department of State, 2001. *Publications & Presentations*: "Rights Without Remedies," 2008 American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities, Panelist; "The New York Employee Advocate," Co-Editor, 2005-Present (Volumes 12 and forward); "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006) (Author & Panelist); "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005) (Author & Panelist); "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005) (Panelist); "Image-Based Discrimination and the BFOQ Defense," *EEO Today* (Vol. 9, Issue 1, Fall 2004) (Author); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (Spring 2004) (Author); "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003, Chair & Panelist); "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC 2003 Midwinter Meeting (Moderator). *Member*: Board Member, National Employment Lawyers' Association/New York; American Bar Association, Sections of Labor and Employment Law, EEO Committee (Plaintiffs' Vice Chair).

**SCOTT P. NEALEY**, born Champaign, Illinois, July 28, 1966. Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Honors & Awards*: California Lawyer Attorneys of the Year (CLAY) Award, 2008; Finalist, San Francisco Trial Lawyer of the Year, 2008. *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**ELIZABETH A. ALEXANDER,** born Morristown, Tennessee, October 4, 1971. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Honors & Awards*: "Rising Star," *Law & Politics*, 2008; "Lawdragon 500 New Stars" and "Lawdragon 3000 Leading Plaintiffs' Lawyers in America," *Lawdragon* magazine, 2006-2007. *Publications & Presentations*: *ABA Survey of State Class Action Law* (2003-2007), Tennessee section; "Consumer Class Actions Against Financial Institutions," Lorman Education Services, July 2004. *Prior Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002);

Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: State Bar of Tennessee; Tennessee Bar Association; Nashville Bar Association (Board of Directors, Young Lawyers Division); American Bar Association; Lawyers' Association for Women (2003-2005); American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee, Co-Chair, Basics Committee (2005-2006); Chair of Internal Marketing and Mentoring Committee (2006-2007); National Employment Lawyers' Association.

**DANIEL P. CHIPLOCK**, born Albany, New York. Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Public Pension Attorneys (NAPPA).

**MARK P. CHALOS**, born New York, New York, September 3, 1973. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: "Rising Star," *Law & Politics*, 2008. *Publications & Presentations*: "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*: American Bar Association; Fight for Justice Campaign; Tennessee Bar Association; Board of Directors, Tennessee Trial Lawyers Association; Nashville Bar Association; Past-Chair, ABA YLD Criminal & Juvenile Justice Committee; American Bar Association Tort Trial and Insurance Practice Section Professionalism Committee YLD liaison; Board of Directors, Nashville Bar Association YLD; Chair, Nashville Bar Association YLD Continuing Legal Education; *Nashville Bar Journal*, Editorial Board; Tennessee Association for Justice (Board of Governors, 2008-2009); Member, Harry Phillips American Inn of Court (2002-2004); Grant Review Panelist, Metropolitan Nashville Arts Commission; Founding Member, Young Professionals Program, Frist Center for the Visual Arts; President, Kappa Chapter of Kappa Sigma Fraternity Alumni Association.

**KRISTEN E. LAW**, born Parkersburg, West Virginia, April 3, 1974. Admitted to practice in California, 2002. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude,* 1995); Presidential Scholar. *Member*: Phi Beta Kappa; State Bar of California.

**JAHAN C. SAGAFI**, born Philadelphia, Pennsylvania, December 26, 1971. Admitted to practice in California, 2003. *Education*: Harvard Law School (J.D., 2001); Senior Editor, *Harvard Civil Rights-Civil Liberties Law Review*, (1999-2001); President, Board of Student

Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W. Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Honors & Awards*: "Community Justice Award," Centro Legal de la Raza, 2008. *Member*: State Bar of California (Litigation Section Executive Committee); National Employment Lawyers' Association; Association of Trial Lawyers of America; Consumer Attorneys of California; American Bar Association; Bar Association of San Francisco.

### OF COUNSEL

***ROBERT L. LIEFF***, born Bridgeport, Connecticut, September 29, 1936. Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*: "Northern California Super Lawyers," *Law & Politics*, 2005 - 2008. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

***MORRIS A. RATNER***, born San Jose, California, November 13, 1966. Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits. *Education*: Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Faculty Appointments*: Harvard Law School, Visiting Lecturer on Law for Winter Term 2009, teaching "Holocaust Litigation." *Lectures*: Stanford University, History Department (guest lecturer, June 2008, re Holocaust-era litigation); UC Berkeley School of Law Boalt Hall (guest lecturer, 2007, re legal ethics); Columbia Law School (guest lecturer, 2004, re Holocaust litigation); New York University School of Law (guest panelist, 2003, re developments in international law). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia; Bar Association of San Francisco.

***WILLIAM B. HIRSCH***, born Los Angeles, California, May 19, 1951. Admitted to practice in California, 1983; U.S. District Court, Northern District of California; U.S. District Court, District of Hawaii, 1991. *Education*: Harvard University ( J.D., 1983); Princeton University (M.A., 1975); University of California at Santa Cruz (B.A., with highest honors, 1973). *Awards & Honors*: Trial Lawyer of the Year, Trial Lawyers for Public Justice, 1995.

*Publications & Presentations*: "Justice Delayed: Seven Years Later & No End In Sight," in The Exxon Valdez Disaster: Readings on a Modern Social Problem (Kendall & Hunt Pub. Co. 1996). *Member*: Bar Association of San Francisco; State Bar of California; Trial Lawyers for Public Justice; The Association of Trial Lawyers of America; ACLU of Northern California (Steering Committee, 1993-94).

**NICHOLAS R. DIAMAND**, born London, England.  Admitted to practice in New York, 2003; U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit.  *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992).  *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03).  *Publications & Presentations*:  Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006; Columnist, *The New York Employee Advocate*, NELA/NY, February 2006-present.  *Member*:  New York City Bar Association, Trial Lawyers for Public Justice, American Society of International Law, Law Society of England and Wales.

**LYDIA LEE**, Oklahoma City, Oklahoma, June 20, 1957. Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, Law Firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Volume 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Oklahoma Bar Association (1983 – present), Member OBA Women in Law Committee (2007-present); National Association of Public Pension Attorneys (1988 - present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member, (2004-present); Edmond Neighborhood Alliance Board of Directors (2005-present), President (2006-2007), Past President and Director (2007-present); Central Edmond Urban Development Board (2006-present); Midwest City Regional Hospital, Board of Governors (1992 - 1996), Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee; City of Midwest City, Planning Commission (1984 - 1998), Chairman (1990-1995), Vice-Chairman (1987 – 1990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on 1991 Midwest City Legislative Reapportionment Committee.

**ASSOCIATES**

*NANCY CHUNG*, born Los Angeles, February 21, 1972. Admitted to practice in California, 2003; U.S. Court of Appeals for the Ninth Circuit, 2003; U.S. District Court, Northern and Central Districts of California (2007, 2008). *Education*: Hasting College of Law (J.D., 2002); University of California, Santa Cruz (B.A., Language Studies, 1995). *Employment*: International Labor Organization, Geneva, Switzerland (2000-2001); Peace Corps Volunteer, Romania (1995-1997). *Member*: Bar Association of San Francisco. *Languages*: French, Romanian and Korean.

*CHRISTOPHER E. COLEMAN*, born Mobile, Alabama, March 30, 1971. Admitted to practice in Georgia, 2005. *Education:* Northwestern University School of Law (J.D., *cum laude*, 2003); Order of the Coif; Associate Editor, *Northwestern University Law Review* (2002-2003); John Paul Stevens Public Interest Fellowship (2002); Northwestern University (M.A., History, 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993). *Employment*: Judicial Clerkship, Honorable Joan Humphrey Lefkow, U.S. District Court, Northern District of Illinois, 2003-2005. Leadership Council for Metropolitan Open Communities (Chicago, Illinois, 2002); Central Alabama Fair Housing Center (Montgomery, Alabama, 1997-1998). *Publications & Presentations*: Contributing Author, "California Class Actions Practice and Procedures" (Elizabeth J. Cabraser, Editor-in-Chief, 2006-2007); "Decades-Old Murder Case Needs Review," Op-Ed, *Chicago Sun-Times*, February 2, 2003; Co-Author, "Social Movements and Social Change Litigation: Synergy in the Montgomery Bus Protest," *Law and Social Inquiry* (Fall 2005); "Fingerprints and False Confessions: The William Heirens Case," Conference Presentation, Conference on False Confessions, Center on Wrongful Convictions, Northwestern University, Chicago, Illinois, March 2002. *Member*: American Bar Association; Tennessee Bar Association; Tennessee Trial Lawyers Association; Lawyers Association for Women; Nashville Bar Association YLD (Board of Directors); American Constitution Society, Nashville Lawyers' Chapter (Board of Directors).

*NIMISH R. DESAI*, born Coventry, England, June 25, 1980. Admitted to practice in California, 2006; US District Court; Northern District of California, 2007. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Publications & Presentations*: "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques", *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society. *Languages*: Gujarati (conversational).

**ALLISON S. ELGART**, born Manhasset, New York, January 27, 1978.  Admitted to practice in California, 2006; New York, 2007; U.S. Court of Appeals for the Sixth Circuit (2008).  *Education*: Harvard Law School (J.D., 2005), Editor-in-Chief, *Harvard Civil Rights-Civil Liberties Law Review*, Vol. 40; Student Attorney, Harvard Legal Aid Bureau, (2003-2005); Brown University (B.A., *magna cum laude* 2000).  *Employment*:  Law Clerk to Judge Robert P. Patterson, Jr., U.S. District Court, Southern District of N.Y., 2005-2006; Health Advocacy Fellow, Medicare Rights Center, (2000-2002).  *Publications & Presentations*: "Hamdi v. Rumsfeld: Due Process Requires That Detainees Receive Notice and Opportunity to Contest Basis for Detention," 40 Harv. C.R-C.L. L. Rev. 239 (2005).  *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California.

**JORDAN ELIAS**, born Los Angeles, California, December 17, 1975. Admitted to practice in California, 2003. *Education*: Stanford Law School (J.D., 2003); Member, *Stanford Law Review*; Yale University (B.A., Phi Beta Kappa, Magna Cum Laude, 1998). *Employment*: Associate, Wilson Sonsini Goodrich & Rosati, 2004-2008; Law Clerk to the Honorable Cynthia Holcomb Hall, U.S. Court of Appeals for the Ninth Circuit, 2003-2004; Law Clerk, City Attorney of San Francisco, Summer 2002; Judicial Extern to the Honorable Charles R. Breyer, U.S. District Court, Northern District of California, Summer 2001; Website Editor, Public Agenda, 1999-2000. *Member*: State Bar of California; Bar Association of San Francisco.

**HEATHER A. FOSTER**, born Washington, D.C., October 2, 1970.  Admitted to practice in California in 1996; U.S. District Court, Northern District of California, 1996. *Education*: University of the Pacific, McGeorge School of Law (J.D., 1996); Moot Court Honors Board, 1995-96; Trial Advocacy Honors 1996; Boston College (B.A., 1992).  *Employment*: Adjunct Professor, San Francisco State University – College of Extended Learning, Paralegal and LNC program (Fall 2000 – Spring 2001).  *Publications & Presentations*: Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999).  *Member*: American Association for Justice; American Bar Association (Litigation Section); Association of Legal Administrators; Bar Association of San Francisco; Legal Assistant Management Association; Phi Alpha Delta; State Bar of California (Volunteer Legal Services Program: Liaison for the Summer Associate Public Service Program – Homeless Advocacy Program, 2002; Teachers in the Schools Program, 2002; Pro Bono Attorney – Family Law Clinic, 1999); Trail Lawyers for Public Justice.

**BRENDAN P. GLACKIN**, born Sacramento, California, July 23, 1973.   Admitted to practice in California, 1998; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; New York, 2000; U.S. District Court, Southern District of New York, 2001; U.S. District Court, District of Colorado, 2001.  *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B.,Phi Beta Kappa, 1995).  *Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. Districts Court, Eastern District of California, 1998-1999. *Member*: State Bar of California.

**JENNIFER GROSS**, born Sleepy Hollow, New York, July 1, 1969.  Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994.  *Education*:

RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications & Presentations*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author, *Potential Vulnerabilities of U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

**CECILIA HAN**, born Silverspring, Maryland, November 22, 1978. Admitted to practice in California, 2005; U.S. District Court, Northern District of California, 2008. *Education*: University of California, Hastings College of the Law (J.D., 2004); Executive Editor, *Hasting Constitutional Law Quarterly*, (2003-2004); Judicial Extern to Judge Anthony Kline of California Appellate Court, 2002; Judicial Extern to Magistrate Judge Edward M. Chen, 2003; University of California, Berkeley (BA., Phi Beta Kappa, 2000). *Employment*: Associate, Brayton Purcell, (2005-2007). *Member*: State Bar of California.

**ROGER N. HELLER**, born New York, New York, June 4, 1975. Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. Court of Appeals for the Ninth Circuit (2001). *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor; Emory University (B.A., 1997). *Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of new York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: Harland Fiske Stone Scholar. *Publications & Presentations*: Co-author, <u>Fighting For Troops on the Homefront</u>, Trial Magazine (September 2006). *Member*: American Bar Association.

**DANIEL M. HUTCHINSON**, born Oakland, California, May 25, 1977. Admitted to practice in California, 2005; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Minority Fellowship (1997-1999). *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Member*: State Bar of California; National Bar Association.

**ANDREW S. KINGSDALE**, born Boston, Massachusetts, November 4, 1974. Admitted to practice in Massachusetts, 2007; New York, 2007; California, 2008. *Education*: Temple University School of Law (J.D. 2006); Temple Journal of Science Technology and Environmental Law; Johns Hopkins-Nanjing University Center for U.S.-China Studies, 2000; Dartmouth College (B.A. 1996). *Member*: State Bar of California; State Bar of Massachusetts; New York State Bar Association; American Bar Association, Antitrust and Litigation Sections Member; Bar Association of San Francisco, International Law Section Member.

**KENT L. KLAUDT,** born Jamestown, North Dakota, September 6, 1968. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998; U.S. District Court, Central District of California, 2007. *Education*: University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship, 1995); University of Minnesota (B.A., 1991). *Employment*: BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004. *Publications & Presentations*: "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," *13 Law & Inequality: A Journal of Theory & Practice* 301. *Member*: American Trial Lawyers Association; Consumer Attorneys of California; Trial Lawyers for Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild.

**SHARON M. LEE**, born Richmond, B.C., Canada, January 19, 1975. Admitted to practice in New York 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005. *Education*: St. John's University School of Law, (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University, (M.A. 1998); St. John's University, (B.A. 1997). *Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Member*: American Bar Association; Washington State Bar Association.

**ANNIKA K. MARTIN**, born New York, New York, September 13, 1979. Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004). *Awards and Honors*: 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor. *Member*: New York State Bar Association (General Practice Section and Young Lawyers Section); Swedish American Bar Association; American Association for Justice; New York State Trial Lawyers Association; New York County Lawyer's Association; New York City Bar Association. *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, born Summit, New Jersey, April 2, 1978. Admitted to practice in New York, 2006; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Eighth Circuit, 2007. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Employment*: Milberg Weiss LLP, Associate, 2005-2007.

**SHARMILA L. MURTHY**, Smithtown, New York, February 4, 1977. Admitted to practice in New York, 2005; Tennessee, 2004; U.S. District Court, Middle District of Tennessee, 2004; U.S. Court of Appeals for the Sixth Circuit (2004). *Education*: Harvard Law School, (J.D., *cum luade* 2003); Harvard Legal Aid Bureau, (2001-2003); Reginald Lewis Summer Fellowship, (2001); Kennedy School of Government, Harvard University, (M.P.A., 2003); Cornell University, (B.S., *with honors*, 1997). *Employment*: Law clerk to Judge Martha Craig

Daughtrey, U.S. Court of Appeals for the Sixth Circuit, 2003-2004. Skadden Fellow and Staff Attorney at Legal Aid Society of Middle Tennessee and the Cumberlands, 2004 – 2007. *Awards & Honors*: Tennessee Alliance for Legal Services New Advocate of the Year, 2006; Nashville Bar Journal Article of the Year, 2006; Skadden Fellowship, 2004; Betty Allebach Award for Public Service at Harvard Legal Aid Bureau, 2003; Kennedy Scholarship at JFK School of Government, 1999; U.S. Fulbright Award, 1998-1999. *Publications & Presentations*: "Lost in Translation?" Interpreters in the Courts," *The Nashville Bar Journal* (2006 ); "SEWA's Rural Savings and Credit Program in Gujarat, India," *Kennedy School Review: Student Perspectives 2000. Member*: Nashville Bar Association; Tennessee Bar Association; Lawyers Association for Women; Inn of Court; American Constitution Society; Tennessee Immigrants and Refugee Rights Coalition; Harvard Legal Aid Bureau Alumni Advisory Board.

**DANIEL E. SELTZ**, born Alexandria, Virginia, April 24, 1974. Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York; Eastern District of New York. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

**STEVE M. SWERDLOW**, born Los Angeles, California, April 20, 1977. Admitted to practice in California, 2007; U.S. District Court, Central, Eastern and Northern Districts of California, 2007. *Education*: Boalt Hall School of Law, University of California, Berkeley, (J.D. 2006); Senior Notes & Comments Editor, *California Law Review*; Boalt Hall Public Interest Fellowship (2004); Chairman, Boalt Hall Committee for Human Rights (BHCHR); Asylum Advocate, California Asylum Representation Clinic; Boalt Hall Death Penalty Clinic; Columbia University, School of International and Public Affairs (M.A., Human Rights and International Affairs, 2003); Harriman Institute Certificate in Post-Soviet Studies (2003); University of California, Berkeley (B.A. *phi beta kappa* 1999). *Employment*: Law Clerk to the Hon. Dean D. Pregerson, U.S. District Court, Central District of California (2006-2007); Consultant and Special Advisor on Refugee Programs, International Organization of Migration (IOM) (Russia, 2004 and 2006); Researcher, European Centre for Minority Issues (Georgia, 2005); Law Clerk, American Civil Liberties Union of Southern California (2004); Human Rights Monitor, Union of Councils for Jews in the former Soviet Union (Russia, 2000-2001). *Awards & Honors*: U.S. Department of State Young Leaders Fellowship for Public Service, Krasnodar, Russian Federation (2000-2001); U.S. Department of Education Foreign Language Area Studies Award (2002-2003 & 2004-2005); Harvard Tuition Scholarship, Harvard Ukrainian Research Institute. *Publications & Presentations*: "The Third Migration: Meskhetian Turks' Resettlement and Integration in the United States," *Integration, Repatriation or Resettlement?*, Berlin: LIT Verlag (2007); "Understanding Post-Soviet Ethnic Discrimination and the Effective Use of U.S.

Refugee Resettlement: The Case of the Meskhetian Turks of Krasnodar Krai," 94 *Cal. L. Rev.* 1827 (2006); National Public Radio's "The World" on "Ethnic Discrimination in Russia" (Guest, Oct. 2007); *The Meskhetian Turks: An Introduction to their History, Culture and Resettlement Experiences*, Cultural Orientation Resource Center, Center for Applied Linguistics (2006); *Voice of America* Radio Interview, "Xenophobia in the Caucasus" (Guest, March 2005); "Stalin's Deported Peoples: Human Rights of Transnational Minorities," in Bulletin, Moscow (2004); *Radio Free Europe/Radio Liberty*, "Russia's Expulsion of Ethnic Minorities" (Panelist, 2002); "The Forgotten Jews of Nagorno-Karabakh," *Institute of War and Peace Reporting* (2001). *Member*: American Bar Association, Sections of International and Refugee Law, Sub-Committee of International Human Rights and Refugee Law; Bar Association of San Francisco. *Languages*: Russian, Ukrainian, Georgian.

**TODD A. WALBURG**, born Berkeley, California, January 5, 1973. Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern, Central and Southern Districts of California, 2006; U.S. Court of Appeals for the Ninth Circuit, 2006. *Education*: University of San Francisco School of Law (J.D. 1999); Founder and President, USF Student Chapter, Association of Trial Lawyers of America (1997-1999); Investigation Intern, San Francisco Public Defender's Office; Mediation Intern, San Francisco Small Claims Court; Mediation Intern, U.S. Equal Employment Opportunity Commission; University of California at Los Angeles (B.A., 1995). *Awards*: Leesfield / Association of Trial Lawyers of America Scholarship, National Winner (1998). *Prior Employment*: Partner, Emison Hullverson Bonagofsky, LLP (2007-2008); Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2005-2007); Associate, Bennett, Johnson & Galler (2001-2005). *Publications*: "Powerful Mediation Briefs," in The Verdict (ACCTLA 2006). *Member*: Public Justice (formerly Trial Lawyers for Public Justice); American Association for Justice (formerly Association of Trial Lawyers of America); Consumer Attorneys of California; State Bar of California; San Francisco Trial Lawyers Association (Education Committee and Carlene Caldwell Scholarship Committee, 2005-2007); Alameda-Contra Costa Trial Lawyers Association (Board of Governors, 2003-2005); Bar Association of San Francisco.

**BARBRA L. WILLIAMS,** born Bellflower, California, July 10, 1974. Admitted to practice in California, 2007; U.S. District Court, Northern & Central Districts of California, 2007; U.S. District Court, Central District of California, 2007; U.S. Court of Appeals for the Ninth Circuit (2007). *Education*: University of California, Hastings College of the Law, (J.D., 2006, Concentration in Civil Litigation); Notes Editor, *Hastings Race & Poverty Law Journal;* UC Hastings Civil Justice Clinic, Individual Wage & Hour Representation; UC Hastings Admissions Policy Committee; Teaching Assistant, Legal Writing & Research; National Black Law Students Association (Sub-Regional Director); Hastings Black Law Students Association (Co-President); University of California, Irvine (B.A., 1997). *Member:* American Bar Association (Labor & Employment Section); State Bar of California; National Bar Association; California Association of Black Lawyers; Bar Association of San Francisco; Charles Houston Bar Association.

**HEATHER H. WONG**, born San Diego, California, July 5, 1978. Admitted to practice in California, 2005; U.S. Court of Appeals, Ninth Circuit, 2005; U.S. District Court, Central and Northern Districts of California, 2005, 2006; U.S. District Court, District of Colorado, 2006. *Education*: University of San Francisco (J.D. & M.B.A., 2005); Beta Gamma

Sigma Honor Society (2005); Technical Editor, *Maritime Law Journal*; University of California, Berkeley (B.A., 2000).  *Member*: State Bar of California, Labor & Employment Law & Litigation sections member; Bar Association of San Francisco, Labor & Employment Law & Litigation sections member; American Bar Association, Young Lawyers Division and Labor & Employment Law section member; American Constitution Society, mentor program; Consumer Attorneys of California; Association of Business Trial Lawyers; Asian American Bar Association; Minority Bar Coalition.

     <u>Notice on the Firm's AV Rating</u>:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary.  Martindale-Hubbell Ratings fall into two categories – legal ability and general ethical standards.