# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into, subject to Court approval, as of December 1, 2008, on behalf of Create-A-Card, Inc., AGSJ, Inc. and Philanthropic Focus, LLC in the action *Create-A-Card, Inc., et al. v. Intuit Inc.*, Case No. CV 07-06452 WHA, pending in the United States District Court for the Northern District of California before the Honorable William H. Alsup ("the U.S. Action"), and Ronald Smith & Associates, Inc., in the action, *Ronald Smith & Assocs. Inc. v. Intuit Canada and Intuit Inc.*, Court File No. 08-CV-348111 CP, pending in the Ontario Superior Court of Justice (the "Canadian Action"), on behalf of themselves and each of the proposed Class Members defined below, on one hand, and Defendants Intuit Inc. and Intuit Canada Ltd. on the other hand (collectively, "Defendants" or "Intuit"). This Settlement Agreement is made for full and complete settlement of both the U.S. Action and the Canadian Action and will be subject to the Courts' final approval and supersedes the Settlement Agreement and Release made and entered into by the parties on August 22, 2008 ("August 22, 2008 Settlement Agreement") and the Settlement Agreement and Release made and entered into by the parties on November 4, 2008.

1. **Recitals.**

    **1.1** WHEREAS, Plaintiffs in the U.S. Action have asserted claims in their First Amended Complaint for negligence, strict products liability, trespass to chattels, breach of contract, breach of implied warranty, and violations of California Business & Professions Code Section 17200, *et seq.*, against Intuit based upon an alleged defect in the auto-update mechanism of Intuit's QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac (the "Software");

    **1.2** WHEREAS, Plaintiffs in the U.S. Action have alleged that as a result of a malfunctioning of the Software's auto-update mechanism ("Malfunction") caused by, among other reasons, this alleged defect in the Software's auto-update mechanism code (the "Software Bug"), the data or files residing on their Macintosh desktops became inaccessible or were damaged, corrupted, or lost, either temporarily or permanently, and as a result, they suffered damages;

    **1.3** WHEREAS, Plaintiff in the Canadian Action has asserted claims in its Statement of Claim for negligence and trespass to personal property, arising out of the same purported Malfunction and Software Bug as that alleged in the U.S. Action, and seeks to be included as part of this global settlement and release;

    **1.4** WHEREAS, Intuit has disclosed information to Plaintiffs concerning the Malfunction and Software Bug, including how the Malfunction occurred, the circumstances causing the Software Bug to manifest, the steps Intuit has taken to prevent any recurrence of the Malfunction (including permanent disablement of the auto-update mechanism in the Software, and thus the Software Bug), and the remedial and outreach efforts taken by Intuit to date to identify, assist and compensate its affected customers (including creation of a dedicated emergency task team and an internal QuickBase database to track customer contacts about the issue (the "QuickBase database"))—all of which is set forth in greater detail and specificity in Paragraph 5.1 below;

1

**1.5**     WHEREAS, Intuit contends it is not liable for the claims asserted in the Actions, that it has valid defenses to those claims, and that Plaintiffs have not suffered any recoverable damages and, accordingly, on April 17, 2008, filed its motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in the U.S. Action ("Motion to Dismiss"), asserting that Plaintiffs fail to state a claim upon which relief may be granted because, *inter alia*, the Software License Agreement is valid and enforceable, includes a valid warranty disclaimer, exclusive limited remedy and limitation of liability provisions therein, and the economic loss doctrine precludes recovery of the alleged damages asserted by Plaintiffs;

**1.6**     WHEREAS, on July 3, 2008, Plaintiffs filed their opposition to Intuit's Motion to Dismiss ("Opposition"), asserting, *inter alia*, the disclaimers of liability in the Software License Agreement are procedurally and substantively unconscionable, the limited remedy fails its essential purpose, and the economic loss doctrine does not allow Intuit to avoid tort liability for the destruction of "other property" unrelated to the Software;

**1.7**     WHEREAS, Intuit has concluded that it will enter into this Settlement Agreement in order to, *inter alia*, avoid the further time, expense, inconvenience, burden, uncertainty and risk of continuing litigation in the U.S. Action and Canadian Action (the "Actions"), so that it may resolve these Actions on certain terms and to put to rest the controversies engendered by the Actions and, though it believes it is not otherwise legally obligated, to provide compensation to its affected customers;

**1.8**     WHEREAS, after conducting investigation into the facts and law, and engaging in extensive settlement discussions with Intuit, the Class Representatives and Class Counsel have concluded that a settlement according to the terms set forth below represents a fair, adequate and reasonable settlement of the Actions and is in the best interest of the Class in light of the risks, costs and uncertainty of further litigating the Actions (including the outcome on Intuit's Motion to Dismiss), and the substantial benefits to be received by the Class;

**1.9**     WHEREAS, the Settlement Agreement was reached after approximately eight (8) months of ongoing arms-length negotiations between the Parties with the ongoing assistance of Edward A. Infante, retired Magistrate Judge of the United States District Court for the Northern District of California;

**1.10**     WHEREAS, on August 26, 2008 Plaintiffs in the U.S. Action filed their motion for preliminary approval of the August 22, 2008 Settlement Agreement and on September 18, 2008, the U.S. Court heard the motion and indicated it would preliminarily approve the proposed settlement subject to certain modifications to the form and method of class notice;

**1.11**     WHEREAS, after September 25, 2008, Intuit upon its own due diligence and investigation learned additional facts which it promptly shared with Plaintiffs' counsel and on October 17, 2008, Intuit filed a letter in the U.S. Action with these factual findings and to inform the Court that the parties had agreed to a claims-made settlement with a release applying to only those users who filed claims and that the parties would submit a revised settlement agreement, proposed class notices and claims form, and proposed order approving the revised settlement.

NOW THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, and subject to the approval of the Court in the U.S. Action and the Court in the Canadian Action, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to Intuit (and in the case of the Canadian Action, Intuit Canada Ltd. and Intuit) on the following terms and conditions:

**2.     Definitions.**

**2.1**     "Canadian Action" shall refer to the putative class action, *Ronald Smith & Assocs., Inc. v. Intuit Canada and Intuit Inc.*, Court File No. 08-CV-348111 CP, filed January 31, 2008 and pending in the Ontario Superior Court of Justice ("Canadian Court").

**2.2**     "Canadian Settlement Approval Hearing" shall have the meaning set forth in Paragraph 10.3.1.

**2.3**     "Canadian Class Members" shall refer to any Class Member whom Intuit can identify as having a Canadian residence, including having a Canadian email (.ca) address and/or Canadian mailing address.

**2.4**     "Canadian Notice" shall be the first notice sent to all registered users of the Software and all users identified in the QuickBase database as having been potentially affected by the Malfunction, for whom Intuit can identify as having a Canadian residence, including having a Canadian email (.ca) address and/or Canadian mailing address, the contents of which is described in Paragraph 10.3.2 below, and a copy of which is attached hereto as Exhibit A.

**2.5**     "Canadian Approval Notice" shall refer to the final Canadian approval notice that shall be referenced in the Class Notice and available on the ICA website as described in Paragraph 2.14, below, and a copy of which is attached hereto as Exhibit B.

**2.6**      "Canadian Notice Date" shall have the meaning set forth in Paragraph 10.3.2 below.

**2.7**     "Claim Form" means the sworn statement that a Class Member must submit under penalty of perjury in order to receive a Settlement Award, the substance and form of which is attached hereto as Exhibit C.

**2.8**     "Claims Period" means the time period commencing on the Class Notice Date and ending ninety (90) days thereafter.

**2.9**     "Class" shall refer the proposed settlement class defined as:  All users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism who timely submit a valid Claim Form and excludes:  (a) Intuit and its subsidiaries and affiliates; (b) all governmental entities; (c) the judge(s) to whom this case is assigned and any immediate family members thereof; (d) all claims for personal injury and wrongful death; and (e) any Person who timely opts out of the settlement pursuant to Paragraph 9.2.2.3.2 or Paragraph 10.7.1.1.

3

**2.10**   "Class Counsel" collectively refers to Class Counsel in the U.S. Action and Class Counsel in the Canadian Action.

**2.11**   "Class Counsel in the Canadian Action" collectively refers to Jonathan J. Foreman and David B. Williams of Harrison Pensa LLP.

**2.12**   "Class Counsel in the U.S. Action" collectively refers to James A. Quadra, Rebecca Bedwell-Coll and Robert D. Sanford of Moscone, Embridge & Quadra LLP; and Michael W. Sobol, Kristen E. Law and Jonathan D. Selbin of Lieff, Cabraser, Heimann & Bernstein, LLP.

**2.13**   "Class Members" shall refer to all Persons falling within the definition of the Class.

**2.14**   "Class Notice" as set forth in Paragraph 10.6.3 herein, shall refer to the proposed summary notice that shall be sent by the ICA by email and first class mail (to the extent such information is available in Intuit's records) to all registered users of the Software and all users identified in the QuickBase database as having been potentially affected by the Malfunction, subject to preliminary approval by the Court in the U.S. Action and the Court in the Canadian Action.  The Class Notice shall contain links to the Full U.S. Notice, Canadian Approval Notice, and Claim Form.  The form of the Class Notice of which the Parties shall seek preliminary approval is attached hereto as Exhibit D.

**2.15**   "Class Notice Date" shall have the meaning set forth in Paragraph 10.6.3 and shall occur no earlier than December 1, 2008.

**2.16**   "Class Representatives" collectively refers to Class Representatives in the U.S. Action and the Class Representative in the Canadian Action.

**2.17**   "Class Representative in the Canadian Action" shall refer to Ronald Smith & Associates, Inc., in the Canadian Action.

**2.18**   "Class Representatives in the U.S. Action" shall collectively refer to Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC, in the U.S. Action.

**2.19**   "Effective Date" shall have the meaning set forth in Paragraph 13 below.

**2.20**   "Exclusion Deadline" shall have the meaning set forth in Paragraph 10.9.1.

**2.21**   "Fairness Hearing" shall be the final approval hearing in the U.S. Action as referenced in Paragraphs 10.2.2, 10.7.1 and 10.11.1 below.

**2.22**   "Full U.S. Notice" shall refer to the full notice referenced in the Class Notice and made available on the ICA website that shall have detailed information regarding the proposed Settlement Agreement of the U.S. Action, the form of which is attached hereto as Exhibit E.

**2.23**   "ICA" shall refer to the Independent Claims Administrator as described in Paragraph 10.5 below.

**EXECUTION COPY**

**2.24**  "Intuit" shall mean Intuit Inc. together with its officers, directors, employees, stockholders, investors, attorneys, insurers, subsidiaries (including Intuit Canada Ltd.), representatives, contractors and agents.

**2.25**  "Malfunction" shall refer to the alleged malfunctioning of the Software's auto-update mechanism that led to the temporary or permanent inaccessibility, damage, corruption or loss of data or files.

**2.26**  "Non-Canadian Class Members" shall refer to all Class Members other than Canadian Class Members.

**2.27**  "Plaintiffs" shall refer collectively to Plaintiffs in the U.S. Action and Plaintiffs in the Canadian Action.

**2.28**  "Plaintiffs in the U.S. Action" shall refer to Class Representatives in the U.S. Action and the class of Persons they purport to represent.

**2.29**  "Plaintiffs in the Canadian Action" shall refer to the Class Representative in the Canadian Action and the class of Persons it purports to represent.

**2.30**  "Parties" shall mean Plaintiffs and Intuit.

**2.31**  "Person" shall mean any natural person or any entity including, but not limited to, corporations, partnerships, limited liability companies, limited liability partnerships, or other entities in which a natural person may have a legal or equitable interest.  For clarification, only one Claim Form shall be permitted per Person.

**2.32**  "Released Claims" shall have the meaning set forth in Paragraph 14.

**2.33**  "Settlement Award" shall mean the compensation (whether monetary and/or in the form of a software upgrade) to which a Class Member is entitled as is finally determined by the ICA.

**2.34**  "Software" shall refer to Intuit's QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac.

**2.35**  "Software Bug" shall refer to the alleged defect in the Software's auto-update mechanism code that is alleged to have led to the Malfunction.

**2.36**  "U.S. Action" means the putative class action, *Create-a-Card, Inc., et al. v. Intuit Inc.*, Case No. CV 07-06452 WHA filed on December 21, 2007 and pending in the United States District Court for the Northern District of California before the Honorable William H. Alsup ("U.S. Court").

## 3.  Certification.

**3.1**  The Parties stipulate and agree to the certification of these Actions as class actions for purposes of this Settlement Agreement only.  Should, for whatever reason, the Settlement

**EXECUTION COPY**

Agreement not become final, the fact that the Parties were willing to stipulate to the definition of the Class and class certification as part of the Settlement Agreement shall have no bearing on, and shall not be admissible in connection with the issue of whether a class should be certified in a non-settlement context in these Actions or any other action. Intuit expressly reserves the right to oppose class certification should this Settlement Agreement not become final.

**4.        Procedural History.**

**4.1        The U.S. Action.**

**4.1.1        The Complaint and First Amended Complaint.**

On December 21, 2007, Plaintiffs in the U.S. Action filed a putative class action complaint against Intuit, alleging claims for negligence, strict products liability, trespass to chattels, breach of implied warranty and violations of California Business & Professions Code Section 17200, *et seq*. On March 31, 2008, Plaintiffs in the U.S. Action filed their First Amended Complaint, adding a breach of contract claim against Intuit. The First Amended Complaint alleges that the Software has a built-in auto-update mechanism that is activated when the Software is opened by the user. Upon launch, the Software automatically contacts Intuit's server through the Internet to download any updates to the Software that may be available. The First Amended Complaint also asserts that on Saturday, December 15, 2007, a Malfunction occurred when the Software Bug was triggered when Intuit's server failed to send the Software a proper signal and that this Malfunction resulted in the loss of the data on the Mac desktops of users who launched the Software. The First Amended Complaint alleges that beginning on Sunday, December 16, 2007 at 1:40 a.m., postings were made to Intuit's online message board about the problem. Less than 34 hours later, at approximately 10:00 a.m. PST on Monday, December 17, 2007, Intuit resolved the issue, stopping any further desktop data deletion. Plaintiffs allege that in January 2008, the Software Bug was again triggered in the case of one user who had launched the Software at a restricted Internet "wi-fi hotspot" when the Software did not receive a proper update response as a result of the hotspot's restricted access to the Internet. Intuit subsequently sent a "patch" to its users to completely disable the Software's auto-update mechanism, thereby disabling the Software Bug.

**4.1.2        Intuit's Motion to Dismiss.**

On April 17, 2008, Intuit filed its Motion to Dismiss in the U.S. Action, seeking dismissal of each and every claim for relief. Intuit claims that the Software License Agreement ("Agreement") between Intuit and each Plaintiff is binding and enforceable and contains a valid disclaimer of warranties, limitation of liability and exclusive limited remedy, thereby precluding any claim for breach of implied warranty, or recovery of consequential damages (including those arising from any claim of negligence). Intuit also asserts that the breach of contract claim is subject to dismissal because Plaintiffs could not allege any provision in the Agreement breached by Intuit nor how Intuit breached it. Intuit further claims that the Agreement precludes any tort recovery—specifically negligence, strict products liability and trespass to chattels—under the economic loss doctrine. Moreover, because Plaintiffs cannot allege physical loss to property, but only intangible data loss, Plaintiffs could not recover under a theory of strict products liability. Intuit also asserts the trespass to chattels is subject to dismissal because Plaintiffs consented to

**EXECUTION COPY**

the alleged incursion.  Finally, Intuit asserts that Plaintiffs' claim for violation of California Business & Professions Code Sections 17200, et seq., fails to state a claim upon which relief may be granted.  Intuit believes the Motion to Dismiss may be dispositive of the U.S. Action as the terms of the Agreement, together with the facts as alleged, permit the Court to determine whether or not the damages asserted by Plaintiffs are recoverable as a matter of law.

Plaintiffs in the U.S. Action filed their opposition to the Motion to Dismiss on July 3, 2008 (the "Opposition").  In their Opposition, Plaintiffs assert that the disclaimer of warranties in the Software License Agreement is unconscionable, the limited remedy failed its essential purpose and the bar on consequential damages is unenforceable and unconscionable.  Plaintiffs further argue that the economic loss doctrine does not bar their negligence, strict products liability and trespass to chattels claims because the loss of computer files constitute damage not only to physical property, but also to "other" property.  Plaintiffs also further claim that they have stated a claim for relief for negligence, strict products liability, trespass to chattels and a violation of California Business & Professions Code Sections 17200, et seq.  Intuit filed its reply in support of its Motion to Dismiss in response to Plaintiffs' Opposition on July 24, 2008.

As of July 25, 2008, the Parties executed a Class Action Settlement Stipulation subject to court approval and the execution of this full formal Settlement Agreement.  On August 1, 2008 the Parties requested the Court continue the hearing on Intuit's Motion to Dismiss in light of the Settlement Stipulation entered by the Parties.  The Court continued the hearing date on the Motion to Dismiss to September 25, 2008.  At the September 18, 2008 hearing on the motion for preliminary approval of the August 22, 2008 Settlement Agreement in the U.S. Action, the Court vacated the hearing on the Motion to Dismiss.

### 4.1.3   Discovery.

On June 6, 2008, Plaintiffs served their first set of interrogatories, requests for admissions and requests for production of documents on Intuit.  On July 28, 2008 Intuit served its objections and responses to Plaintiffs' discovery requests, including verified interrogatory responses and the production of content from its QuickBase database, wherein Intuit has stored, *inter alia*, information regarding all users affected by the alleged Software Bug known to Intuit.  In its verified interrogatory responses, Intuit provided detailed information regarding the registration process for the Software, the number of registered users of the Software, all users affected by the Software Bug known to Intuit, the reimbursements it has provided to affected customers, and the steps Intuit took to identify and assist affected customers, collect relevant information, and communicate with affected customers to ensure they received proper guidelines and assistance to recover any lost data.

On June 18, 2008, Intuit served its first set of interrogatories and requests for production on each Plaintiff.  On or about August 4, 2008, Plaintiffs in the U.S. Action served their respective responses and objections to Intuit's discovery requests.

On October 17, 2008, Intuit filed a letter with the Court that included additional factual findings regarding the total number of registered users of the Software and Intuit's forced registration process.

**EXECUTION COPY**

**4.2**    The Canadian Action.

**4.2.1**    On January 31, 2008, Plaintiff in the Canadian Action filed a statement of claim against Intuit Canada and Intuit Inc., asserting claims for negligence and trespass to personal property, arising out of the same purported Malfunction and Software Bug as that alleged in the U.S. Action.

**4.2.2**    On February 28, 2008, Intuit Canada and Intuit Inc. delivered a Notice of Intent to Defend. The appointment of Case Management Judge was requested on May 15, 2008. A reply was received from the Regional Senior Justice in Toronto on May 23, 2008.

**4.3**    History of Settlement Negotiations.

**4.3.1**    Since the filing of the U.S. Action in December 2007, Plaintiffs in the U.S. Action and Intuit have been engaged in arms-length settlement discussions and negotiations, recognizing that the mutually optimal result in this case would be not to expend significant costs, time, and energy in protracted litigation, but to reach a certain fair, adequate and reasonable settlement whereby compensation may be provided to Intuit's affected customers. Upon learning of the filing of the Canadian Action, Plaintiff of the Canadian Action joined and participated in the continuing arms-length settlement negotiations, so that the Parties could reach a global settlement for the entire Class.

**4.3.2**    On February 21, 2008, Plaintiffs, through Class Counsel, participated in an all-day mediation with Intuit and Intuit's counsel before Judge Edward A. Infante (Ret.) at JAMS, prior to and during which Intuit disclosed information concerning the cause of the Malfunction, the Software Bug and how it was disabled, other steps Intuit has taken to prevent any recurrence of any similar problem, and efforts Intuit has taken to reach out and identify its affected customers, assist them with data recovery, and in many cases, to reimburse them for related expenses. The information Intuit disclosed before and during the mediation was provided in lieu of formal discovery requests. The Parties reached the settlement terms herein, as a result of approximately eight (8) months' of ongoing arms-length negotiations.

**4.3.3**    The Parties executed the August 22, 2008 Settlement Agreement and on August 26, 2008 submitted it to the U.S. Court for preliminary approval. The U.S. Court heard the motion for preliminary approval on September 18, 2008 and indicated it would preliminarily approve the proposed settlement subject to modifications to the form and method of class notice. Intuit upon its own due diligence and investigation later learned additional facts which it promptly shared with Plaintiffs' counsel. On October 17, 2008, Intuit filed a letter in the U.S. Action with these factual findings and to inform the Court that the parties had agreed to a claims-made settlement with a release applying to only those users who filed claims and that the parties would submit a revised settlement agreement, proposed class notices and claims form, and proposed order approving the revised settlement.

**5.**    **Investigation and Discovery.**

**5.1**    Factual Investigation.

**5.1.1**    The Parties have conducted significant investigation of the facts and law during the prosecution of these Actions. Such discovery and investigations have included, *inter*

8

*alia*, the informal exchange of information between the Parties through the mediation process and formal discovery, and numerous conference calls and other correspondence between representatives of the Parties.

5.1.2    The Parties recognize and acknowledge that Intuit has already by email notified all registered users of the Software with a valid email address and who had not opted out of receiving marketing communications from Intuit (approximately 30,010) of the Malfunction and Software Bug, including how users could ensure prevention of any recurrence of the issue, and the data recovery resources available to affected users.  In addition, Intuit's customer outreach efforts have included posting resources on its Web site and providing information on Internet user forums, blogs, and message boards within the Mac community.  The Parties further recognize and acknowledge that Intuit has taken remedial measures not only by restoring its server files on December 17, 2007, and implementing a redundant server architecture, but also by pushing a patch to its entire Software user base (and informing users of the patch's availability for manual download) to permanently disable the Software Bug.

5.1.3    The Parties recognize that Intuit, without any admission of liability, already has taken significant steps to identify and contact its affected customers and provide them compensation to date, including:

5.1.3.1    on December 17, 2007, creating and implementing a dedicated support team, including a dedicated email address (machelp@intuit.com), to provide free technical support to affected customers;

5.1.3.2    since December 17, 2007, identifying affected customers and affirmatively contacting them to provide technical assistance and support;

5.1.3.3    since December 17, 2007, working with third party data recovery vendors (including ProSoft Engineering, DriveSavers and Apple Genius Bars) to provide free and/or reimbursable data recovery software and assistance to affected customers;

5.1.3.4    on December 19, 2007, emailing all known affected users of the Software about the issue, how to best proceed with data recovery and to contact Intuit for assistance;

5.1.3.5    since December 19, 2007, providing reimbursement for certain reasonable hardware and/or software expenses incurred in their data recovery efforts;

5.1.3.6    since December 2007, providing most affected customers a free upgrade to QuickBooks® Pro 2007 for Mac; and

5.1.3.7    on January 14, 2008, emailing approximately 30,010 registered users of the Software to inform them of the issue, how to prevent a recurrence, and to provide them means to obtain assistance from Intuit or other data recovery resources;

5.1.4    As of the February 21, 2008 mediation, Intuit had provided over $300,000 USD in compensation to its customers.

**EXECUTION COPY**

**5.2**     Legal Investigation.

**5.2.1**     As set forth in Paragraphs 4.1.1 and 4.1.2 above, counsel for the Parties have researched and investigated the relevant law as applied to the facts discovered regarding the alleged claims of the Class and potential defenses thereto, and the damages that could be claimed by the Class.  Most of the substantive negotiations between the parties have centered on the strength and weaknesses of existing case law vis-à-vis these facts and the legal issues and claims raised in this case.

## 6.     Fairness of the Settlement.

**6.1**     The Class Representatives recognize the expense and length of continued proceedings that would be necessary to continue the litigation against Intuit through trial and through any possible appeals in both Actions.  Class Representatives have also taken into account the uncertainty and risk of the outcome of further litigation (including the U.S. Court's decision on the Motion to Dismiss), and the difficulties and delays inherent in such litigation. The Class Representatives are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, Intuit's defenses thereto, and the difficulties in proving damages for the Class. The Class Representatives have also taken into account the extensive settlement negotiations conducted.  Based on the foregoing, the Class Representatives have determined that the Settlement set forth in this Agreement provides significant monetary compensation to the Class Members in light of the foregoing and is thus a fair, adequate and reasonable settlement and in the best interests of all Class Members.

**6.2**     As also set forth in Paragraph 4.1.2 above, Intuit contends that the Software License Agreement that each customer entered into when it used the Software is valid and enforceable and governs the claims and damages asserted by the Class Representatives in the Actions.  Specifically, Intuit contends that the Software License Agreement properly disclaimed any and all implied warranties, limited the Class Members' damages to the price paid for the Software, and had a valid exclusive remedy provision.  Moreover, Intuit contends that because Plaintiffs did not suffer any tangible or physical loss or damage to other property, the economic loss doctrine applies, and no strict product liability would be imposed in this case.  Intuit further believes that no damages, let alone punitive damages, are recoverable in the Actions.  Intuit has denied and continues to deny each of the claims alleged by Plaintiffs in these Actions and denies any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Actions, and believes it has valid defenses to Plaintiffs' claims.  Neither this Settlement Agreement, any document referred to or contemplated herein, nor any action taken to carry out the terms of this Settlement Agreement is, or may be construed as or used as an admission, concession or indication by or against Intuit of any fault, wrongdoing or liability whatsoever, including that any terms of the Software License Agreement is invalid or unenforceable, or that certification of any class would be appropriate in this or in any other case.  Intuit enters into this Settlement Agreement because it seeks prompt closure of these Actions and believes that providing compensation to its customers would be preferred to the cost, expense, burden, and inconvenience of litigating the Actions, if needed, through summary judgment, trial and/or possible appeals.

**EXECUTION COPY**

**7.    Inadmissibility of the Settlement Agreement.**

**7.1**    Whether or not the Courts ultimately approve this Settlement Agreement, neither this Settlement Agreement, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be an admission for any purpose adverse to Plaintiffs or Intuit (including, but not limited to, as evidence of a presumption, concession, indication or admission by Intuit of any liability, fault, wrongdoing, omission, concession or damage) in the Actions or in any other action or proceeding.  The sole purposes of this Settlement Agreement, and any document, statement, proceeding or conduct related to this Settlement Agreement, are for the settling the Actions pursuant to this Settlement Agreement, effectuating the terms of this Settlement Agreement, and enforcing the releases in this Settlement Agreement.

**8.    Scope of Settlement.**

**8.1**    It is the Parties' intention to simultaneously seek preliminary approval of this Settlement Agreement in the U.S. Action and the Canadian Action.  The Parties hereby agree that there shall be only a single Class Notice, Claim Form, claims process and administration of this Settlement Agreement, subject to the Courts' approval.  The Class Notice shall be sent to all registered users of the Software (approximately 42,787) and all users identified in the QuickBase database as having been potentially affected by the Malfunction (approximately 1038).  The Parties further acknowledge that because Canadian law normally requires two class notices (in contrast to U.S. law), the Parties agree that a separate earlier Canadian Notice shall be sent only to registered users of the Software and users identified in the QuickBase database with a Canadian residence, including having a Canadian email (.ca) address or mailing address as having been potentially affected by the Malfunction, as set forth in further detail in Paragraph 10.3.2 below.  The Parties agree that they will work, to the extent possible and consistent with Rule 23 and the Ontario Class *Proceedings Act*, 1992 requirements.

**9.    Consideration**.

**9.1**    Claims Process.  Those Class Members who have suffered damages as a result of any Malfunction resulting from the Software Bug will be entitled to make claims through the ICA, as described in Paragraph 10.12 below, for compensation of documented and verifiable damages as specified in Paragraph 9.2 below.  The Claims Period shall be ninety (90) days.[1]

**9.2**    Compensation to Class Members.  Under the terms of this Settlement Agreement, Intuit shall make the following compensation available on a claims-made basis to the Class.

**9.2.1**    Reimbursements for Certain Data-Recovery Efforts (No Cap).  Intuit shall provide 100% reimbursement for the following properly documented and verifiable expenses

---

[1]    All references to days in this Settlement Agreement are to calendar days, unless otherwise noted.  Should the last day of any time period fall upon a weekend day or legal holiday, the period shall be extended to the following business day.

**EXECUTION COPY**

incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), directly related to the following efforts to recover inaccessible, damaged, corrupted, or lost data or files:

**9.2.1.1**    Data recovery software (*e.g.*, ProSoft Engineering's Data Rescue II software) including shipping, handling, and sales tax;

**9.2.1.2**    Third-party data-recovery expenses (*e.g.*, for the services of the Apple Genius Bar, DriveSavers, or other third-party data-recovery vendors); and

**9.2.1.3**    Hardware reasonably necessary for data recovery efforts (*e.g.*, external hard drives purchased for use with data recovery software) including shipping, handling, and sales tax.

**9.2.2**    Reimbursements for Data-Reconstruction and Other Data-Recovery Efforts (Soft Cap).  Intuit will reimburse Class Members for the following documented costs directly related to efforts to reconstruct or recover inaccessible, damaged, corrupted, or lost data or files, subject to an aggregate soft cap of five hundred thousand dollars ($500,000 USD) ("Soft-Cap Expenses"):

**9.2.2.1**    If incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), third-party data-reconstruction expenses (*e.g.*, data re-entry) capped at 20 hours at $75 USD per hour per Class Member; and

**9.2.2.2**    If incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members), in-house data reconstruction and data recovery expenses (*e.g.*, reimbursement for time Class Members' employees spent recovering and reconstructing lost data) capped at 20 hours at $75 USD per hour per Class Member.

**9.2.2.3**    If the total amount of Soft-Cap Expenses from all Class Members exceeds $500,000 USD, Intuit will have two options to exercise in its sole discretion within fifteen (15) business days of its receipt of the ICA's Final Report of Settlement Claims as provided by Paragraph 10.8.4 below:

**9.2.2.3.1**    Increase the amount of the Soft Cap to equal the amount of all claimed Soft-Cap Expenses; or

**9.2.2.3.2**    Instruct the ICA to calculate payments to all Class Members with any Soft-Cap Expenses on a pro-rata basis such that the $500,000 USD Soft Cap amount is not exceeded and then, in accordance with the procedure set forth in Paragraphs 10.6.5 and 10.9 below, offer each Class Member with any Soft-Cap Expenses the opportunity to opt out of the Class within thirty (30) days of being notified of the amount of their claim that would be paid under this pro-rata distribution.

**9.2.3**    Free Upgrade.  Intuit will provide a free upgrade to QuickBooks® Pro 2007 for Mac (retailing at approximately $199.95 USD) to all Class Members who have any damages claims under Paragraphs 9.2.1 or 9.2.2 above that are approved by the ICA.

**EXECUTION COPY**

**9.3** Termination Provision. If Intuit exercises its option under Paragraph 9.2.2.3.2 and an aggregate of one hundred (100) or more Class Members opt out of the settlement, this Settlement Agreement, at the option of Intuit, may be terminated. In the event Intuit exercises its option to terminate this Settlement Agreement, this Settlement Agreement shall be null and void, and shall have no further force or effect and shall be without prejudice to the rights and contentions as between the Parties. Intuit may exercise this option no later than 15 business days after its receipt from the ICA of an updated final report that includes the total amount of all Settlement Awards, and total number of opt outs. The ICA shall provide such updated report to the Parties no later than seven (7) days after the Exclusion Deadline as set forth in Paragraph 10.8.5.

**9.4** No Other Reimbursement. Other than as expressly set forth in Paragraph 9.2, above, Intuit will not reimburse any Class Member for any other claimed expenses, losses or damages.

**9.5** Crediting of Compensation Already Provided to Class Members. Intuit shall be credited with all compensation it has already transferred to Class Members in connection with the Malfunction. No later than seven (7) days before the commencement of the Claims Period, Intuit shall provide the ICA with information regarding all compensation it has provided to any users in connection with the Malfunction. This offset is not a global offset. Each Class Member's claim is to be offset against that Class Member's claim only.

**9.6** Incentive Awards to Class Representatives. Intuit agrees to pay up to five thousand dollars ($5,000 USD) to the Canadian Class Representative. The parties acknowledge that Judge Alsup in the U.S. Action has stated he will not approve incentive payments to U.S. Class Representatives. Any incentive award payment shall not come out of any funds made available by Intuit to the Class Members and shall be subject to review and approval by the Court in the Canadian Action upon motion by Class Counsel in the Canadian Action. Any incentive award approved by the Court in the Canadian Action shall be paid by Intuit within fourteen (14) days after the Effective Date and shall be sent by one check to Class Counsel in the Canadian Action, payable to "Harrison Pensa LLP in trust," who shall distribute the award to the Class Representative in the Canadian Action.

**9.7** Final Judgment and Dismissal With Prejudice. Plaintiffs agree to seek entry of final judgment and dismissal with prejudice in the U.S. Action and Canadian Action in connection with the final approval of the Settlement Agreement in the U.S. Action and the Canadian Action.

**9.8** Attorneys' Fees and Costs. Any agreement with respect to attorneys' fees and costs shall be discussed at a later time and shall not be considered with regard to the terms of settlement of this class. Any payment of attorneys' fees/costs will be additional to any amounts paid pursuant to the terms herein and shall be sought by Plaintiffs pursuant to a separately noticed motion that will be subject to review and approval by the respective courts in the U.S. Action and Canadian Action. Intuit acknowledges that Class Counsel is entitled to some payment of attorneys' fees/costs, but reserves the right to challenge the amount claimed. The Parties recognize that any payment of attorneys' fees/costs will be subject to court approval.

**EXECUTION COPY**

**9.9** Currency Conversion. For purposes of this Settlement Agreement, any foreign currency amounts shall be converted to U.S. dollars at the applicable exchange rate existing as of the close of business on the date that this Settlement Agreement is fully executed by the Parties for purposes of, *inter alia*, calculating reimbursements to Class Members and the total aggregate Soft Cap Expenses.

**10.     Preliminary Approval, Class Notice, and Implementation Schedule.**

**10.1**     As part of this Settlement Agreement, the Parties agree to the following procedures for obtaining preliminary approval of the Settlement Agreement from the courts in the U.S. Action and Canadian Action, certifying the proposed Class, notifying Class Members of the Settlement Agreement, obtaining final court approval of the Settlement Agreement in both the U.S. Action and Canadian Action, and processing the claims made for the Settlement Awards to Class Members.

**10.2**     U.S. Action:  Preliminary Approval and Certification.

**10.2.1**  Preliminary Approval.  As described in Paragraphs 1.10 and 1.11 above, Plaintiffs in the U.S. Action have already moved for preliminary approval of the August 22, 2008 Settlement Agreement which was heard by the Court on September 18, 2008.  Since then, the parties have agreed on a claims-made settlement with a release applying to only those who make claims.  On October 17, 2008 the parties informed the Court of the revised proposed settlement and that the parties would submit revised forms of the Settlement Agreement, class notices and Claim Form, and proposed order.  By November 6, 2008, or as soon as practicable thereafter, Class Counsel in the U.S. Action and/or Intuit will submit this Settlement Agreement, including revised proposed forms of notices as attached hereto and any other documents with the Court in the U.S. Action as is necessary to implement this Settlement Agreement.

**10.2.2**  Certification of Class; Appointment of Class Counsel and Class Representatives.  Solely for purposes of this Settlement Agreement, Class Counsel in the U.S. Action will request the court to enter a Preliminary Approval Order substantially in the form of Exhibit F hereto, preliminarily approving the proposed Settlement Agreement, certifying the Class for settlement purposes only, appointing Class Counsel and the Class Representatives in the U.S. Action and setting a date for a final approval hearing ("Fairness Hearing") at which time the Court may finally approve the Settlement Agreement.  The Preliminary Approval Order shall provide for Class Notice of the Settlement Agreement and related matters to be sent to the Class as specified herein.

**10.3**     Canadian Action:  Case Management Meeting, Canadian Notice, Approval Hearing and Certification.

**10.3.1**  As soon as practicable after the revised settlement papers have been filed in the U.S. Action, Plaintiff in the Canadian Action and Intuit shall jointly request a case management meeting in the Canadian Action ("Canadian Case Management Meeting") to submit the proposed Settlement Agreement, certify the Canadian Action as a class action contingent on settlement approval, seek approval of the form of the Canadian Notice, and set the date for the Canadian settlement approval hearing ("Canadian Settlement Approval Hearing").

**EXECUTION COPY**

**10.3.2** The Canadian Notice shall be sent after the Court in the Canadian Action's Order approving the Canadian Notice and three (3) days following preliminary approval of the proposed Settlement Agreement in the U.S. Action ("Canadian Notice Date"). The Canadian Notice, which shall be in English and in French, shall include information regarding the Canadian Settlement Approval Hearing, and provide a sixty (60) day notice of settlement approval period ("Canadian Notice Period"). A copy of the form of Canadian Notice is attached hereto as Exhibit A. The Canadian Notice shall be sent by the ICA via email and first class mail (to the extent such information is available in Intuit's records) to any registered user of the Software and any user identified in the QuickBase database as having been potentially affected by the Malfunction whom Intuit can identify as having a Canadian residence, including a Canadian email (.ca) address and/or Canadian mailing address.

**10.3.3** The Canadian Settlement Approval Hearing shall take place sixty (60) days after the Canadian Notice Date, or as soon as thereafter as may be ordered by the Canadian Court. At the Canadian Settlement Approval Hearing, the Canadian Court shall consider the fairness of the settlement terms and procedure (including the Class Notice, Canadian Approval Notice and Claim Form), and hear any objections from Canadian Class Members of the public, and determine any Canadian Class Counsel fee. In conjunction with this hearing, Class Counsel in the Canadian Action and/or Intuit will submit this Settlement Agreement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

**10.4** Coordination of U.S. Action and Canadian Action. The Parties agree that they will cooperate and use best efforts to coordinate the preliminary and final approval of the U.S. Action and the Canadian Action as permitted by under applicable U.S. and Canadian law.

**10.5** Independent Claims Administrator.

**10.5.1** The parties have jointly selected and engaged the services of a third party Independent Claims Administrator, the Garden City Group (the "ICA"). Intuit shall pay the costs of the ICA. The ICA shall be responsible for:

**10.5.1.1** preparing and sending the Canadian Notice and Class Notice, attached hereto as Exhibits A and D and providing access to the Canadian Approval Notice, Claim Form and Full U.S. Notice, attached hereto as Exhibits B, C and E, as well as a copy of the Settlement Agreement and related court filings, to the Class Members;

**10.5.1.2** receiving, and reviewing the Claim Form and accompanying documentation submitted by potential Class Members to determine eligibility for payment and the amount of any such payment (including crediting Intuit with compensation already provided to the Class Member, if any);

**10.5.1.3** keeping records of the total amounts in claims received by Class Members, including the total amounts claimed against the Soft Cap of Paragraph 9.2.2, and making submitted records and documentation available to Intuit for inspection and review;

**10.5.1.4** carrying out its obligations set forth in Paragraph 10.8 below;

**EXECUTION COPY**

**10.5.1.5**  preparing and communicating the Exclusion Notice (if any) as set forth in Paragraphs 10.6.5 and 10.9.1 to Class Members in the event that Intuit chooses to exercise its rights under Paragraph 9.2.2.3.2, keeping records of those who opt out of the Settlement Agreement pursuant thereto and providing any updated report of the final total of all claims as set forth in Paragraph 9.3;

**10.5.1.6**  communicating with Class Members their respective Settlement Awards and distributing the same;

**10.5.1.7**  maintaining and providing support for a toll-free number and QuickBooks® 2006 for Mac settlement website (www.2006QBforMacSettlement.com) for Class Members consistent with the terms of this Settlement Agreement; and

**10.5.1.8**  such other tasks as the Parties mutually agree that the ICA should perform.

**10.5.2**  Any claim or demand by Class Members against the ICA arising out of, or in connection with, its performance of these responsibilities shall be limited to seeking, as the sole and exclusive remedy, the specific performance of these responsibilities.

**10.6**  Notices.

**10.6.1**  Intuit's Delivery of Information to ICA.  No later than fourteen (14) days before the Canadian Notice Date, Intuit shall provide the ICA the contact information of all registered users of the Software and users identified in the QuickBase database as having been potentially affected by the Malfunction, including identifying which of those users are to receive the Canadian Notice.

**10.6.2**  Canadian Notice.  In accordance with the terms set forth in Paragraph 10.3.2 above, the ICA shall send a copy of the Canadian Notice attached hereto as Exhibit A.

**10.6.3**  Class Notice.

**10.6.3.1**  Within seven (7) days following the entry of order in the U.S. Action granting preliminary approval of the Settlement Agreement and the entry of order in the Canadian Action approving the Settlement Agreement, the ICA shall distribute the Class Notice attached hereto as Exhibit D to all registered users of the Software and all users identified in the QuickBase database as having been potentially affected by the Malfunction (including those in Canada) by email and first class mail (to the extent such email and mailing addresses are available in Intuit's records). Any Class Notice returned by mail to the ICA as non-deliverable before the end of the Claims Period shall be sent to the forwarding address described therein, if any.  The Class Notice shall include information in English and French for Canadian  users regarding the Canadian Action, and information in English for all users other than Canadian users regarding the U.S. Action.  The date on which the Class Notice is sent as described herein shall be referred to as the "Class Notice Date."

**10.6.4**  The Parties hereby recognize and acknowledge that all notices are being broadly disseminated to all registered users of the Software and all users identified in the

16

QuickBase database as having been potentially affected by the Malfunction by email and first class mail although it is anticipated that only a small percentage of the recipients of the notices would actually constitute Class Members (*i.e.*, that small percentage of users who were affected by the Malfunction and Software Bug and timely submit a valid Claim Form).

**10.6.5** Exclusion Notice. In the event that Intuit elects to exercise its rights under Paragraph 9.2.2.3.2, Class Members with any Soft-Cap Expenses shall receive a notice from the ICA that will inform them of their respective pro rata reduction of any approved Soft-Cap Expenses and provide them another opportunity to exclude themselves from the Class ("Exclusion Notice") as set forth in Paragraph 10.9 below.

**10.7** Procedure for Objection.

**10.7.1** U.S. Action:

**10.7.1.1** Procedure for Objecting to the Settlement Agreement. Only Non-Canadian Class Members may object to the Settlement Agreement in the U.S. Action. Non-Canadian Class Members who wish to object to the Settlement Agreement may file in the U.S. Action and serve counsel for the Parties in the U.S. Action a written statement objecting to the Settlement Agreement. Such written statement should be filed with the Court in the U.S. Action and be served on counsel for the Parties in the U.S. Action at the addresses specified in the Full U.S. Notice (Exhibit E) no later than fourteen (14) days prior to the Fairness Hearing. Non-Canadian Class Member may also be heard at the Fairness Hearing (whether individually or through separate counsel) to object to the Settlement Agreement whether or not a written statement has been filed. If the Class Member's objection is overruled, that Class Member shall be provided an opportunity to opt out of the Class within fourteen (14) days of the date the objection is overruled.

**10.7.2** Canadian Action:

**10.7.2.1** Procedure to Objecting to the Terms of Settlement. Only Canadian Class Members may object to the Settlement Agreement in the Canadian Action. Canadian Class Members who wish to object to the terms of settlement must deliver to Class Counsel in the Canadian Action a written statement objecting to the terms of settlement within 45 days after the sending of the Canadian Notice. The objection shall contain the full name, current address, telephone number and e-mail address of the objector. Class Counsel in the Canadian Action shall file all such objections with the Court and provide copies of all such objections to Intuit and Intuit Canada's counsel. Canadian Class Members may appear and make submissions at the settlement approval hearing provided they have timely filed a notice of objection to Class Counsel in the Canadian Action. The date of the post mark on the mailing envelope shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted. In the event that the post mark is illegible, the objection and/or intention to appear shall be deemed untimely unless it is received within five (5) calendar days of the objection deadline. Canadian Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

**EXECUTION COPY**

**10.8** ICA Report of Claims and Dispute Resolution Process.

**10.8.1** Within seven (7) days after the end of the Claims Period, the ICA shall provide a report of submitted claims to the Parties, including the total amount of Soft Cap Expenses (the "Initial Report of Settlement Claims").

**10.8.2** Within seven (7) days after receipt of the ICA's Initial Report of Settlement Claims, Intuit shall send the ICA and Class Counsel any written objections to any claims it believes are improperly classified or documented ("Disputed Settlement Claims"). The Parties shall promptly thereafter meet and confer in good faith to attempt to resolve these Disputed Settlement Claims.

**10.8.3** If the Parties are unable to resolve the Disputed Settlement Claims through the meet and confer process, within seven (7) days after receipt of any Intuit's written objections, the Parties shall submit brief written statements to the ICA regarding the Disputed Settlement Claims.

**10.8.4** Within seven (7) days thereafter, the ICA shall make a final binding determination on any Disputed Settlement Claims and issue a final report to the Parties reflecting the total amount of all claims, including the total amount of Soft Cap Expenses ("Final Report of Settlement Claims"). Any Party in the U.S. Action may appeal the ICA's determination of a Disputed Settlement Claim of a Non-Canadian Class Member to the Hon. William Alsup of the United States District Court for the Northern District of California. Any Party in the Canadian Action may appeal the ICA's determination of a Disputed Settlement Claim of a Canadian Class Member to the designated Case Management Justice of the Ontario Superior Court of Justice.

**10.8.5** If applicable, Intuit shall have fifteen (15) business days to choose whether to exercise its available options under Paragraph 9.2.2.3. If Intuit chooses to exercise its right under Paragraph 9.2.2.3.2, the ICA shall provide an updated Final Report of Settlement Claims that includes the total number of opt-outs, no later than seven (7) days after the Exclusion Deadline.

**10.9** Pro Rata Reduction of Soft Cap Expenses.

**10.9.1** If the Soft Cap Expenses exceed $500,000 USD and Intuit chooses to exercise its rights under Paragraph 9.2.2.3.2 to offer Class Members a pro rata payment, the ICA shall send the Exclusion Notice to Class Members with Soft Cap Expenses that expressly includes the amount the Class Member will receive under the pro rata calculation. This Exclusion Notice shall be sent to these Class Members (including any in Canada) at the email address and mailing address provided by the Class Member on its Claim Form) within seven (7) days of Intuit's written notice that it is exercising its rights under Paragraph 9.2.2.3.2. The date on which the Exclusion Notice is sent shall be the "Exclusion Notice Date." Those Class Members with Soft Cap Expenses who wish to exclude themselves from the Class pursuant to this Exclusion Notice must submit a written statement requesting exclusion from the Class. Such written request for exclusion must contain the name, address, telephone number, of the Class Member requesting exclusion, and must be returned by certified mail to the address specified in the Exclusion Notice (Exhibit G) and must be postmarked no later than thirty (30) days after the

**EXECUTION COPY**

Exclusion Notice Date (the "Exclusion Deadline"). The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. In the event that the postmark is illegible, the request for exclusion shall be deemed untimely unless it is received within five (5) calendar days of the Exclusion Deadline. Any Class Member who properly opts out of the Class using this procedure will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Any Class Member who fails to submit a valid and timely request for exclusion on or before the Exclusion Deadline shall remain a Class Member and be bound by all terms of the Settlement Agreement and Final Judgment entered in the Actions.

**10.10**    No Solicitation of Settlement Objections or Exclusions. The Parties agree to use their best efforts to carry out the terms of this Settlement Agreement. At no time shall any of the Parties or their respective counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement Agreement, request exclusion from the Class, or appeal from either Court's Final Judgment.

**10.11**    Fairness Hearing and Entry of Final Judgments.

**10.11.1**    <u>U.S. Action</u>.

**10.11.1.1**    No earlier than fifteen (15) business days after the ICA issues its Final Report of Settlement Claims (or, no earlier than fifteen (15) business days after Intuit receives the updated report from the ICA after the Exclusion Deadline if Intuit exercises its right under Paragraph 9.2.2.3.2), with the U.S. Court's approval, a Fairness Hearing shall be conducted in the U.S. Action to determine final approval of the Settlement Agreement.

**10.11.1.2**    Within fourteen (14) days of the entry of an order finally approving the Settlement Agreement by the Court in the U.S. Action, Plaintiffs shall submit a Final Judgment and Order of Dismissal with Prejudice ("Final Judgment in the U.S. Action") to the Court for its approval and entry.

**10.11.2**    <u>Canadian Action</u>.

**10.11.2.1**    A Settlement Approval Hearing shall occur within 60 days after the Canadian Notice is sent or as soon thereafter as can be arranged. The deadline for objections to the settlement will be 45 days after the Canadian Notice is sent. The Settlement Approval Hearing shall be conducted in the Canadian Action to determine final approval of the Settlement Agreement.

Within fourteen (14) days of the entry of an order finally approving the Settlement Agreement by the Court in the Canadian Action, the Plaintiff in the Canadian Action shall submit a final judgment and order of dismissal with prejudice ("Final Judgment in the Canadian Action") to the Court for its approval and entry.

**EXECUTION COPY**

**10.12**   Procedure for Payment of Settlement Awards.

**10.12.1**   All Class Members who have submitted a timely and valid Claim Form demonstrating their right to a Settlement Award will receive a Settlement Award from Intuit. Class Members must submit the Claim Form and all accompanying documentation by first class mail or the Canadian equivalent thereof, or other method permitted by the ICA, according to the instructions set forth in the notices and Claim Form.

**10.12.2**   To be timely, the Class Member must complete the Claim Form and submit all requested documentation in accordance with the instructions set forth in the notices and Claim Form within the ninety (90) day period commencing with the Class Notice Date (the "Claim Period"). The date post-marked on the mailing envelope shall be the exclusive means used to determine whether a Class Member has timely submitted his/her Claim Form during the Claim Period. Claim Forms that are not timely shall be disregarded.

**10.12.3**   Claim Forms must also be valid for a Class Member to receive a Settlement Award. For purposes of this Agreement, a Claim Form shall be deemed valid only if the Class Member has filled out the required portions of the Claim Form in their entirety, dated the Claim Form, submitted supporting documentation (if applicable), and executed the Claim Form under the penalty of perjury.

**10.12.4**   In determining whether the desktop data deletion was caused by the Malfunction, the ICA shall follow the following guidelines: The cause of the desktop data deletion shall be presumed to be from the Malfunction if the Class Member submits a valid Claim Form asserting desktop data deletion one of two ways: from (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use. The claimant shall bear the burden of proof to show the Malfunction caused the desktop data deletion in any other manner. If the ICA determines that the Malfunction did not cause the damage to the claimant under the definition of the Class, the claimant shall be excluded from the Class and the release shall not bind that claimant.

**10.12.5**   If any claim is rejected as invalid or incomplete, the ICA shall mail or e-mail the originals or copies of Claim Forms rejected as invalid or incomplete, or a written notice of additional information required for the Claim Form to be valid ("Cure Notice"), directly to the Class Member who submitted the Claim Form, and send a copy to Class Counsel. Class Members shall have a 30-day period to cure defective or incomplete claims, which shall run from the date of mailing or e-mailing of the original or copy of the Claim Form or Cure Notice to the Class Member. The 30-day cure period may extend after the end of the Claims Period so long as the original Claim Form was timely submitted. Class Members shall have one opportunity to cure. If Class Counsel believe that additional cure opportunities are appropriate in any particular instance, counsel for the Parties shall meet and confer; if counsel are unable to agree as to the appropriateness of the additional cure right, the issue shall be resolved by the ICA. Claims of Class Members who fail to cure shall be rejected and they will be excluded from the Class.

**EXECUTION COPY**

**10.12.6**    As set forth in greater detail in Paragraph 10.8 above, Intuit shall have an opportunity to review all Claim Forms submitted and provide written objections to any claims it believes are improperly classified or documented.  Intuit and Class Counsel will then meet and confer in good faith to attempt to resolve the dispute.  If they cannot informally and promptly resolve the dispute, the ICA will make a final, binding determination after reviewing brief written statements from each side.  If any portion of the Claim Form is denied, the ICA will send a Notice of Denied Claim to any Class Member who submits a Claim Form that was not timely, not valid, and/or did not demonstrate entitlement to a Settlement Award, stating the reason(s) the claim (or what portion thereof) was denied.  This determination shall be binding and final on the Class Member.  .

**10.12.7**    Transfer of Settlement Awards to ICA for Class Members.  Within thirty (30) days of the Effective Date, Intuit shall transfer funds and software to the ICA sufficient to cover the Settlement Awards.  Any checks made payable to Class Members shall remain valid from one-hundred twenty (120) days of their issuance and may thereafter be void if not deposited or otherwise cashed by a Class Member within that time.  The ICA shall send a Notice of Accepted Claim form to Class Members, stating the amount of their Settlement Award and the conditions for the Settlement Award.

**10.12.8**    Reversion of Unclaimed Settlement Awards to Intuit.  Any unclaimed funds or software held by the ICA as a result of, *e.g.*, void or undeliverable Settlement Award checks or undeliverable software boxes, shall revert or otherwise be returned to Intuit from the ICA.

**11.**    Administration Costs.

**11.1**    The Parties agree to cooperate in the administration process for this Settlement Agreement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement Agreement.  Intuit shall pay the costs of the ICA.

**12.**    Nullification of Settlement Agreement.

**12.1**    In the event:  (a) the U.S. Court does not enter the Preliminary Approval Order attached hereto as Exhibit H, or one that is materially the same; (b) the Canadian Court does not enter order preliminarily approving the Settlement Agreement; (c) the U.S. or the Canadian Court does not finally approve the Settlement Agreement as provided herein; (d) the U.S. Court and Canadian Court do not both enter Final Judgment as provided herein; or (e) Intuit chooses to exercise its right under Paragraph 9.3 and gives written notice to Class Counsel and the U.S. and Canadian Court that it is terminating this Settlement Agreement for that reason, this Settlement Agreement shall be null and void and any order or judgment entered by either Court in furtherance of this Settlement Agreement shall be treated as withdrawn by stipulation of the Parties.  In such a case, the Parties shall be returned to their respective statuses as of July 25, 2008, and the Parties shall proceed in all respects as if this Settlement Agreement, the August 22, 2008 Settlement Agreement and July 25, 2008 Settlement Stipulation, had not been executed.  In the event an appeal is filed from either Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement Agreement shall be stayed pending final resolution of the appeal or other appellate review.  No person shall have or assert

**EXECUTION COPY**

any claim against Intuit, Intuit's counsel, Class Representatives, or Class Counsel in connection with the performance of this Settlement Agreement except to seek the specific performance of this Settlement Agreement.

**13.** Effective Date.

**13.1** The Effective Date shall refer to the date by which this Settlement Agreement is finally approved by the U.S. and Canadian Courts as provided herein and both the U.S. and Canadian Courts' Final Judgments become final. For purposes of this paragraph, a Court's Final Judgment "becomes final" the first business day on which (a) the Final Judgment and order thereon has been entered and is in effect, having been neither withdrawn, rescinded, vacated, reversed, nor substantially modified on appeal, and is no longer subject to any appellate review, including rehearing or reargument or review *en banc* or on *certiorari*; and (b) Intuit is not entitled to terminate the Settlement Agreement pursuant to 9.3.

**14.** Release of Claims.

**14.1** Upon final approval of the terms of this Settlement Agreement by both the United States District Court for the Northern District of California and the Ontario Superior Court of Justice, the Class Members, on behalf of themselves, their descendants, ancestors, dependents, heirs, executors, and administrators, and on behalf of all of their predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, past and present employees, officers, directors, attorneys, and all of their insurers and sureties, jointly and severally, fully and forever release Intuit (including Intuit Canada Ltd.), and its predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, and each of their respective current and former officers, directors, agents, employees, shareholders, partners, joint venturers, insurers, and attorneys, of and from any claim, duty, obligation, or cause of action, whether presently known or unknown, suspected or unsuspected, whether raised by claim, counterclaim, setoff or otherwise, that any of them may possess, relating to any and all claims that were alleged in the U.S. Action or the Canadian Action, or otherwise relating to the Malfunction ("Released Claims").

**14.2** This release does not extend to any rights or obligations incurred under the Settlement Agreement.

**14.3** This release does not extend to any claim arising solely from Intuit's disablement of the Software's auto-update mechanism.

**14.4** Waiver of California Civil Code Section 1542. Upon final approval of the terms of this Settlement Agreement by both the United States District Court for the Northern District of California and the Ontario Superior Court of Justice, Class Members shall be deemed to each expressly assume the risk that, by entering into this Settlement Agreement and the releases contained herein, each will forever waive claims for damages relating to the Released Claims that he or she or it does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the party's decision to enter into this Settlement Agreement. In that regard, the Class Members expressly waive the protections and provisions of California Civil Code Section 1542, which provides that:

**EXECUTION COPY**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**14.5** The Parties recognize, acknowledge, understand, and assume the risk and possibility that any and all facts or rules of law that have or might have induced the Parties to enter into and execute this Settlement Agreement may in fact and/or in law be different from the Parties' present, past or future understanding and interpretation of the facts and/or law. The Parties nonetheless agree that this Settlement Agreement and the releases contained in it shall remain firm, valid, binding and in full force and effect as a release notwithstanding any misunderstanding or misinterpretation of fact and/or law.

**14.6** Nothing in this Settlement Agreement shall impact the Software License Agreement (or any other agreement) between Intuit and any Software user, which shall remain in full force and effect.

## 15. Interim Stay of Proceedings.

**15.1** Subject to the approval of the respective Courts, all proceedings in the U.S. Action and Canadian Action shall be stayed, except as to those matters necessary to consummate this Settlement Agreement, until the Effective Date of the Settlement or unless the Settlement Agreement is terminated pursuant to its terms.

## 16. Cooperation in Obtaining Court Approvals.

**16.1** The Parties shall cooperate and present to the U.S Court and Canadian Court, for their consideration in connection with the approval of this Settlement Agreement, any and all evidence as may be requested by either Court under the appropriate standards for approving the settlement of the Class claims.

## 17. No Prior Assignment.

**17.1** The Parties represent that they have not previously assigned or conveyed to any third person (including by operation of law) any right, claim or cause of action that is the subject of this Settlement Agreement (including Plaintiffs' releases contained herein), and that they have the full and complete authority to enter into this Settlement Agreement. To the extent that any third person's consent is necessary for any of the Parties hereto to enter into this Settlement Agreement and to make it binding on all Parties hereto, each Party represents that it has acquired such third person's consent to the same.

## 18. No Admission of Liability.

**18.1** The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims relating to the Actions. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement shall be deemed or construed to be an admission of

the truth or falsity of any claims heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

## 19.  **Amendment**.

**19.1**   This Settlement Agreement may be amended only by an instrument in writing signed by all Parties which refers to this Settlement Agreement and specifically states that it is intended to amend this Settlement Agreement.  Amendments and modifications may be made without additional notice to Class Members unless notice is required by the Court.

## 20.  **Construction.**

**20.1**   This Settlement Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any party.  Neither the entire Settlement Agreement nor any provision in it shall be deemed to have been proposed or drafted by any party, or construed against any party.

**20.2**   Captions are used for reference purposes only and should be ignored in the interpretation of the Settlement Agreement.

**20.3**   All Parties agree that this Settlement Agreement was drafted by counsel for the Parties at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

## 21.  **The Canadian Action – Language.**

**21.1**   The Parties acknowledge that they have required and consented that this Settlement Agreement and all related documents be prepared in English, except for Schedules "A" and "B" which are prepared in French.  Les Parties reconnaissent avoir exigé que la présente convention et tous les documents connexes soient rédigés en anglais sauf en ce qui a trait aux annexes "A" et "B" qui ont été rédigées en français.

## 22.  **Integrated Agreement.**

**22.1**   This Settlement Agreement, including all exhibits hereto, contains the entire understanding and agreement of the Parties with respect to the subject matter of this Settlement Agreement and supersedes and completely extinguishes all prior and contemporaneous agreements, understandings, representations, communications, negotiations, and discussions of the parties, whether oral or written, express or implied, relating to its contents. There are no agreements, understandings, restrictions, representations or warranties other than those set forth in this Settlement Agreement.

## 23.  **Execution.**

**23.1**   This Settlement Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the parties hereto, with the full intent of releasing all claims as defined in Paragraph 14 herein.

24

**23.2**     The Parties represent that they have had the benefit of independent legal advice of counsel of their own choice in the negotiating, drafting, and execution of this Settlement Agreement.

**23.3**     The Parties acknowledge that they have read the Settlement Agreement, that they have been represented by attorneys who have explained each of the provisions of the Settlement Agreement and its legal effect, that they have read and understand the Settlement Agreement and are fully aware of its legal and binding effect, that the Agreement contains all of the promises which they have made, and that they are entering into this Settlement Agreement freely and not on the basis of promises which are not stated in this Settlement Agreement.

**23.4**     This Settlement Agreement shall be deemed to have been executed upon the last date of execution by all the Parties.

**23.5**     This Settlement Agreement may be executed in any number of actual or copied counterparts and by counsel for the Parties in separate counterparts, each of which when so executed and delivered shall be an original.  The executed signature pages from each actual or copied counterpart may be joined together and attached to one such original, which shall constitute one and the same instrument.

## 24.     Additional Documents.

**24.1**     The Parties to this Settlement Agreement agree that they will execute and provide, at the request of any other party, any and all such other documents or other written instruments as may be reasonably necessary to effectuate the purposes of this Settlement Agreement.

## 25.     Governing Law.

**25.1**     This Settlement Agreement shall be subject to, governed by, construed and enforced in accordance with the law of the State of California in respect of the U.S. action without giving effect to the conflict of law principles thereof and in accordance with the laws of the Province of Ontario in respect of the Canadian Action.

## 26.     Successors.

**26.1**     This Settlement Agreement shall be binding on, and inure to the benefit of, the successors and assigns of the parties hereto.

## 27.     Enforcement.

**27.1**     U.S. Action.

**27.1.1**  Judge William H. Alsup in the U.S. Action shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement, and all orders and judgments entered in connection therewith, with respect to all Non-Canadian Class Members.  The Parties in the U.S. Action and their respective counsel hereto submit to the jurisdiction of the United States District Court for the Northern District of California for purposes of interpreting, implementing and enforcing this Settlement Agreement,

**EXECUTION COPY**

the settlement embodied in this Settlement Agreement, and all orders and judgments entered in connection therewith.

**27.2**     Canadian Action.

    **27.2.1**  The class action judge designated in the province of Ontario in the Canadian Action shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement, and all orders and judgments entered in connection therewith, with respect to all Canadian Class Members. The Parties in the Canadian Action and their respective counsel hereto submit to the jurisdiction of the Ontario Superior Court of Justice for purposes of interpreting, implementing and enforcing this Settlement Agreement, the settlement embodied in this Settlement Agreement, and all orders and judgments entered in connection therewith.

**28.**     **No Press Comunication.**

    **28.1**     Intuit, the Class Representative and their counsel agree that they will not issue any press releases or initiate any contact with the press about this case and/or the fact, amount or term of the Settlement, provided, however, this shall not limit Defendants with respect to any financial or SEC disclosures which in its judgment are necessary. Any communication about the settlement to prior to Class Notice will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved notice.

**29.**     **Miscellaneous Provisions.**

    **29.1**     Each of the Class Representatives represents and certifies (a) that he or she has agreed to serve as a representative of the Class proposed to be certified herein; (b) that he or she is willing, able and ready to perform all of the duties and obligations of a representative of the Class; (c) that he or she has either read the complaints in the Actions and this Settlement Agreement, including the Exhibits annexed thereto, or has received a description of them from Class Counsel, and that he or she has agreed to the terms of the Settlement Agreement; (d) that he or she has consulted with Class Counsel about the Actions, this Settlement Agreement, and the obligations of a representative of the Class; (e) that he or she has authorized Class Counsel to execute this Settlement Agreement on his or her behalf; and (f) that he or she will remain and serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or either Court at any time determines that said Plaintiff cannot represent the Class.

    **29.2**     Each of the undersigned counsel represents that he or she is fully authorized to enter into and to execute this Settlement Agreement, for and on behalf of the client or clients that he or she represents, as reflected on the signatures pages attached hereto.

    **29.3**     The Parties may agree, subject to approval of either Court where required, to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

[remainder left blank]

**EXECUTION COPY**

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: December ___, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: December ___, 2008

By: _____
Juan Loredo
President
AGSJ, Inc.

Dated: December ___, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: December ___, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: December ___, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: December ___, 2008

By: _____
Alexander M. Lintner
Senior Vice President, Strategy &
Corporate Development
Intuit Inc.

27

**EXECUTION COPY**

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: December __, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: December 4, 2008

By: _____
Juan Toredo
President
AGS, Inc.

Dated: December __, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: December __, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: December __, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: December __, 2008

By: _____
Alexander M. Lintner
Senior Vice President, Strategy &
Corporate Development
Intuit Inc.

27

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: December ___, 2008

By:_____
  Arthur Messina
  President
  Create-A-Card, Inc.

Dated: December ___, 2008

By:_____
  Juan Loredo
  President
  AGSJ, Inc.

Dated: December 2, 2008

By:_____
  Philip Flynn
  Founder
  Philanthropic Focus LLC

Dated: December ___, 2008

By:_____
  Ron Smith
  President
  Ronald Smith & Associates Inc.

Dated: December ___, 2008

By:_____
  Jean-Paul Guilbault
  Vice President, Small Business Group,
  Technical Support & Service
  Intuit Inc.

Dated: December ___, 2008

By:_____
  Alexander M. Lintner
  Senior Vice President, Strategy &
  Corporate Development
  Intuit Inc.

**EXECUTION COPY**

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: December __, 2008

By:_____
    Arthur Messina
    President
    Create-A-Card, Inc.

Dated: December __, 2008

By:_____
    Juan Loredo
    President
    AGSJ, Inc.

Dated: December __, 2008

By:_____
    Philip Flynn
    Founder
    Philanthropic Focus LLC

Dated: December 17, 2008

By:_____
    Ron Smith
    President
    Ronald Smith & Associates Inc.

Dated: December __, 2008

By:_____
    Jean-Paul Guilbault
    Vice President, Small Business Group,
    Technical Support & Service
    Intuit Inc.

Dated: December __, 2008

By:_____
    Alexander M. Lintner
    President & CEO
    Intuit Canada Ltd.

EXECUTION COPY

**BY SIGNING BELOW, THE UNDERSIGNED PARTIES AGREE AND ACKNOWLEDGE THEY HAVE READ AND UNDERSTAND THE BINDING NATURE OF THIS SETTLEMENT AGREEMENT, THAT THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSULT, AND HAVE CONSULTED WITH, COUNSEL OF THEIR CHOICE, AND THAT IT REPRESENTS A FINAL AND BINDING SETTLEMENT ACCORDING TO ITS TERMS AND THAT THEY ARE ENTERING INTO THE SETTLEMENT AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the undersigned parties execute this Agreement as of the date written below through their duly authorized representatives as set forth below.

Dated: December ___, 2008

By: _____
Arthur Messina
President
Create-A-Card, Inc.

Dated: December ___, 2008

By: _____
Juan Loredo
President
AGSJ, Inc.

Dated: December ___, 2008

By: _____
Philip Flynn
Founder
Philanthropic Focus LLC

Dated: December ___, 2008

By: _____
Ron Smith
President
Ronald Smith & Associates Inc.

Dated: December 23, 2008

By: _____
Jean-Paul Guilbault
Vice President, Small Business Group,
Technical Support & Service
Intuit Inc.

Dated: December 17, 2008

By: _____
Alexander M. Lintner
President & CEO
Intuit Canada Ltd.

27

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: December 18, 2008

MOSCONE, EMBLIDGE & QUADRA, LLP

By: _____
                    James A. Quadra

Dated: December ___, 2008

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By: _____
                    Jonathan D. Selbin

Dated: December ___, 2008

HARRISON PENSA

By: _____
                    Jonathan J. Foreman

Dated: December __, 2008

FENWICK & WEST LLP

By: _____
                    Rodger R. Cole

Dated: December 14, 2008

FASKEN MARTINEAU DUMOULIN LLP

By: _____
                    Annie M.K. Finn

EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Preliminary Approval Order – U.S. Action
Exhibit G:    Exclusion Notice

28

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: December __, 2008     MOSCONE, EMBLIDGE & QUADRA, LLP

                By:_____
                    James A. Quadra

Dated: December 17, 2008     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                By:_____ FOR
                    Jonathan D. Selbin

Dated: December __, 2008     HARRISON PENSA

                By:_____
                    Jonathan J. Foreman

Dated: December __, 2008     FENWICK & WEST LLP

                By:_____
                    Rodger R. Cole

Dated: December __, 2008     FASKEN MARTINEAU DUMOULIN LLP

                By:_____
                    Annie M.K. Finn

EXHIBITS

Exhibit A:  Canadian Notice
Exhibit B:  Canadian Approval Notice
Exhibit C:  Claim Form
Exhibit D:  Class Notice
Exhibit E:  Full U.S. Notice
Exhibit F:  Preliminary Approval Order – U.S. Action
Exhibit G:  Exclusion Notice

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: December __, 2008        MOSCONE, EMBLIDGE & QUADRA, LLP

By:_____
             James A. Quadra

Dated: December __, 2008        LIEFF, CABRASER, HEIMANN &
                                   BERNSTEIN, LLP

By:_____
             Jonathan D. Selbin

Dated: December 17, 2008        HARRISON PENSA

By:_____
             Jonathan J. Foreman

Dated: December __, 2008        FENWICK & WEST LLP

By:_____
             Rodger R. Cole

Dated: December __, 2008        FASKEN MARTINEAU DUMOULIN LLP

By:_____
             Annie M.K. Finn

EXHIBITS

Exhibit A:    Canadian Notice
Exhibit B:    Canadian Approval Notice
Exhibit C:    Claim Form
Exhibit D:    Class Notice
Exhibit E:    Full U.S. Notice
Exhibit F:    Preliminary Approval Order – U.S. Action
Exhibit G:    Exclusion Notice

**EXECUTION COPY**

APPROVED BY COUNSEL.

Dated: December ___, 2008       MOSCONE, EMBLIDGE & QUADRA, LLP

By:_____
           James A. Quadra

Dated: December ___, 2008       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:_____
           Jonathan D. Selbin

Dated: December ___, 2008       HARRISON PENSA

By:_____
           Jonathan J. Foreman

Dated: December 14, 2008       FENWICK & WEST LLP

By:_____
           Rodger R. Cole

Dated: December 15, 2008       FASKEN MARTINEAU DUMOULIN LLP

By:_____
           Annie M.K. Finn

EXHIBITS

Exhibit A:     Canadian Notice
Exhibit B:     Canadian Approval Notice
Exhibit C:     Claim Form
Exhibit D:     Class Notice
Exhibit E:     Full U.S. Notice
Exhibit F:     Preliminary Approval Order – U.S. Action
Exhibit G:     Exclusion Notice

**EXECUTION COPY**

**EXHIBIT A**

# ONTARIO SUPERIOR COURT OF JUSTICE

# NOTICE OF CERTIFICATION AND SETTLEMENT APPROVAL HEARING

## TO USERS OF QUICKBOOKS® PRO 2006 FOR MAC
## OR QUICKBOOKS® NEW USER EDITION 2006 FOR MAC IN CANADA

PLEASE READ THIS NOTICE CAREFULLY.  IT MAY AFFECT YOUR LEGAL RIGHTS.

**Notice**

This notice is directed to all users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac (the "Software") in Canada whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism.

A class action lawsuit has been initiated in Ontario against Intuit Canada and Intuit Inc. ("Defendants"), in which it is alleged that Defendants caused the deletion of Software users' Mac desktop data and resulting damages.  A similar class action has also been filed in the United States District Court for the Northern District of California against Intuit Inc.

An agreement (the "Settlement" or "Settlement Agreement") has been reached in both the Canadian and U.S. actions between the Plaintiffs (the individuals who brought the lawsuits) and Defendants. In order for the Settlement Agreement to become effective, it must be approved by the Ontario Superior Court of Justice and the United States District Court for the Northern District of California.

The lawsuits concern an alleged malfunction with the Software's auto-update mechanism that may have caused certain users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently.  As currently known to the parties and their counsel, you may have experienced desktop data deletion one of two ways:  you (1) accessed the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessed the Software before 10:00 a.m. (PST) on January 3, 2008, through a publicly available wireless network that requires payment for use.

Defendants deny any wrongdoing or liability in the lawsuit as they have already provided compensation to certain users for their data recovery expenses, believe the malfunction cannot recur as they have ensured disablement of the Software's auto-update mechanism, notified certain users of the issue, and instituted internal safeguards.  By agreeing to the proposed settlement described in this Notice, Defendants are not admitting the merits of the claims in the lawsuits and continue to deny any wrongdoing.

Intuit has publicly indicated its willingness to make compensatory payments to all of its users, including those in Canada, whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently as a result of an error in the Software's auto-update mechanism ("Class Members").

On **[insert date ]** the Honourable Justice **[insert name of Designated Canadian Judge]** of the Ontario Superior Court of Justice certified this action as a class action and scheduled a settlement approval hearing in Toronto on **[insert date]** as detailed below.

**Settlement Terms and Benefits**

If the Settlement Agreement is approved, Class Members will be eligible to receive compensatory payments under the Settlement and a free upgrade to QuickBooks® Pro 2007 for Mac.  The payment will be based on expenses incurred by the Class Member in recovering and reconstructing their lost desktop data.  The Settlement Agreement describes the payment amounts in detail. Generally, so that you can decide about your rights before the Settlement is final, the following gives an overview:

Class Members in Canada will be fully reimbursed for all documented expenses incurred for their data recovery efforts (*e.g.*, data recovery software, the services of third party data recovery vendors, hardware reasonably necessary for data recovery efforts) that were incurred on or before April 30, 2008.

Class Members in Canada will also be reimbursed for data reconstruction expenses and in-house data recovery efforts that were incurred on or before April 30, 2008.  These data reconstruction reimbursements will be capped as follows:  20 hours at $75 USD/hour for third party data reconstruction expenses and 20 hours at $75 USD/hour for in-house data reconstruction or data recovery expenses. These payments may be reduced pro rata if the total amounts claimed for these expenses by Class Members in Canada and the US exceed $500,000 USD.

1

DRAFT

The payment amounts and the product upgrade set forth above are intended to provide fair and reasonable compensation for damages Class Members may have incurred.

A copy of the Settlement Agreement and all Exhibits, including the Claim Form, are posted at the QuickBooks® 2006 for Mac Settlement Website at www.2006QBforMacSettlement.com and may be requested by contacting the Claims Administrator at the contact information noted below.

[insert contact information for claims admin]

**If the settlement is approved, it is proposed that the Claims Period will expire 90 days after a settlement approval notice is sent to you. Only those affected users who timely submit a valid Claim Form will become Class Members and be bound by the terms of the Settlement.**

**Those who wish to join the Class and benefit from the Settlement are encouraged to assemble and prepare all necessary documentation as soon as practicable in order to file a timely Claim Form.**

**Proposed Class**

The Settlement Agreement proposes certification of the following class:

"All users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac (the 'Software') whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism (the 'Malfunction') who timely submit a valid Claim Form."

**Class Counsel Recommendation**

Class Members in Canada are represented by the law firm HARRISON PENSA LLP. Canadian Class Counsel can be reached toll free at 1-800-263-0489 ext. 775. Their website is www.harrisonpensa.com.

Class Counsel is highly experienced in class action litigation and recommend the Settlement. In negotiating the Settlement, Class Counsel considered, among other factors, the following:

1.    Challenges in overcoming the terms of the applicable End User License Agreement; and

2.    Other challenges in establishing liability against Defendants.

Detailed material in support of Settlement approval and approval of Class Counsel fees is posted at the QuickBooks® 2006 for Mac Settlement Website and may be updated from time to time. Potential Class Members are encouraged to review this material in considering whether or not to participate in and/or object to the Settlement.

**Settlement Approval Hearings & Class Members' Right to Object**

This Notice is to advise you of the Approval Hearing for the Settlement in the Ontario action brought on behalf of Class Members resident in Canada, which will take place on [insert fixed date] at [TIME/LOCATION]

Canadian members of the proposed class who do not oppose the Settlement need not appear at the hearing or take any other action at this time to indicate their desire to participate in the Settlement. Members of the proposed class are entitled to object to the Settlement and have the right to appear at the settlement approval hearing, in person or through a lawyer.

Canadian members of the proposed class who wish to object to the Settlement may send an objection in writing by mail or by fax, delivered on or before [insert fixed date 45 days after the first notice is sent], to Canadian Class Counsel at the address or fax number below.   All written objections will be presented to the Canadian Court for consideration. If a written objection is filed, it is requested that the written objection include the following information:

1.    The individual's full name, address, telephone number, fax number, and e-mail address.

**EXECUTION COPY**

2.    A statement that he or she is a member of a proposed class.

3.    A brief statement of the nature of and reasons for the objection.

4.    Whether he or she intends to appear at the Canadian Court hearing in person or through a lawyer and if through a lawyer, the lawyer's name, address, telephone number, fax number and e-mail address.

If you do not file a written objection by [insert fixed date], you will not be entitled to participate in the settlement approval hearing, unless you obtain the approval of the Court.

**Right to Participate in the Settlement**

If the Settlement is approved and the Ontario and U.S proceedings are certified as class actions, users affected by the Malfunction shall have the right to join the Class and benefit from the Settlement. Any person who participates in the Settlement by timely filing a valid Claim Form shall be bound by the terms of the Settlement Agreement and all related court orders and shall be forever barred from commencing any proceeding against Defendants in respect of any data or files that became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently as a result of the malfunction in the Software's auto-update mechanism alleged in the Ontario and U.S. proceedings.  No opt out is required.  If you do not timely submit a valid Claim Form, you shall not be eligible for any of the payments and you will not be bound by the terms of the Settlement Agreement or any related court orders. If approval of the settlement is granted by the Courts, an additional notice will be sent to all registered users of the Software and all known users impacted by the malfunction , advising them of that fact.  That notice will specify the deadline by which potential Class Members will be required to submit a Claim Form.  The proposed deadline to submit a claim is ninety (90) days after this notice of the approval of the Settlement is sent.  Class Members are also encouraged to follow the results of the Settlement approval process on the QuickBooks® 2006 for Mac Settlement Website at www.2006QBforMacSettlement.com.

Defendants have the right to withdraw from the Settlement if the United States court does not approve the related class action pending in the United States District Court for the Northern District of California.

**Class Counsel Fees**

Under the terms of the proposed Settlement, Class Counsel (including plaintiffs' counsel in the United States) will seek their legal fees, inclusive of disbursements and applicable taxes from the Defendants.  These funds will not reduce settlement benefits to Class Members and shall be paid separate from and in addition to the payments to Class Members.  The final sum payable to Class Counsel is subject to the approval of the Ontario and U.S. Courts at their respective approval hearings.

**Class Counsel Contact Information**

Jonathan J. Foreman
HARRISON PENSA LLP
Barristers & Solicitors
450 Talbot Street
London, ON N6A4K3
Telephone: 1-800-263-0489 ext. 775
Facsimile: (519) 667-3362

**Questions about the Settlement**

Do not direct any questions about this notice or the Settlement to the Courts.  The Courts cannot answer them.  Any questions should be directed to Class Counsel and/or the Claims Administrator following a review of the QuickBooks® 2006 for Mac Settlement Website and the Settlement Agreement and Exhibits.

**Interpretation**

If there is any conflict between the provisions of this Notice and the Settlement Agreement and any of its Exhibits, the terms of the Settlement Agreement shall prevail.

**EXECUTION COPY**

**This notice has been approved by the Honourable [<mark>Designated Canadian Judge</mark>] of the Ontario Superior Court of Justice.**

**EXECUTION COPY**

**EXHIBIT B**

If you are a user of **QuickBooks**® **Pro 2006 for Mac** or **QuickBooks**® **New User Edition 2006 for Mac** and your data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism you may be entitled to compensation pursuant to a class action settlement.

*This is a court-authorized Notice. This is not a solicitation from a lawyer.*

- A worldwide settlement has been reached in the class action lawsuits about whether a malfunction in the auto-update mechanism in the *QuickBook*® *Pro 2006 for Mac* or *QuickBooks*® *New User Edition 2006 for Mac* software (the "Software") caused users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently. As currently known to the parties and their counsel, you may have experienced desktop data deletion one of two ways: (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use. If you believe you have suffered desktop data deletion in another manner as a result of a malfunction in the auto-update mechanism in the Software, you may submit a claim for settlement benefits explaining the circumstances of the desktop data deletion and the reason you believe the desktop data deletion was caused by the auto-update mechanism in the Software.

- The Ontario Superior Court of Justice provided final approval of the settlement on [insert date]. The Canadian settlement approval is contingent on final approval of the settlement by the US Court. The US Court still has to decide whether to finally approve the settlement. Settlement benefits will be provided if the Courts finally approve the settlement and after appeals, if any, are resolved. Please be patient.

- When Intuit learned of the issue in December 2007, it created a dedicated support team to assist affected customers, diligently investigated and identified the source of the issue, and ensured disablement of the auto-update mechanism in the Software to prevent any recurrence. This settlement builds upon Intuit's goal to reimburse affected customers for their data recovery efforts, to provide affected customers a free upgrade to QuickBooks® Pro 2007 for Mac, and to compensate affected customers for their data reconstruction efforts. The criteria for qualifying for settlement benefits are described in greater detail in this Notice.

- Your legal rights are affected whether you act or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a claim form.** | The only way to get a reimbursement and software upgrade. By timely submitting a valid claim form, you will become a member of the class and be bound by the settlement agreement and release. |
| **Do nothing.** | Get no payment. You are not a member of the class and will not be bound by the settlement agreement and release. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

**EXECUTION COPY**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .................................................................................................................. 1

    1.    Why did I get a notice?

    2.    What are these lawsuits about?

    3.    Why are these lawsuits class actions?

    4.    Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** ............................................................................... 2

    5.    How do I know if I I can qualify as a class member and participate in the settlement?

    6.    Which QuickBooks® products are included?

    7.    If I experienced desktop data deletion but recovered some or all of my files, can I still participate in the settlement?

    8.    If Intuit already reimbursed me or sent me a free upgrade, can I still participate in the settlement?

    9.    What if I have lost Mac desktop data, but not before January 3, 2008?

    10.    I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET** ................................................................ 3

    11.    What does the settlement provide?

    12.    Are there limits on the amount I can get?

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM** ........................................................ 4

    13.    How can I get a payment or free upgrade?

    14.    What if I already received payment or a free upgrade from Intuit?

    15.    What if my claim for reimbursement is disputed?

    16.    When would I get my payment or free upgrade?

    17.    What am I giving up by submitting a claim?

**RELEASE OF CLAIMS** ................................................................................................................. 5

**DO I NEED TO EXCLUDE MYSELF FROM THE SETTLEMENT** ..................................................... 5

**THE LAWYERS REPRESENTING YOU** ....................................................................................... 6

    18.    Do I have a lawyer in the case?

    19.    How will my lawyers be paid?

**PLAINTIFFS** .............................................................................................................................. 6

    20.    Will Plaintiffs be paid anything?

**IF YOU DO NOTHING** ................................................................................................................. 8

**GETTING MORE INFORMATION** ................................................................................................. 8

**EXECUTION COPY**

**BASIC INFORMATION**

The company that sold **QuickBooks® Pro 2006 for Mac** or **QuickBooks® New User Edition 2006 for Mac** was sued in a U.S. class action lawsuit and a Canadian class action lawsuit.  The people who sued are called the "Plaintiffs," and the companies they sued (Intuit Inc. in the U.S. lawsuit and Intuit Inc. and its subsidiary Intuit Canada Ltd. in the Canadian lawsuit) are called the "Defendants."

Justice [INSERT] of the Ontario Superior Court of Justice in Toronto, Canada is overseeing the Canadian lawsuit, named *Ronald Smith & Associates, Inc. v. Intuit Inc. and Intuit Canada*, 08-CV-348111 CP. Judge William H. Alsup of the United States District Court for the Northern District of California is overseeing the U.S. lawsuit, named *Create-A-Card, Inc., AGSJ, Inc. and Philanthropic Focus LLC. v. Intuit Inc.*, CV-07-6452 WHA.

| 1. | Why did I get a notice? |
|----|----|

You received notice because you are a registered user of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac and/or you are in Intuit's records as a user who may have been impacted by a malfunction of the Software's auto-update mechanism.  Notice has been provided to you so you can know about the proposed settlement and participate in it by filing a claim.  This Notice explains the lawsuits, the settlement and your legal rights.

| 2. | What are these lawsuits about? |
|----|----|

The lawsuits concern an alleged malfunction with the Software's auto-update mechanism that may have caused certain users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently.  As currently known to the parties and their counsel, you may have experienced desktop data deletion one of two ways:  (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  The lawsuits claim that the Defendants should have known of the malfunction or otherwise should be held legally responsible for any data damage or loss experienced by affected customers.

Defendants deny any wrongdoing or liability in the lawsuits.  They claim they have already compensated certain users for their data recovery expenses, believe the malfunction cannot recur as they have ensured disablement of the Software's auto-update mechanism, notified their users of the issue, and instituted internal safeguards.  By agreeing to the proposed settlement described in this Notice, Defendants are not admitting the merits of the claims in the lawsuits and continue to deny any wrongdoing.

| 3. | Why are these lawsuits class actions? |
|----|----|

In a class action, one or more people called "Class Representatives" (Ronald Smith Associates, Inc. in the Canadian lawsuit and Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus LLC in the U.S. lawsuit) sue on behalf of people who have similar claims.  All of these people are a "Class" or "Class Members."  A court must determine if a lawsuit or a settlement should proceed as a class action.  If it does proceed as a class action, there may be a trial.  A trial then decides the outcome of the lawsuit for everyone in the Class.  Sometimes, the parties may settle without a trial.

Generally, one court resolves the issues for all Class Members except for those who exclude themselves from the Class.  In this case, there is one U.S. court overseeing the lawsuit for all Class Members except those in Canada, and one Canadian court overseeing the lawsuit for all Class Members in Canada.

1

**EXECUTION COPY**

| 4. | Why is there a settlement? |
|---|---|

A settlement is <u>not</u> an admission of any wrongdoing by the Defendants.  No court or jury made any decision in favor of any party.  Instead, both sides mutually agreed to settle the claims. By settling, they both avoid the risks, delays, and costs of ongoing litigation and a trial, and the class members are eligible to receive settlement benefits.  The Plaintiffs and their attorneys recommend this settlement because they believe this settlement is the best option for everyone in the Class.

**WHO IS INCLUDED IN THE SETTLEMENT?**

To see if you can get benefits from the settlement, you first have to determine whether you can qualify as a Class Member.

| 5. | How do I know if I I can qualify as a class member and participate in the settlement? |
|---|---|

The Courts decided that everyone who fits the following description and timely submits a valid claim is a Class Member:  *All users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism.*

| 6. | Which QuickBooks® products are included? |
|---|---|

Only QuickBooks® Pro 2006 for Mac and QuickBooks® New User Edition 2006 for Mac are included.  No other QuickBooks® products are included.

| 7. | If I experienced desktop data deletion but recovered some or all of my files, can I still participate in the settlement? |
|---|---|

Yes, if you were able to recover some or all of your desktop data, you can still request to become a Class Member by filing a Claim Form.  Whether or not you are entitled to receive benefits from the settlement, will depend on whether you incurred any reimbursable expenses as described below in Question 11.

| 8. | If Intuit already reimbursed me or sent me a free upgrade, can I still participate in the settlement? |
|---|---|

Yes, you may still  request to become a Class Member by filing a Claim Form even if Intuit has already reimbursed you for some or all of your expenses, or sent you a free software upgrade.  You are entitled to the same benefits as any other Class Member, but Intuit will be credited with any benefits it has already provided to you.

| 9. | What if I have lost Mac desktop data, but not before January 3, 2008? |
|---|---|

You may qualify as a Class Member only if your data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, <u>as a result of a malfunction in the Software's auto-update mechanism</u>.  As currently known to the parties and their counsel, you may have experienced desktop data deletion in one of two ways:  you (1) accessed the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessed the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  If you believe you have suffered desktop data deletion in another manner as a result of a malfunction in the auto-update mechanism in the Software, you may still submit a claim explaining the circumstances of the desktop data deletion and the reason you believe the desktop data deletion was caused by the auto-update mechanism in the Software.

**EXECUTION COPY**

| 10. | I'm still not sure if I am included. |
|-----|--------------------------------------|

If you are still not sure whether you can participate or are otherwise included in the Class, you may call the Claims Administrator at <mark>[INSERT NUMBER]</mark> with questions.

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET**

| 11. | What does the settlement provide? |
|-----|-----------------------------------|

The proposed settlement provides the following benefits:

| | | |
|---|---|---|
| 1. | Full reimbursement for certain data <u>recovery</u> expenses.<br><br>*Expenses must have been incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members).* | ▪ Costs of data recovery software (including any shipping, handling and tax);<br><br>▪ Third party data recovery expenses (such as for services of Apple Genius bars, DriveSavers or other third party data recovery vendors); and/or<br><br>▪ Hardware reasonably necessary for data recovery efforts (such as hard drives purchase for use with data recovery software) including any shipping, handling and tax. |
| 2. | Reimbursement for data <u>reconstruction</u> and <u>other data recovery efforts</u>.<br><br>*Expenses must have been incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members).* | ▪ Third party data reconstruction expenses (such as data re-entry) capped at 20 hours at $75 USD/hour per Class Member; and/or<br><br>▪ In-house data reconstruction and data recovery expenses (such as reimbursement for time Class Members' employees spent recovering and reconstructing lost data) capped at 20 hours at $75 USD/hour per Class Member.<br><br><u>Note</u>: Under the proposed settlement, these claims are subject to an aggregate cap of $500,000 USD. If the claims received exceed $500,000 Intuit can do one of two things:<br><br>*Option 1.* Pay all claims. (For example: If there are $600,000 in claims, Intuit can pay $100,000 in addition to the $500,000 it has already committed.)<br><br>*Option 2.* Request a *pro rata* reduction. (For example: If there are $1,000,000 in claims and your claim is $1,000, you will be notified of a pro rata reduction to $500. You will then get a chance to exclude yourself from the Class.) |
| 3. | <u>Free upgrade to QuickBooks® Pro 2007 for Mac</u> (retailing at approximately $199.95 USD) to any Class Member with an approved claim. | N/A |

**EXECUTION COPY**

| 12. | Are there limits on the amount I can get? |
|-----|-------------------------------------------|

There is no limit on the total reimbursements for certain types of data recovery expenses, but there <u>is</u> a cap on the amount of reimbursements you can get for data reconstruction expenses and in-house data recovery expenses (see answer to Question 11 above).

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM**

| 13. | How can I get a payment or free upgrade? |
|-----|------------------------------------------|

You must submit a Claim Form.  A Claim Form is included with this Notice. You may also download a Claim Form at www.2006QBforMacSettlement.com or contact the Claims Administrator for a copy.  Read the instructions carefully, fill out the Claim Form completely, and return the completed Claim Form by [90 days after Class Notice Date].  **IF YOU DO NOT SUBMIT YOUR SIGNED CLAIM FORM BY THIS DEADLINE YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THIS SETTLEMENT.**

A Claims Administrator, unrelated to any party in these lawsuits, will administer the settlement and review all Claim Forms and accompanying documented expenses. Include with your Claim Form as much documentation as possible regarding your reimbursable expenses. Your information will be treated confidential and will not be shared with anyone except the Claims Administrator and the parties to the lawsuits.  By signing your Claim Form, you will also be authorizing the Claims Administrator to contact you for more information to help evaluate your claim, if needed.  The Claims Administrator will make the initial determination of whether your Claim Form is, valid, verified and complete, and, if necessary, will make the final determination regarding any disputed claims (see Question 15 below).

*All reimbursements for data reconstruction expenses and in-house data recovery expenses may be pro-rated to a lesser amount, depending on the total number of people who claim benefits (see answer to Question 11 above).  You will be notified if your claimed amount is pro-rated and be provided an opportunity to exclude yourself from the Class.*

| 14. | What if I already received payment or a free upgrade from Intuit? |
|-----|------------------------------------------------------------------|

Intuit will be credited with any benefits it has already provided you.  Therefore, if you have already received a reimbursement payment and a free upgrade from Intuit, and have no further reimbursable expenses, you do not need to do anything.  However, if you have additional expenses reimbursable under the settlement or have not received a free upgrade from Intuit, you should submit a fully completed Claim Form.  There is a place on the Claim Form to report any benefits you have already received from Intuit.

| 15. | What if my claim for reimbursement is disputed? |
|-----|-------------------------------------------------|

There is a dispute resolution process in the settlement with regard to any claims that Defendants object to (due to, for example, improper classification or documentation).  If the parties are unable to resolve the disputed claim, then the Claims Administrator will make a final determination whether to accept or deny the claim.  For more information see sections 10.8 and 10.12 of the Settlement Agreement available at www.2006QBforMacSettlement.com.

| 16. | When would I get my payment or free upgrade? |
|-----|----------------------------------------------|

You will receive your payment check and/or free upgrade within 4 to 8 weeks of the settlement being approved by both Courts and the judgments entered in both lawsuits become final, which is projected to take place [insert estimate].

| 17. | What am I giving up by submitting a claim? |
|-----|--------------------------------------------|

If you timely file a valid claim you become a member of the class, you can't sue, continue to sue, or be part of any other lawsuit against Intuit about the legal issues in *these* cases.  It also means that all of the

**EXECUTION COPY**

Courts' orders will apply to you and legally bind you. If you sign the Claim Form, you will agree to a "Release of Claims," at the end of the Claim Form, which describes exactly the legal claims that you give up if you get settlement benefits. If you do not submit a claim, you cannot benefit from this settlement and will keep any right you have to pursue your own lawsuit against Intuit.

## RELEASE OF CLAIMS

If the settlement is approved, as a Class Member you will give up the right to sue Defendants and other Released Parties on your own (or to be a part of any other lawsuit against Defendants and other Released Parties) concerning the claims that this Settlement resolves.

For complete details of the Release of Claims and Released Parties, please refer to the Settlement Agreement online at www.2006QBforMacSettlement.com. You may also contact the Claims Administrator or Class Counsel directly (see below).

## DO I NEED TO EXCLUDE MYSELF FROM THE SETTLEMENT?

**IF YOU DO NOT FILE A CLAIM**:

Because this is a claims-made settlement with a release applying only to those who file a claim, you do not need to exclude yourself ("opt out") from the settlement if you want to keep the right to sue or continue to sue the Defendants over the legal issues in these lawsuits.

**IF YOU FILE A CLAIM**:

If you file a timely and valid claim, this means you agree to be bound by the settlement and release and will receive settlement benefits to which you're entitled. However, there is one scenario in which you may get, and wish to exercise, the right to exclude yourself from the settlement: If Intuit can and does exercise its right to pro rata calculate the settlement awards (see Question 11 above) and you receive notice of the pro rata calculation of your settlement award ("Exclusion Notice"), your deadline to opt out is thirty (30) days from the date of the Exclusion Notice.

If you do not opt out, you will give up the right to sue the Defendants for the claims that this settlement resolves and will be bound by the settlement and release in these lawsuits. However, if you opt out, you will not be entitled to any benefits under the settlement.

To opt out, you must timely send a letter by registered mail to the Claims Administrator at the address below stating you "request to be excluded from the class and the settlement in the *Ronald Smith & Associates, Inc. v. Intuit Inc. and Intuit Canada* Litigation." You must sign the letter and include your name, address, telephone number, email address and date of desktop data loss. The letter must be sent to the following address; you <u>cannot</u> exclude yourself over the phone, by fax or by email:

The Garden City Group<br>
Claims Administrator<br>
[INSERT ADDRESS]

TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR SIGNED OPT OUT LETTER MUST BE POSTMARKED BY THE DEADLINE TO OPT OUT. IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.

**EXECUTION COPY**

| 18. | Do I have a lawyer in the case? |
|---|---|

Yes. However, if you want to be represented by your own lawyer you may hire one at your own expense.

The Canadian Court has appointed these lawyers to represent Canadian Class Members as "Class Counsel" in the Canadian class action lawsuit:

Jonathan J. Foreman, Esq.
HARRISON PENSA LLP
Barristers & Solicitors
450 Talbot Street
London, ON N6A4K3
Telephone: (519) 661-6775
Facsimile: (519) 667-3362

The U.S. Court has appointed these lawyers to represent Non-Canadian Class Members as "Class Counsel" in the U.S. class action lawsuit.

James A. Quadra, Esq.
Rebecca Bedwell-Coll, Esq.
Robert D. Sanford, Esq.
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Ste. 2100
San Francisco, California 94104
Telephone: (415) 362-3599
Facsimile: (415) 362-2006

Michael W. Sobol, Esq.
Kristen E. Law, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

| 19. | How will my lawyers be paid? |
|---|---|

Class Counsel in the Canadian lawsuit will ask the Court for their fees, cost and expenses. Any payments awarded to Class Counsel by the Courts and paid by Defendants will not reduce the value of the benefits distributed to Class Members. The Defendants will also separately pay the costs to administer the settlement.

**PLAINTIFFS**

| 20. | Will Plaintiffs be paid anything? |
|---|---|

Class Counsel and the Class Representatives will ask the Court to award up to $5,000 to the Class Representative Ronald Smith & Associates, Inc. in the Canadian lawsuit. Any payments awarded by the Courts and paid by Defendants will not reduce the value of the benefits distributed to Class Members.

**IF YOU DO NOTHING**

If you do nothing and do not submit a Claim Form, you will not be a part of the class and will not be able to receive any settlement benefits under this settlement. However, you will not lose your right to start or continue a lawsuit against Defendants in your own name about the claims that this settlement resolves.

**EXECUTION COPY**

If you have further questions, please contact the Claims Administrator at [INSERT] or Class Counsel at [INSERT].

**EXECUTION COPY**

**EXHIBIT C**

# QUICKBOOKS® 2006 FOR MAC SETTLEMENT

## CLAIM FORM

*Please legibly print all information.*

**Please read this entire Claim Form carefully.**

**To be eligible to receive any settlement payment, your original fully completed Claim Form (and all accompanying proof) must be postmarked no later than [INSERT DATE].**

This Claim Form should be submitted only by users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac ("QuickBooks® 2006 for Mac") whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism.  As currently known to the parties and their counsel, you may have experienced data deletion in one of two ways:  (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  If you believe you have suffered desktop data deletion in another manner as a result of a malfunction in the auto-update mechanism in the Software, you may still submit a claim explaining the circumstances of the desktop data deletion and the reason you believe the desktop data deletion was caused by the auto-update mechanism in the Software.

Only <u>one</u> Claim Form should be submitted per business entity.

Include all of your expenses even if Intuit has reimbursed you.  Any reimbursement you received will be deducted from your claim.

---

## PART 1.  CLAIMANT INFORMATION

Your name: _____

Company/business on whose behalf claim is being submitted:

_____

Address: _____

City: _____  State: _____  Zip Code: _____

Country: _____

Email: _____

Date and approximate time desktop data or files first became inaccessible or were damaged, corrupted, or lost: _____

_____

Were you using a publicly available wireless network that requires payment for use at the time?   Circle one:  YES / NO

Brief description of desktop data or files that became inaccessible or were damaged, corrupted, or lost: _____

_____

_____

_____

---

1

**PART 2.  REIMBURSEABLE DATA RECOVERY EXPENSES**

*Check the categories that apply to you and please follow any accompanying instructions.*

*Note:*     All expenses must have been incurred on or before April 15, 2008.
            *For Canadian claimants only:*  All expenses must have been incurred on or before April 30, 2008.

☐     **A.     Data Recovery Software**.  I purchased data recovery software in an attempt to recover my Mac desktop data or files that became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in my QuickBooks® 2006 for Mac software program's auto-update mechanism.  I will include a copy of my receipt and any other verifying documentation to the Claims Administrator for processing in order to receive a reimbursement of the full purchase price (plus any shipping, handling and tax).  I am also providing the following <u>required</u> information:

Name and manufacturer of data recovery software:

_____

Date of purchase:  _____ / _____ / _____

Total purchase price on receipt: $ _____ USD

OR

Total purchase price on receipt: $ _____ CAD

(If you purchased more than one data recovery software program, please indicate so below and provide the relevant documentation and information, attaching additional pages as needed.)

Name and manufacturer of data recovery software:

_____

Date of purchase:  _____ / _____ / _____

Total purchase price on receipt: $ _____ USD

OR

Total purchase price on receipt: $ _____ CAD

***IF YOU HAVE ALREADY RECEIVED REIMBURSEMENT FROM INTUIT FOR SOME OR ALL OF THE ABOVE EXPENSES, PLEASE INDICATE THIS IN PART 6 BELOW.***

☐     **B.     Data Recovery Hardware**.  I purchased data recovery hardware that was reasonably necessary in an attempt to recover my Mac desktop data or files that became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in my QuickBooks® 2006 for Mac software program's auto-update mechanism.  I will include a copy of my receipt and/or any other verifying documentation to the Claims Administrator for processing in order to receive a reimbursement of the full purchase price (plus any shipping, handling and tax).  I am also providing the following <u>required</u> information:

Description of data recovery hardware (including manufacturer):

_____

Reason(s) needed: _____

_____

Date of purchase:  _____ / _____ / _____

Purchase price on receipt: $ _____ USD

2

**EXECUTION COPY**

OR

Purchase price on receipt: $ _____ CAD

(If you purchased more than one piece of data recovery hardware, please indicate so below and provide the relevant documentation and information, attaching additional pages as needed.)

Description of data recovery hardware (including manufacturer):

_____

Reason(s) needed: _____

_____

Date of purchase: _____ / _____ / _____

Purchase price on receipt: $ _____ USD

OR

Purchase price on receipt: $ _____ CAD

***IF YOU HAVE ALREADY RECEIVED REIMBURSEMENT FROM INTUIT FOR SOME OR ALL OF THE ABOVE EXPENSES, PLEASE INDICATE THIS IN PART 6 BELOW.***

☐ **C.** **Third Party Data Recovery Vendor Assistance.** I sought the assistance of a third party data recovery vendor (for example, Apple Genius Bar, DriveSavers) in an attempt to recover my Mac desktop data or files that became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in my QuickBooks® 2006 for Mac software program's auto-update mechanism. I will include a copy of my receipt/invoice and any other verifying documentation to the Claims Administrator for processing in order to receive a reimbursement of the full cost. I am also providing the following required information:

Name of data recovery vendor (include company name, address and contact person):

_____

_____

_____

Description of services rendered:

_____

_____

Service date(s): _____

Total costs on receipt/invoice: $ _____ USD

OR

Total costs on receipt/invoice: $ _____ CAD

(If you used more than one third party data recovery vendor, please indicate so below and provide the relevant documentation and information, attaching additional pages as needed.)

Name of data recovery vendor (include company name, address and contact person):

_____

3

**EXECUTION COPY**

_____

_____

Description of services rendered:

_____

_____

Service date(s): ____ _____

Total costs on receipt/invoice: $ _____ USD

OR

Total costs on receipt/invoice: $ _____ CAD

*IF YOU HAVE ALREADY RECEIVED REIMBURSEMENT FROM INTUIT FOR SOME OR ALL OF THE ABOVE EXPENSES, PLEASE INDICATE THIS IN PART 6 BELOW.*

---

## PART 3.  REIMBURSABLE IN-HOUSE DATA RECOVERY AND RECONSTRUCTION EXPENSES

*Check the category if it applies to you and please follow any accompanying instructions.*

*Note:*  All expenses must have been incurred on or before April 15, 2008.
        For Canadian claimants only:  All expenses must have been incurred on or before April 30, 2008.

☐  **D.**  **In-House Data Recovery/Reconstruction.**  People working at my company spent time to try and recover or reconstruct my Mac desktop data or files that became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in my QuickBooks® 2006 for Mac software program's auto-update mechanism.  I will include any verifying documentation in my possession to the Claims Administrator.  **I understand that these expenses are subject to an aggregate cap of 20 hours and an hourly rate cap of $75USD.**  I am also providing the following required information:

| Name/Title | Description of Work | Date(s) Worked | Hours Worked | Hourly Rate | Total $ (hrs. x rate) |
|---|---|---|---|---|---|
| | | | _____ hrs. | $_____ | $_____ |
| | | | _____ hrs. | $_____ | $_____ |
| | | | _____ hrs. | $_____ | $_____ |
| Total | | | _____ hrs. | | $_____ |

*IF YOU HAVE ALREADY RECEIVED REIMBURSEMENT FROM INTUIT FOR SOME OR ALL OF THE ABOVE EXPENSES, PLEASE INDICATE THIS IN PART 6 BELOW.*

---

## PART 4.  REIMBURSABLE THIRD PARTY DATA RECONSTRUCTION EXPENSES

*Check the category if it applies to you and please follow any accompanying instructions.*

*Note:  All expenses must have been incurred on or before April 15, 2008 (or on or before April 30, 2008 for Canadian claimants).*

4

**EXECUTION COPY**

☐     **E.**     <u>**Third Party Data Reconstruction**</u>. I hired a third party to assist with the reconstruction of my Mac desktop data or files that were became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in my QuickBooks® 2006 for Mac software program's auto-update mechanism. I will include an invoice and/or any other verifying documentation to the Claims Administrator for processing in order to receive a reimbursement for these costs. **I understand that these expenses are subject to an aggregate cap of 20 hours and an hourly rate cap of $75USD.** I am also providing the following <u>required</u> information:

| Third Party Name/Title | Description of Work | Date(s) Worked | Hours Worked | Hourly Rate | Total $ (hrs. x rate) |
|---|---|---|---|---|---|
| | | | _____hrs. | $_____ | $_____ |

(If you used more than one third party, please indicate so below and provide the relevant documentation and information, attaching additional pages as needed.)

| Third Party Name/Title | Description of Work | Date(s) Worked | Hours Worked | Hourly Rate | Total $ (hrs. x rate) |
|---|---|---|---|---|---|
| | | | _____hrs. | $_____ | $_____ |

*IF YOU HAVE ALREADY RECEIVED REIMBURSEMENT FROM INTUIT FOR SOME OR ALL OF THE ABOVE EXPENSES, PLEASE INDICATE THIS IN PART 6 BELOW.*

---

## PART 5.   FREE UPGRADE TO QUICKBOOKS® PRO 2007 FOR MAC

*Check the category if it applies to you and please follow any accompanying instructions.*

☐     **F.**     <u>**Free Upgrade to QuickBooks® Pro 2007 for Mac**</u>. If the Claims Administrator determines that I am entitled to receive a settlement payment, I also would like to receive a free upgrade to QuickBooks® Pro 2007 for Mac.

*IF YOU HAVE ALREADY RECEIVED A COPY OF QUICKBOOKS® PRO 2007 FOR MAC FROM INTUIT, PLEASE INDICATE THIS IN PART 6 BELOW.*

---

## PART 6.   COMPENSATION I HAVE ALREADY RECEIVED FROM INTUIT

*Check the categories that apply to you and please follow any accompanying instructions.*

☐     <u>**Reimbursements Already Received**</u>. I have already received the following reimbursements from Intuit:

$_____

☐     <u>**Upgrade Already Received**</u>. I have already received a free copy of QuickBooks® Pro 2007 for Mac from Intuit.

5

I acknowledge that all reimbursements submitted under Parts 3 and 4 may be pro-rated to a lesser amount, depending on the total number of Class Members who claim benefits.  I understand that I will be notified if the claimed amounts under Parts D and/or E are pro-rated and that I will then be provided an opportunity to exclude myself from the Class.  I further understand that the Claims Administrator reserves the right to request documentation verifying the information I have submitted above and that the Claims Administrator may audit any and all claims.  I agree to reasonably cooperate with any such request and/or audit.

## Release of Claims:

**All Class Members who timely submit a valid claim are releasing all claims, whether presently known or unknown, that relate to the claims alleged against Defendants (Intuit Inc. and/or Intuit Canada Ltd.) in the class actions being settled, or otherwise relate to the malfunction in the Software's auto-update mechanism as alleged in the class actions being settled, and waiving all rights they may have under California Civil Code Section 1542 and any similar statutes.  Please refer to the Settlement Agreement for a more complete description of the released claims, available at www.2006QBforMacSettlement.com.  If the Court does not ultimately approve this settlement, this release will be nullified.**

I understand that persons making false claims may be subject to civil or criminal penalties.  Fraudulent submission of multiple requests could result in federal prosecution under the U.S. Mail Fraud laws (18 U.S.C. §§ 1341, 1342).

By signing below I certify under penalty of perjury that the information I have provided on this Claim Form is true and correct to the best of my personal knowledge, and that this is the only Claim Form that I have submitted on behalf of this business entity/company.  I further certify under penalty of perjury that I am a user of *QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac* (the "Software") whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism.

I understand under penalty of perjury means that the information I have provided is the truth.  I understand it is a crime to submit a false Claim Form and sign the penalty of perjury statement.

I declare under the penalty of perjury that the information provided in the Claim Form by the undersigned is true and correct and that this Claim Form was executed on:

_____  _____,  _____
     (month)        (day)         (year)

in _____.
       (city/state/country)

_____
(Sign your name here)

_____
(Print your name here)

**Please mail your original signed Claim Form and all accompanying documentary proof to the following address no later than [INSERT DATE]:**

**Claims Administrator**
**[INSERT ADDRESS]**

**PLEASE NOTE THAT ANY CLAIM FORM OR DOCUMENTATION SENT WILL NOT BE RETURNED TO YOU.  PLEASE MAKE A COPY OF ALL SUBMITTED MATERIALS AND RETAIN FOR YOUR RECORDS.**

**ACCURATE PROCESSING OF CLAIMS MAY TAKE A SIGNIFICANT AMOUNT OF TIME.  THANK YOU, IN ADVANCE, FOR YOUR PATIENCE.**

**QUESTIONS?  A COPY OF THE FULL CLASS NOTICE AND OTHER INFORMATION REGARDING THE SETTLEMENT IS AVAILABLE AT THE SETTLEMENT WEBSITE AT WWW.2006QBFORMACSETTLEMENT.COM.  YOU CAN ALSO CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT [INSERT NUMBER].**

**EXECUTION COPY**

**EXHIBIT D**

# NOTICE OF CLASS ACTION SETTLEMENT

**TO ALL USERS OF QUICKBOOKS® 2006 FOR MAC (*EXCEPT CANADIAN RESIDENTS WHO SHOULD READ BELOW*)**:  If you are a user of *QuickBooks® Pro 2006 for Mac* or *QuickBooks® New User Edition 2006 for Mac* (the "Software") whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism you may be eligible to participate in the settlement reached in *Create-A-Card, et al. v. Intuit Inc.*, Case No. CV-07-6452 WHA, a lawsuit pending the Northern District of California.  This Settlement Notice informs you of the Court's certification of a class for settlement purposes; the nature of the claims alleged; your right to become a member of the class and participate in the proposed settlement; and how you can claim a payment and Software upgrade under the settlement or object to the settlement.

The proposed settlement will resolve claims related to a malfunction in the Software's auto-update mechanism that caused certain users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently.  The proposed settlement will provide a monetary recovery to class members for reimbursement of their data recovery and reconstruction expenses.  The proposed settlement will also provide class members a free upgrade to QuickBooks® Pro 2007 for Mac.

Only affected users who timely submit a valid Claim Form will be considered class members, be able to participate in the settlement, and be bound by the terms of the settlement agreement and release. If you want to participate in the proposed settlement you should review the Settlement Notice as soon as possible as there are several important deadlines that you must meet to take certain actions in connection with this proposed settlement. In particular, the deadline to file a Claim Form is **[90 days after the class notice date]**.  For further information, please refer to the Settlement Notice.

**For a copy of the Settlement Notice or Claim Form click on the links, or visit the Claims Administrator website at:  www.2006QBforMacSettlement.com.**

---

**TO ALL REGISTERED USERS OF QUICKBOOKS® 2006 FOR MAC WHO ARE CANADIAN RESIDENTS**:  Please be advised that the Ontario Superior Court of Justice has finally approved, subject to final approval by the United States District Court for the Northern District of California, the worldwide QuickBooks® 2006 for Mac settlement.

If you would like to benefit from the proposed settlement and become a member of the class, you should review the Settlement Notice for Canadian Residents as soon as possible as there are several important deadlines that you must meet to take certain actions in connection with this settlement. In particular, the deadline to file a Claim Form is **[90 days after the class notice date]**.  For further information, please refer to the Settlement Notice for Canadian Residents.

**For a copy of the Settlement Notice for Canadian Residents or Claim Form click on the links, or visit the Claims Administrator website at:   www.2006QBforMacSettlement.com.**

16319/40031/DOCS/1981554.4

1

**EXECUTION COPY**

**EXHIBIT E**

If you are a user of **QuickBooks® Pro 2006 for Mac** or **QuickBooks® New User Edition 2006 for Mac** and your data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction in the Software's auto-update mechanism you may be entitled to compensation pursuant to a class action settlement.

*This is a court-authorized Notice.  This is not a solicitation from a lawyer.*

- A worldwide settlement has been reached in the class action lawsuits about whether a malfunction in the auto-update mechanism in the *QuickBook® Pro 2006 for Mac* or *QuickBooks® New User Edition 2006 for Mac* software (the "Software") caused users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently.  As currently known to the parties and their counsel, you may have experienced desktop data deletion one of two ways:  (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  If you believe you have suffered desktop data deletion in another manner as a result of a malfunction in the auto-update mechanism in the Software, you may still submit a claim explaining the circumstances of the desktop data deletion and the reason you believe the desktop data deletion was caused by the auto-update mechanism in the Software.

- Intuit alleges that when Intuit learned of the issue in December 2007, it created a dedicated support team to assist affected customers, diligently investigated and identified the source of the issue, and ensured disablement of the auto-update mechanism in the Software to prevent any recurrence.  Intuit believes this settlement builds upon Intuit's goal to reimburse affected customers for their data recovery efforts, to provide affected customers a free upgrade to QuickBooks® Pro 2007 for Mac, and to compensate affected customers for their data reconstruction efforts.  The criteria for qualifying for settlement benefits are described in greater detail in this Notice.

- The Courts in charge of these lawsuits still have to decide whether to finally approve the settlement.  Settlement benefits will be provided if the Courts finally approve the settlement and after appeals, if any, are resolved.  Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a claim form.** | The only way to get a reimbursement or upgrade.  By timely submitting a valid claim form, you will become a member of the class and be bound by the settlement agreement and release. |
| **Object.** | Write to the Court and the parties' lawyers about why you don't like the settlement.  If your objection is overruled, you will be provided an opportunity to exclude yourself from the class. |
| **Go to a hearing.** | Ask to speak in Court about the fairness of the settlement. |
| **Do nothing.** | Get no payment. You are not a member of the class and will not be bound by the settlement agreement and release. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

**EXECUTION COPY**

**BASIC INFORMATION** ................................................................................................................... 1

    1.    Why did I get a notice?

    2.    What are these lawsuits about?

    3.    Why are these lawsuits class actions?

    4.    Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** ................................................................................ 2

    5.    How do I know if I can qualify as a class member and participate in the settlement?

    6.    Which QuickBooks® products are included?

    7.    If I experienced desktop data deletion but recovered some or all of my files, can I still participate in the settlement?

    8.    If Intuit already reimbursed me or sent me a free upgrade, can I still participate in the settlement?

    9.    What if I have lost Mac desktop data, but not before January 3, 2008?

    10.    I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET** ................................................................ 3

    11.    What does the settlement provide?

    12.    Are there limits on the amount I can get?

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM** ...................................................... 4

    13.    How can I get a payment or free upgrade?

    14.    What if I already received payment or a free upgrade from Intuit?

    15.    What if my claim for reimbursement is disputed?

    16.    When would I get my payment or free upgrade?

    17.    What am I giving up by submitting a claim?

**RELEASE OF CLAIMS** ................................................................................................................. 5

**DO I NEED TO EXCLUDE MYSELF FROM THE SETTLEMENT?** ................................................. 5

**THE LAWYERS REPRESENTING YOU** ........................................................................................ 6

    18.    Do I have a lawyer in the case?

    19.    How will my lawyers be paid?

**PLAINTIFFS** ............................................................................................................................... 6

    20.    Will the Class Representatives in the U.S. lawsuit be paid anything in addition to the relief available to Class Members?

**OBJECTING TO THE SETTLEMENT** ............................................................................................ 7

    21.    How do I object?

    22.    What's the difference between objecting and being excluded?

**THE FAIRNESS HEARING** .......................................................................................................... 7

    23.    When and where will the U.S. Court decide whether to approve the settlement?

    24.    Do I have to come to the hearing?

    25.    May I speak at the hearing?

**IF YOU DO NOTHING** .................................................................................................................. 8

**GETTING MORE INFORMATION** ................................................................................................. 8

EXECUTION COPY

The company that sold **QuickBooks® Pro 2006 for Mac** or **QuickBooks® New User Edition 2006 for Mac** was sued in a U.S. class action lawsuit and a Canadian class action lawsuit. The people who sued are called the "Plaintiffs," and the companies they sued (Intuit Inc. in the U.S. lawsuit and Intuit Inc. and its subsidiary Intuit Canada Ltd. in the Canadian lawsuit) are called the "Defendants."

Judge William H. Alsup of the United States District Court for the Northern District of California is overseeing the U.S. lawsuit, named *Create-A-Card, Inc., AGSJ, Inc. and Philanthropic Focus LLC. v. Intuit Inc.*, CV-07-6452 WHA. The Ontario Superior Court of Justice in Toronto, Canada is overseeing the Canadian lawsuit, named *Ronald Smith Associates, Inc. v. Intuit Inc. and Intuit Canada*, 08-348111 CP.

| 1. | Why did I get a notice? |
|---|---|

You received notice because you are a registered user of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac and/or you are in Intuit's records as a user who may have been impacted by a malfunction of the Software's auto-update mechanism. Notice has been provided to you so you can participate in it by filing a claim before the Court finally approves the settlement. This Notice explains the lawsuits, the settlement and your legal rights.

| 2. | What are these lawsuits about? |
|---|---|

The lawsuits concern an alleged malfunction with the Software's auto-update mechanism that may have caused certain users' data or files to become inaccessible or damaged, corrupted, or lost, whether temporarily or permanently. As currently known to the parties and their counsel, you may have experienced desktop data deletion one of two ways: (1) accessing the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessing the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use. The lawsuits claim Defendants should have known of the malfunction or otherwise should be held legally responsible for any data damage or loss experienced by affected customers. If you believe you have suffered desktop data deletion in another manner, you may still submit a claim as described below.

Defendants deny any wrongdoing or liability in the lawsuits as they claim they have already compensated users for their data recovery expenses, believe the malfunction cannot recur as they have ensured disablement of the Software's auto-update mechanism, notified their users of the issue, and instituted internal safeguards. By agreeing to the proposed settlement described in this Notice, Defendants are not admitting the merits of the claims in the lawsuits and continue to deny any wrongdoing.

| 3. | Why are these lawsuits class actions? |
|---|---|

In a class action, one or more people called "Class Representatives" (Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus LLC in the U.S. lawsuit, and Ronald Smith Associates, Inc. in the Canadian lawsuit) sue on behalf of people who have similar claims. All of these people are a "Class" or "Class Members." A court must determine if a lawsuit or a settlement should proceed as a class action. If it does proceed as a class action, there may be a trial. A trial then decides the outcome of the lawsuit for everyone in the Class. Sometimes, the parties may settle without a trial.

Generally, one court resolves the issues for all Class Members except for those who exclude themselves from the Class. In this case, there is one U.S. court overseeing the lawsuit for all Class Members except those in Canada, and one Canadian court overseeing the lawsuit for all Class Members in Canada.

1

**EXECUTION COPY**

| 4. | Why is there a settlement? |
|---|---|

A settlement is <u>not</u> an admission of any wrongdoing by the Defendants.  No court or jury made any decision in favor of any party.  Instead, both sides mutually agreed to settle the claims. By settling, they both avoid the risks, delays, and costs of ongoing litigation and a trial, and the class members are eligible to receive settlement benefits.  The Plaintiffs and their attorneys recommend this settlement because they believe this settlement is the best option for everyone in the Class.

## WHO IS INCLUDED IN THE SETTLEMENT?

To see if you can get benefits from the settlement, you first have to determine whether you can qualify as a Class Member.

| 5. | How do I know if I can qualify as a class member and participate in the settlement? |
|---|---|

The Courts decided that everyone who fits the following description and timely submits a valid claim is a Class Member:  All users of QuickBooks® Pro 2006 for Mac or QuickBooks® New User Edition 2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism.

| 6. | Which QuickBooks® products are included? |
|---|---|

Only QuickBooks® Pro 2006 for Mac and QuickBooks® New User Edition 2006 for Mac are included.  No other QuickBooks® products are included.

| 7. | If I experienced desktop data deletion but recovered some or all of my files, can I still participate in the settlement? |
|---|---|

Yes, if you were able to recover some or all of your desktop data, you can still request to become a Class Member by filing a Claim Form.  Whether or not you are entitled to receive benefits from the settlement, will depend on whether you incurred any reimbursable expenses as described below in Question 11.

| 8. | If Intuit already reimbursed me or sent me a free upgrade, can I still participate in the settlement? |
|---|---|

Yes, you may still request to become a Class Member by filing a Claim Form even if Intuit has already reimbursed you for some or all of your expenses, or sent you a free upgrade.  You are entitled to the same benefits as any other Class Member, but Intuit will be credited with any benefits it has already provided to you.

| 9. | What if I have lost Mac desktop data, but not before January 3, 2008? |
|---|---|

You may qualify as a Class Member only if your data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, <u>as a result of a malfunction in the Software's auto-update mechanism</u>.  As currently known to the parties and their counsel, you may have experienced desktop data deletion in one of two ways:  you (1) accessed the Software between 9:30 p.m. (PST) on December 15, 2007, and 10:00 a.m. (PST) on December 17, 2007; or (2) accessed the Software before 10:00 a.m. (PST) on January 3, 2008, at a publicly available wireless network that requires payment for use.  If you believe you have suffered desktop data deletion in another manner as a result of a malfunction in the auto-update mechanism in the Software, you may still submit a claim explaining the circumstances of the desktop data deletion and the reason you believe the desktop data deletion was caused by the auto-update mechanism in the Software.

**EXECUTION COPY**

| 10. | I'm still not sure if I am included. |
|---|---|

If you are still not sure whether you can participate or are otherwise included in the Class, you may call the Claims Administrator at [INSERT NUMBER] with questions.

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET**

| 11. | What does the settlement provide? |
|---|---|

The proposed settlement provides the following benefits:

| | | |
|---|---|---|
| 1. | Full reimbursement for certain data <u>recovery</u> expenses.<br><br>*Expenses must have been incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members).* | ▪ Costs of data recovery software (including any shipping, handling and tax);<br><br>▪ Third party data recovery expenses (such as for services of Apple Genius bars, DriveSavers or other third party data recovery vendors); and/or<br><br>▪ Hardware reasonably necessary for data recovery efforts (such as hard drives purchase for use with data recovery software) including any shipping, handling and tax. |
| 2. | Reimbursement for data <u>reconstruction</u> and <u>other data recovery efforts</u>.<br><br>*Expenses must have been incurred on or before April 15, 2008 (or April 30, 2008 for Canadian Class Members).* | ▪ Third party data reconstruction expenses (such as data re-entry) capped at 20 hours at $75 USD/hour per Class Member; and/or<br><br>▪ In-house data reconstruction and data recovery expenses (such as reimbursement for time Class Members' employees spent recovering and reconstructing lost data) capped at 20 hours at $75 USD/hour per Class Member.<br><br><u>Note</u>:  Under the proposed settlement, these claims are subject to an aggregate cap of $500,000 USD.  If the claims received exceed $500,000 Intuit can do one of two things:<br><br>*Option 1*.  Pay all claims.  (For example: If there are $600,000 in claims, Intuit can pay $100,000 in addition to the $500,000 it has already committed.)<br><br>*Option 2*.  Request a *pro rata* reduction.  (For example: If there are $1,000,000 in claims and your claim is $1,000, you will be notified of a pro rata reduction to $500.  You will then get a chance to exclude yourself from the Class.) |
| 3. | <u>Free upgrade to QuickBooks® Pro 2007 for Mac</u> (retailing at approximately $199.95 USD) to any Class Member with an approved claim. | N/A |

**EXECUTION COPY**

| 12. | Are there limits on the amount I can get? |
|---|---|

There is no limit on the total reimbursements for certain types of data recovery expenses, but there is a cap on the amount of reimbursements you can get for data reconstruction expenses and in-house data recovery expenses (see answer to Question 11 above).

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM**

| 13. | How can I get a payment or free upgrade? |
|---|---|

You must submit a Claim Form.  You may download a Claim Form at www.2006QBforMacSettlement.com or contact the Claims Administrator for a copy.  Read the instructions carefully, fill out the Claim Form completely, and return the completed Claim Form by [90 days after Class Notice Date].  **IF YOU DO NOT SUBMIT YOUR SIGNED CLAIM FORM BY THIS DEADLINE YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THIS SETTLEMENT.**

A Claims Administrator, unrelated to any party in these lawsuits, will administer the settlement and review all Claim Forms and accompanying documented expenses. Include with your Claim Form as much documentation as possible regarding your reimbursable expenses. Your information will be treated as confidential and will not be shared with anyone except the Claims Administrator and the parties to the lawsuits.  By signing your Claim Form, you will also be authorizing the Claims Administrator to contact you for more information to help evaluate your claim, if needed.  The Claims Administrator will make the initial determination of whether your Claim Form is valid, verified and complete, and, if necessary, will make the final determination regarding any disputed claims (see Question 15 below).

*All reimbursements for data reconstruction expenses and in-house data recovery expenses may be pro-rated to a lesser amount, depending on the total number of people who claim benefits (see answer to Question 11 above).  You will be notified if your claimed amount is pro-rated and be provided an opportunity to exclude yourself from the Class.*

| 14. | What if I already received payment or a free upgrade from Intuit? |
|---|---|

Intuit will be credited with any benefits it has already provided you.  Therefore, if you have already received a reimbursement payment and/or a free upgrade from Intuit, and have no further reimbursable expenses, you do not need to do anything.  However, if you have additional expenses reimbursable under the settlement or have not received a free upgrade from Intuit, you should submit a fully completed Claim Form.  There is a place on the Claim Form to report any benefits you have already received from Intuit.

| 15. | What if my claim for reimbursement is disputed? |
|---|---|

There is a dispute resolution process in the settlement with regard to any claims that Defendants object to (due to, for example, improper classification or documentation).  If the parties are unable to resolve the disputed claim, then the Claims Administrator will make a determination whether to accept or deny the claim.  Any Party may appeal the Claims Administrator's decision to Judge William H. Alsup of the United States District Court for the Northern District of California.  For more information see sections 10.8 and 10.12 of the Settlement Agreement available at www.2006QBforMacSettlement.com.

| 16. | When would I get my payment or free upgrade? |
|---|---|

You will receive your payment check and/or free upgrade within 4 to 8 weeks of the settlement being approved by both Courts and the judgments entered in both lawsuits become final, which is projected to take place next summer.

**EXECUTION COPY**

| 17. | What am I giving up by submitting a claim? |
|---|---|

If you timely file a valid claim you become a member of the class, you can't sue, continue to sue, or be part of any other lawsuit against Intuit about the legal issues in *these* cases. It also means that all of the Courts' orders will apply to you and legally bind you. If you do not submit a claim, you cannot benefit from this settlement and will keep any right you have to pursue your own lawsuit against Intuit.

## RELEASE OF CLAIMS

If the settlement is approved, and you submit a timely and valid Claim Form, you will give up the right to sue Defendants and other Released Parties on your own (or to be a part of any other lawsuit against Defendants and other Released Parties) concerning the claims that this Settlement resolves.

For complete details of the Release of Claims and Released Parties, please refer to the Settlement Agreement online at www.2006QBforMacSettlement.com. You may also contact the Claims Administrator or Class Counsel directly (see below).

## DO I NEED TO EXCLUDE MYSELF FROM THE SETTLEMENT?

**IF YOU DO NOT FILE A CLAIM**:

Because this is a claims-made settlement with a release applying only to those who file a claim, you do not need to exclude yourself ("opt out") from the settlement if you want to keep the right to sue or continue to sue the Defendants over the legal issues in these lawsuits.

**IF YOU FILE A CLAIM**:

If you file a timely and valid claim, this means you agree to be bound by the settlement and release and will receive settlement benefits to which you're entitled. You will get the option to exclude yourself from the Class only if either of the following occurs:

(1)     If you object to the settlement (see Question 21 below) and your objection is overruled. In this case, your deadline to opt out is fourteen (14) days after your objection is overruled.

(2)     If Intuit can and does exercise its right to pro rata calculate the settlement awards (see Question 11 above) and you receive notice of the pro rata calculation of your settlement award ("Exclusion Notice"). In this case, your deadline to opt out is thirty (30) days from the date of the Exclusion Notice.

In either case, if you do not opt out, you will give up the right to sue the Defendants for the claims that this settlement resolves and will be bound by the settlement and release in these lawsuits. However, if you opt out, you will not be entitled to any benefits under the settlement.

To opt out, you must timely send a letter by certified mail stating that you "request to be excluded from the settlement in the *Create-A-Card, et al. v. Intuit* Litigation." You must sign the letter and include your name, address, telephone number, email address and date of desktop data loss. The letter must be sent to the following address; you <u>cannot</u> exclude yourself over the phone, by fax or by email:

The Garden City Group<br>
Claims Administrator<br>
<mark>[INSERT ADDRESS]</mark>

TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR SIGNED OPT OUT LETTER MUST BE POSTMARKED BY THE DEADLINE TO OPT OUT. IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.

**EXECUTION COPY**

**THE LAWYERS REPRESENTING YOU**

| 18. | Do I have a lawyer in the case? |
|---|---|

Yes.  However, if you want to be represented by your own lawyer you may hire one at your own expense.

The U.S. Court has appointed these lawyers to represent you and other Class Members (other than Canadian residents) as "Class Counsel" in the U.S. class action lawsuit.

James A. Quadra, Esq.
Rebecca Bedwell-Coll, Esq.
Robert D. Sanford, Esq.
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Ste. 2100
San Francisco, California 94104
Telephone: (415) 362-3599
Facsimile: (415) 362-2006

Michael W. Sobol, Esq.
Kristen E. Law, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

The Canadian Court has appointed these lawyers to represent Canadian Class Members as "Class Counsel" in the Canadian class action lawsuit:

Jonathan J. Foreman, Esq.
HARRISON PENSA LLP
Barristers & Solicitors
450 Talbot Street
London, ON N6A4K3
Telephone: (519) 661-6775
Facsimile: (519) 667-3362

| 19. | How will my lawyers be paid? |
|---|---|

Class Counsel in the U.S. lawsuit and in the Canadian lawsuit will ask the respective Courts for attorneys' fees, cost and expenses in an amount not to exceed $800,000 USD.  Any payments awarded to Class Counsel by the Courts and paid by Defendants will not reduce the value of the benefits distributed to Class Members.  The Defendants will also separately pay the costs to administer the settlement.

**PLAINTIFFS**

| 20. | Will the Class Representatives in the U.S. lawsuit be paid anything in addition to the relief available to Class Members? |
|---|---|

No.  Class Counsel and the Class Representatives in the U.S. Action will not ask the Courts for payment of any kind to the Class Representatives.  Thus, the Class Representatives will not be paid any amount other than that to which they would be entitled as participating members of the Class.

**EXECUTION COPY**

## OBJECTING TO THE SETTLEMENT

You can tell the Courts if you don't agree with the settlement or some part of it.

| 21. | How do I object? |
|---|---|

If you want to object to the settlement and give reasons why you think the Courts should not approve it, you must be a class member and thus timely file a claim. If your objection is later overruled, you will still have a chance to exclude yourself from the class and not be bound by the settlement and release (see "Do I Need To Exclude Myself From the Settlement" above).

To object, send a letter saying that you object to the *Create-A-Card, et al. v. Intuit* litigation Settlement. Be sure to include: (1) your name, address, telephone number and email address; (2) date of desktop data loss; (3) reasons why you object to the settlement; (4) your signature; and (5) the case name and number: *Create-A-Card, et al. v. Intuit Inc.*; Case No. CV-07-6452 WHA. Please provide any copies of any other documents that you wish to submit in support of your objection. Mail your objection to these three different places postmarked no later than **[INSERT DATE]**.

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | James A. Quadra, Esq. | Rodger R. Cole, Esq. |
| United States District Court for | MOSCONE, EMBLIDGE & | FENWICK & WEST LLP |
| the Northern District of California | QUADRA, LLP | 801 California St. |
| 450 Golden Gate Ave. | 220 Montgomery Street, Ste. 2100 | Mountain View, CA 94041 |
| San Francisco, CA 94102 | San Francisco, California 94104 | |

You may also object by appearing at the Fairness Hearing and give reasons why you think the Court should not approve the settlement.

| 22. | What's the difference between objecting and being excluded? |
|---|---|

Objecting is simply telling the Courts that you don't like something about the settlement. You can object only if you are in the Class. Being excluded means you are not part of the Class. If you are not part of the Class, you have no basis to object because the settlement does not affect you. This is why you need to file a Claim Form in order to object; if you don't file a Claim Form, you are not participating in the settlement and thus have basis to object.

If you decide to be in the Class and object to the settlement, you will be entitled to exclude yourself from the Class if your objection is overruled by the Court.

## THE FAIRNESS HEARING

| 23. | When and where will the U.S. Court decide whether to approve the settlement? |
|---|---|

The U.S. Court will hold a Fairness Hearing at **8:00 a.m**. on **[INSERT DATE]**, in the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will also decide how much to pay Class Counsel representing the Class Members in the U.S. lawsuit. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

Note: The Fairness Hearing may be postponed to a different date without additional notice. Updated information, if any, will be posted on the settlement website: www.2006QBforMacSettlement.com.

**Please do not contact the Court or the Judge about this case.**

| 24. | Do I have to come to the hearing? |
|---|---|

Attendance is not required, even if you properly mailed a written objection. If you, or your personal attorney, still want to attend the Fairness Hearing, you are welcome to attend at your expense. However,

**EXECUTION COPY**

it is not necessary that either of you attend. As long as your objection or comment is submitted before the Fairness Hearing, the Court will consider it.

| 25. May I speak at the hearing? |
|---|

You (or your attorney) may ask the Court for permission to speak at the Fairness Hearing. You cannot speak at the hearing if you do not timely file a claim.

**IF YOU DO NOTHING**

If you do nothing and do not submit a Claim Form, you will not be a part of the class and will not be able to receive any settlement benefits. However, you will not forfeit your right to start or continue a lawsuit against Defendants about the claims that this settlement resolves.

**GETTING MORE INFORMATION**

If you have further questions, please contact the Claims Administrator at [INSERT] or Class Counsel at [INSERT].

16319/40031/LIT/1293066.8

EXECUTION COPY

**EXHIBIT F**

James A. Quadra (SBN 131084)
Rebecca Bedwell-Coll (SBN 184468)
MOSCONE, EMBLIDGE & QUADRA, LLP
Mills Tower
220 Montgomery Street, Ste. 2100
San Francisco, California 94104
Telephone: (415) 362-3599
Facsimile: (415) 362-2006
Email: quadra@meqlaw.com

Michael W. Sobol (SBN 194857)
Kristen E. Law (SBN 222249)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: msobol@lchb.com

Jonathan D. Selbin (SBN 170222)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: jselbin@lchb.com

*Attorneys for Plaintiffs and proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| CREATE-A-CARD, INC.; AGSJ, INC.; and PHILANTHROPIC FOCUS, LLC, on behalf of themselves and all those similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>INTUIT INC.,<br><br>            Defendant. | Case No. CV-07-6452 WHA<br><br>**CLASS ACTION**<br><br>**[PROPOSED] ORDER (1) GRANTING PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT; (2) PROVISIONALLY CERTIFYING THE PROPOSED SETTLEMENT CLASS; (3) APPROVING THE PROPOSED NOTICE PLAN AND FORMS OF NOTICE; AND (4) SCHEDULING THE FINAL FAIRNESS HEARING** |

On August 26, 2008, Plaintiffs submitted for this Court's review a proposed Class Action Settlement Agreement dated August 22, 2008, resolving all claims in this action against Defendant Intuit Inc. ("Intuit"). On September 18, 2008, the Court conducted a hearing regarding the reasonableness of proceeding with the proposed Settlement. On September 25, 2008, the parties submitted for this Court's review a revised proposed order and forms of class notice. On October 17, 2008, Intuit submitted a supplemental letter brief informing the Court of new factual findings and of the parties' revised proposed settlement whereby the settlement would be a claims-made settlement with a release extending only to those who submit claims, and that the parties would be submitting a revised Settlement Agreement, proposed forms of notice and claim for and proposed order reflecting the same. On November 4, 2008, the parties executed revised settlement papers and subsequently submitted them to the Court for review. Having reviewed Plaintiffs' Motion for an Order Granting Preliminary Approval to the Proposed Class Action Settlement, the revised Settlement Agreement (including the revised forms of class notice and claim form), all prior settlement documents submitted to the Court, and the files and records of this case, the Court now FINDS, CONCLUDES, and ORDERS as follows:

## I.    CERTIFICATION OF SETTLEMENT CLASS

Solely for the purpose of effectuating the proposed Settlement, Plaintiffs have proposed conditional certification of the following Settlement Class under Federal Rule of Civil Procedure 23 (the "Class"):

> The "Settlement Class" includes all users of QuickBooks Pro 2006 for Mac or Quickbooks New User Edition 2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism (the "Malfunction") who who timely submit a valid Claim Form.

Notwithstanding the foregoing, the following Persons shall be excluded from the Class: (1) Intuit and its subsidiaries and affiliates; (2) all governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members thereof; (4) all claims for personal injury and wrongful death; and (5) Persons who timely exclude themselves from the settlement pursuant to Paragraphs 10.7.1.1 or 10.9.1 of the Settlement Agreement.

Plaintiffs Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC (collectively, "Plaintiffs") brought this Rule 23 Class Action on behalf themselves and a worldwide class of registered owners of Intuit's QuickBooks Pro 2006 for Mac or QuickBooks New User Edition 2006 for Mac (the "Software"), whose files or data became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of opening the Software and receiving an allegedly defective update from Intuit. Plaintiffs filed this action on behalf of themselves and all others similarly situated on December 21, 2007, alleging claims for negligence, strict products liability, trespass to chattels, breach of implied warranty and violations of California Business & Professions Code Section 17200, et seq., and later amended their Complaint and added a claim for breach of contract. Specifically, Plaintiffs allege that QuickBooks Pro 2006 for Macintosh and QuickBooks New User Edition 2006 for Macintosh (collectively, the "Software") has a built in "automatic update" mechanism that is activated when the program is launched. Plaintiffs allege that the Software contained a defect that was triggered when it searched for updates to download but did not receive the anticipated response. When this happened, the defective program allegedly deleted all files on the user's desktop.

Plaintiffs allege that as a result of a malfunctioning of the Software's automatic update mechanism ("Malfunction") caused by, among other reasons, this alleged defect in the Software's automatic update mechanism code (the "Software Bug"), the data or files residing on their Macintosh desktops became inaccessible or were damaged, corrupted, or lost, either temporarily or permanently, and as a result, they suffered damages. Plaintiffs allege that users of the Software lost customer lists, chapters of books they were writing, photo shoots they had been paid to complete, logos they had designed, months of billing and other valuable work product.

Intuit contends it is not liable for the claims asserted in the Actions, that it has valid defenses to those claims, and that Plaintiffs have not suffered any recoverable damages. Notwithstanding their denial of liability, Intuit has taken certain corrective steps, as outlined in the Settlement Agreement, to assist some customers who lost data as a result of the Software Malfunction. The Settlement Agreement expands the benefits Intuit has offered voluntarily and provides for comprehensive notice of the available relief to all potential Class members.

The Court hereby FINDS and CONCLUDES that the proposed Class satisfies all of the requirements for certification under Rule 23(a) and Rule 23(b)(3). Provisional certification of a class is appropriate in part because Defendants do not object to class certification in the context of this Settlement. The Court takes guidance in its consideration of certification issues from *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

**Numerosity:** This Court finds that a class of consumers is sufficiently numerous to satisfy the numerosity requirement. The parties estimate that approximately 1,038 users of the Software were damaged as a result of the Malfunction. Thus, it is estimated that the Class may comprise approximately 1,038 consumers. Given the number of potentially affected individuals, the Class is sufficiently numerous that joinder is impracticable.

**Common Questions of Law and Fact:** The test for common questions of law and fact is "qualitative rather than quantitative—one significant issue common to the class may be sufficient to warrant certification." *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007)). "[P]laintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories." *Id*. The members of the Class share common issues of fact and law that include, but are not limited to, the following: (1) whether Intuit took proper steps to avoid data losses for its customers; (2) whether Intuit trespassed by allegedly creating and allowing its code to enter users' computers and destroy data and files; (3) whether Intuit breached warranties of merchantability and fitness for a particular purpose; (4) whether Intuit's alleged failure to warn its users to avoid opening QuickBooks or Intuit's failure to shut down its server before losses constituted an unfair business practice; (5) whether Intuit's alleged creation of a code that destroyed data on users' desktops, its allegedly allowing such code to intrude into users' computers without the consent of the users, its alleged failure to warn its users to avoid opening QuickBooks or its alleged failure to shut down its server before losses, constituted negligence; (6) whether Intuit is liable under a theory of products liability for its creation of a code that allegedly destroyed data on users' desktops, its alleged failure to warn its users to avoid opening QuickBooks or its alleged failure to shut down its server before losses. In light of the foregoing,

the commonality requirement is satisfied.

**Typicality:** Representative claims are typical of the class claims if they are "reasonably coextensive with those of the absent class members." *Dukes,* 509 F.3d at 1184 (citing *Hanlon,* 150 F.3d 1011, 1020). The named Plaintiffs' have asserted claims which are typical of the other class members' claims in that they allege that Intuit's Quickbooks software was defective and allowed a faulty signal and/or defective software to enter the Class Members' computers without permission and interfere with Plaintiffs' possessory interest in their computer systems and data, deleting data and files from all parts of the computer desktop. Accordingly, Plaintiffs and all Class members have been injured in the same manner.

**Adequacy:** The named Plaintiffs are adequate representatives of the Class they represent, since their interests are co-extensive with those of Class members, and the Plaintiffs have retained experienced counsel to represent them.

**Common Questions Predominate:** Common questions predominate the allegations here. One common question is whether Intuit trespassed by creating code that allowed a faulty signal to interact with users' computers and destroy data and files. Another core issue is whether Intuit breached warranties of merchantability and fitness for a particular purpose. A third common question is whether Intuit's alleged failure to warn its users to avoid opening QuickBooks or Intuit's alleged failure to shut down its server before losses constituted an unfair business practice and also whether Intuit's creation of a code that allegedly destroyed data on users' desktops, its creating code that allegedly allowed a faulty signal to interact with users' computers without the consent of the users, its alleged failure to warn its users to avoid opening QuickBooks or its alleged failure to shut down its server before losses, constituted negligence. Here, common questions of law and fact overwhelm individual issues. Thus, the predominance requirement is satisfied. Class treatment here, in the context of the Settlement, will facilitate the favorable resolution of all Class members' claims.

**Superiority:** Given the large numbers of Class members and the multitude of common issues present, use of the class device is also the most efficient and fair means of adjudicating the claims that arise out of Defendants' alleged misconduct. Class treatment in the settlement context

is superior to multiple individual suits or piecemeal litigation because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication. For these reasons, the superiority requirement is satisfied.

Because certification of the Rule 23 Class is proposed in the context of a settlement, the Court need not inquire whether the case, if tried as a class action, would present intractable management problems. Accordingly, and for the reasons set forth above, the Court hereby CERTIFIES the Rule 23 Class under Rule 23(a) and Rule 23(b)(3).

## II.  APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

The Court finds that Class Representatives Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC have claims typical of absent class members belonging to the Class and are adequate representatives of those class members. The Court appoints all of the above-mentioned Plaintiffs to serve as Class Representatives.

The Court finds that Moscone, Emblidge & Quadra, LLP and Lieff Cabraser Heimann & Bernstein, LLP have, separately and collectively, extensive experience and expertise in prosecuting complex class cases involving defective products. The Court appoints these firms as Class Counsel.

## III.  PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

The Court has reviewed the terms of the Settlement Agreement, which provides substantial cash relief to the Class, including up to 100% cash reimbursement for certain data-recovery efforts and reimbursement for certain data-reconstruction efforts related to damages suffered as a result of the Malfunction, as well a free upgrade to QuickBooks Pro for Mac 2007. The terms of the Settlement Agreement will be implemented by an Independent Claims Administrator. The Court has also read and considered the declaration of James Quadra in support of preliminary approval. Based on review of those papers, and the preliminary approval hearing, the Court concludes that the proposed Settlement is the result of extensive, arms-length negotiations between the parties after Class Counsel had investigated the claims and became familiar with the strengths and weaknesses of Plaintiffs' case. Based on all of these factors, the Court concludes that the proposed settlement has no obvious defects and is within the range of

possible settlement approval, such that notice to potential Class members as proposed herein is appropriate.

**IV.    APPROVAL OF THE FORM AND MANNER OF DISTRIBUTING NOTICE AND CLAIM FORM**

The Parties have also submitted for this Court's approval a proposed Notice of Proposed Class Action Settlement ("Full Notice"), an abbreviated notice for emailing and sending by first class mail (to the extent such email and mailing addresses are available in Intuit's records) to all registered users of the Software and all users identified in Intuit's QuickBase database as having been potentially affected by the alleged Malfunction ("Summary Notice"), the proposed Claim Form, and proposed Exclusion Form (if needed), each of which the Court has carefully reviewed. The Court FINDS and CONCLUDES as follows:

The proposed forms of Notice are sufficient in detail to provide the best notice practicable under the circumstances. The proposed forms of Notice allow potential Class members a full and fair opportunity to consider the proposed Settlement. The proposed plan for distributing the Notice and Claim Form likewise is a reasonable method calculated to reach as many individuals as reasonably possible who would be bound by the Settlement. The Parties have agreed to a notice dissemination plan that is likely to reach nearly 100% of the users of the Software and those who are likely to want to participate in the settlement. The Summary Notice (with links to the Full Notice, Claims Form and the Claims Administrator's website) will be sent via email and first class mail (to the extent such email and mailing addresses are available in Intuit's records) to every registered user of the Software and all users identified in Intuit's QuickBase database as having been potentially affected by the alleged Malfunction. To register the Software online or by phone, consumers had to provide a current email and/or mailing address to Intuit. As a result, Intuit has near-complete records of email and mailing addresses that are no more than three years old. Moreover, Intuit, in its internal QuickBase database, has the most current contact information of all users it believes to have actually been affected by the Malfunction at issue. Given the quality of Intuit's records, it is expected that nearly every user of the Software will receive the Summary Notice. Moreover, the proposed settlement is a claims-made settlement,

which means that the release applies only to affected users who timely submit a valid claim. Any user who does not receive a notice or otherwise does not to file a claim, will not be included in the Class or bound by the release, thus preserving that user's right to pursue his or her own claim. However, should any user not receive a notice, but otherwise learn of the Settlement and timely submit a valid claim, his or her claim will be treated like any other claim and he or she will be part of the Class.

The Parties have agreed to send the Notice to all registered users of the Software and all users in Intuit's internal QuickBase database potentially affected by the alleged Malfunction, even though the Class is limited to users whose data or files became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the Software's auto-update mechanism and who timely file a valid claim. It is anticipated that approximately 1,038 users suffered damage. While the potential Class comprises only those 1,038 or so consumers, the Parties agreed to disseminate the notice to all registered users of the Software and all users in Intuit's internal QuickBase database potentially affected by the alleged Malfunction to maximize the likelihood of reaching every damaged user who wants to participate in the settlement. In addition, the Software at issue is primarily used by small business owners who may be more savvy and proactive about reviewing the Notice and submitting claims than ordinary consumers.

In addition to the email and mailed notice described above, the forms of Notice and other documents will also be available online at a website maintained by the Independent Claims Administrator.

The forms of Notice fairly, plainly, accurately, and reasonably inform potential Class members of: (1) appropriate information about the nature of this litigation, the Settlement Class definition, the identity of Class Counsel, and the essential terms of the Settlement, including the cash reimbursement, the provision of full replacement materials and other relief as applicable; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about this Court's procedures for final approval of the Settlement, and about Class members'

right to appear through counsel if they desire; (5) appropriate information about how to challenge or opt-out of the Settlement, if applicable and if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation and the Settlement.

Similarly, the proposed Claim Form allows eligible claimants a full and fair opportunity to submit a claim for proceeds in connection with the Settlement. The Claim Form fairly, accurately, and reasonably informs potential claimants that failure to complete and submit a Claim Form, in the manner and time specified, shall constitute a waiver of any right to obtain relief pursuant to the Settlement terms.

As such, the proposed plan for distributing the forms of Notice and Claim Form ("Notice Materials") will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due-process requirements.

## V.   PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.   Fairness Hearing

The Court hereby schedules a hearing to determine whether to grant final certification of the Rule 23 Settlement Class and final approval of the Settlement Agreement (including the monetary and injunctive relief, payment of attorneys' fees and costs, and service payments to the Class Representatives) (the "Fairness Hearing") for [**DATE**] at 8:00 a.m.

### B.   Deadline for Filing Objections to Settlement

A Class Member who wishes to object to the fairness, reasonableness or adequacy of the Settlement must do so in writing. Only Non-Canadian Class Members may object to the Settlement Agreement in the U.S. Action. Class Members who have timely objected to the Settlement in writing may also appear at the Fairness Hearing. To be considered, any objection to the final approval of the Settlement must state the basis for the objection, and must be filed with the Court and be served on Class Counsel and Counsel for Intuit, at the addresses provided in the Notice fourteen (14) days prior to the Fairness Hearing (the "Objection Deadline"). The objector must include in his or her filing (i) a statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support the Class Member wishes to bring to the

- 8 -

Court's attention; (ii) any evidence the Class Member wishes to introduce in support of his or her objection; and (iii) a list of all class action proceedings in which such objectors or their attorneys previously appeared as objectors or on behalf of objectors. Any Class Member who does not timely file and serve such a written objection shall not be permitted to raise such objection, except for good cause shown, and any Class Member who fails to object in the manner prescribed herein shall be deemed to have waived, and shall be foreclosed from raising, any such objection.

If objections are filed, Class Counsel or Counsel for Defendants may engage in discovery concerning the filed objections prior to the Fairness Hearing. Class Counsel or Counsel for Defendants may file responses to any objections to the final approval of the Settlement no later than seven (7) days prior to the Fairness Hearing. Any Class Member whose objection to the settlement is overruled will be provided an opportunity to then exclude themselves from the Class.

### C.  Deadline for Submitting Claims Forms

All Class Members who have submitted a valid and timely Claim Form will be bound by the Settlement Agreement and Release unless the Class Member opts out as described in Part V.D. below. A Class Member who does not opt out may participate fully in the Settlement. To receive a cash reimbursement, such a Class Member must properly and timely complete a Claim Form in accordance with the terms of the Settlement Agreement. Class Members must submit the Claim Form and all accompanying documentation by first class mail according to the instructions set forth in the Full Notice.

Class Members must complete the Claim Form and submit all requested documentation in accordance with the instructions set forth in the Full Notice within the ninety (90) day period commencing with the Class Notice Date (the "Claim Period") to be eligible to receive any Settlement Award. Claim Forms must also be valid for a Class Member to receive a Settlement Award. A Claim Form shall be deemed valid if the Class Member has filled out the required portions of the Claim Form in their entirety, dated the Claim Form, submitted supporting documentation, and signed the Claim Form under the penalty of perjury. As set forth in greater detail in the Settlement Agreement, Intuit shall have an opportunity to review all Claim Forms

submitted and provide written objections to any claims it believes are improperly classified or documented. Intuit and Class Counsel will then meet and confer in good faith to attempt to resolve any disputed claims. If they cannot informally and promptly resolve the dispute, the ICA will make a final, binding determination after reviewing brief written statements from each side.

### D. Deadline to Request Exclusion from the Settlement

Although this is a claims-made settlement binding only affected users who timely submit valid claims, after the Claims Period, Class members may nevertheless be provided the opportunity to exclude themselves from the Settlement under two circumstances: if (1) Intuit has the option, and decides to exercise the option, to calculate claims pro rata pursuant to Paragraph 9.2.2.3.2 of the Settlement Agreement; or (2) a Class Member files an objection and the objection is overruled pursuant to Paragraph 10.7.1.1 of the Settlement Agreement.

To exclude themselves from the Settlement in the event either of these two circumstances occurs, Class Members must submit a written statement requesting exclusion from the Class. Such written request for exclusion must contain the name, address, telephone number and email address of the Class Member requesting exclusion, the date of data loss, and must be returned by certified mail to the address specified in Exhibit D, and must be postmarked no later than: (1) in the case of exclusion pursuant to Paragraph 9.2.2.3.2, thirty (30) days after the Exclusion Notice; and (2) in the case of exclusion pursuant to Paragraph 10.7.1.1, fourteen (14) days after the objection is overruled. The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. In the event that the postmark is illegible, the request for exclusion shall be deemed untimely unless it is received within five (5) calendar days of the exclusion deadline. Any Class Member who properly opts out of the Settlement Class using this procedure will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Class Members who fail to submit a valid and timely request for exclusion on or before the relevant exclusion deadline shall be bound by all terms of the Settlement Agreement and any Final Judgment entered in the Actions. Pursuant to Federal Rules of Civil Procedure 23(b)(3) and (c)(2), the terms and provisions of the Settlement shall

have no binding effect on any person who makes a timely request for exclusion in the manner required by this Order. Class Counsel and Defendant's counsel shall promptly furnish each other with copies of any and all objections, appearances and requests for exclusion that come into their possession.

###### E. **Deadline for Submitting Motion Seeking Final Approval**

No later than twenty one (21) days before the Fairness Hearing, Plaintiffs shall file a Motion for Final Approval of the Settlement. On or before one week before the Fairness Hearing, the Parties may file with the Court reply brief(s) responding to any filed objections.

###### F. **Attorneys' Fees and Costs**

The Parties have not yet reached agreement on the issue of Plaintiffs' attorneys' fees or costs. Class Counsel shall file with this Court their petition for an award of attorneys' fees and reimbursement of expenses no later than twenty-one (21) days before the Fairness Hearing. Class Counsel may file a reply to any opposition memorandum filed by Intuit or any objector no later than one week before the Fairness Hearing.

## VI. **PLAINTIFFS' AND CLASS MEMBERS' RELEASE**

If, at the Fairness Hearing, this Court grants final approval to the Settlement, the Named Plaintiffs and each individual member of the Rule 23 Settlement Class who does not timely opt-out will release claims, as set forth in Settlement Agreement, by operation of this Court's entry of the Judgment and Final Approval.

IN LIGHT OF THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. The proposed Settlement is hereby PRELIMINARILY APPROVED. Final approval is subject to the hearing of any objections of members of the Settlement Class.

2. The proposed Settlement Class is provisionally certified for the sole purpose of effectuating the Settlement.

3. Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC are appointed as Class representatives.

4. Moscone, Emblidge & Quadra, LLP and Lieff, Cabraser, Heimann, & Bernstein, LLP are appointed as Class Counsel.

5. The Notice Plan is hereby APPROVED as follows:

A. The forms of Notice attached as Exs. D and E to the Settlement Agreement, and Claim Form attached as Ex. C are approved.

B. The proposed manner of distributing the Notice is approved.

C. Promptly following the entry of this Order, the ICA shall prepare final versions of the Notice, incorporating into the Notice the relevant dates and deadlines set forth in this Order.

D. Promptly following the entry of this Order, the Defendants and Plaintiffs shall provide the ICA a database in an acceptable format listing all known physical and email addresses of the Software's registered users and users in Intuit's internal QuickBase database identified as potentially having been affected by the alleged Malfunction.

E. Prior to the mailing of the Notice Materials, the ICA shall update any new address information for potential class members as may be available through the National Change of Address ("NCOA") database or equivalent system.

F. Within twenty-one (21) days following the entry of orders in both this action and the Canadian Action granting preliminary approval of the Settlement Agreement, and no earlier than December 1, 2008, the ICA shall distribute via email and first class mail the Summary Notice attached to the Settlement Agreement as Exhibit D to all registered users of the Software (including those in Canada) and and users in Intuit's internal QuickBase database identified as potentially having been affected by the alleged Malfunction.

G. In the event the email and the mailed notice are both returned as non-deliverable, the ICA shall send the notice to the forwarding address described therein, if any. The Independent Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Settlement Agreement.

6. Further settlement proceedings in this matter shall proceed according to the following schedule:

| | |
|---|---|
| June 11, 2009 | Deadline to file Plaintiffs' Motion for Final Approval and Award of Attorneys' Fees |

| | | |
|---|---|---|
| | TBD By Class Notice Date | Last day to object to the Settlement (60 days after Class Notice Issued) |
| | [June 25, 2008 | Deadline to file Opposition to Plaintiffs' Motion for Final Approval and Award of Attorneys' Fees |
| | July 2, 2008 | Deadline to file Reply Memorandum in Support of Final Approval and Award of Attorneys' Fees |
| | July 16, 2009 at 8:00 a.m.: | Fairness Hearing |

IT IS SO ORDERED.

Dated: _____          _____

16319/40031/LIT/1293795.1

**EXHIBIT G**

RE:  Important Legal Notice Regarding Your QuickBooks® 2006 for Mac Settlement Claim

Dear [CUSTOMER NAME]:

You are receiving this legal notice because you are a Class Member in the QuickBooks® 2006 for Mac Settlement and submitted a Claim Form that included a reimbursement claim for:  (1) in-house data recovery and/or reconstruction expenses (Part 3 of the Claim Form); and/or (2) third party data reconstruction expenses (Part 4 of the Claim Form) (collectively, "Capped Reimbursements"). (Information about this settlement, including the prior legal notices, Claim Form and Settlement Agreement, are available at the Claims Administrator's website at www.2006QBforMacSettlement.com or by calling [INSERT #]).

Because the total aggregate amount of Capped Reimbursements received by the Claims Administrator has exceeded $500,000 USD, your Capped Reimbursement claim has been pro rata reduced as follows:

|  |  |  |  |
|---|---|---|---|
| Total Capped Reimbursements You Submitted: | $ _____ USD |  |  |
| **Total Capped Reimbursements You Will Be Receiving:** | **$ _____ USD** |  |  |

**The above pro rata reduction will NOT affect any reimbursement claim for data recovery expenses or request for a free upgrade you submitted under Parts 2 and 5 of your Claim Form.**

You can now do one of two things:

**1.** **Do Nothing.**  You will remain a member of the Class and receive the above pro rata reduced Capped Reimbursements, in addition to any other approved amounts submitted on your Claim Form.

**2.** **Exclude Yourself.**  Now that you are aware of your pro rata reduced claim amount, you have the right to exclude yourself ("opt out") of the Class.  If you opt out, you will no longer be bound by the Release of Claims, will not be a member of the Class and will not be entitled to receive anything under this Settlement.  This is the only option that allows you to ever be part of another lawsuit against Intuit about the legal claims in this case.

To exclude yourself from the settlement, you must send a letter by certified mail stating you "request to be excluded from the settlement in the *Create-A-Card, et al. v. Intuit* Litigation." For Canadian Class Members, you must send a letter by registered mail stating you "request to be excluded from the class and the settlement in the *Ronald Smith & Associates, Inc. v. Intuit Inc. and Intuit Canada* Litigation."  You must sign the letter and include your name, address, telephone number, email address and date of desktop data loss.  The letter must be sent to the following address; you <u>cannot</u> exclude yourself over the phone, by fax or by email:

[INSERT NAME]
Claims Administrator
[INSERT ADDRESS]

TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR SIGNED OPT OUT LETTER MUST BE POSTMARKED BY **[30 DAYS AFTER SECOND EXCLUSION NOTICE DATE]**.  IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.

**For further information, please call [CLAIMS ADMINISTRATOR PHONE NUMBER] or visit the Claims Administrator website at: www.2006QBforMacSettlement.com.**

**EXECUTION COPY**