1   James A. Quadra (SBN 131084)
    Rebecca Bedwell-Coll (SBN 184468)
2   MOSCONE, EMBLIDGE & QUADRA, LLP
    Mills Tower
3   220 Montgomery Street, Ste. 2100
    San Francisco, California 94104
4   Telephone:  (415) 362-3599
    Facsimile:  (415) 362-2006
5   Email:  quadra@meqlaw.com

6   Michael W. Sobol (SBN 194857)
    Kristen E. Law (SBN 222249)
7   LIEFF, CABRASER, HEIMANN &
       BERNSTEIN, LLP
8   275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
9   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
10  Email:  msobol@lchb.com

11  Jonathan D. Selbin (SBN 170222)
    LIEFF, CABRASER, HEIMANN &
12     BERNSTEIN, LLP
    780 Third Avenue, 48th Floor
13  New York, NY  10017-2024
    Telephone:  (212) 355-9500
14  Facsimile:  (212) 355-9592
    Email:  jselbin@lchb.com
15  Email:  rbcoll@lchb.com

16  *Attorneys for Plaintiffs and the Class*

17              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
18            SAN FRANCISCO / OAKLAND DIVISION

19  CREATE-A-CARD, INC.; AGSJ, INC.;          Case No.  CV-07-6452 WHA
    and PHILANTHROPIC FOCUS, LLC, on
20  behalf of themselves and all those similarly   **CLASS ACTION**
    situated,
21                                            **NOTICE OF MOTION AND
                   Plaintiffs,                MEMORANDUM IN SUPPORT OF CLASS
22                                            COUNSEL'S UNCONTESTED MOTION
              v.                              FOR AN AWARD OF ATTORNEYS' FEES
23                                            AND COSTS**
    INTUIT, Inc.,
24                                            Date:        September 10, 2009
                   Defendant.                 Time:        8:00 a.m.
25                                            Judge:       Hon. William Alsup

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................. 1
II.     SUMMARY OF THE FACTS............................... 2
III.    PROCEDURAL BACKGROUND........................ 3
IV.     THE SETTLEMENT AND CLAIMS MADE TO DATE.................. 5
V.      CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS IS WELL SUPPORTED....................... 6
        A.      Legal Standard ........................................ 6
        B.      Class Counsel's Fee Request Is Appropriate Under the Lodestar Method. ............................................... 8
                1.      Class Counsel's Hourly Rates Are Reasonable. ............ 8
                2.      The Number of Hours Class Counsel Worked is Reasonable. ............................. 10
        C.      A Modest Multiplier is Warranted ........................... 13
                1.      The Results Achieved .............................. 14
                2.      The Contingent Nature of This Case........................ 14
                3.      The Novelty and Difficulty of Questions Involved................ 15
                4.      The Experience, Reputation and Ability of Counsel ............ 15
        D.      Class Counsel's Request For Reimbursement of Modest Costs Is Also Reasonable.......................................... 15
VI.     CONCLUSION ............................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*Blum v. Stenson*,
   465 U.S. 886 (1984)....................................................................................... 9

*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3d 973 (9th Cir. 2008) .................................................................. 9, 12

*Dunk v. Ford Motor Co.*,
   48 Cal. App. 4th 1794 (1996) ....................................................................... 7

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ........................................................................ 6

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) .................................................................... 10

*Graham v. DaimlerChrysler Corp.*,
   34 Cal.4th 553 (2004) ........................................................................... 12, 13

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
   2008 WL 1901988 (W.D.Wash. Apr. 24, 2008)................................... 9, 15

*Hanlon v. Chrysler Group*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 6, 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).................................................................................. 8, 10

*In re Businessland Sec. Litig.*,
   Case No. 90-20476 RFP (N.D. Cal. 1991) ................................................ 16

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ...................................................................... 7, 8

*Ketchum v. Moses*,
   24 Cal.4th 1122 (Cal. 2001)......................................................................... 7

*Lealao v. Beneficial California, Inc.*,
   82 Cal. App. 4th 19 (2000) .......................................................................... 7

*McElwaine v. US West, Inc.*,
   176 F.3d 1167 (9th Cir. 1999) ..................................................................... 7

*PLCM Group v. Drexler*,
   22 Cal.4th 1084 (2000) ............................................................................... 7

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ......................................................................... 6, 7, 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................... 8

*Thayer v. Wells Fargo Bank*,
   92 Cal. App. 4th 819 (2001) ...................................................................... 14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................. 6, 7

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ........................................................................ 6

MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND COSTS
CV-07-6452 WHA

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to the Settlement Agreement in the above-captioned matter and this Court's Preliminary Approval Order, Plaintiffs in the above-titled action will and hereby do move the Court, Honorable William H. Alsup, Judge of the Northern District of California, 450 Golden Gate Avenue, Francisco, California 94102, Courtroom 9, at 8:00 a.m. September 10, 2009, or as soon thereafter as the matter may be heard, for an Order Approving Class Counsel's Uncontested Motion for an Award of Attorneys' Fees and Costs.

This motion is supported by Class Counsel's Memorandum of points and authorities, below, and by the supporting papers and exhibits filed herewith.

Without admitting any of the allegations in the action or set forth herein, Defendant Intuit Inc. does not object to the motion in the context of the parties' proposed Settlement.

## I. __INTRODUCTION__

Class Counsel submit this uncontested motion for an award of $550,000 in reasonable attorneys' fees and costs for the services they have rendered to the Class throughout the litigation resulting in a substantial Settlement. Class Counsel's requested amount of $550,000 is inclusive of both attorneys' fees and litigation costs, and will be paid, subject to the Court's approval, by Intuit in addition to (and not out of) the relief made available to the Class. Class Counsel's request for attorneys' fees and costs is squarely supported by the lodestar method of calculating attorneys' fees recognized under Ninth Circuit and California law. The lodestar method demonstrates that Class Counsel's fee request is eminently reasonable in light of the outstanding result that Class Counsel achieved for the Class, which provides cash compensation for up to 100% expenses incurred to recover data lost as a result of the alleged malfunction with Intuit's QuickBooks 2006 for Mac program.

Intuit does not oppose the present motion and has agreed, subject to the approval of this Court, to pay Class Counsel attorneys' fees and costs in the amount requested. Class Counsel's request for an award of $550,000, inclusive of litigation costs, reflects a multiplier of less than 1.2 on lodestar generated during the investigation, litigation and settlement of Plaintiffs' substantive claims; plus unenhanced lodestar for time spent negotiating and applying for an award of

MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND COSTS
CV-07-6452 WHA

1   attorneys' fees.  As demonstrated below, Class Counsel's request is supported by California and

2   federal law and the facts of this case.

3   **II.      SUMMARY OF THE FACTS**

4        Plaintiffs brought this action on behalf of themselves and a worldwide class of registered

5   owners of Intuit's QuickBooks Pro 2006 for Mac or QuickBooks New User Edition 2006 for Mac

6   (the "Software"), whose files or data became inaccessible or were damaged, corrupted, or lost,

7   whether temporarily or permanently, as a result of opening the Software and receiving a defective

8   update signal from Intuit which triggered a Software design error ("the Software Bug") and

9   damaged their data (the "Malfunction").

10       Plaintiffs alleged that the Software has a built-in automatic update mechanism that is

11  activated when the Software is opened by the user.  Upon launch, the Software automatically

12  contacts Intuit's server through the Internet to download any updates to the Software that may be

13  available.  Plaintiffs further alleged that on Saturday, December 15, 2007, Intuit sent a faulty

14  signal to all QuickBooks for Macintosh users, including Plaintiffs.  This signal, which was read

15  by users' computers upon opening QuickBooks, triggered an error in the Software that caused the

16  wholesale deletion of not only the user's QuickBooks data (if it was stored on the user's desktop),

17  but also all other files and data that was stored on the user's desktop.  Intuit's discovery

18  responses, which described the Software Bug's triggering mechanism, confirmed Plaintiffs'

19  theory.

20       Plaintiffs alleged that beginning on Sunday, December 16, 2007 at 1:40 a.m., postings

21  were made to Intuit's online message board about the problem.  Plaintiffs further alleged that in

22  January 2008, the Software Bug was again triggered in the case of at least one user who had

23  launched the Software at a restricted Internet "wi-fi hotspot" when the Software did not receive a

24  proper update response as a result of the hotspot's restricted access to the Internet.  Intuit

25  subsequently sent a "patch" to its users to completely disable the faulty Software's auto-update

26  mechanism, thereby disabling the Software Bug.

27       Plaintiffs alleged that as a result of a malfunctioning of the Software's automatic update

28  mechanism caused by the Software Bug, the data or files residing on their Macintosh desktops

1    became inaccessible or were damaged, corrupted, or lost, either temporarily or permanently, and

2    as a result, they suffered damages.  Plaintiffs alleged that users of the Software lost customer lists,

3    chapters of books they were writing, photo shoots they had been paid to complete, logos they had

4    designed, months of billing and other valuable work product.

5            The impact of the Malfunction was uniform—upon opening QuickBooks, users received a

6    message that an update was available, and were asked whether the user wished to download the

7    update.  Regardless of whether the user clicked "yes" or "no," the damage had already been

8    done—the faulty signal had already been sent and triggered the Software Bug that deleted all files

9    on the user's desktop.

10           Intuit has consistently denied liability and asserted multiple affirmative defenses.

11   **III.    PROCEDURAL BACKGROUND**

12           Class Counsel was first contacted about this matter in December 2007, when multiple

13   QuickBooks users complained of suffering a sudden loss of their data and files.  *Quadra Decl*.

14   ¶14.  In light of the urgency of the situation and the ongoing damage that was resulting from

15   Intuit's inaction, Plaintiffs acted quickly to draft their Complaint and file it, just six days after the

16   Malfunction manifested.  *Id*.  During that six days, Class Counsel thoroughly investigated and

17   researched this action.  *Id*.

18           On December 21, 2007, Plaintiffs filed a class action complaint against Intuit, alleging

19   claims for negligence, strict products liability, trespass to chattels, breach of implied warranty and

20   violations of California Business & Professions Code Section 17200, *et seq*.  *Quadra Decl*. ¶ 14.

21           On February 21, 2008, the parties mediated this case with retired Judge Edward Infante at

22   JAMS.  The parties made progress but did not reach an agreement on terms.  *Quadra Decl*. ¶ 15.

23   Shortly thereafter, on March 31, 2008, Plaintiffs filed their First Amended Complaint, adding a

24   breach of contract claim against Intuit and clarifying its factual allegations based on their further

25   investigation and research.  *Id*. ¶ 16.

26           Intuit filed its motion to dismiss on April 17, 2008.  *Quadra Decl*. ¶ 17.  Intuit argued,

27   *inter alia*, that the Software License Agreement ("Agreement") precluded any claim for breach of

28   implied warranty, or recovery of consequential damages (including those arising from any claim

1   of negligence).  *Id*.  Intuit also argued that any tort recovery—specifically negligence, strict

2   products liability and trespass to chattels— was unavailable because of the economic loss

3   doctrine.  *Id*.  Moreover, Intuit argued that the trespass to chattels cause of action was subject to

4   dismissal because Plaintiffs consented to the alleged incursion.  *Id*.

5           On June 6, 2008, Plaintiffs served their first set of interrogatories, requests for admissions

6   and requests for production of documents on Intuit.  *Quadra Decl.* ¶ 18.  On June 18, 2008 Intuit

7   served its first set of interrogatories and requests for production on each Plaintiff.  *Id*.  The parties

8   prepared responses to these discovery requests and met and conferred regarding discovery

9   responses while briefing the motion to dismiss and negotiating the terms of the Settlement

10  Agreement.  *Id*.

11          Plaintiffs filed their opposition to the motion to dismiss on July 3, 2008.  *Quadra Decl.*

12  ¶ 19.  In their Opposition, Plaintiffs asserted that the disclaimer of warranties in the Agreement

13  was unconscionable, the limited remedy failed its essential purpose, and the bar on consequential

14  damages was unenforceable and unconscionable.  *Id*.  Plaintiffs further argued that the economic

15  loss doctrine did not bar their negligence, strict products liability and trespass to chattels claims

16  because the loss of computer files constitute damage not only to physical property, but also to

17  "other" property.  *Id*.  Plaintiffs also argued that they had stated a claim for relief for negligence,

18  strict products liability, trespass to chattels and a violation of California Business & Professions

19  Code Sections 17200, *et seq.  Id*.

20          By the time briefing was completed on Intuit's motion to dismiss, the parties had reached

21  agreement on the terms of a Settlement to propose to the Court.  *Quadra Decl.* ¶ 20.  The motion

22  to dismiss was continued to afford the parties an opportunity to finalize a formal Settlement

23  Agreement.  *Id*.

24          The parties reached agreement on the substantive terms of settlement on July 28, 2008 and

25  executed the Memorandum of Understanding on July 29, 2008.  Thereafter, the parties negotiated

26  the comprehensive Settlement Agreement, which was executed between August 21, 2008 and

27  August 22, 2008.  *Quadra Decl.* ¶ 21.

28          This Court held a preliminary approval hearing on September 18, 2008.  In a letter filed

1    October 17, 2008, Intuit informed the Court that, following the September 18 hearing, Intuit

2    discovered that the number of registered users of QuickBooks 2006 for Mac was greater than the

3    30,010 it had previously reported. Docket No. 47.  This discovery led Intuit and its counsel to

4    conduct an investigation and discuss the results with Class Counsel.  In light of notice concerns

5    raised by Intuit's discovery of contact information for additional potential Class members, the

6    parties agreed to change the Settlement to a claims-made structure with individual releases (as

7    opposed to a classwide release).  The parties further agreed that any QuickBooks 2006 for Mac

8    user (whether registered or not) affected by the alleged Malfunction could elect to participate in

9    the Settlement.

10           On November 7, 2008, the parties submitted a revised Settlement Agreement, revised

11   class notices and a claim form, and a revised proposed order preliminarily approving the

12   Settlement to reflect the claims-made structure of the new agreement.  Thereafter, this Court

13   issued an Order dated November 20, 2008 mandating two minor changes to the Settlement

14   Agreement.  Docket No. 50.  The parties made the required changes and filed further revised

15   documents on January 6, 2009.  Docket Nos. 51-52.  In an Order dated January 14, 2009, this

16   Court granted preliminary approval of the proposed Settlement Agreement, provisionally certified

17   the proposed class, and approved the proposed forms of notice, and set the Fairness Hearing to be

18   held September 3, 2009.  Docket No. 53.  On January 23, 2009, prior to the dissemination of

19   notice to the Class, the Court granted a stipulation continuing the Fairness Hearing to September

20   10, 2009.  Docket No. 57.

21   **IV.    THE SETTLEMENT AND CLAIMS MADE TO DATE**

22           The Settlement provides for full, 100% reimbursement of all out of pocket expenses for

23   data recovery attempts for Class members submitting timely claims.  Such expenses include

24   hardware, software, and payments to third party technicians for recovery of data.  Users who do

25   not submit claims are not bound by the release, and are free to pursue their own claims against

26   Intuit.  There is no cap or limitation on these reimbursements.  *Quadra Decl.* ¶ 24, Exh. E.

27           In addition, Class members submitting claims may receive up to $1,500 for time that they

28   or their employees spent reconstructing and recovering data, plus up to $1,500 for payments to

third parties to reconstruct any data that could not be recovered by the in-house team.  Unlike the out-of-pocket data recovery expenses, there is a "soft cap" of $500,000 on reimbursement for these expenses.  *Quadra Decl.* ¶ 24, Exh. E.

The Settlement Agreement also provides that Intuit will provide a free upgrade to QuickBooks Pro 2007 for Mac (retailing at approximately $199.95 USD) to all Class members who have any damages claims that are approved by the claims administrator.

Notice of the Settlement was sent via first class mail and email to all 43,644 known users of the product on June 2, 2009.  *See Keough Decl.* ¶¶ 6-7.  Despite Intuit's contention that only approximately 1,000 users were affected by the alleged Malfunction, the parties agreed that notice would be sent to all 43,644 known users.  Notice was successfully delivered to more than 96% of the noticed population.  *See Keough Decl.* ¶ 9.   In addition, Plaintiffs' counsel sent an email reminder to potential Class members whose email addresses they had.  *Selbin Decl.* ¶ 11(j).  Anyone who chooses not to submit a claim will not be bound by the terms of the Settlement and will not release any claims.  *Quadra Decl.* ¶¶ 24, Exh. E.

The last day to submit claims is August 31, 2009.  As of August 12, 2009, 360 claims were submitted, representing total claimed data recovery costs of $286,581.88. *Keough Decl.* ¶ 13.  The parties anticipate that additional claims will be filed before the claims deadline.

## V.     CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS IS WELL SUPPORTED

### A.     Legal Standard

Plaintiffs asserted claims under California law, and California law also governs the award of attorneys' fees here.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  California recognizes the common fund doctrine for the award of attorneys' fees to a prevailing plaintiff whose efforts result in creation of a fund benefiting others.  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977).  Under both California and Ninth Circuit precedent, a court may exercise its discretion to award attorneys' fees by applying either the lodestar/multiplier method or the percentage-of-the-fund method.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253 (2001); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Fischel v. Equitable Life*

1   *Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino*, 290 F.3d at 1047).

2          Counsel who represent a class and produce a benefit for the Class members are entitled to

3   be compensated for their services, especially where as here the defendant has stipulated to the

4   payment in addition to any recovery to the Class.[1]  Indeed, as the California Supreme Court has

5   explained, in a purely contingent case like this, a fee based upon lodestar and enhanced by a

6   multiplier "constitutes earned compensation; unlike a windfall, it is neither unexpected nor

7   fortuitous.  Rather, it is intended to approximate market-level compensation for such services,

8   which includes a premium for the risk of nonpayment or delay in payment of attorney fees."

9   *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (Cal. 2001).  As such, "a contingent fee must be higher

10  than a fee for the same legal services paid as they are performed."  *Id.* at 1132.

11         California courts approve the use of a lodestar enhanced by a multiplier in calculating and

12  awarding attorneys' fees and costs.  *See, e.g.*, *Serrano*, 20 Cal. 3d at 48, n.23; *Dunk v. Ford*

13  *Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *Lealao v. Beneficial California, Inc.*, 82 Cal.

14  App. 4th 19, 45 (2000).  Lodestar is derived by multiplying the number of hours reasonably

15  expended by counsel by a reasonable hourly rate.  *McElwaine v. US West, Inc.*, 176 F.3d 1167,

16  1173 (9th Cir. 1999); *PLCM Group v. Drexler*, 22 Cal.4th 1084, 1095 (2000). After examining

17  the time and labor required of the attorneys, the lodestar may then be enhanced using a multiplier

18  after considering relevant factors, including the following:  (1) the results obtained on behalf of

19  the class by plaintiff's counsel; (2) the contingent nature of the case; (3) the novelty and difficulty

20  of the questions involved; (4) the skill and quality of representation; and (5) the extent to which

21  the litigation precluded other employment by the attorneys.  *See, e.g.*, *Serrano*, 20 Cal. 3d at 48;

22  *Lealao*, 82 Cal. App. 4th at 26; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th

23  Cir. 1975); *Vizcaino*, 290 F.3d at 1052–54.

24         Where, as here, the Settlement has a claims-made structure, and with no upper cap on

25  certain forms of relief, the Settlement cannot be characterized as a true "fund" for the purpose of

26  a percentage-of-the-fund fee analysis.  In the absence of such a true common fund, the requested

27  _____

[1] The Settlement Agreement provided that Intuit would pay attorneys' fees separate and apart from the
class fund.  The parties thereafter agreed upon the amount to be paid in fees subject to the Court's
28  approval.

1   attorneys' fees lend themselves more readily to a lodestar/multiplier analysis.  Further, because

2   the attorneys' fees will be assessed against Intuit without reducing the relief available to

3   consumers, the lodestar method is more appropriate.  *See Hanlon,* 150 F.3d at 1029 (noting that

4   lodestar method is used more often in case where "there is no way to gauge the net value of the

5   settlement or any percentage thereof.")

6        Regardless of whether a court applies the lodestar or the percentage method, the

7   fundamental requirement is that the resulting fee is fair and reasonable.  *Staton v. Boeing Co.*,

8   327 F.3d 938, 963-64 (9th Cir. 2003).  As demonstrated below, Class Counsel's request for

9   $550,000 in attorneys' fees and costs is fair and reasonable.

10       **B.     Class Counsel's Fee Request Is Appropriate Under the Lodestar Method.**

11       The lodestar method provides courts an objective basis upon which to determine the value

12   of the services provided by counsel.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

13   Multiplying the numbers of hours counsel worked by a reasonable hourly rate establishes the

14   lodestar.  After examining the time and labor required, the Court may apply a multiplier to the

15   lodestar in light of certain factors, including:

16       (1) the time and labor required; (2) the novelty and difficulty of the
17       questions involved; (3) the requisite legal skill necessary; (4) the
         preclusion of other employment due to acceptance of the case; (5)
18       the customary fee; (6) whether the fee is fixed or contingent; (7) the
         time limitations imposed by the client or the circumstances; (8) the
19       amount at controversy and the results obtained; (9) the experience,
         reputation, and ability of the attorneys; (10) the 'undesirability' of
20       the case; (11) the nature and length of the professional relationship
         with the client; and (12) awards in similar cases.

21   *Kerr*, 526 F.2d at 70; *see also Hanlon*, 150 F.3d at 1029 (a lodestar figure "may be adjusted

22   upward or downward to account for several factors including the quality of the representation, the

23   benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

24   nonpayment") (citing *Kerr*).

25       Application of the lodestar method here confirms the reasonableness of Plaintiffs' fee

26   request.

27       **1.     Class Counsel's Hourly Rates Are Reasonable.**

28       The hourly rates that Plaintiffs seek for their counsel are reasonable.  In assessing the

1    reasonableness of an attorney's hourly rate, courts should consider the prevailing market rate in

2    the community for similar services by lawyers of reasonably comparable skill, experience, and

3    reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984). Courts look to the forum in

4    which the District is located to determine the hourly rates that should apply. *Camacho v.*

5    *Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[a]ffidavits of the plaintiffs'

6    attorney[s] and other attorneys regarding prevailing fees in the community, and rate

7    determinations in other cases[, particularly those setting a rate for the plaintiff's' attorney,] are

8    satisfactory evidence of the prevailing market rate" (quoting *United Steelworkers of Am. v. Phelps*

9    *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990)).

10        In this case, Counsel are highly regarded members of the bar who are experienced in the

11   area of consumer class actions and complex class action litigation. *Quadra Decl.*, ¶¶ 2-13; *Selbin*

12   *Decl.*, ¶¶ 2-8. Class Counsel's customary rates, which were used for purposes of calculating

13   lodestar here, are based on prevailing fees in this District and have been approved in the Northern

14   District of California and other Courts. *Id.* For example, in July 2008, Judge Mary Wiss (San

15   Francisco Superior Court) approved in *Hall v. Cinema 7, Inc.* the same rates that MEQ attorneys

16   James Quadra ($625), Rebecca Bedwell-Coll ($575), and Robert Sanford ($575) have used to

17   calculate their lodestar in this case. *Quadra Decl.* ¶ 12, Ex. A. In addition, in February 2009,

18   Judge Richard Kramer (San Francisco Superior Court) found that these same rates were

19   reasonable for Mr. Quadra, Ms. Bedwell-Coll and Mr. Sanford in an antitrust class action, *In re*

20   *Electrical Carbon Product Cases.* *Id.* Moreover, Judge Thelton Henderson (Northern District of

21   California) approved MEQ rates on July 10, 2009. *Id.* at ¶ 13, Ex. B. MEQ also charges these

22   rates to commercial clients on an hourly basis. *Id.* at ¶ 8.

23        Similarly, last year, Judge Leighton of the Western District of Washington approved

24   LCHB's rates (including Mr. Selbin's ($625) and Ms. Law's ($425)), after specifically reviewing

25   them for reasonableness, in *Grays Harbor Adventist Christian School v. Carrier Corp.*, 2008 WL

26   1901988, at *3 (W.D.Wash. Apr. 24, 2008). *Selbin Decl.* ¶ 15, Ex. D. Likewise, on January 9,

27   2009, Judge Coughenour of the Western District of Washington approved LCHB's rates

28   (including Mr. Selbin's), in *Pelletz, et al. v. Weyerhaeuser et al.*, Case No. C08-0334 JCC. *Id.* at

1    Ex. E.  Finally, LCHB has several sophisticated commercial clients, each of which pays the

2    current hourly rates LCHB has used to calculate its lodestar in this matter. *Id*., ¶ 16, Ex. E.

3         All of the above demonstrates that Class Counsel's hourly rates are reasonable.

4              **2.       The Number of Hours Class Counsel Worked is Reasonable.**

5         The number of hours that Plaintiffs are claiming is reasonable.[2]  Both firms made every

6    effort to prevent the duplication of work or inefficiencies that might have resulted from having

7    two firms working on the case.  Co-counsel's meetings to discuss the case were kept to a

8    minimum and based on agendas prepared in advance.  *Quadra Decl.* ¶ 22; *Selbin Decl.* ¶ 17.

9    Assignments were made for specific tasks or activities so that it was always clear which firm had

10   primary responsibility over each task.  *Id*.

11        Class Counsel spent 94 hours conducting legal research in this case, with MEQ spending

12   49.7 hours and LCHB spending 44.3 hours.  *Bedwell-Coll Decl.* ¶ 3.  Approximately one third of

13   this time was spent prior to filing the initial complaint.  *Id*.  This is a unique case, alleging that the

14   data contained in computers constitutes "property," and it was critical to conduct thorough

15   research into possible causes of action.  The remainder of the research time related primarily to

16   opposing Intuit's Motion to Dismiss, amending the complaint, and bringing a Motion to Compel

17   Intuit to provide class member contact information, which Judge Joseph Spero granted in part.

18   *Id.*

19        Class Counsel spent 223.8 hours preparing pleadings in this matter, with MEQ spending

20   62 hours and LCHB spending 161.8 hours.  *Bedwell-Coll Decl.* ¶ 4.  These pleadings included the

21   Complaint, the Opposition to Motion to Dismiss, the First Amended Complaint, the Motion to

22   Compel, the Motion for Preliminary Approval, and the Motion for Final Approval.  *Id*.  Some

23   research time inevitably was included in this category instead of the prior category, as researching

24   and drafting frequently can be so closely intertwined that they are impossible to separate.  *Id*

---

25   [2] It is well established that Plaintiff's counsel is "not required to record in great detail how each minute of
     his time was expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  Instead, counsel need only
26   "identify the general subject matter of his time expenditures."  *Id.* (citations omitted); *see also Fischer v.
     SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (concluding that "a summary of the time spent on a
27   broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of
     documentation).  If the Court prefers to review Class Counsel's detailed time records, Class Counsel will
28   willingly make them available for *in camera* review.

- 10 -          MEMORANDUM IN SUPPORT OF MOTION FOR
                                                                      ATTORNEYS' FEES AND COSTS
                                                                      CV-07-6452 WHA

1    However, there is no time entry duplication between the Research category and Preparation of

2    Pleadings category.  *Id.*

3        Class Counsel spent 34.9 hours on discovery matters, with MEQ spending 34 hours and

4    LCHB spending .9 hours.  *Bedwell-Coll Decl.* ¶ 5.  Conducting discovery was necessary to

5    perform Plaintiffs' due diligence, confirm the facts, assess the risks of litigation and evaluate the

6    fairness of the proposed Settlement.  When Intuit's responses were inadequate, Class Counsel

7    prepared meet and confer correspondence and negotiated with Intuit regarding its responses.  *Id.*

8    Class Counsel also met and conferred with defense counsel regarding e-discovery as required,

9    and prepared the required initial disclosures.  *Id.*  Finally, Class Counsel prepared and served

10   responses to Intuit's Interrogatories and Requests for Production of Documents directed to the

11   three named class representatives in this matter.  *Id.*  The division of labor on this extensive

12   discovery work exhibits the efficiency of the two firms working together on this case—34 of the

13   34.9 hours spent on this discovery work was done by one firm, with the other providing feedback

14   and comments when helpful.  *Id.*

15       The biggest category of time spent by Class Counsel, 320.4 hours (193 for MEQ and

16   127.4 for LCHB), was the time spent on mediation and settlement issues, negotiations regarding a

17   lengthy term sheet and an even lengthier full Settlement Agreement, negotiations regarding the

18   preliminary approval papers, the form and mechanism of Class notice, the form of order to

19   propose to the Court, coordination with the Canadian action, and other similar efforts relating to

20   resolving this case. *Bedwell-Coll Decl.* ¶ 6.  The time that Class Counsel spent on these tasks was

21   necessary given the complexity of the case and the Settlement terms and the often contentious

22   nature of the negotiations.  *Quadra Decl.*, ¶ 21.  Contested issues included the method of notice,

23   termination provisions, the claims period, and communication (by both parties) with potential

24   Class members.  *Id.*

25       Class Counsel spent 104.5 hours communicating with class representatives and Class

26   members, with MEQ spending 29.1 hours and LCHB spending 75.4 hours.  *Bedwell-Coll Decl.* ¶

27   7.  While the aforementioned negotiations were ongoing, it was necessary to communicate with

28   class representatives and Class members regarding the status of the matter.  *Id.*  Class

                                     MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND COSTS
CV-07-6452 WHA

1    representatives signed the term sheet, and at least two different versions of the Settlement

2    Agreement. *Id.* Once the claims process began, Class Counsel spoke to multiple Class members

3    making inquiries or needing assistance in preparing claims. *Id.*

4          Class Counsel spent 59.4 hours (9.9 hours for MEQ and 49.5 hours for LCHB) preparing

5    for and attending three court appearances in this matter, and one telephonic hearing. *Bedwell-*

6    *Coll Decl.* ¶ 8. Preparation included reviewing papers, consulting with one another regarding

7    approaches, and travel time to appear at the hearings. *Id.*

8          Class Counsel spent 93.9 hours (58 hours for MEQ and 35.9 hours for LCHB)

9    negotiating the issue of reasonable attorneys' fees with Intuit and researching and preparing this

10    motion for fees. *Bedwell-Coll Decl.* ¶ 9.[3]

11          There were only 21.1 hours of time spent on miscellaneous tasks, including internal

12    communication and strategic planning, scheduling, certain correspondence with Intuit's counsel,

13    and review of hearing transcripts, that did not fall squarely into one of the foregoing categories.

14    *Bedwell-Coll Decl.* ¶ 10.

15          In sum, Class Counsel spent 952 hours litigating this case to this point, for a cumulative

16    lodestar of $463,338.50. *Bedwell-Coll Decl.* ¶ 11. The total hours spent by each attorney and

17    paralegal, broken down by the categories set forth above, and applying hourly rates, are attached

18    as Exhibit B to the Selbin Declaration (LCHB) and Exhibit C to the Quadra Declaration (MEQ).

19          Not only were the hours that Class Counsel put into this case reasonable given Intuit's

20    defense of this action, but they also served several the public good by providing substantial

21    compensation to consumers who were harmed by the alleged Malfunction of Intuit's QuickBooks

22    2006 for Mac program. While Intuit provided some compensation to Class members prior to

23    reaching the Settlement, the relief was more limited than what the Settlement provides. Class

24    Counsel's efforts have succeeded in serving important public purposes and in compensating the

25    Class for the damage it suffered. Thus, Class Counsel respectfully submits that this Court may

26

---

27    [3] Plaintiffs are entitled to seek fees for the efforts their counsel make in obtaining fees. *See Camacho*,
523 F.3d at 981 ("it would be inconsistent to dilute a fees award by refusing to compensate attorneys for

28    the time they reasonably spent in establishing their rightful claim to the fee")(citations omitted);
*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004).

1    and should find that all of the hours Class Counsel spent in this action were reasonably incurred.

2          **C.      A Modest Multiplier is Warranted**

3          In this case, the requested fee amount of $550,000 includes both attorneys' fees and costs.

4    Of the requested $550,000 total, $18,010.98 is for reimbursement of costs, leaving $531,989.02

5    for attorneys' fees.

6          For purposes of the multiplier analysis, Class Counsel's lodestar is best conceived in two

7    categories: (1) lodestar generated during the investigation, litigation and settlement of the

8    substantive issues in the case; and (2) lodestar generated during the negotiation of attorneys' fees

9    and preparation of the present motion.

10         It is well-established in California that plaintiffs and their attorneys may recover attorney

11   fees for fee-related litigation and negotiation. *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553,

12   580 (2004).  In *Graham*, the California Supreme Court further held that "fees on fees" may be

13   enhanced when a positive multiplier is warranted in light of the relevant factors. *Id*.  In so

14   holding, the Court, recognized that a rule precluding multipliers on such fees is "not [in] harmony

15   with the principle that the awarding of attorney fees and the calculation of attorney fee

16   enhancements are highly fact specific matters best left to the discretion of the trial court." *Id*. at

17   581.  The *Graham* Court noted, however, that the multiplier appropriate on the fee portion of the

18   lodestar may be lower than the multiplier on the substantive lodestar, because certain

19   enhancement factors, such as "results obtained" apply only to time spent on the substantive

20   claims. *Id*. at 582.  In light of California's controlling precedent and the facts of this case, Class

21   Counsel do not request a multiplier on their fee-based lodestar.

22         Class Counsel seek a total fee award of $531,989.02 ($550,000 minus litigation costs of

23   $18,010.98).  Class Counsel's total hours are 952 and total lodestar is $463,338.50.  Of that total,

24   Class Counsel devoted 93.9 hours and $50,847.50 in lodestar to fee issues.  Class Counsel

25   devoted 858.1 hours and $412,491.00 in lodestar to Plaintiffs' substantive claims.  Subtracting the

26   fee-based lodestar (without a multiplier) of $50,847.50 from the total requested attorneys' fees of

27   $531,989.02 leaves $481,141.52 to compensate Class Counsel for their work on the investigation,

28   litigation, and settlement of Plaintiffs' substantive claims.  Thus, the requested fee award reflects

1    a modest multiplier of less than 1.2 on Class Counsel's substantive lodestar of $412,491.00.

2         Consideration of the relevant enhancement factors demonstrates that the modest multiplier

3    requested here is reasonable and warranted.

### 1.     The Results Achieved

5         As discussed above, the Settlement provides extraordinary relief to the Class.  The

6    Settlement provides Class members with substantial benefits by providing up to 100%

7    reimbursement of Class members' out-of-pocket expenses incurred to restore data lost as a result

8    of the alleged Software Bug.  In addition, the Settlement provides a free upgrade to Intuit's

9    QuickBooks 2007 for Mac program, which has a retail value of $199.95.  Importantly, the

10   Settlement provides relief in the form of cash and an actual product upgrade, as opposed to

11   coupons or other forms of credit.

12        California courts have long recognized that the result obtained by Class Counsel is a

13   principal factor in considering an enhanced lodestar multiplier:

> The "results obtained" factor can properly be used to enhance a
> lodestar calculation where an exceptional effort produced an
> exceptional benefit.  In other words, as stated by a leading treatise,
> "[t]he California cases appear to incorporate the 'result obtained'
> factor into the 'quality' factor: *i.e.*, high-quality work may produce
> greater results in less time than would work of average quality, thus
> justifying a multiplier."  (Pearl, *Cal. Attorney Fee Awards* (Cont.
> Ed. Bar 2d ed 1998) § 13.6, p. 327).

19   *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001) (alteration in original).  The

20   outstanding results achieved by Class Counsel here–up to 100% of class damages in some

21   instances–fully justify the requested fee.  *See Quadra Decl*. ¶ 24, Exh. E.

### 2.     The Contingent Nature of This Case

23        From the outset of the case to the present, prosecution of this action has involved financial

24   risk for Class Counsel.  Class Counsel prosecuted this matter on a contingent basis, and placed at

25   risk their own resources to do so, with no guarantee of recovery.  *Quadra Decl*. ¶ 25; *Selbin Decl*.

26   ¶¶ 20-21.  There was no guarantee that Plaintiffs would eventually succeed in substantive motion

27   practice, at trial, or on appeal.  Defendants have at no time conceded liability, the appropriateness

28   of class certification, the availability of damages, or the proper measure thereof.  In short, since

1   the beginning of this litigation, recovery by Plaintiffs was far from assured.  Despite such

2   challenges, Class Counsel succeeded in reaching a Settlement in which Intuit will provide

3   immediate, substantive relief for the Class.

### 3.      The Novelty and Difficulty of Questions Involved

5          The lodestar amount may be enhanced to account for, in part, the novelty of the questions

6   involved, the skill displayed in presenting them, and the contingent nature of the fee award.

7   *Serrano*, 20 Cal. 3d at 49.  In this case, Plaintiffs faced the novel issue of whether computer data

8   could constitute "other property" under the economic loss doctrine.  Intuit argued that computer

9   files were not "property" and that the software was a "component part" of a computer.  Both

10  issues, presented in Intuit's Motion to Dismiss, are unresolved under California and Ninth Circuit

11  law and by no means certain victories for the Plaintiffs.  Intuit further argued that Class members

12  had disclaimed warranties and consequential damages in the licensing agreement for the

13  Software.  The presence of these novel issues in a developing area of the law weighs in favor of

14  the modest multiplier Class Counsel seeks here.

### 4.      The Experience, Reputation and Ability of Counsel

16         The reputation, experience, and ability of Class Counsel were essential to success in this

17  litigation.  As noted in the declarations submitted herewith, Class Counsel have substantial

18  experience in consumer class action litigation.  *Quadra Decl.*, ¶¶ 2-13; *Selbin Decl.*, ¶¶ 2-8.

19  Class Counsel's skills in developing the factual record and convincing Intuit of its litigation

20  exposure under California law were essential to achieving this Settlement.  Class Counsel's

21  history of aggressive, successful prosecution of consumer class actions made credible their

22  commitment to pursue this litigation until it provided a fair result for the Class members.

23  Through their skill, reputation, and ability, Class Counsel were able to obtain a Settlement that

24  provides an outstanding result for Class members.

### D.      Class Counsel's Request For Reimbursement of Modest Costs Is Also Reasonable

27         In addition to the fees incurred, Class Counsel incurred $18,010.98 in out of pocket

28  expenses.  *Quadra Decl.*, Ex D; *Selbin Decl.*, ¶ 18, Ex. C.  The Ninth Circuit allows recovery of

1   pre-settlement litigation costs in the context of class action settlement.  *See Grays Harbor*, 2008

2   WL 1901988 at *4 (citing *Staton*, 327 F.3d at 974); *see also In re Businessland Sec. Litig.*, Case

3   No. 90-20476 RFP slip op. at 4 (N.D. Cal. 1991) and cases cited therein.

4          Over the course of litigation and intensive settlement discussions, Class Counsel have

5   incurred substantial costs on briefing, discovery, travel, computer research, photocopies, faxes,

6   postage and telephone charges.  The costs incurred by Class Counsel benefited the Class and are

7   appropriate for reimbursement.  In light of the expenses Class Counsel have had to incur to bring

8   this case to its current settlement posture, Class Counsel's request for a total award of

9   $550,000.00, inclusive of costs, is reasonable.

10  **VI.    CONCLUSION**

11         For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant

12  Plaintiffs' Uncontested Motion for Attorneys' Fees and Costs, and award Class Counsel

13  Moscone, Emblidge & Quadra and Lieff Cabraser Heimann & Bernstein $531,989.02 in fees and

14  $18,010.98 in costs, for a total of $550,000.00.

15

16  Dated:  August 13, 2009              Respectfully submitted,

17
                                        By: /s/   Kristen E. Law
18                                              Kristen E. Law

19                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        Michael W. Sobol
20                                      Kristen E. Law
                                        275 Battery Street, 30th Floor
21                                      San Francisco, CA  94111-3339
                                        Telephone:  (415) 956-1000
22                                      Facsimile:  (415) 956-1008

23                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        Jonathan D. Selbin
24                                      780 Third Avenue, 48th Floor
                                        New York, NY  10017-2024
25                                      Telephone:  (212) 355-9500
                                        Facsimile:  (212) 355-9592
26

27

28

1       MOSCONE, EMBLIDGE & QUADRA, LLP
        James A. Quadra
2       Rebecca Bedwell-Coll
        Robert Sanford
3       220 Montgomery Street, Ste. 2100
        San Francisco, California 94104
4       Telephone:  (415) 362-3599
        Facsimile:  (415) 362-2006
5
        *Attorneys for Plaintiffs and the Proposed Plaintiff Class*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28