James A. Quadra (SBN 131084)
Rebecca Bedwell-Coll (SBN 184468)
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Ste. 2100
San Francisco, California 94104
Telephone: (415) 362-3599
Facsimile: (415) 362-2006
Email: quadra@meqlaw.com
Email: bedwell-coll@meqlaw.com

Michael W. Sobol (State Bar No. 194857)
Kristen E. Law (State Bar No. 222249)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: msobol@lchb.com
Email: klaw@lchb.com

Jonathan D. Selbin (SBN 170222)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson St., 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: jselbin@lchb.com

*Attorneys for Class Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CREATE-A-CARD, INC.; AGSJ, INC.; and PHILANTHROPIC FOCUS, LLC, on behalf of themselves and all those similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>INTUIT, INC.,<br><br>                    Defendant. | Case No.  CV-07-6452 WHA<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:        September 10, 2009<br>TIME:        8:00 a.m.<br>DEPT:        Courtroom 9, 19th Floor<br>JUDGE:      The Honorable William H. Alsup |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

    A.  Factual Background ................................................................................... 2

    B.  Procedural History .................................................................................... 4

III.  SUMMARY OF KEY SETTLEMENT TERMS ...................................................... 6

    A.  The Settlement Class ................................................................................. 6

    B.  Cash Reimbursement And Product Upgrade For Class Members ............. 7

    C.  Attorneys' Fees And Costs ........................................................................ 8

    D.  Settlement Administration And Notice ...................................................... 8

    E.  Right To Refrain From Participating And To Object To The Settlement .......................................................................................... 9

IV.  THE CLASS ACTION SETTLEMENT PROCESS ................................................. 9

V.  THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED ................................................................................ 10

    A.  Notice Standards ..................................................................................... 10

    B.  The Notice Program Has Been Fully Implemented And Meets Applicable Standards ............................................................................. 10

VI.  FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...................... 13

    A.  The Settlement Is Presumed To Be Fair, Adequate And Reasonable ....... 14

    B.  All Of The Relevant Factors Support Final Approval Of The Settlement ............................................................................................... 14

        1.  The Value of the Settlement, and the Substantial Benefits it Provides to Class Members, Support Final Approval .................. 14

        2.  The Risks Inherent in Continued Litigation Support Final Approval .......................................................................... 15

        3.  The Discovery and Investigation Completed Before Settlement Favor Final Approval ............................................. 15

        4.  The Terms and Conditions of the Proposed Settlement Favor Final Approval .......................................................... 16

        5.  The Recommendation of Experienced Class Counsel Supports Final Approval ..................................................... 16

        6.  The Expense and Likely Duration of Litigation in the Absence of a Settlement Supports Final Approval ..................... 16

        7.  The Presence of Good Faith and the Absence of Collusion Favors Final Approval ....................................................... 17

        8.  Class Members' Positive Reaction Supports Final Approval ....... 18

**TABLE OF CONTENTS**
**(continued)**

Page

VII.    THE COURT CAN APPROPRIATELY ENTER A FINAL ORDER ON
        BEHALF OF THE CLASS .................................................................................. 18

VIII.   CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acosta v. TransUnion, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................ 17

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................ 16

*Bryan v. Pittsburgh Plate Glass Co.*,
   494 F.2d 799 (3d Cir 1974) ........................................................................................ 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................. passim

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................... 10

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) .................................................................................. 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 13

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .................................................................................... 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................. 10, 11

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................................... 17

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................................... 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................ 13, 14

## STATUTES

California Business & Professions Code
   Section 17200, *et seq.* ............................................................................................ 4, 5

## RULES

Federal Rules of Civil Procedure
   Rule 23(b)(1) ............................................................................................................... 10
   Rule 23(b)(3) ............................................................................................................... 10
   Rule 23(e) .................................................................................................................... 13
   Rule 23(e)(1)(B) .......................................................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

**TREATISES**

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
§ 11.41 ............................................................................................................... 9, 14
§ 11.43 ............................................................................................................... 17

*Manual for Complex Litigation* (*Fourth*)
§§ 21.632–34 (2004) ........................................................................................... 9

Manual for Complex Litigation
§ 21.311 ............................................................................................................. 10
§ 21.312 ........................................................................................................ 10, 11
§ 30.42 ............................................................................................................... 13

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Settlement Agreement in the above-captioned matter and this Court's Preliminary Approval Order, Plaintiffs in the above-titled action will and hereby do move the Court, Honorable William H. Alsup, Judge of the Northern District of California, 450 Golden Gate Avenue, Francisco, California  94102, Courtroom 9, at 8:00 a.m. September 10, 2009, or as soon thereafter as the matter may be heard, for an Order Granting Final Approval of the Settlement Agreement.

This motion is supported by Class Counsel's Memorandum of points and authorities, below, and by the supporting papers and exhibits filed herewith.

Without admitting any of the allegations in the action or set forth herein, Defendant Intuit Inc. supports Plaintiffs' motion for final settlement approval in the context of the parties' proposed Settlement.

## I.    <u>INTRODUCTION</u>

Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, submitted in revised and final form on January 6, 2009. The Settlement resolves all claims in this matter against Defendant Intuit, Inc. ("Intuit").  Only those persons who elect to submit a claim and receive Settlement benefits will release any claims against Intuit.

As described in detail in Plaintiffs' motion for preliminary approval of the Settlement,[1] Plaintiffs Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC brought this action on behalf of themselves and a worldwide class of registered owners of Intuit's QuickBooks Pro 2006 for Mac or QuickBooks New User Edition 2006 for Mac (the "Software"), whose files or data became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of opening the Software and receiving a defective update signal from Intuit which triggered a Software design error ("the Software Bug") and damaged their data (the "Malfunction").

Initial settlement discussions were held in February 2008, before the Honorable

---

[1] Plaintiffs incorporate by this reference the motion for preliminary approval of the settlement, filed August 26, 2008, Docket No. 34, and all supporting documents.

Edward A. Infante (Ret.), a former magistrate judge of this Court, and culminated with agreement to the substantive terms of Settlement in July 2008. In the months that ensued, the parties negotiated a comprehensive Settlement Agreement and forms of notice. In sum, and as detailed below, the Settlement provides 100% cash reimbursement for certain data recovery expenses (including data recovery software and hardware, and third party vendor assistance with data recovery) incurred to restore data lost when the alleged Software Bug in QuickBooks 2006 for Mac was activated. In addition, Class members can receive cash payment for in-house data recovery efforts and in-house and third party data reconstruction efforts. Finally, eligible Class members will receive a free upgrade to QuickBooks for Mac 2007, which retailed for $199.95.

As of the date of filing, none of more than 40,000 potential Class members who received notice of the Settlement has submitted an objection. Under the Settlement Agreement, eligible claimants will receive significant monetary benefits, including complete reimbursement of out-of-pocket costs incurred to recover computer data lost as a result of the Malfunction that gave rise to this action. Intuit customers who do not file settlement claims, either intentionally or because they are unaware of the Settlement, will not release any claims they may have against Intuit.

With this motion, Plaintiffs seek final approval of the Settlement Agreement. As discussed in detail below, the proposed Settlement satisfies all criteria for final settlement approval under Ninth Circuit law.

**II.** **STATEMENT OF FACTS**

**A.** **Factual Background**

Plaintiffs brought this action on behalf of themselves and a worldwide class of registered owners of Intuit's QuickBooks Pro 2006 for Mac or QuickBooks New User Edition 2006 for Mac (the "Software"), whose files or data became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of opening the Software and receiving a defective update signal from Intuit which triggered a Software design error ("the Software Bug") and damaged their data (the "Malfunction").

Plaintiffs alleged that the Software has a built-in automatic update mechanism that is activated when the Software is opened by the user. Upon launch, the Software automatically

1    contacts Intuit's server through the Internet to download any updates to the Software that may be

2    available.  Plaintiffs further alleged that on Saturday, December 15, 2007, Intuit sent a faulty

3    signal to all QuickBooks for Macintosh users, including Plaintiffs.  This signal, which was read

4    by users' computers upon opening QuickBooks, triggered an error in the Software that caused the

5    wholesale deletion of not only the user's QuickBooks data (if it was stored on the user's desktop),

6    but also all other files and data that was stored on the user's desktop.  Intuit's discovery

7    responses, which described the Software Bug's triggering mechanism, confirmed Plaintiffs'

8    theory.

9         Plaintiffs alleged that beginning on Sunday, December 16, 2007 at 1:40 a.m., postings

10   were made to Intuit's online message board about the problem.  Plaintiffs further alleged that in

11   January 2008, the Software Bug was again triggered in the case of at least one user who had

12   launched the Software at a restricted Internet "wi-fi hotspot" when the Software did not receive a

13   proper update response as a result of the hotspot's restricted access to the Internet.  Intuit

14   subsequently sent a "patch" to its users to completely disable the faulty Software's auto-update

15   mechanism, thereby disabling the Software Bug.

16        Plaintiffs alleged that as a result of a malfunctioning of the Software's automatic update

17   mechanism caused by the Software Bug, the data or files residing on their Macintosh desktops

18   became inaccessible or were damaged, corrupted, or lost, either temporarily or permanently, and

19   as a result, they suffered damages.  Plaintiffs alleged that users of the Software lost customer lists,

20   chapters of books they were writing, photo shoots they had been paid to complete, logos they had

21   designed, months of billing and other valuable work product.

22        The impact of the Malfunction was uniform—upon opening QuickBooks, users received a

23   message that an update was available, and were asked whether the user wished to download the

24   update.  Regardless of whether the user clicked "yes" or "no," the damage had already been

25   done—the faulty signal had already been sent and triggered the Software Bug that deleted all files

26   on the user's desktop.

27        Intuit has consistently denied liability and asserted multiple affirmative defenses.

28

### B.   Procedural History

Class Counsel was first contacted about this matter in December 2007, when multiple QuickBooks users complained of suffering a sudden loss of their data and files.  Declaration of James A. Quadra, previously submitted August 13, 2009, Docket No. 70-3 ("*Quadra Decl.*") ¶ 14.  In light of the urgency of the situation and the ongoing damage that was believed to be occurring, Plaintiffs acted quickly to draft their Complaint and file it, just six days after the Malfunction manifested.  *Id.*  During that six days, Class Counsel thoroughly investigated and researched this action.  *Id.*

On December 21, 2007, Plaintiffs filed a class action complaint against Intuit, alleging claims for negligence, strict products liability, trespass to chattels, breach of implied warranty and violations of California Business & Professions Code Section 17200, *et seq.*  *Quadra Decl.* ¶ 14.

On February 21, 2008, the parties mediated this case with retired Judge Edward Infante at JAMS.  The parties made progress but did not reach an agreement on terms.  *Quadra Decl.* ¶ 15.  Shortly thereafter, on March 31, 2008, Plaintiffs filed their First Amended Complaint, adding a breach of contract claim against Intuit and clarifying its factual allegations based on their further investigation and research.  *Id.* ¶ 16.

Intuit filed its motion to dismiss on April 17, 2008.  *Quadra Decl.* ¶ 17.  Intuit argued, *inter alia*, that the Software License Agreement ("Agreement") precluded any claim for breach of implied warranty, or recovery of consequential damages (including those arising from any claim of negligence).  *Id.*  Intuit also argued that any tort recovery—specifically negligence, strict products liability and trespass to chattels— was unavailable because of the economic loss doctrine.  *Id.*  Moreover, Intuit argued that the trespass to chattels cause of action was subject to dismissal because Plaintiffs consented to the alleged incursion.  *Id.*

On June 6, 2008, Plaintiffs served their first set of interrogatories, requests for admissions and requests for production of documents on Intuit.  *Quadra Decl.* ¶ 18.  On June 18, 2008, Intuit served its first set of interrogatories and requests for production on each Plaintiff.  *Id.*  The parties prepared responses to these discovery requests and met and conferred regarding discovery responses while briefing the motion to dismiss and negotiating the terms of the Settlement

1    Agreement.  *Id.*

2            Plaintiffs filed their opposition to the motion to dismiss on July 3, 2008.  *Quadra Decl.*

3    ¶ 19.  In their Opposition, Plaintiffs asserted that the disclaimer of warranties in the Agreement

4    was unconscionable, the limited remedy failed its essential purpose, and the bar on consequential

5    damages was unenforceable and unconscionable.  *Id.*  Plaintiffs further argued that the economic

6    loss doctrine did not bar their negligence, strict products liability and trespass to chattels claims

7    because the loss of computer files constitute damage not only to physical property, but also to

8    "other" property.  *Id.*  Plaintiffs also argued that they had stated a claim for relief for negligence,

9    strict products liability, trespass to chattels and a violation of California Business & Professions

10   Code Sections 17200, *et seq.  Id.*

11           By the time briefing was completed on Intuit's motion to dismiss, the parties had reached

12   agreement on the terms of a Settlement to propose to the Court.  *Quadra Decl.* ¶ 20.  The motion

13   to dismiss was continued to afford the parties an opportunity to finalize a formal Settlement

14   Agreement.  *Id.*

15           The parties reached agreement on the substantive terms of settlement on July 28, 2008 and

16   executed the Memorandum of Understanding on July 29, 2008.  Thereafter, the parties negotiated

17   the comprehensive Settlement Agreement, which was executed between August 21, 2008 and

18   August 22, 2008.  *Quadra Decl.* ¶ 21.

19           This Court held a preliminary approval hearing on September 18, 2008.  In a letter filed

20   October 17, 2008, Intuit informed the Court that, following the September 18 hearing, Intuit

21   discovered that the number of registered users of QuickBooks 2006 for Mac was greater than the

22   30,010 it had previously reported. Docket No. 47.  This discovery led Intuit and its counsel to

23   conduct an investigation and discuss the results with Class Counsel.  In light of notice concerns

24   raised by Intuit's discovery of contact information for additional potential Class members, the

25   parties agreed to change the Settlement to a claims-made structure with individual releases (as

26   opposed to a classwide release).  The parties further agreed that any QuickBooks 2006 for Mac

27   user (whether registered or not) affected by the alleged Malfunction could elect to participate in

28   the Settlement.

1   On November 7, 2008, the parties submitted a revised Settlement Agreement, revised

2   class notices and a claim form, and a revised proposed order preliminarily approving the

3   Settlement to reflect the claims-made structure of the new agreement.  Thereafter, this Court

4   issued an Order dated November 20, 2008 mandating two minor changes to the Settlement

5   Agreement.  Docket No. 50.  The parties made the required changes and filed further revised

6   documents on January 6, 2009.  Docket Nos. 51-52.  In an Order dated January 14, 2009, this

7   Court granted preliminary approval of the proposed Settlement Agreement, provisionally certified

8   the proposed class, and approved the proposed forms of notice, and set the Fairness Hearing to be

9   held September 3, 2009.  Docket No. 53.  On January 23, 2009, prior to the dissemination of

10  notice to the Class, the Court granted a stipulation continuing the Fairness Hearing to

11  September 10, 2009.  Docket No. 57.

12  **III.   SUMMARY OF KEY SETTLEMENT TERMS**

13  The details of the Settlement are contained in the Settlement Agreement signed by the

14  parties, a revised and final copy of which was previously submitted to the Court on January 6,

15  2009.

16  Following the hearing on the preliminary approval motion in September 2008, the parties

17  revised the Settlement Agreement in accordance with guidance from this Court to ensure that it

18  treated all Class members fairly.  *See* Letters dated October 17 and November 7, 2008 from

19  Intuit's counsel to Judge Alsup, filed October 17 and November 7, 2008, Docket Nos.  47-48.

20  These revisions:  (i) broadened the settlement class to any users of the affected QuickBooks

21  software, not just users who registered with Intuit; and (ii) limited the release of any claims

22  against Intuit only to those Class members who timely submit claims under the revised Settlement

23  Agreement.  The Court preliminarily approved the revised Settlement Agreement in an Order

24  filed on January 14, 2009.  *See* Docket No. 53.

25  The following summarizes the Settlement Agreement's terms.

26  **A.   The Settlement Class**

27  The Settlement Class includes all users of QuickBooks Pro 2006 for Mac or Quickbooks

28  New User Edition 2006 for Mac whose data or files became inaccessible or were damaged,

1    corrupted, or lost, whether temporarily or permanently, as a result of a malfunction of the

2    Software's auto-update mechanism (the "Malfunction") who timely submit a valid claim form.

3    Excluded from the Class are (1) Intuit and its subsidiaries and affiliates; (2) all governmental

4    entities; (3) the judge(s) to whom this case is assigned and any immediate family members

5    thereof; (4) all claims for personal injury and wrongful death; and (5) persons who timely exclude

6    themselves from the settlement pursuant to Paragraphs 10.7.1.1 or 10.9.1 of the Settlement

7    Agreement (in the unlikely event that the Soft Cap is exceeded, and claimants are offered a pro

8    rata amount, as explained further below).

9    **B.      Cash Reimbursement And Product Upgrade For Class Members**

10          Under the terms of the Settlement Agreement, members of the Settlement Class who

11   submit claims are entitled to cash reimbursement in full for certain documented costs directly

12   related to attempts to recover inaccessible, damaged, corrupted, or lost data or files.  See

13   Memorandum in Support of Motion for Order Granting Preliminary Approval to Proposed Class

14   Action Settlement, filed August 26, 2008, Docket No. 38 ("*Preliminary Approval MPA*"),

15   § III(B), pp. 7-11.  These costs include expenses incurred by the claimant for data recovery

16   software purchased by the claimant, expenses of third-parties providing data recovery services

17   and the cost of computer hardware reasonably necessary for data recovery.

18          Furthermore, Intuit will reimburse claimants for other data reconstruction or recovery

19   efforts with a soft-cap of $500,000 for all claims ("Soft-Cap Expenses").  Claims in this category

20   include (i)  the cost of data reconstruction efforts performed by third parties, capped at 20 hours at

21   $75 per hour; and/or (ii) in-house data reconstruction and data recovery expenses (such as

22   reimbursement for time employees spent recovering and reconstructing data), also capped at 20

23   hours at $75 per hour.  These expenses must have been incurred on or before April 15, 2008 for

24   U.S. Class members.  If the aggregate amount of claims for Soft-Cap Expenses exceeds $500,000,

25   Intuit may, at its option, either cover the extra amount of all Soft-Cap Expenses, or calculate the

26   pro rata payment of each claim based on an aggregate payment of $500,000 and allow the

27   claimants to opt-out if they find the pro rata payment unacceptable.

28          The Settlement Agreement also provides that Intuit will provide a free upgrade to

827391.2                                    - 7 -                          CASE NO. CV-07-6452 WHA

1    QuickBooks Pro 2007 for Mac (which retailed for approximately $199.95 USD) to all Class

2    members who have any damages claims that are approved by the claims administrator.

3         **C.      Attorneys' Fees And Costs**

4         In the Settlement Agreement, Intuit stipulated that Class Counsel was entitled to an award

5    of attorneys' fees and reasonable costs.  At the time the Settlement Agreement was executed, the

6    parties had not reached agreement with regard to the amount of attorneys' fees and costs that

7    Intuit would willingly pay to Class Counsel.  In the absence of agreement on the fee amount, the

8    parties agreed in the Settlement that Class Counsel would not request more than $800,000 in

9    attorneys' fees and reasonable litigation costs associated with the U.S. action.[2]

10        Following preliminary approval of the Settlement Agreement, the parties engaged in

11   ongoing negotiations with regard to Class Counsel's application for attorneys' fees and costs.  On

12   August 10, 2009, the parties agreed that Intuit would not contest Class Counsel's request for

13   attorneys' fees and costs  in the amount of $550,000.  This amount—which  was negotiated long

14   after the substantive terms of the Settlement were agreed upon—reflects a modest 1.17 multiplier

15   on the portion of Class Counsel's lodestar that was devoted to the investigation, litigation and

16   settlement of Plaintiffs' substantive claims ($412,491.00), plus unenhanced lodestar related to fee

17   issues ($50,847.50), and actual costs of $18,010.98.

18        Ultimately, the amount this Court awards to Class Counsel in attorneys' fees and costs

19   will be paid by Intuit in addition to the relief Intuit will provide to the Class under the terms of the

20   Settlement, and will in no way reduce any Class member's recovery.  The enforceability of the

21   Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded.

22        **D.      Settlement Administration And Notice**

23        As set forth in the Settlement Agreement, all costs of notice and claims administration will

24   be paid by Intuit.  The Garden City Group, Inc. is the Court-approved Independent Claims

25   Administrator (ICA).  The Court-approved notice program was implemented in compliance with

---

26   [2] Canadian Counsel made a separate request in the Canadian Court for an award of attorneys' fees
27   and costs totaling $210,000 (CAD) for time spent and costs incurred in the Canadian action.  This
     request, which was approved by the Canadian Court, reflected a 1.6 multiplier on Canadian
     Counsel's fees.

28

1  this Court's orders and as set forth in detail in the Updated Declaration of Jennifer Keough

2  ("*Updated Keough Decl.*"), submitted herewith.  This notice directed potential Class members to

3  the class action website, which provides detailed instructions, regarding the procedure to submit a

4  claim or to object to the revised Settlement Agreement.  To date,  the ICA has received no

5  objections to the revised Settlement Agreement and the parties are not aware of any objections

6  that have been submitted to the Court.  *Updated Keough Decl.*, ¶ 14.

7        **E.**    **Right To Refrain From Participating And To Object To The Settlement**

8        The notice informed Class members of their rights to elect not to participate in the

9  proposed Settlement.  Any Class member who refrains from submitting a claim form and

10  executing a release in exchange for relief pursuant to the Settlement will not be bound by the

11  Settlement and will remain free to pursue claims, if any, against Intuit.  Similarly, the notice

12  advised Class Members of their right to object to the terms of the Settlement—including the

13  request for attorneys' fees and costs.  The deadline for objections is August 27, 2009. At the time

14  of filing, no Class members had objected to the Settlement.  *Updated Keough Decl.*, ¶ 14.

15  **IV.**    **THE CLASS ACTION SETTLEMENT PROCESS**

16        As a matter of "express public policy," federal courts strongly favor and encourage

17  settlements, particularly in class actions and other complex matters, where the inherent costs,

18  delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

19  class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

20  1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class

21  action litigation is concerned"); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class*

22  *Actions* § 11.41 (4th ed. 2002) (gathering cases).  As discussed below, the proposed Settlement is

23  the best vehicle for Class members to receive the relief to which they are entitled in a prompt,

24  efficient manner.

25        Class action settlement approval is a three-step process.  *See Manual for Complex*

26  *Litigation* (*Fourth*) ("*Manual for Compl. Lit.*") §§ 21.632–34 n. 971 (2004).  Two of the three

27  steps have already been completed here.  First, in granting preliminary approval on January 14,

28  2009, the Court conducted a preliminary evaluation of the Settlement and determined it to be

1    within the range of reasonableness.  The Court also provisionally certified the Settlement Class

2    and determined that the proposed notice program was appropriate.

3         The second step was the implementation of the notice program.  As discussed directly

4    below, the notice has been sent to Class members in accordance with the Court's Preliminary

5    Approval Order.  The third step is the final approval hearing and final approval of the

6    Settlement—the issue now before the Court.

7    **V.    THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY**
     **SOUND AND HAS BEEN FULLY IMPLEMENTED**
8
     **A.    Notice Standards**
9

10        To protect the rights of absent Class members, the Court must provide the best notice

11   practicable to Class members of a potential class settlement.  *See* Fed. Rule Civ. P. 23(e)(1)(B);

12   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Eisen v. Carlisle & Jacquelin*,

13   417 U.S. 156, 174–175 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

14   (1950).  As the *Manual for Complex Litigation* observes, "Rule 23 . . . requires that individual

15   notice in [opt-out] actions be given to class members who can be identified through reasonable

16   efforts.  Those who cannot be readily identified must be given the 'best notice practicable under

17   the circumstances.'"  *Id.* at § 21.311.  "[D]ue process has not required actual notice to parties who

18   cannot reasonably be identified."  *Id.* at n.882.  Where, as here, there is no classwide release—

19   only individual releases by participating Class members who submit claims—the due process

20   concerns associated with class notice are significantly diminished.

21   **B.    The Notice Program Has Been Fully Implemented And Meets Applicable**
     **Standards**
22

23        "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class

24   members who would be bound by a proposed settlement, voluntary dismissal, or compromise'

25   regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for*

26   *Compl. Lit.*, *supra*, at § 21.312.  Many of the same considerations govern both certification and

27   settlement notices.  In order to protect the rights of absent Class members, the Court must provide

28   the best notice practicable to Class members.  *See Phillips*, 472 U.S. at 811–12; *Eisen*, 417 U.S. at

827391.2                              - 10 -                    CASE NO. CV-07-6452 WHA

174–175; *Mullane*, 339 U.S. at 314. According to the *Manual for Complex Litigation*, *supra*, at § 21.312, the settlement notice should:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representatives;
- Provide information regarding attorneys' fees;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

Here, only those individuals who elect to submit a claims and receive Settlement benefits will release any claims against Intuit. Thus, the due process concerns associated with Class notice are diminished. Nonetheless, the Court-approved notice plan satisfied all of the criteria identified above and has now been fully implemented.

As the Court-approved Independent Claims Administrator (ICA), The Garden City Group, Inc. ("GCG") was responsible for providing notice to potential Class members in the action. Specifically, in accordance with the Settlement and Preliminary Approval Order, GCG was responsible for sending the summary notice, with links to the full notice, claims form and the ICA's website, via email and first class mail (to the extent the email and mailing addresses were available in Intuit's records), to every registered user of the Software and all users identified in Intuit's QuickBase database as having been potentially affected by the alleged Malfunction.

1   *Updated Keough Decl.*, ¶ 3.  To that end, on February 18, 2009, Intuit provided GCG with an

2   electronic file containing 43,830 records containing the names, addresses and/or email addresses

3   of all the potential Class members.  *Id.*  On or about February 23, 2009, GCG loaded this

4   information into a database created for this case.  *Id.*

5       GCG updated the U.S. mailing addresses through the National Change of Address

6   ("NCOA") databases maintained by the United States Postal Service.  *Id.*, ¶ 5.  Where a more

7   current address was obtained, GCG updated the address accordingly.  *Id.*  Of the 42,796 addresses

8   provided to the United States Postal Service, 3,310 addresses were returned with an updated

9   address.  *Id.*

10      On June 2, 2009, GCG caused the summary notice to be mailed to 43,644 unique names

11  and street addresses of potential Class members by First Class Mail, postage pre-paid, at the U.S.

12  Post Office.  *Id.*, ¶ 6.  Also, on June 2, 2009, GCG caused the summary notice to be sent by email

13  to 39,787 potential Class members whose email addresses were provided.  *Id.*, ¶ 7.  Of the 39,787

14  electronic summary notices sent out via email, 7,217 were returned to GCG with messages

15  indicating that they were not received.  *Id.*, ¶ 8.  A total of 1,514 potential Class members

16  received neither a mailed summary notice nor an emailed summary notice.  *Id.*, ¶ 8.  In total,

17  more than 96% of the 43,644 potential Class members identified by Intuit received notice by first

18  class mail, email, or both.

19      Beginning on March 20, 2009, GCG established and continues to maintain an automated

20  toll-free telephone number (1-800-961-2931), where potential Class members can obtain

21  information about the Settlement.  *Id.*, ¶ 9.  This toll-free help line is accessible 24 hours a day,

22  7 days a week.  *Id.*  Claimants who call the toll-free number have the option of leaving a voice

23  message so that a call center representative can return the call.  *Id.*  As of August 16, 2009, there

24  have been 249 calls to the automated number, 64 of which have left voice messages.  *Id.*, ¶ 10.

25  All of the voice messages have been returned promptly.  *Id.*, ¶ 10.

26      GCG also established and is maintaining a website dedicated to this Settlement

27  (www.2006QBforMacSettlement.com) to provide additional information to the potential Class

28  members, including electronic versions of documents, and to answer frequently asked questions.

1   *Id.*, ¶ 11.  The settlement website became operational on March 20, 2009, and is accessible

2   24 hours a day, 7 days a week.  *Id.*  As of August 16, 2009, the website has received a total of

3   5,106 visits.  *Id.*, ¶ 12.

4   **VI.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

5            Final approval of a class action settlement is warranted under Federal Rule of Civil

6   Procedure 23(e) if the settlement is "fundamentally fair, adequate, and reasonable."  *Staton v.*

7   *Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  A settlement is fair, adequate, and reasonable

8   when "the interests of the class as a whole are better served if the litigation is resolved by the

9   settlement rather than pursued."  *Manual for Compl. Litig.* at § 30.42.  The decision to approve or

10  reject a proposed settlement is committed to the court's sound discretion.  *City of Seattle*,

11  955 F.2d at 1276.  As the Ninth Circuit has noted, however, the Court's role in approving a

12  Settlement is not without limit:

13              [T]he court's intrusion upon what is otherwise a private consensual
                agreement negotiated between the parties to a lawsuit must be
14              limited to the extent necessary to reach a reasoned judgment that
                the agreement is not the product of fraud or overreaching by, or
15              collusion between, the negotiating parties, and that the settlement,
                taken as a whole, is fair, reasonable and adequate to all concerned.
16

17  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

18           In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth Circuit

19  noted that it "need not reach any ultimate conclusions on the contested issues of fact and law

20  which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

21  avoidance of wasteful and expensive litigation that induce consensual settlements."  955 F.2d at

22  1291 (internal quotation and citation omitted).  The district court's ultimate determination "will

23  involve a balancing of several factors," which may include:

24              the strength of plaintiffs' case; the risk, expense, complexity, and
                likely duration of further litigation; the risk of maintaining class
25              action status throughout the trial; the amount offered in settlement;
                the extent of discovery completed, and the stage of the proceedings;
26              the experience and views of counsel . . . and the reaction of the
                class members to the proposed settlement.
27

28  *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see*

1 | *also Staton*, 327 F.3d at 959.

2 | **A.**     <u>**The Settlement Is Presumed To Be Fair, Adequate And Reasonable**</u>

3 |      "Before approving a class action settlement, the district court must reach a reasoned

4 | judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

5 | among, the negotiating parties. . . ." *City of Seattle*, 955 F.2d at 1290 (quoting *Ficalora v.*

6 | *Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)). Where, as here, the settlement is the

7 | product of arm's-length negotiations conducted by capable counsel with extensive experience in

8 | complex class action litigation, the court begins its analysis with a presumption that the settlement

9 | is fair and should be approved. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class*

10 | *Actions*, § 11.41 (4th ed. 2002). As discussed in greater detail below, the Settlement presented

11 | here is entitled to a presumption of fairness. First, the Settlement was reached only after arms-

12 | length and good-faith negotiations. *See* Declaration of Jonathan Selbin, previously submitted

13 | August 13, 2009, Docket No. 70-1 ("*Selbin Decl.*"), ¶ 11-d; *Quadra Decl.*, ¶ 21. Thus, there is an

14 | absence of any indicia of collusion. Second, both Class Counsel and counsel for Intuit are

15 | experienced in class-action litigation, acted in good faith, and represented their clients' best

16 | interests in reaching the Settlement. *Quadra Decl.*, ¶ 7; *Selbin Decl.*, ¶¶ 2-3, Ex. A.

17 | **B.**     <u>**All Of The Relevant Factors Support Final Approval Of The Settlement**</u>

18 |      **1.**     <u>**The Value of the Settlement, and the Substantial Benefits it Provides to**</u>
19 |            <u>**Class Members, Support Final Approval**</u>

20 |      The Settlement provides relief for all Class members who incurred out-of-pocket expenses

21 | to recover data lost as a result of the alleged Software Malfunction. Under the terms of the revised

22 | Settlement Agreement, members of the Settlement Class who submit claims are entitled to cash

23 | reimbursement for 100% of expenses incurred by the claimant for data recovery software

24 | purchased by the claimant, expenses of third-parties providing data recovery services and the cost

25 | of computer hardware reasonably necessary for data recovery.

26 |      Furthermore, Intuit will reimburse claimants for other data reconstruction or recovery

27 | efforts with a soft-cap of $500,000 for all claims ("Soft-Cap Expenses"). Claims in this category

28 | include (i) the cost of data reconstruction efforts performed by third parties, capped at 20 hours at

NOTICE & MPA ISO PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   $75 per hour; and/or (ii) in-house data reconstruction and data recovery expenses (such as

2   reimbursement for time employees spent recovering and reconstructing data), also capped at 20

3   hours at $75 per hour.  These expenses must have been incurred on or before April 15, 2008 for

4   U.S. Class members.  If the aggregate amount of claims for Soft-Cap Expenses exceeds $500,000,

5   Intuit may, at its option, either cover the extra amount of all Soft-Cap Expenses, or calculate the

6   pro rata payment of each claim based on an aggregate payment of $500,000 and allow the

7   claimants to opt-out if they find the pro rata payment unacceptable.

8        In addition, eligible Class members will receive a free upgrade to QuickBooks for Mac

9   2007, which retailed for $199.95.

10            **2.**       **The Risks Inherent in Continued Litigation Support Final Approval**

11       The Settlement here serves the interests of the Class.  Although Class Counsel believe that

12  all claims asserted in the Complaint are meritorious, they understand the significant burdens

13  Plaintiffs would have faced to obtain a class judgment against Intuit, including obtaining class

14  certification covering the entire Class and prevailing on their legal claims.  Moreover, the

15  outcome of trial and any appeals are inherently uncertain and involve significant delay.  The

16  Settlement avoids these challenges and provides prompt, substantial relief for Class members,

17  which weighs in favor of final approval of the Settlement.

18            **3.**       **The Discovery and Investigation Completed Before Settlement Favor**

19                   **Final Approval**

20       By the time the parties reached the Settlement, they had compiled sufficient information

21  and conducted extensive analyses to assess the strengths and weaknesses of their respective cases.

22  Specifically, Class Counsel conferred with dozens of consumers who reported losses as a result of

23  the Software Malfunction and reviewed discovery from Intuit sufficient to confirm the triggering

24  mechanism for the alleged Software Bug.  *See* Declaration of James A. Quadra, previously

25  submitted August 26, 2008, Docket No. 38 ("*Quadra Prelim Decl.*"), ¶¶ 8-9.  Plaintiffs

26  propounded and received verified responses to discovery.  *Id.*, ¶¶ 9-12.  In addition, the parties

27  fully briefed Intuit's Motion to Dismiss, which addressed multiple novel arguments, including

28  whether computer data could constitute "other property" under the economic loss doctrine.  By

the time the Settlement was reached, Class Counsel had sufficient legal and factual bases to make

a thorough appraisal of the risks of continued litigation and the adequacy of the Settlement.

Based on their investigation of the factual and legal bases for Plaintiffs' claims, Class Counsel

submits that the Settlement provides an excellent result for the Class. *Selbin Decl.*, ¶ 23; *Quadra*

*Prelim Decl.*, ¶ 14.

### 4. The Terms and Conditions of the Proposed Settlement Favor Final Approval

As discussed above, the Settlement provides cash compensation for Class members who

incurred out-of-pocket expenses related to data recovery efforts necessitated by the Software

Malfunction, as well as a product upgrade valued at approximately $200.  The straight-forward

claims process applies equally to all Class members, and assistance is available—from Class

Counsel, the Garden City Group, and Intuit—for Class members who need help locating the

requisite proof to establish eligibility for relief under the Settlement.

### 5. The Recommendation of Experienced Class Counsel Supports Final Approval

"The recommendations of plaintiffs' counsel should be given a presumption of

reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval*

*Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel

involved in the case approved the settlement after hard-fought negotiations is entitled to

considerable weight.").  Class Counsel in this case, who are experienced and skilled in class

action litigation, support the Settlement as fair, reasonable, and adequate, and in the best interests

of the Class as a whole. *See Selbin Decl.*, ¶ 23; *Quadra Prelim Decl.*, ¶ 14.

### 6. The Expense and Likely Duration of Litigation in the Absence of a Settlement Supports Final Approval

Another factor courts consider in assessing the fairness of settlements is the complexity,

expense, and likely duration of the litigation had a settlement not been reached.  *City of Seattle*,

955 F.2d at 1291. In applying this factor, the Court must weigh the benefits of the Settlement

against the expense and delay involved in achieving an equivalent or more favorable result at

1   trial.  *See Acosta v. TransUnion, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) (citing *Young v. Katz*,

2   447 F.2d 431, 433 (5th Cir. 1971).

3       As discussed above, the Settlement guarantees a substantial recovery for the Class while

4   obviating the need for lengthy, uncertain, and expensive pretrial practice, trial, and appeals.  Even

5   if the Class prevailed at trial, Intuit would likely appeal any adverse rulings against it.  Class

6   members would likely not obtain relief, if any, for a period of years.

7       In contrast to the risk of further litigation, the revised Settlement Agreement provides

8   significant relief for Class members.  Perhaps most significantly, Class members are given a fair

9   and reasonable choice:  (i) file a claim and receive prompt relief that includes 100% of certain

10  out-of-pocket costs for data recovery, up to $3,000 for other data recovery and data reconstruction

11  costs, and a free version of the 2007 software; or (ii) not file a claim and not release any claims

12  against Intuit.  The revised Settlement Agreement thus benefits those Class members who choose

13  to participate, but does not penalize those who do not participate (intentionally or otherwise).

14      **7.    The Presence of Good Faith and the Absence of Collusion Favors Final
            Approval**

15

16      Courts should also consider the presence of good faith and the absence of collusion on the

17  part of the settling parties.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*

18  § 11.43 (4th ed. 2002).  There is no collusion or bad faith here, nor any allegations thereof.

19  Furthermore, courts recognize that arm's-length negotiations conducted by competent counsel are

20  prima facie evidence of fair settlements.  As the Supreme Court has held, "[o]ne may take a

21  settlement amount as good evidence of the maximum available if one can assume that parties of

22  equal knowledge and negotiating skill agreed upon the figure through arm's-length

23  bargaining . . . ."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

24      The proposed Settlement here is the result of intensive, arm's-length negotiations between

25  experienced attorneys who are highly familiar with class action litigation in general and with the

26  legal and factual issues of this case in particular.  Initial settlement negotiations in this case were

27  followed by mediation with the guidance of experienced mediator Honorable Edward A. Infante

28  (Ret.).  Following the mediation, subsequent settlement negotiations resulted in a tentative

agreement-in-principle reached on July 28, 2008.  After reaching this agreement, the parties

continued to negotiate in detail and in good faith over the months that followed to finalize the

Settlement Agreement.

### 8. Class Members' Positive Reaction Supports Final Approval

A court may appropriately infer that a class action settlement is fair, adequate, and

reasonable when few Class members object to it.  *See, e.g.*, *Marshall v. Holiday Magic, Inc.*,

550 F.2d 1173, 1178 (9th Cir. 1977).  Indeed, a court can approve a class action settlement as fair,

adequate, and reasonable even over the objections of a significant percentage of Class members.

*See City of Seattle*, 955 F.2d at 1291-96; *see also Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d

799, 803 (3d Cir 1974) ("While the proportion of the class opposed to a settlement is one factor to

be considered in assessing its fairness, . . . a settlement is not unfair or unreasonable simply

because a large number of class members oppose it").

Here, each of the Class representatives supports the Settlement.  *See* Declarations of

Flynn, Messina, and Loredos, submitted herewith.  Further, as of the date of filing, no objections

to the Settlement have been filed.  While the claims rate to date has been modest, the lack of

objections indicates broad, class-wide support for the Settlement and its approval.  Moreover,

Class members who choose not to participate in the Settlement retain all of their rights to pursue

their claims, if any, against Intuit if they so choose.

### VII. THE COURT CAN APPROPRIATELY ENTER A FINAL ORDER ON BEHALF OF THE CLASS

In its Preliminary Approval Order dated January 14, 2009, the Court provisionally

certified a Settlement Class as follows:

> The "Settlement Class" includes all users of QuickBooks Pro 2006
> for Mac or QuickBooks New User Edition 2006 for Mac whose
> data or files became inaccessible or were damaged, corrupted, or
> lost, whether temporarily or permanently, as a result of a
> malfunction of the Software's auto-update mechanism (the
> "Malfunction") who timely submit a valid Claim Form.

Notwithstanding the foregoing, the following Persons shall be excluded from the Class:  (1) Intuit

and its subsidiaries and affiliates; (2) all governmental entities; (3) the judge(s) to whom this case

1  is assigned and any immediate family members thereof; (4) all claims for personal injury and

2  wrongful death; and (5) Persons who timely exclude themselves from the settlement pursuant to

3  Paragraphs 10.7.1.1 or 10.9.1 of the Settlement Agreement.  *See Preliminary Approval Order* at

4  p. 1, incorporating by reference the Proposed Order.

5       All required criteria for Class certification remain satisfied.  For the sake of brevity,

6  Plaintiffs' Counsel respectfully refers the Court to the discussion of class certification at pages 1-

7  4 of its Motion for Preliminary Approval of Settlement Agreement.  The Court should approve

8  the Class certification and enter a final order approving the Settlement on behalf of the certified

9  Class.

10  **VIII.**  **CONCLUSION**

11       For the reasons stated above, the Settlement is fair, adequate, and reasonable.  Plaintiffs

12  respectfully request this Court grant final approval to the Settlement

13  Dated: August 20, 2009        Respectfully submitted,

14                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

15

16                       By:        */s/ Kristen E. Law*

17                              Kristen E. Law

18                       Michael W. Sobol (State Bar No. 194857)
                     Kristen E. Law (State Bar No. 222249)

19                       Embarcadero Center West
                     275 Battery Street, 30th Floor

20                       San Francisco, CA  94111-3339
                     Telephone:  (415) 956-1000

21                       Facsimile:  (415) 956-1008
                     Email:  msobol@lchb.com

22                       Email:  klaw@lchb.com

23                       Jonathan D. Selbin (SBN 170222)

24                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                     780 Third Avenue, 48th Floor

25                       New York, NY  10017-2024
                     Telephone:   (212) 355-9500

26                       Facsimile:   (212) 355-9592
                     Email:  jselbin@lchb.com

27                       Email:  rbcoll@lchb.com

28

1

James A. Quadra (SBN 131084)
Rebecca Bedwell-Coll (SBN 184468)
2
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Ste. 2100
3
San Francisco, California 94104
Telephone:  (415) 362-3599
4
Facsimile:  (415) 362-2006
Email:  quadra@meqlaw.com
5

6
*Attorneys for Class Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28