IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CREATE-A-CARD, INC.; AGSJ, INC., and PHILANTHROPIC FOCUS, LLC, on behalf of themselves and all those similarly situated,

    Plaintiffs,

  v.

INTUIT, INC.,

    Defendant.

No. C 07-06452 WHA

**ORDER RE ATTORNEY'S FEES ON CLASS ACTION SETTLEMENT**

## INTRODUCTION

Following the settlement of this action alleging numerous claims including violations of the California Business & Professions Code, plaintiffs move for approval of an award of attorney's fees and costs in the amount of $550,000.00. Defendant does not contest plaintiffs' motion. The excessive amount of attorney's fees requested, however, is out of proportion to the benefit conferred. Accordingly, the motion for attorney's fees and costs is approved in the lower amount of $490,000.00 for fees and $18,010.98 for costs.

## STATEMENT

This action, originally filed on December 21, 2007, alleged claims for negligence, strict products liability, trespass to chattels, breach of implied warranty, and violations of the California Business & Professions Code on behalf of users of a software program called Quickbooks 2006

1   for Mac. Plaintiffs asserted that a defect in the software caused sudden deletions of their data
2   and files. In a mediation with Judge Edward Infante on February 21, 2008, the parties made
3   progress towards settlement but were not able to agree to terms. Plaintiffs subsequently filed
4   their first amended complaint on March 31, 2008, in which they added a breach of contract claim
5   and clarified various factual allegations.

6   Defendant filed a motion to dismiss on April 17, 2008, and plaintiffs opposed the motion
7   on July 3, 2008. After exchanging one round of discovery requests and responses, the parties
8   negotiated a comprehensive settlement agreement in August 2008. A preliminary approval
9   hearing was held in this Court on September 18, 2008. But after the hearing defendant discovered
10  that the number of registered users of the allegedly defective software was greater than initially
11  thought. This led to the filing of a revised settlement agreement on November 7, 2008. After two
12  court-ordered changes were made to the agreement, the revised documents were resubmitted on
13  January 6, 2009. An order dated January 14, 2009, preliminarily approved the proposed
14  settlement agreement, provisionally certified the class for the purposes of settlement, and set a
15  fairness hearing (which was originally scheduled for September 3, 2009).

16  On August 13, 2009, plaintiffs submitted their motion for attorney's fees along with the
17  motion for final approval of the settlement. This order resolves that motion.

**ANALYSIS**

19  Plaintiffs' motion correctly states that California law governs the award of attorney's fees
20  in this action and that California recognizes the common fund doctrine for such awards in class
21  actions. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The settlement in this
22  case, however, is structured in such a way that there is no "common fund." Any attorney's fees
23  and costs awarded to class counsel in this action will come directly from defendant as opposed to
24  from a fund created by the settlement — the amount of attorney's fees awarded will have no
25  impact on the recovery available to class members. Because there is no "common fund" here, the
26  "percentage-of-the-fund" method is not available as a way to calculate attorney's fees. Under
27  both Ninth Circuit and California law, courts have discretion to use the lodestar method in

awarding attorney's fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145, 169 (Ct. App. 6th Dist. 2001).

Once the lodestar has been calculated by multiplying the number of hours worked by a reasonable rate, courts have discretion to adjust the award "upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029 (citations omitted). The Ninth Circuit has held

> In a class action, whether attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. This duty of the court exists independently of any objection.

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). It is clearly within the Court's discretion to award less in fees than the amount sought by counsel, even absent defendant's objection to the requested amount. Indeed, as plaintiffs point out in their motion, it is the Court's duty to ensure that any fee award is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award"). In this action, the total fees sought by plaintiffs are not "fair and reasonable" because the total amount recovered by class members is significantly less than the requested fees.

Class counsel state that they spent 952 hours working on this action. After applying what they assert are reasonable rates (ranging from $315 to $700 for the attorneys, and from $150 to $235 for paralegals and other staff) to those hours, counsel calculates the total lodestar to be $463,338.50. Counsel submit that $50,847.50 of that total number went towards preparing this motion to collect fees, and they do not seek a multiplier on that number. They request, however, that the Court apply a multiplier of approximately 1.166 to the lodestar amount that counsel spent working on the "substantive claims." Adding the multiplier amount ($68,650.52) and the costs ($18,010.98) to the total lodestar ($463,338.50) brings the total to the requested sum of $550,000.00 (Br. 13).

3

Plaintiffs request that the Court enhance the total fee award by applying a multiplier to a large portion of the total lodestar, citing *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), for a discussion of the factors courts consider in determining whether or not to apply a multiplier. This long list of factors includes:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 70. Plaintiffs cite other federal decisions as well as numerous California decisions for the proposition that courts may, if they wish, enhance a lodestar with a multiplier after considering certain factors. At all events, however, whether or not to apply such a multiplier is within the Court's discretion. *Hanlon*, 150 F.3d at 1029.

This order recognizes that some of these factors may weigh in favor of awarding counsel the amount they have requested. For instance, counsel has presented numerous examples demonstrating the reasonableness of their billable rates; both firms are certainly experienced, well regarded, and possess the requisite legal skill; the action was clearly taken on a contingent basis with some economic risk to the firms; and the legal questions presented may have proven to be novel had the case been more fully developed prior to settlement.[*]

Other factors, however, tend to weigh against a sizeable fee award. For example, the duration of the period between the filing of the complaint and the settlement was relatively short; there was little in the way of discovery or motion practice prior to settlement; and the time dedicated to this action does not seem to have seriously hampered either firms' ability to take on other cases.

---

[*] Plaintiffs cite the California Supreme Court's decision in *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001), for the proposition that "a contingent fee must be higher than a fee for the same legal services paid as they are performed." This order does not dispute the validity of that statement. The quote from *Ketchum*, however, is dicta, provided only as part of the court's explanation of the rationale for fee enhancement in contingency cases. Additionally, *Ketchum* was not a class action, and as such the court did not consider many of the class-related factors that must be considered here.

The determinative factor, however, is the benefit to the class — here pretty small, far less than the fee request itself. The benefit to the class simply does not warrant the requested fee award. Plaintiffs' motion points out that the result obtained is a "principal factor in considering an enhanced lodestar multiplier" (Br. 14). This is absolutely the case. In the decision plaintiffs cite on this point, however, the California Court of Appeal also held that "a lodestar figure may be adjusted not just upward, but also, where appropriate, *downward*." *Thayer v. Wells Fargo Bank*, 112 Cal. Rptr. 2d 284, 299 (Ct. App. 1st Dist. 2001) (emphasis in original). Plaintiffs also cite the United States Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), for the proposition that the lodestar method provides an "objective basis" for attaching a value to counsel's services. *Hensley* also stated "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* at 434. Here, the "results obtained" by the settlement justify a downward adjustment to counsel's requested fee award.

By the end of the claims period, 566 claim forms had been received (approximately one percent of all potential class members). If these claimants are able to cure all of the deficiencies in these forms (which they will be given a chance to do), the total recovery will be approximately $491,357.68 — significantly less than counsel seeks to collect here.

Despite class counsel's efforts in this action, the class response rate was extremely low. If the response rate had been higher, presumably the total class recovery would have been higher, and a higher fee award would be justified. But it is unreasonable for class counsel to be compensated for hypothetical recovery that never took place. The key consideration in determining a fee award is reasonableness in light of the benefits *actually conferred*. Although the settlement in this action confers substantial benefits to some individual class members, the class' overall recovery does not warrant the requested fee award.

This order acknowledges that defendant has agreed to pay attorney's fees over and above even the amount requested by class counsel. This, however, is not the test. Defendant's willingness to pay more in attorney's fees demonstrates only that the two parties

5

arrived at different estimates regarding the value of the case. When plaintiffs' fee request is considered in tandem with the relatively low overall class recovery, it is clear that class counsel overestimated the overall value of this action. To allow the immediate parties to stipulate to pay class counsel a large sum whether or not a large benefit was conferred on the class — and indeed even when it was not — would encourage collusive settlements. This case does not seem to present any collusion, but the point remains important. Tethering fees (in part) to benefit will help guard against collusion in the general run of cases.

## CONCLUSION

For the above-stated reasons, plaintiffs are hereby awarded attorney's fees of $490,000.00 and costs of $18,010.98.

**IT IS SO ORDERED.**

Dated: September 22, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE