1   James A. Quadra (SBN 131084)
    Rebecca Bedwell-Coll (SBN 184468)
2   MOSCONE, EMBLIDGE & QUADRA, LLP
    Mills Tower
3   220 Montgomery Street, Ste. 2100
    San Francisco, California 94104
4   Telephone:  (415) 362-3599
    Facsimile:  (415) 362-2006
5   Email:  quadra@meqlaw.com

6   Michael W. Sobol (SBN 194857)
    Kristen E. Law (SBN 222249)
7   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
8   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
9   Facsimile:  (415) 956-1008
    Email:  msobol@lchb.com
10
    Jonathan D. Selbin (SBN 170222)
11  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    780 Third Avenue, 48th Floor
12  New York, NY  10017-2024
    Telephone:  (212) 355-9500
13  Facsimile:  (212) 355-9592
    Email:  jselbin@lchb.com
14  Email:  rbcoll@lchb.com

15  *Attorneys for Plaintiffs and the Class*

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA
                   SAN FRANCISCO DIVISION
18

19  CREATE-A-CARD, INC.; AGSJ, INC.;          Case No.  CV-07-6452 WHA
    and PHILANTHROPIC FOCUS, LLC, on
20  behalf of themselves and all those similarly    **CLASS ACTION**
    situated,
21                                              [REVISED PROPOSED] ORDER
                     Plaintiffs,                GRANTING FINAL APPROVAL
22                                                 OF CLASS ACTION SETTLEMENT
           v.
23                                              Date:      N/A
    INTUIT INC.,                                Time:      N/A
24                                              Judge:     Hon. William Alsup
                     Defendant.
25

26

27

28

On September 18, 2008, this Court held a preliminary approval hearing on the Settlement reached between Defendant Intuit Inc. ("Intuit") and Plaintiffs Create-A-Card, Inc., AGSJ, Inc., and Philanthropic Focus, LLC, on behalf of themselves and a worldwide class of users of Intuit's QuickBooks Pro 2006 for Mac or QuickBooks New User Edition 2006 for Mac (the "Software"), who alleged their files or data became inaccessible or were damaged, corrupted, or lost, whether temporarily or permanently, as a result of opening the Software and receiving a defective update signal from Intuit that triggered a Software design error ("the Software Bug") and damaged their data (the "Malfunction").

Under the terms of the Settlement Agreement, members of the Settlement Class are entitled to cash reimbursement in full for certain documented costs directly related to attempts to recover data or files that became inaccessible, damaged, corrupted, or lost as a result of the Malfunction. Claims in this category include reimbursement for (i) data recovery software; (ii) reasonably necessary data recovery hardware; and (iii) third party data recovery vendor assistance (*e.g.*, Apple Genius Bar, DriveSavers). These expenses must have been incurred on or before April 15, 2008 for U.S. Class members. Furthermore, Intuit will reimburse claimants for other certain data reconstruction or recovery efforts incurred as a result of the alleged Malfunction, with a soft-cap of $500,000 for all claims ("Soft-Cap Expenses"). Claims in this category include (i) the cost of data reconstruction efforts performed by third parties, capped at 20 hours at $75 per hour; and/or (ii) in-house data reconstruction and data recovery expenses (such as reimbursement for time employees spent recovering and reconstructing data), also capped at 20 hours at $75 per hour. These expenses also must have been incurred on or before April 15, 2008 for U.S. Class members. Finally, Intuit will provide a free upgrade to QuickBooks Pro 2007 for Mac (which retailed at approximately $199.95 USD) to all Class members who have any damages claims that are approved by the claims administrator. Intuit, however, will be credited with all reimbursements to Class members and software upgrades it has already provided Class members to date.

Following the preliminary approval hearing, the parties amended the Settlement Agreement in light of new information regarding the scope of the potential Settlement Class. On

1   November 7, 2008, the parties submitted a revised Settlement Agreement, revised class notices

2   and a claim form, and a revised proposed order preliminarily approving the Settlement to reflect

3   the claims-made structure of the new agreement.  Thereafter, this Court issued an Order dated

4   November 20, 2008 mandating two minor changes to the Settlement Agreement.  The parties

5   made the required changes and filed further revised documents on January 6, 2009.  In an Order

6   dated January 14, 2009, this Court granted preliminary approval of the proposed Settlement

7   Agreement, provisionally certified the proposed class, approved the proposed forms of notice, and

8   set the Fairness Hearing to be held September 3, 2009.  On January 23, 2009, prior to the

9   dissemination of notice to the Class, the Court granted a stipulated request to continue the

10  Fairness Hearing to September 10, 2009.

11          On August 20, 2009, in conjunction with Plaintiffs' Unopposed Motion for Final

12  Approval of Class Action Settlement, Jennifer Keough of The Garden City Group, Inc., the

13  Court-approved notice provider in this matter, filed a declaration confirming the timely

14  distribution to the Settlement Class of the Settlement notice by email and first class mail as

15  required by the Preliminary Approval Order.  Of the more than 40,000 individuals to receive

16  notice of the claims-made Settlement, none objected.

17          On August 31, 2009, the Court rescheduled the Fairness Hearing to September 17, 2009.

18  On September 10, 2009, the Court further rescheduled the Fairness Hearing from 8:00 a.m. to

19  2:00 p.m. on September 17, 2009.  On September 17, 2009, this Court held a fully noticed formal

20  Fairness Hearing to consider whether to grant final approval to the Settlement, and to consider

21  Class Counsel's application for an award of attorneys' fees and costs.  The Court conducted a

22  hearing, during which the Court heard argument from the parties.  No other parties appeared,

23  whether represented by counsel or not.

24          Having read, reviewed and considered the papers filed with this Court, the oral arguments

25  of counsel, and the comments of all those who have appeared in these proceedings, and based on

26  its familiarity with this matter, this Court finds and concludes as follows:

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.      THE CLASS NOTICE COMPLIED WITH THIS COURT'S ORDERS AND APPLICABLE LEGAL STANDARDS**

On January 14, 2009, this Court ordered that Class notice be disseminated in substantially the form submitted by Plaintiffs on January 6, 2009, and further specified the manner in which such dissemination should occur.  Based upon the uncontroverted proof that GCG submitted to the Court on August 20, 2009, this Court finds that the settling parties have complied with the Court's Orders, as follows:

The Court-approved notice was mailed directly to more than 40,000 potential Class members whose addresses were available through Intuit's records.  The notice was also emailed to more than 30,000 potential Class members whose email addresses were known.

Further, the Court-approved claims administrator, GCG, established a Court-approved website, www.2006QBforMacSettlement.com, where Class members could download a Claim Form and obtain information regarding the Settlement.  The Claims Administrator also established a toll-free number for Class members who wished to learn more about the Settlement or request a Claim Form.

The Court finds and concludes that the notice program as a whole provided the best practicable notice to the members of the Class under the circumstances, and satisfies the requirements prescribed by the United States Supreme Court.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 174-75 (1974).  The Class Notice clearly described the boundaries of the Class definition, the basis for the lawsuit, the terms and provisions of the Settlement, the remedies available to Class members, the proposed method for benefit distribution, and the requested amount for attorneys' fees and costs.  The Class Notice described the proposed Settlement with enough specificity to allow each Class member to make an informed choice whether to (a) accept and participate in it, (b) refrain from participating to preserve the right to bring a separate action, or (c) to object to it.  The Class Notice explained the procedure by which a Class member could take any such action.  Finally, the Class Notice provided the schedule for the Final Fairness Hearing, and informed Class members how to obtain additional information from Class Counsel or the Claims

1   Administrator about the Settlement.

2        Accordingly, the Court finds and concludes that the method and content of the Class

3   Notice satisfied all applicable legal requirements.

4   **II.     THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE**

5        When considering a motion for final approval of a class action settlement under Rule 23,

6   the court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Class Plaintiffs v.*

7   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  A settlement is fair, adequate, and

8   reasonable when "the interests of the class as a whole are better served if the litigation is resolved

9   by the settlement rather than pursued." *Manual for Compl. Litig.*, Fourth, § 30.42 (2004).  The

10  decision to approve or reject a proposed settlement is committed to the court's sound discretion.

11  *See City of Seattle*, 955 F.2d at 1276.

12       In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth Circuit

13  noted that it "need not reach any ultimate conclusions on the contested issues of fact and law

14  which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

15  avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291

16  (internal quotations and citations omitted).  The district court's ultimate determination "will

17  involve a balancing of several factors," which may include:

18            the strength of plaintiffs' case; the risk, expense, complexity, and
    likely duration of further litigation; the risk of maintaining class
19            action status throughout the trial; the amount offered in settlement;
    the extent of discovery completed, and the stage of the proceedings;
20            the experience and views of counsel . . . and the reaction of the class
    members to the proposed settlement.
21

22  *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

23       This Court begins its analysis with a presumption that a class settlement is fair and should

24  be approved if it is the product of arm's-length negotiations conducted by capable counsel with

25  extensive experience in complex class action litigation.  *See* 4 Alba Conte & Herbert B. Newberg,

26  *Newberg on Class Actions*, § 11:41 (4th ed. 2006).  Each of these factors is present here: Class

27  Counsel have extensive experience in class action litigation, and they reached the Settlement with

28  Intuit only after ample investigation, extensive arm's-length mediation facilitated by experienced

[REVISED PROPOSED] ORDER GRANTING FINAL
APPROVAL
CV-07-6452 WHA

mediator Honorable Edward A. Infante (Ret.), and substantial negotiation about the specific terms of the Settlement.

Further, the Court has considered each of the factors set forth in *City of Seattle* to determine whether the proposed Settlement warrants final approval. The Court finds, based on the record submitted, that the Settlement is fair, adequate, and reasonable in light of, *inter alia*, the following factors:

1.    The Value Of The Settlement, And The Substantial Benefits It Provides To Class Members

The Settlement provides relief for all Class members who incurred out of pocket expenses to recover data lost as a result of the alleged Software Malfunction. Under the terms of the revised Settlement Agreement, members of the Settlement Class who submit claims are entitled to cash reimbursement for 100% of expenses incurred by the claimant (on or before April 15, 2008) for data recovery software purchased by the claimant, expenses of third party vendors providing data recovery services and the cost of computer hardware reasonably necessary for data recovery.

Furthermore, Intuit will reimburse claimants for other data reconstruction or recovery efforts with a soft-cap of $500,000 for all claims ("Soft-Cap Expenses"). Claims in this category include (i) the cost of data reconstruction efforts performed by third parties, capped at 20 hours at $75 per hour; and/or (ii) in-house data reconstruction and data recovery expenses (such as reimbursement for time employees spent recovering and reconstructing data), also capped at 20 hours at $75 per hour. These expenses must have been incurred on or before April 15, 2008 for U.S. Class members.

In addition, eligible Class members will receive a free upgrade to QuickBooks for Mac 2007, which retailed for approximately $200.

2.    The Risks Inherent In Continued Litigation

The Court is satisfied that the Settlement here serves the interests of the Class. Absent the Settlement, Plaintiffs would have had to obtain a class judgment against Intuit, including

- 5 -

1  obtaining class certification covering the entire Class and prevailing on their legal claims. Such

2  an outcome was by no means guaranteed. Moreover, the outcome of trial and any appeals are

3  inherently uncertain and involve significant delay. The Settlement avoids these challenges and

4  provides prompt, substantial relief for Class members.

5          3.     The Discovery and Investigation Completed At the Time of Settlement

6         By the time the parties reached the Settlement, Class Counsel had thoroughly investigated

7  the Software Malfunction and reviewed discovery from Intuit sufficient to confirm the triggering

8  mechanism for the alleged Software Bug. Both parties propounded discovery and Plaintiffs

9  received verified discovery responses from Intuit. In addition, the parties fully briefed Intuit's

10  Motion to Dismiss, which addressed multiple novel arguments, including whether computer data

11  could constitute "other property" under the economic loss doctrine. The Court is satisfied that by

12  the time the Settlement was reached, counsel for both parties had sufficient legal and factual

13  bases to make a thorough appraisal of the risks of continued litigation and the adequacy of the

14  Settlement.

15          4.     The Terms And Conditions Of The Proposed Settlement

16         The Settlement provides cash compensation for Class members who incurred out of

17  pocket expenses related to data recovery efforts necessitated by the Software Malfunction, as well

18  as reimbursement for data recovery and reconstruction efforts necessitated by the Software

19  Malfunction. The Settlement further provides a product upgrade valued at approximately $200.

20  The straight-forward claims process applies equally to all Class members, and assistance is

21  available—from Class Counsel, the Garden City Group, and Intuit—for Class members who need

22  help locating the requisite proof to establish eligibility for relief under the Settlement. Further,

23  only participating Class members execute a release of claims. Thus, any Class member who

24  refrains from submitting a claim form and executing a release in exchange for relief pursuant to

25  the Settlement will not be bound by the Settlement and will remain free to pursue claims, if any,

26  against Intuit. The Courts finds that these terms and conditions are fair and reasonable.

27

28

5.      The Views of Class Counsel

When assessing the fairness of a proposed settlement, the court must consider the views and experience of counsel. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). Class Counsel in this case, who are experienced and skilled in class action litigation, support the Settlement as fair, reasonable, and adequate, and in the best interests of the Class as a whole. Based on a review of Class Counsel's credentials and their bases for supporting the Settlement, the Court finds that this factor weighs in favor of Settlement approval.

6.      The Expense And Likely Duration Of Litigation In The Absence Of A Settlement

Another factor courts consider in assessing the fairness of settlements is the complexity, expense, and likely duration of the litigation had a settlement not been reached. *City of Seattle*, 955 F.2d at 1291.  As discussed above, the Settlement guarantees a substantial recovery for the Class while obviating the need for lengthy, uncertain, and expensive pretrial practice, trial, and appeals.  Even if the Class prevailed at trial, Intuit would likely appeal any adverse rulings against it.  Class members would likely not obtain relief, if any, for a period of years.

In contrast to the risk of further litigation, the revised Settlement Agreement provides significant relief for Class members.  Perhaps most significantly, Class members are given a fair and reasonable choice: (i) file a claim and receive prompt relief that includes 100% of certain out-of-pocket costs for data recovery, up to $3,000 for other data recovery and data reconstruction costs, and a free version of the 2007 software; or (ii) not file a claim and not release any claims against Intuit.  The revised Settlement Agreement thus benefits those Class members who choose to participate, but does not penalize those who do not participate (intentionally or otherwise).

7.      The Presence Of Good Faith And The Absence Of Collusion

Courts should also consider the presence of good faith and the absence of collusion on the part of the settling parties.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.43 (4th ed. 2006).  There is no indication of collusion or bad faith here, nor any allegations thereof.  Furthermore, courts recognize that arm's-length negotiations conducted by competent

counsel are prima facie evidence of fair settlements.  *In re Consolidated Pinnacle West Securities*, 51 F.3d 194, 197 n.6 (9th Cir. 1995); *see also M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) (holding that where "a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiations by capable counsel, it is presumptively fair").

The proposed Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are highly familiar with class action litigation in general and with the legal and factual issues of this case in particular.  Initial settlement negotiations in this case were followed by mediation with the guidance of experienced mediator Honorable Edward A. Infante (Ret.).  Following the mediation, the parties reached a tentative agreement-in-principle on July 28, 2008, and continued to negotiate in detail and in good faith over the months that followed to finalize the Settlement Agreement.

8.      Class Members' Positive Reaction Supports Final Approval

The reaction of class members to a proposed settlement is an important factor in determining whether a settlement is fair, adequate, and reasonable.  *City of Seattle*, 955 F.2d at 1291.  A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.  *See, e.g.*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  Indeed, a court can approve a class action settlement as fair, adequate, and reasonable even over the objections of a significant percentage of class members. *See City of Seattle*, 955 F.2d at 1291-96.

Here, each of the class representatives submitted declarations reflecting their support of the Settlement.  Further, out of more than 43,000 persons to receive the Court-approved Notice, none has filed an objection.  While the claims rate has been modest, the Court finds that the lack of objections—coupled with the fact that releases will be executed only by those individuals who choose to submit a valid claim—weighs in favor of final approval.

9.      Class Counsel Seek Reasonable Fees

One final matter for the Court to consider in granting final approval to the Settlement is

1  the issue of attorneys' fees and costs.  The Court has considered and awarded Class Counsel's

2  attorneys' fees and costs by separate Order.

3                                   *          *          *

4        Accordingly, the entire matter of the proposed Settlement having been duly noticed, and

5  having been fully considered by the Court,

6        **IT IS HEREBY FOUND, ORDERED, ADJUDGED AND DECREED THAT:**

7        1.      Unless otherwise provided herein, all capitalized terms in this Order shall have the

8  same meaning as set forth in the Settlement Agreement, previously filed with this Court.

9        2.      The Court finds that notice to the Settlement Class has been completed in

10  conformity with the Preliminary Approval Order.  The Court finds that this notice was the best

11  notice practicable under the circumstances, that it provided due and adequate notice of the

12  proceedings and of the matters set forth therein, and that it fully satisfied all applicable

13  requirements of law and due process.

14        3.      The Court finds it has personal and subject matter jurisdiction over all claims

15  asserted in the First Amended Complaint with respect to all members of the Settlement Class.

16        4.      The settlement of this class action on the terms set forth in the Settlement

17  Agreement is approved as being fair, adequate and reasonable in light of the degree of recovery

18  obtained in relation to the risks faced by the Settlement Class in litigating the claims.  The

19  Settlement Class is properly certified as a class as part of this settlement.  The relief with respect

20  to the Settlement Class is appropriate, as to the individual members of the Settlement Class and as

21  a whole.

22        5.      The Settlement is binding on all members of the Settlement Class.  The Settlement

23  Class is defined as all users of QuickBooks Pro 2006 for Mac or QuickBooks New User Edition

24  2006 for Mac whose data or files became inaccessible or were damaged, corrupted, or lost,

25  whether temporarily or permanently, as a result of a malfunction of the Software's auto-update

26  mechanism (the "Malfunction") who timely submit a valid claim form.  Excluded from the Class

27  are (1) Intuit and its subsidiaries and affiliates; (2) all governmental entities; (3) the judge(s) to

28  whom this case is assigned and any immediate family members thereof; and (4) all claims for

personal injury and wrongful death.

6.    All members of the Settlement Class are bound by the terms of the Settlement Agreement.  As of the Effective Date, as defined in the Settlement Agreement, all members of the Settlement Class shall be deemed to have released all settled claims as described in the Settlement Agreement, which provides: "Upon final approval of the terms of this Settlement Agreement by both the United States District Court for the Northern District of California and the Ontario Superior Court of Justice, the Class Members, on behalf of themselves, their descendants, ancestors, dependents, heirs, executors, and administrators, and on behalf of all of their predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, past and present employees, officers, directors, attorneys, and all of their insurers and sureties, jointly and severally, fully and forever release Intuit (including Intuit Canada Ltd.), and its predecessors, successors, assigns, subsidiaries, affiliates, and operating entities, and each of their respective current and former officers, directors, agents, employees, shareholders, partners, joint venturers, insurers, and attorneys, of and from any claim, duty, obligation, or cause of action, whether presently known or unknown, suspected or unsuspected, whether raised by claim, counterclaim, setoff or otherwise, that any of them may possess, relating to any and all claims that were alleged in the U.S. Action or the Canadian Action, or otherwise relating to the Malfunction ("Released Claims")."

7.    As of the Effective Date, all members of the Settlement Class are hereby forever barred and enjoined from commencing, prosecuting or continuing to prosecute, either directly or indirectly, in this or any other jurisdiction or forum, any of the Released Claims.

8.    Neither this Order nor any aspect of this settlement is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.  In particular, and without limiting the generality of the foregoing, nothing in this Order or in the Settlement hereby approved shall be offered or construed as an admission of, or evidence of, liability, wrongdoing, impropriety, responsibility or fault whatsoever by Defendant or its employees and agents.  In addition, and also without limiting the generality of the foregoing, nothing about this Order or the settlement shall be offered or construed as an admission or

1    evidence of the propriety or feasibility of certifying a class in any other action for adversarial,

2    rather than settlement, purposes.

3        9.      The Motion for Final Approval of the Class Action Settlement is granted.  The

4    parties are to prepare a form of Judgment.  The Court retains jurisdiction over this matter until

5    that time, and this action will not be dismissed until that time.

6        10.     The dismissal of this case will be without prejudice to the rights of the parties to

7    enforce the terms of the Settlement Agreement.  The Court will retain jurisdiction over this matter

8    for purposes of resolving any disputes which may arise under the Settlement Agreement after

9    such dismissal.

10       **IT IS SO ORDERED.**

11       Dated this  22nd _ day of September, 2009.

12

13                                             The Honorable William H. Alsup
                                               United States District Judge
14

15   16319/40031/LIT/1305677.1

16

17

18

19

20

21

22

23

24

25

26

27

28